# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**In re: ENTROPIC COMMUNICATIONS, LLC**
**Patent Owner/Appellant**

Appeal Nos. 26-1584[1]
26-1585
26-1586

**Proceeding Nos: IPR2024-00432, IPR2024-00435 and IPR2024-00438**

**NOTICE FORWARDING CERTIFIED LISTS**

Corrected Notices of Appeal to the United States Court of Appeals for the Federal Circuit were timely filed March 30, 2026, in the United States Patent and Trademark Office by Entropic Communications, LLC, in connection with the above *Inter Partes* Review proceedings. Pursuant to 35 U.S.C. § 143 Certified Lists are this day being forwarded to the Federal Circuit.

Respectfully submitted,
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

Date:  May 11, 2026

By:*/s/ Michael W. Domenico*
Michael W. Domenico
Paralegal Specialist
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-2670

---

[1] Pursuant to Order and Note to File entered on April 16, 2026 [ECF Nos. 9 and 11], Appeal No. 26-1584 [Lead] has been consolidated with 26-1585 and 26-1586 [Member Cases].

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on Appellant this 11th day of May, 2026, as follows:

| FOR APPELLANT |
| --- |
| Parham Hendifar<br>Nathan Nobu Lowenstein<br>LOWENSTEIN & WEATHERWAX LLP<br>hendifar@lowensteinweatherwax.com<br>lowenstein@lowensteinweatherwax.com<br><br><br>Jason Alexander Engel<br>K&L GATES LLP<br>jason.engel@klgates.com |

By: */s/ Michael W. Domenico*
Michael W. Domenico
Paralegal Specialist
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-2670

**U.S. DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

**May 11, 2026**

(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Inter Partes Review* proceedings identified below:

**COMCAST CABLE COMMUNICATIONS, LLC,**
**Petitioner,**

**v.**

**ENTROPIC COMMUNICATIONS, LLC,**
**Patent Owner.**
_____

**Case Nos. IPR2024-00432, IPR2024-00435 and IPR2024-00438**

**U. S. Patent Nos. 9,210,362; 11,381,866; and 11,399,206**

_____

By authority of the

**DIRECTOR OF THE UNITED STATES**
**PATENT AND TRADEMARK OFFICE**



*/s/ Michael W. Domenico*
*Certifying Officer*

**Prosecution History for IPR2024-00432**

| Date | Document |
|---|---|
| 02/16/2024 | Petitioner's Power of Attorney |
| 02/16/2024 | Petition for *Inter Partes* Review |
| 02/16/2024 | Petitioner's Petition Ranking |
| 03/08/2024 | Patent Owner's Mandatory Notice |
| 03/08/2024 | Patent Owner's Power of Attorney |
| 04/11/2024 | Notice:  Notice filing date accorded |
| 04/11/2024 | Notice:  Notice filing date accorded |
| 04/22/2024 | Patent Owner's Updated Power of Attorney |
| 04/22/2024 | Patent Owner's Updated Mandatory Notices |
| 07/11/2024 | Patent Owner's Preliminary Response |
| 07/23/2024 | Patent Owner's Motion for *Pro Hac Vice* Admission of N. Lowenstein |
| 08/19/2024 | ORDER Granting Patent Owner's Motions for *Pro Hac Vice* Admission of N. Lowenstein |
| 10/08/2024 | Granting Institution of *Inter Partes* Review |
| 10/09/2024 | Scheduling Order |
| 10/09/2024 | Scheduling Order |
| 10/21/2024 | Patent Owner's Evidentiary Objections |
| 11/01/2024 | Panel Change Order |
| 11/06/2024 | Motion for *Pro Hac Vice* Admission of C. Woo |
| 11/15/2024 | Joint Stipulation to Modify Schedule |
| 11/15/2024 | Patent Owner's Notice of Deposition |
| 11/22/2024 | ORDER Granting Patent Owner's Motions for Admission *Pro Hac Vice* of C. Woo |

| Date | Document |
|---|---|
| 12/09/2024 | Patent Owner's Updated Mandatory Notices |
| 01/09/2025 | Second Joint Stipulation to Modify Schedule Final |
| 01/14/2025 | Patent Owner Response |
| 02/27/2025 | Petitioner's Notice of Deposition of Dr. Russ |
| 03/13/2025 | Panel Change Order |
| 03/17/2025 | Order:  Modifying Date of Oral Argument Conduct of the Proceeding |
| 04/17/2025 | Petitioner's Reply to Patent Owner Response |
| 04/23/2025 | Patent Owner's Objections |
| 04/30/2025 | Patent Owner's Notice of Deposition |
| 05/27/2025 | Patent Owner's Request For Oral Argument |
| 05/27/2025 | Petitioner's Request for Oral Argument |
| 05/30/2025 | Patent Owner's Sur-Reply |
| 06/11/2025 | Order:  Setting Oral Argument |
| 07/11/2025 | Patent Owner's Updated Exhibit List |
| 07/11/2025 | Petitioner's Updated Exhibit List |
| 07/11/2025 | Patent Owner's Objections to Petitioner's Demonstrative Exhibits |
| 07/17/2025 | Petitioner's Updated Mandatory Notices |
| 08/13/2025 | Patent Owner's Updated Exhibit List |
| 08/19/2025 | Petitioner's Updated Exhibit List |
| 09/18/2025 | Order:  Related Matters Updates |
| 09/18/2025 | Other:  Hearing transcript |
| 09/19/2025 | General Order:  Related Matters Updates |
| 09/26/2025 | Petitioner's Updated Exhibit List |

| Date | Document |
|---|---|
| 10/06/2025 | JUDGMENT Final Written Decision Determining All Challenged Claims Unpatentable |
| 11/05/2025 | Patent Owner's Request for Director Review |
| 11/13/2025 | Petitioner's Authorized Response to Director Review Request |
| 01/26/2026 | Order Denying Director Review of Final Written Decision |
| 03/24/2026 | Patent Owner's Notice of Appeal |
| 03/30/2026 | Patent Owner's Notice of Correction |
| 03/30/2026 | Patent Owner's Corrected Notice of Appeal |

**Prosecution History for IPR2024-00435**

| Date | Document |
|---|---|
| 02/16/2024 | Petitioner's Power of Attorney |
| 02/16/2024 | Petition for *Inter Partes* Review |
| 02/16/2024 | Petitioner's Petition Ranking |
| 03/08/2024 | Patent Owner's Mandatory Notice |
| 03/08/2024 | Patent Owner's Power of Attorney |
| 04/11/2024 | Notice: filing date accorded |
| 04/11/2024 | Notice: filing date accorded |
| 04/22/2024 | Patent Owner's Updated Power of Attorney |
| 04/22/2024 | Patent Owner's Updated Mandatory Notices |
| 07/11/2024 | Patent Owner's Preliminary Response |
| 07/23/2024 | Patent Owner's Motion for *Pro Hac Vice* Admission of N. Lowenstein |
| 08/19/2024 | ORDER Granting Patent Owner's Motions for *Pro Hac Vice* Admission of N. Lowenstein |
| 10/01/2024 | Granting Institution of *Inter Partes* Review |
| 10/09/2024 | Scheduling Order |
| 10/15/2024 | Patent Owner's Evidentiary Objections |
| 11/01/2024 | Panel Change Order |
| 11/06/2024 | Patent Owner's Motion for *Pro Hac Vice* Admission of C. Woo |
| 11/15/2024 | Joint Stipulation to Modify Schedule |
| 11/15/2024 | Patent Owner's Notice of Deposition |
| 11/22/2024 | ORDER Granting Patent Owner's Motions for Admission *Pro Hac Vice* of C. Woo |
| 12/09/2024 | Patent Owner's Updated Mandatory Notices |

| Date | Document |
|------|----------|
| 01/09/2025 | Second Joint Stipulation to Modify Schedule Final |
| 01/14/2025 | Patent Owner's Response |
| 02/27/2025 | Petitioner's Notice of Deposition of Dr. Russ |
| 03/13/2025 | Panel Change Order |
| 03/17/2025 | Order: Modifying Date of Oral Argument Conduct of the Proceeding |
| 03/20/2025 | Patent Owner's Third Updated Mandatory Notices |
| 04/17/2025 | Petitioner's Reply to Patent Owner Response |
| 04/23/2025 | Patent Owner's Objections |
| 04/30/2025 | Patent Owner's Notice of Deposition |
| 05/27/2025 | Petitioner's Request For Oral Argument |
| 05/27/2025 | Petitioner's Request for Oral Argument |
| 05/30/2025 | Patent Owner's Sur-Reply |
| 06/11/2025 | Order:  Setting Oral Argument |
| 07/11/2025 | Patent Owner's Updated Exhibit List |
| 07/11/2025 | Petitioner's Updated Exhibit List |
| 07/11/2025 | Patent Owner's Objections to Petitioner's Demonstrative Exhibits |
| 07/17/2025 | Petitioner's Updated Mandatory Notices |
| 08/13/2025 | Patent Owner Updated Exhibit List |
| 08/19/2025 | Petitioner's Updated Exhibit List |
| 09/18/2025 | Order:  Related Matters Updates |
| 09/18/2025 | Other:  Hearing transcript |
| 09/19/2025 | General Order:  Related Matters Updates |
| 09/26/2025 | Petitioner's Updated Exhibit List |

| Date | Document |
|------|----------|
| 09/29/2025 | Final Written Decision |
| 10/29/2025 | Patent Owner's Request for Director Review |
| 11/06/2025 | Petitioner's Authorized Response to Director Review Request |
| 01/26/2026 | Order Denying Director Review of Final Written Decision |
| 03/24/2026 | Patent Owner's Notice of Appeal |
| 03/30/2026 | Patent Owner's Notice of Correction |
| 03/30/2026 | Patent Owner's Corrected Notice of Appeal |

**Prosecution History for IPR2024-00438**

| Date | Document |
|------|----------|
| 02/16/2024 | Petitioner's Power of Attorney |
| 02/16/2024 | Petition for *Inter Partes* Review |
| 02/16/2024 | Petitioner's Petition Ranking |
| 03/08/2024 | Patent Owner's Mandatory Notice |
| 03/08/2024 | Patent Owner's Power of Attorney |
| 04/11/2024 | Notice:  filing date accorded |
| 04/11/2024 | Notice:  filing date accorded |
| 04/22/2024 | Patent Owner's Updated Power of Attorney |
| 04/22/2024 | Patent Owner's Updated Mandatory Notices |
| 07/11/2024 | Patent Owner's Preliminary Response |
| 07/23/2024 | Patent Owner Motion for *Pro Hac Vice* Admission of N. Lowenstein |
| 07/31/2024 | ORDER Granting Patent Owner's Motion for *Pro Hac Vice* Admission of N. Lowenstein |
| 10/04/2024 | Institution Decision:  Grant |
| 10/04/2024 | Institution Decision:  Grant |
| 10/09/2024 | Scheduling Order |
| 10/16/2024 | Patent Owner's Evidentiary Objection |
| 11/01/2024 | Panel Change Order |
| 11/06/2024 | Patent Owner's Motion for *Pro Hac Vice* Admission of C. Woo |
| 11/15/2024 | Joint Stipulation to Modify Schedule |
| 11/15/2024 | Patent Owner's Notice of Deposition |
| 11/22/2024 | ORDER Granting Patent Owner's Motions for Admission *Pro Hac Vice* of C. Woo |

7

| Date | Document |
|------|----------|
| 12/09/2024 | Patent Owner's Updated Mandatory Notices |
| 01/09/2025 | Second Joint Stipulation to Modify Schedule Final |
| 01/14/2025 | Patent Owner's Response |
| 02/27/2025 | Petitioner's Notice of Deposition of Dr. Russ |
| 03/13/2025 | Panel Change Order |
| 03/17/2025 | Order:  Modifying Date of Oral Argument - Conduct of the Proceeding |
| 03/20/2025 | Patent Owner's Third Updated Mandatory Notices |
| 04/17/2025 | Petitioner's Reply to Patent Owner Response |
| 04/23/2025 | Patent Owner's Objections |
| 04/30/2025 | Patent Owner's Notice of Deposition |
| 05/27/2025 | Patent Owner's Request For Oral Argument |
| 05/27/2025 | Petitioner's Request for Oral Argument |
| 05/30/2025 | Patent Owner's Sur-Reply |
| 06/11/2025 | Order: Setting Oral Argument |
| 07/11/2025 | Patent Owner's Updated Exhibit List |
| 07/11/2025 | Petitioner's Updated Exhibit List |
| 07/11/2025 | Patent Owner's Objections to Petitioner's Demonstrative Exhibits |
| 07/17/2025 | Petitioner's Updated Mandatory Notices |
| 08/13/2025 | Patent Owner's Updated Exhibit List |
| 08/19/2025 | Petitioner's Updated Exhibit List |
| 09/18/2025 | Order:  Related Matters Updates |
| 09/18/2025 | Other:  Hearing transcript |
| 09/19/2025 | General Order:  Related Matters Updates |

| Date | Document |
|------|----------|
| 09/26/2025 | Petitioner's Updated Exhibit List |
| 10/01/2025 | Final Written Decision |
| 10/31/2025 | Patent Owner's Request for Director Review |
| 11/10/2025 | Petitioner's Authorized Response to Director Review Request |
| 01/26/2026 | Order Denying Director Review of Final Written Decision |
| 03/24/2026 | Patent Owner's Notice of Appeal |
| 03/30/2026 | Patent Owner's Notice of Correction |
| 03/30/2026 | Patent Owner's Corrected Notice of Appeal |

Trials@uspto.gov
571-272-7822

Paper 45
Date: October 6, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.
————————

IPR2024-00432
Patent 9,210,362 B2
————————

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

LANEY, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00432
Patent 9,210,362 B2

## I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–20 of U.S. Patent No. 9,210,362 B2 (Ex. 1001, "the '362 patent").  Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10).  Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition.  Paper 13 ("Inst. Dec.").  Thereafter, Patent Owner filed a Response (Paper 24, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 28, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 33, "PO Sur-reply").  On July 18, 2025, we conducted an oral hearing.  A copy of the transcript (Paper 42) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b).  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–20 of the '362 patent are unpatentable.

## II.    BACKGROUND

### A.  Related Proceedings

The parties identify various federal district court cases and petitions for *inter partes* review.  *See* Pet. viii–ix; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 22, 1 (Patent Owner's Third Updated Mandatory Notices).

### B.  The '362 Patent

The '362 patent, titled "Wideband Tuner Architecture," relates to "wideband receiver systems and methods having a wideband receiver that is capable of receiving multiple radio frequency channels located in a broad

IPR2024-00432
Patent 9,210,362 B2

radio frequency spectrum." Ex. 1001, code (54), 1:15–18.

The '362 patent states that "[r]eceivers used to down-convert and selectively filter TV channels are referred to as tuners, and tuners designed to concurrently receive several TV channels are referred to as wideband tuners." Ex. 1001, 1:24–27. The '362 patent notes that "[i]n certain applications such as DVR and picture-in-picture, the receiver system may have to concurrently receive several desired channels that may or may not be contiguous," and that "[t]he wideband receiver requirement poses a trade-off to the system to limit either the dynamic range of the wideband tuner or reduce the bandwidth covered by the tuner so that fewer channels may be received and processed by the demodulator." *Id.* at 1:38–45. According to the '362 patent, a wide bandwidth receiver may involve "very expensive digital processing circuitry such as very high-speed analog to digital conversion and high-speed processor in the demodulator." *Id.* at 2:20–23. The '362 patent states that "[i]t is desirable to have wideband receiver systems that can increase the dynamic range without requiring expensive data conversion, filtering and channel selection at the demodulator." *Id.* at 2:24–27.

Figure 2, reproduced below, shows "a schematic block diagram of a wideband receiver system 200." Ex. 1001, 4:16–17.

3

IPR2024-00432
Patent 9,210,362 B2



FIG. 2

As shown in Figure 2, "[w]ideband receiver system 200 includes a radio front end 210 and a digital front end 230." Ex. 1001, 4:18–19. The '362 patent states that "[r]adio front end 210 may be a single very wideband tuner receiver that captures the desired swath of channels located in non-contiguous portions of the spectrum having a frequency bandwidth BW1 120." *Id.* at 4:19–22. The '362 patent indicates that each of mixers 211 and 221 "multiplies (mixes) an amplified RF signal 203 with a respective first oscillator frequency signal 205 and a second oscillator frequency signal 207 to generate an in-phase signal 212 and a quadrature signal 222 that have a phase shift of 90° degree between them." *Id.* at 4:41–46. The '362 patent indicates further that "[i]n-phase signal 212 and quadrature signal 222 are further amplified and filtered by respective amplifiers V1 213, V2 223 and filters F1 215, F2 225 to generate a filtered in-phase signal 216 and a filtered quadrature signal 226." *Id.* at 4:64–67.

4

IPR2024-00432
Patent 9,210,362 B2

The '362 patent states that "ADC1 218 generates a digital signal I 232 that is a digital representation of the analog filtered signal 216; ADC2 228 generates a digital signal Q 242 that is a digital representation of the analog filtered signal 226." *Id.* at 5:28–31.

In addition, the '362 patent states that "[d]igital signals I 232 and Q 242 are . . . applied to a bank of N complex mixers 250," and "[e]ach of the N complex mixers 250 receives the digital signals I 232 and Q 242 from ADCs 218 and 228 to extract a different one of the desired channels and frequency-shifts the extracted signals to the baseband frequency." Ex. 1001, 5:31–32, 5:49–52. The '362 patent states further that "[e]ach of the frequency shifted desired channels 252 is filtered by an associated filter module (identified as 260a to 260n)." *Id.* at 5:52–54. The '362 patent states that in an embodiment, "each of the filtered signals 260a to 260n may be sent directly to an associated demodulator (identified as 270a to 270n) for extracting the original information transmitted in the associated desired channel," and that in another embodiment, "each of the filtered signals 262a to 262n is further decimated before providing to a demodulator." *Id.* at 5:55–60. The '362 patent further states that "baseband channels . . . sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface according to commonly known methods." *Id.* at 6:55–58.

### C. Illustrative Claim

Petitioner challenges claims 1–20 of the '362 patent. Claims 1 and 11 are independent. Claim 1 is reproduced below, which has been annotated using the same designations as the parties for each element.

IPR2024-00432
Patent 9,210,362 B2

[1A]  A method for receiving a television (TV) signal comprising:

[1B] a mixer module configured to downconvert a plurality of frequencies that comprises a plurality of desired television channels and a plurality of undesired television channels;

[1C] a wideband analog-to-digital converter (ADC) module configured to digitize said plurality of frequencies comprising said plurality of desired television channels and said plurality of undesired television channels;

[1D] *digital circuitry configured to:*
    *select said plurality of desired television channels from said digitized plurality of frequencies; and*
    *output said selected plurality of television channels to a demodulator as a digital datastream.*

Ex. 1001, 11:52–65 (emphasis added to highlight the limitation at the center of the dispute between the parties).

### D. Asserted Grounds

Petitioner asserts the following eight grounds challenging the patentability of claims 1–20 in the '362 patent.  Pet. 18, 23–77.  We instituted *inter partes* review on each challenge.  Inst. Dec. 20.

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1–3, 8, 9, 11–13, 18, 19 | 102[1] | Zhang[2] |
| 1–3, 8, 9, 11–13, 18, 19 | 103(a) | Zhang |
| 2, 3, 12, 13 | 103(a) | Zhang, Panday[3] |

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013.  Because the application from which the '206 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007

IPR2024-00432
Patent 9,210,362 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 4–6, 14–16[4] | 103(a) | Zhang, Mirabbasi[5] |
| 7, 17 | 103(a) | Zhang, Mirabbasi, Karabinis[6] |
| 10, 20 | 103(a) | Zhang, Jensen[7] |
| 2, 3 | 103(a) | Zhang, Mirabbasi, Pandey |
| 10 | 103(a) | Zhang, Mirabbasi, Jensen |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009). Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III.  DISCUSSION

As shown in the asserted grounds table above, each of Petitioner's challenges to the patentability of claims 1–20 depends on Zhang, either alone or as combined with Pandey, Mirabbasi, Karabinis, and/or Jensen. *See* Pet. 18, 23–77.  In all of the grounds, through independent claims 1 and 11, Petitioner relies exclusively on Zhang to disclose or suggest the recited elements of limitation 1D.  *Id.* at 28–36, 42; *see also id.* 23–77.  Rather than

---

(Ex. 1014).

[4] In the grounds chart Petitioner provides on page 18 of the Petition, Petitioner identifies claims 1–6, 8, 9, and 14–16 for this ground.  But in the body of the Petition, at pages 48–60, Petitioner only addresses claims 4–6 and 14–16.  Therefore, we view the grounds chart as having a typographical error.

[5] Mirabbasi et al., Classical and Modern Receiver Architectures, in IEEE Communications Magazine, 132–139, Nov. 2000 Vol. 38 No. 11 (Ex. 1018).

[6] Karabinis, U.S. Publ'n No. 2006/0233147 A1, published Oct. 19, 2006 (Ex. 1020).

[7] Jensen et al., U.S. Publ'n No. 2007/0027943 A1, published Feb. 1, 2007 (Ex. 1026).

IPR2024-00432
Patent 9,210,362 B2

addressing each of the asserted grounds individually, Patent Owner
addresses all of the grounds collectively and only disputes whether
Petitioner has demonstrated sufficiently that Zhang discloses or suggests
limitation 1D in independent claim 1, which also applies to the
corresponding limitation found in independent claim 11.  *See* PO Resp. 7–
35; PO Sur-reply 2–28.  Notably, Patent Owner does not present any other
arguments disputing Petitioner's contentions that Zhang, either alone or as
combined with Pandey, Mirabbasi, Karabinis, and/or Jensen, show claims 1–
20 are unpatentable.  *See id.*  For the reasons discussed below, Petitioner's
contentions are persuasive and supported by a preponderance of the
evidence.

### A.  *Claim Construction*

In an *inter partes* review proceeding, we construe a claim of a patent
"using the same claim construction standard that would be used to construe
the claim in a civil action under 35 U.S.C. 282(b)."  *See* 37 C.F.R.
§ 42.100(b).  That standard involves construing claims in accordance with
the ordinary and customary meaning of such claims as would have been
understood by a person of ordinary skill in the art ("POSITA") and the
prosecution history pertaining to the patent.  *See id.*; *Phillips v. AWH Corp.*,
415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their
ordinary and customary meaning to a POSITA."  Pet. 21.  Although
Petitioner proposes corresponding structure for the term "digital circuitry"
recited in claim 1, it does so only "[t]o the extent" that term "is construed to
be a means-plus-function term under 35 U.S.C. 112, paragraph 6."  *Id.* at 22.
But Petitioner does not argue or suggest that "digital circuitry" *should be*

IPR2024-00432
Patent 9,210,362 B2

construed as a means-plus-function term; nor does Petitioner make an argument to overcome the presumption that 35 U.S.C. § 112, paragraph 6, does not apply. *See id.* Patent Owner does not address claim construction. *See generally* PO Resp. Because neither party actually argues "digital circuitry" is a means-plus-function term, the presumption holds and we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B.  Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1–3, 8, 9, 11–13, 18, and 19 of the '362 patent are anticipated by Zhang. Pet. 23–42. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* As noted above, Patent Owner only disputes whether Zhang discloses or suggests the subject matter of limitation 1D. PO Resp. 1–35. As explained below, Petitioner has demonstrated by a preponderance of the evidence that claims 1–3, 8, 9, 11–13, 18, and 19 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, however, we first provide an overview of Zhang.

### 1.  Overview of Zhang

Zhang relates to "digital multi-channel demodulation circuits." Ex. 1013, code (57). Zhang indicates these circuits may be employed in "advanced wide-band frontends for digital set-top boxes, PVRs, home gateways and home media centers." *Id.* ¶ 45. Zhang further teaches "a digital selector that receives . . . separate RF channels and selects one or more RF channels, and a plurality of demodulators that receive one or more of the RF channels from

9

IPR2024-00432
Patent 9,210,362 B2

the digital selector and demodulate one or more of the RF channels." *Id.*
¶ 11.

Figure 2, reproduced below, shows a "a simplified high-level block
diagram of an exemplary multi-channel demodulator 200." Ex. 1013 ¶ 23.



Fig. 2

As shown in Figure 2, demodulator 200 includes a "frequency-block down-
converter 210 [that] receives one or more multi-channel analog RF signals"
and "shifts the multi-channel analog RF signal to a lower frequency band."
*Id.* ¶¶ 23, 25. Demodulator 200 further includes an ADC 220 that "converts
the down-converted multi-channel analog RF signal to a multi-channel
digital RF signal." *Id.* ¶ 27. Demodulator 200 further includes a "digital
channel demultiplexer 230 [that] demultiplexes the multi-channel digital RF
signal into separate digital RF channels $C_1$ to $C_n$" and a "digital selector 240
[that] receives the demultiplexed digital RF channels $C_1$ to $C_n$, and then
selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the
digital RF channels $C_1$ to $C_n$." *Id.* ¶ 28. According to Zhang, "[t]he m
selected RF channels are then fed into respective demodulators 250(1),
250(2), . . . 250(m)." *Id.* ¶ 29.

Figure 3, reproduced below, shows a "simplified high-level schematic

10

IPR2024-00432
Patent 9,210,362 B2

diagram of a digital tuner 300, which . . . can be used to implement digital channel demultiplexer 230." Ex. 1013 ¶ 30.



Fig. 3

As shown in Figure 3, "[d]igital tuner 300 includes a bank of n numeric control oscillators (NCOs) 310(1 . . . n), complex multipliers 320(1 . . . n), and low-pass filters (LPFs) 330(1 . . . n)." Ex. 1013 ¶ 30. Zhang further discloses

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of a desired RF channel, or "target" RF channel. The output of NCO 310(1) is multiplied by all the RF channels received at complex multiplier 320(1). When [a] multi-channel RF signal is multiplied with the output of NCO 310(1), the frequency of target RF channel signal is shifted to a desired channel. In some embodiments of the present invention, the target RF channel is shifted to a baseband, i.e., centered at DC. LPFS 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes. Accordingly, separate RF channels exit digital tuner 300, i.e., the multi-channel RF signal is demultiplexed. Digital tuner circuit 300 then outputs the

11

IPR2024-00432
Patent 9,210,362 B2

separated RF channels $C_1$ to $C_n$, each RF channel being
centered at baseband.

*Id.* ¶ 32.

### 2.  Independent Claim 1

Claim 1 is directed to a "wideband receiver system" that has recited
configurations for its "mixer module," "wideband analog-to-digital
converter (ADC) module," and "digital circuitry."  Petitioner designates the
preamble as limitation 1A and the configured components as limitations 1B
through 1D, respectively.  We address these elements, starting with
Petitioner's arguments and then turning to the parties' dispute.

### a.  Limitation 1A: "wideband receiver system"

Claim 1 recites as its preamble "[a] wideband receiver system."
Petitioner asserts that "Zhang describes 'a wide-band receiver' for use in
digital set-top boxes, PVRs, and home media centers," which is
demonstrated by "Zhang's multi-channel demodulator 200 . . . [that]
receives an RF signal in a frequency band that carries multiple RF channels,
with each channel having data streams modulated on a carrier signal."
Pet. 23 (citing Ex. 1013 ¶¶ 23, 24, 41–47, Figs. 2, 6–8; Ex. 1001, 1:24–27;
Ex. 1002 ¶¶ 34, 98–100).

Patent Owner does not specifically dispute Petitioner's contentions
regarding the preamble.  *See generally* PO Resp.  And even if the preamble
is limiting, we are persuaded by Petitioner's argument and evidence that
Zhang teaches the subject matter of the preamble.

### b.  Limitation 1B: "mixer module"

Claim 1 recites "a mixer module configured to downconvert a
plurality of frequencies that comprises a plurality of desired television

12

IPR2024-00432
Patent 9,210,362 B2

channels and a plurality of undesired television channels."  For this component, Petitioner provides an annotated version of Figure 2 of Zhang, which is reproduced below.  Pet. 25.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner asserts that "Zhang discloses the claimed 'mixer module,' for example, frequency block down converter 210 (**red**)," which "multiplies (i.e. mixes) an incoming RF signal with a reference signal to downconvert the RF signal to a lower frequency band."  Pet. 25 (citing Ex. 1013 ¶ 25; Ex. 1002 ¶¶ 65–66, 101–102).  According to Petitioner, "[t]he RF signal includes multiple RF carrier signals that each includes one or more TV content channels from a TV system."  *Id.* (quoting Ex. 1013 ¶¶ 5, 23–25, 29, 41, claims 13, 27–30, 33; Ex. 1002 ¶¶ 103–104).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1B.  *See generally* PO Resp.  Based on Petitioner's argument and evidence, we find that Zhang teaches the recited mixer module of limitation 1B.

13

IPR2024-00432
Patent 9,210,362 B2

### c. Limitation 1C: "wideband ADC module"

Claim 1 recites "a wideband analog-to-digital converter (ADC) module configured to digitize said plurality of frequencies comprising said plurality of desired television channels and said plurality of undesired television channels." For this component, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below. Pet. 27.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang discloses the claimed 'wideband analog-to-digital converter (ADC) module' as ADC 220 (gold)." Pet. 27 (citing Ex. 1002 ¶¶ 108–110). Petitioner contends that "ADC 220 receives the down-converted multi-channel analog RF signal including desired and undesired channels, and converts the 'entire signal band'" and that the "ADC is 'wideband' because it digitizes several channels within the frequency block concurrently." Pet. 27 (citing Ex. 1013, code (57) ¶¶ 10, 25, 27–28, 31–32, 34, 41–42, claims 1, 2, 4, 7, 28, 34, 36, 37; Ex. 1002 ¶¶ 108–109).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1C. *See* PO Resp. Based on Petitioner's arguments

IPR2024-00432
Patent 9,210,362 B2

and evidence, we find that Zhang teaches the recited wideband ADC module of limitation 1C.

### d.  Limitation 1D: "digital circuitry"

Claim 1 further recites:

> digital circuitry configured to: select said plurality of desired television channels from said digitized plurality of frequencies; and output said selected plurality of television channels to a demodulator as a digital datastream.

For this component, Petitioner provides yet another annotated version of Figure 2 of Zhang, reproduced below.  Pet. 29.



Fig. 2
**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner asserts that "Zhang teaches the claimed 'digital circuitry' as Digital Channel Demultiplexer 230, either alone, or in combination with all or part of Digital Selector 240 (**purple**)," which "are implemented with 'standard process CMOS,' a well-known type of digital logic integrated circuit."  Pet. 28–29 (citing Ex. 1013 ¶¶ 44, 48; Ex. 1016, pp. 17–19; Ex. 1002 ¶¶ 111–125).  Looking first to Digital Channel Demultiplexer 230 alone, Petitioner asserts that "Digital Channel Demultiplexer 230 receives the multi-channel digital RF signal

15

IPR2024-00432
Patent 9,210,362 B2

from ADC 220 and selects from this signal a number 'n' of desired channels C1 - Cn (**green**), each at a unique 'target' RF channel" and highlights that Zhang states that the "RF channels C1 to Cn contain content channels that are selected or used by a subscriber." *Id.* at 29 (citing Ex. 1013 ¶¶ 28, 30–32, 42, claims 1, 2, 10, 11, 13, 17, 21, 23, 27, 28, 30, 33, 34, 36–41, Figs. 2, 3; Ex. 1002, ¶¶ 113–114). Petitioner contends that "[e]ach of the desired channels is output by Digital Channel Demultiplexer 230 as a parallel digital data stream on parallel paths C1 to Cn (green) to 'one or more' shared demodulators 250(1)-250(m) via Bus Selector 240." *Id.* at 31 (citing 1013 ¶¶ 29, 32, Figs. 2, 3, claims 2–5, 9; Ex. 1001, 6:55–58, Fig. 2; Ex. 1002, ¶¶ 117–118, 121).

Petitioner asserts that "Zhang uses the same technique described in the '362 patent for selection and outputting of desired channels C1 – Cn" and provides annotated versions of Figure 3 from Zhang and Figure 2 from the '362 patent, reproduced below, to illustrate this point. Pet. 29.



Ex. 1013, Fig. 3 (annotated)          Ex. 1001, Fig. 2 (annotated)

The figure on the left is a simplified high-level schematic diagram of a digital tuner in accordance with Zhang's teachings (Ex. 1013 ¶ 17) and, on the right, is a schematic block diagram of a wideband receiver system in accordance with the '362 patent's teachings (Ex. 1001, 3:56–57). Petitioner represents that the technique illustrated by both figures for selecting desired

IPR2024-00432
Patent 9,210,362 B2

channels as follows: "first using a bank of complex mixers (purple) to frequency-shift a digitized version of the downconverted wideband signal so that each mixer outputs a different desired channel shifted to baseband (0 Hz), and then using low pass filters (green) to filter out the undesired channels so that only the desired channels remain. *Id.* at 29–30 (citing 1001, 2:51–55, 5:49–6:54, Fig. 2; Ex. 1013 ¶¶ 27, 30–32, Fig. 3; Ex. 1002 ¶¶ 113–116).

Turning to Digital Channel Demultiplexer 230 in combination with Digital Selector 240, Petitioner notes that "Digital Selector 240 selects channels $D_1$–$D_m$ (which comprise any or all of channels $C_1$–$C_n$) to output as a digital data stream to 'one or more' demodulators 250(1)–250(m)." Pet. 31 (citing Ex. 1013 ¶¶ 28, 29, 38, 39, 47, Fig. 3, claims 2–4; Ex. 1002 ¶ 119). Petitioner explains, "[f]or m=n, all of the selected channels are concurrently output to one or more demodulators, and for m<n, the user may output some or all n channels to the demodulator, just not concurrently," and "[b]y switching through the demultiplexed channels $C_1$–$C_n$ selected by the user, Digital Selector 240 provides the subscriber with fast channel search capabilities." *Id.* (citing Ex. 1013 ¶¶ 5, 28, 29, 38, 39, 47, claims 2–4, 9, 30–32; Ex. 1002 ¶ 119).

Patent Owner makes several arguments regarding claim element 1D, which we will address below.

### e. *The Parties' Dispute*

As noted above, Patent Owner disputes Petitioner's contentions regarding limitation 1D. Generally, Patent Owner's position is that "[t]hough both Zhang and the '362 patent involve a digitized RF input signal, and, ultimately, output desired RF channels, the method by which

17

IPR2024-00432
Patent 9,210,362 B2

they achieve this result is critically different." PO Resp. 3. That critical difference, according to Patent Owner, is that "the '362 patent *only* selects desired channels from the digitized input RF signal without selecting any undesired channels," whereas "Zhang blindly extracts *all* channels, *both* desired *and* undesired, from the digitized input RF signal, and only later selects the desired channels from the extracted channels." *Id.* at 3. Patent Owner cites Dr. Russ's declaration testimony that "Zhang digitizes an input signal . . . , consisting of 'n' desired and undesired channels, in the analog to digital converter 220," then "extracts from the digitized RF input signal *all* channels $C_1$–$C_n$ in the entire signal band, *both* desired *and* undesired, in the Digital Channel DeMux 230 . . . without making any selection," and then uses the selector 240 to "select[] the desired channels and output[] them to demodulators." *Id.* at 4–5 (quoting Ex. 2009 ¶¶ 33–35).

Patent Owner supports its position that demultiplexer 230 does not select the desired television channels from the digitized plurality of frequencies in two ways. First, Patent Owner indicates that Zhang teaches that "ADC 220 is a high-speed ADC so that an entire signal band with n channels can be converted" and, subsequently, demultiplexer 230 receives those converted n channels from the ADC 220 and demultiplexes them into channels $C_1$–$C_n$. PO Resp. 11–12 (Ex. 1013 ¶ 27; Ex. 2009 ¶ 41). Patent Owner contends that it is "undisputed" that "the number of channels 'n' includes both desired and undesired channels." *Id.* (citing Ex. 2018, 78:14–22). Patent Owner concludes, "because 'n' in Zhang denotes the total number of channels, both desired and undesired, the demultiplexed channels $C_1$ to $C_n$, therefore, also encompass all channels in the 'entire signal band,' both desired and undesired, without any 'selection' of desired channels." *Id.*

18

IPR2024-00432
Patent 9,210,362 B2

at 12 (citing Ex. 2009 ¶¶ 42–43).  This conclusion is confirmed, according to Patent Owner, by Zhang's explanation "that after channels $C_1$–$C_n$ are extracted from the input RF signal, a module actually called a selector, an n×m *Selector* 240, selects the desired channel $D_1$–$D_m$ from the total channels $C_1$–$C_n$." *Id.* at 12–13 (citing Ex. 1013 ¶¶ 28, 39, 42).

The second way Patent Owner supports the assertion that demultiplexer 230 does not select the desired television channels is by referencing Zhang's prosecution history.  *See* PO Resp. 15–16 (citing Ex. 2012, 2–3; Ex. 2009 ¶¶ 45–47).  In particular, Patent Owner highlights that, during prosecution before the European Patent Office, Zhang distinguished prior art systems that "demodulate all of the RF channels" because the demodulator of the claimed invention only received selected digital RF channels from the selector.  Ex. 2012, 2–3; *see also* PO Resp. 15–16 (Ex. 2009 ¶¶ 45–47).  Patent Owner asserts that "Zhang's prosecution history further confirms its express disclosures in its specification that channels $C_1$–$C_n$ contain all channels, both desired and undesired, and that its Digital Channel Demultiplexer 230 does not perform any 'select[ion].'" PO Resp. 16.

Patent Owner argues that Petitioner's contentions are inconsistent with Zhang's disclosure, as well as being internally inconsistent.  PO Resp. 16–29.  Patent Owner asserts that Petitioner's contentions are inconsistent with Zhang's teaching that "the number of complex multipliers 320 (1…n) is the same number 'n' as the number of all channels, both desired and undesired, in the entire signal band."  PO Resp. 17.  Patent Owner asserts that Zhang's use of the phrase "target channel" in its discussion of its Figure 3 "is simply the specific one of the n channels (consisting of both

19

IPR2024-00432
Patent 9,210,362 B2

desired and undesired channels) that a particular mixer path is responsible for extracting." *Id.* at 19–20; *see also id.* at 20–22 (citing Ex. 2009 ¶¶ 54–57). And Patent Owner asserts that Petitioner's reliance on Zhang's statement that "RF channels $C_1$ to $C_n$ contain channels that are selected or used by a subscriber" is misplaced because "[t]hose portions of Zhang do not state that channels $C_1$ to $C_n$ contain 'only' desired channels." *Id.* at 25. Instead, Patent Owner posits, that representation in Zhang is properly understood as suggesting "channels $C_1$ to $C_n$ contain all potentially desirable channels from which actual desired channels D1 to Dm can be selected." *Id.* (citing Ex. 1013 ¶ 28; Ex. 2009 ¶ 60).

Patent Owner argues that Petitioner's contentions are internally inconsistent, "to the extent Petitioner's mapping relies on Zhang's channels $C_1$-$C_n$ as the claimed 'plurality of desired channels'" because "that mapping contradicts Petitioner's reliance on channels $D_1$-$D_m$ as 'the plurality of desired channels' output on data bus 1." PO Resp. 29 (citing Ex. 2009 ¶ 68). As Figure 5 of Zhang clearly illustrates, Patent Owner states, "what is 'output' on Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ . . . , not channels $C_1$–$C_n$." *Id.* at 28 (citing Ex. 2009 ¶ 67).

Lastly, Patent Owner argues that Petitioner's reliance on channels $D_1$–$D_m$ as the claimed "plurality of desired television channels" fails "because channels $D_1$–$D_m$ are not selected 'from' the same 'plurality of frequencies' down converted and digitized," as recited in limitations 1B and 1C. PO Resp. 29. Patent Owner emphasizes that limitation 1D "requires circuitry to select 'said plurality of desired television channels *from said digitized plurality of frequencies*,'" which refers to the "plurality of frequencies" that were downconverted and digitized in limitations 1B and

20

IPR2024-00432
Patent 9,210,362 B2

1C. *Id.* at 30. Patent Owner explains that because the digitized input signal received by digital channel demultiplexer 203 includes many frequency ranges that have been extracted and do not exist in channels $C_1$–$C_n$ of Zhang, "Channels $C_1$–$C_n$, from which channels $D_1$–$D_m$ are selected, are not the same 'plurality of frequencies' digitized by Zhang in its analog-digital converter 220 (which, in Zhang's implementation is the entire input)." *Id.* at 32–33 (citing Ex. 2009 ¶¶ 74–75). Patent Owner argues that "[i]f claim 1 of the '362 patent were read so broadly as to cover the selection of Zhang's channels $D_1$–$D_m$, then the language of the claim requiring that these channels be selected 'from the input signal' would be rendered superfluous." *Id.* at 34–35.

Petitioner counters that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently teach the recited desired channels. Pet. Reply 5. Regarding channels $C_1$–$C_n$, Petitioner contends Zhang does not mandate that $C_1$–$C_n$ include all channels. *Id.* at 5–6. Petitioner asserts "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." *Id.* at 6 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42). As to channels $D_1$–$D_m$, Petitioner reiterates the combination of demultiplexer 230 with all or part of the selector 240 comprise the "digital circuitry" that "selects the desired channels from the digitized plurality of frequencies," "$D_1$–$D_m$ are undisputedly the desired channels output by this circuitry," and the "input of this circuitry is undisputedly the digitized plurality of frequencies coming from the ADCs." *Id.* at 6. Patent Owner characterizes Petitioner's reply as "doubling down on the Petition's errors, continuing to inconsistently rely on both channels $C_1$–$C_n$ and $D_1$–$D_m$ as the claimed 'plurality of desired

21

IPR2024-00432
Patent 9,210,362 B2

television channels' that must be 'selected' by the claimed digital circuitry 'from said digitized plurality of frequencies.'"  PO Sur-reply 1.

After studying the full record created by the parties, we find Petitioner's evidence and reasoning supports persuasively that Zhang's digital channel demultiplexer 230, either alone or with digital selector 240, discloses to a skilled artisan the "digital circuitry" limitation 1D recites. Pet. 28–36; Pet. Reply 2–26.

Starting with the undisputed facts, digital channel demultiplexer 230 and digital selector 240 disclosed by Zhang is "digital circuitry," which is configured to receive a plurality of frequencies comprising a plurality of desired/undesired television channels from ADC 220 and to output the desired television channels to demodulators 250 as a digital datastream.  Tr. 71:14–17 (PO Counsel: "There is no dispute that in both Zhang and the patent, an RF signal that has both desired and undesired channel comes in and what's sent to demodulators are desired channels.  Nobody is disputing that."), 134:3–5 (PO Counsel: "The issue is not whether the black box 230-plus-240 is the digital circuitry.  It is.  The issue is not whether or not that overall circuitry selects channels.  At some level, it does.").  In other words, Zhang teaches digital circuitry that is (1) capable of receiving a plurality of frequencies including desired/undesired television channels and (2) capable of distinguishing between the desired/undesired channels to output the desired television channels to a demodulator.  We find these uncontested facts to be highly probative of Petitioner's contention that, to a skilled artisan, Zhang suggests that its digital circuitry is capable of selecting the desired television channels from a digitized plurality of frequencies that include both desired/undesired television channels.  This is because Zhang's

IPR2024-00432
Patent 9,210,362 B2

digital circuitry is able to take what is input originally as a digitized plurality of frequencies having both desired/undesired television channels and, using those frequencies, pick out the desired television channels that are subsequently output to a demodulator.  Zhang teaches that "because *only the selected channels* are later demodulated" the disclosed digital circuitry is "much faster than traditional analog channel switching through RF tuners" and it "dissipates less heat because fewer resources are required when demodulating *only the selected RF channels*."  Ex. 1013 ¶ 28 (emphasis added).

Turning now to the disputed evidence from Zhang, we are persuaded that the evidence favors more heavily Petitioner's contention that Zhang's digital channel demultiplexer 230, either alone or with digital selector 240, discloses to a skilled artisan the "digital circuitry" that limitation 1D recites. First, channel demultiplexer 230 alone, is described by Zhang as being able to demultiplex the multi-channel digital RF signal received from ADC 220 into separate digital RF channels $C_1$–$C_n$. Ex. 1013 ¶ 28.  Zhang states expressly that those "RF channels $C_1$–$C_n$ contain content channels *that are selected or used by a subscriber*."  *Id.*  We agree with Petitioner that this evidence discloses, or at least strongly suggests, to a skilled artisan that the configuration of channel demultiplexer 230 allows it to pick out desired content channels from the multi-channel digital RF signal received from ADC 220 to generate RF channels $C_1$–$C_n$.

In addition, Zhang teaches an embodiment of channel demultiplexer 230 that generates RF channels $C_1$–$C_n$ by using a numerical oscillator (NOC) 310 to generate a "target" frequency "that matches the characteristics frequency of *a desired RF channel, or 'target' RF channel*" and by using a

23

IPR2024-00432
Patent 9,210,362 B2

low-pass filter (LPF) that "filters out all RF channels *except for its target RF channel*" so that "only the target RF channel passes." Ex. 1013 ¶ 32. Here, again, we agree with Petitioner that this evidence discloses, or at least strongly suggests, to a skilled artisan that the configuration of channel demultiplexer 230 allows it to pick out desired content channels from the multi-channel digital RF signal received from ADC 220 to generate RF channels $C_1$–$C_n$.

Patent Owner's contrary arguments do not significantly diminish the weight of Petitioner's evidence. The fact that Zhang describes ADC 220 as "a high-speed ADC so that an entire signal band with n channels can be converted" offers little, if any, support to the notion that Zhang's channel demultiplexer 230 only extracts indiscriminately all channels across the entire signal band. Although we agree with Patent Owner that the above description by Zhang of the ADC characterizes "n" as representing a variable number of channels that may be in an entire signal band, without any regard to whether the television channel is desired or undesired, we disagree with Patent Owner that this provides significant evidence that channel demultiplexer 230 only discloses indiscriminately generating RF channels $C_1$–$C_n$ without regard to whether the channel is a desired or undesired television channel. If Patent Owner were correct, it would not be necessary for Zhang to state, "RF channels $C_1$ to $C_n$ *contain content channels that are selected or used by a subscriber*" (Ex. 1013 ¶ 28 (emphasis added)) because a skilled artisan would recognize that to be the case already.

We disagree also with Patent Owner that Zhang's prosecution history provides significant evidence that channel demultiplexer 230

24

IPR2024-00432
Patent 9,210,362 B2

indiscriminately generates RF channels $C_1$–$C_n$ without regard to whether the channel is a desired or undesired television channel. *See* PO Resp. 15–16. Although the related prosecution history refers to the recited selector as allowing specific RF channels to be selected for demodulation (Ex. 1012, 2–3), when viewed in context, it is apparent that Zhang was distinguishing the prior art based on the recited claims outputting selected or desired RF channels to a demodulator rather than all of the desired and undesired channels. There is no indication Zhang is representing that RF channels $C_1$–$C_n$ necessarily include both desired and undesired channels. It may very well be the case that sometimes the RF channels $C_1$–$C_n$ include both desired and undesired channels, but that does not undermine Petitioner's evidence that Zhang also clearly teaches to a skilled artisan RF channels $C_1$–$C_n$ can also be content channels that are selected or used by a subscriber.

Further unavailing is Patent Owner's attempt to diminish the significance of Zhang's teaching that RF channels $C_1$–$C_n$ may be generated using NOC 310 to generate a "target" frequency "that matches the characteristics frequency of *a desired RF channel, or 'target' RF channel*" and a low-pass filter (LPF) that "filters out all RF channels *except for its target RF channel*" so that "only the target RF channel passes." Ex. 1013 ¶ 32. Patent Owner dismisses this clear teaching as simply "coincidental." PO Sur-reply 6. But we do not agree. Zhang expressly states "RF channels $C_1$ to $C_n$ *contain content channels that are selected or used by a subscriber*" (Ex. 1013 ¶ 28 (emphasis added)) and neither Patent Owner nor its declarant explains why a skilled artisan would "target" or "desire" an "undesired" channel when separating out the channels from the entire signal band to create RF channels $C_1$–$C_n$.

25

IPR2024-00432
Patent 9,210,362 B2

Finally, regarding the alleged inconsistencies caused by mapping Zhang's channels $C_1$-$C_n$ and, in the alternative, channels $D_1$-$D_m$ to the claimed "plurality of desired channels" because what is output on data bus 1 from selector 240 are RF channels $D_1$–$D_m$, not RF channels $C_1$–$C_n$ (PO Resp. 28), we are not convinced an actual inconsistency does exist because Zhang makes clear that RF channels $D_1$–$D_m$ "are from the RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 42; *see also id.* ¶ 28 ("selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$").  And as such, although Zhang refers to outputting RF channels $D_1$–$D_m$ on data bus 1, a skilled artisan would readily recognize that the output channels are the same as the selected RF channels $C_1$–$C_n$ (*see* Ex. 1081, 60:13–15 ("C1 is the exact same thing as D1. C2 is the exact same as D2. And so on an so forth.").  Accordingly, Petitioner's reliance on RF channels $C_1$–$C_n$ as the recited desired channels is persuasive.

As to Petitioner's theory that channels $D_1$–$D_m$ teach the recited desired channels, we consider Figures 2, 3, and 5 of Zhang, which show selector 240 selects channels $D_1$ to $D_m$ (e.g., desired channels) from channels $C_1$ to $C_n$ and provides selected channels $D_1$ to $D_m$ via a serial interface in selector 240 (e.g., selector 500).  Ex. 1013, Figs. 2, 3, 5.  Patent Owner acknowledges Zhang teaches that "[t]he output channels $C_1$–$C_n$ of the digital channel demultiplexer 230 . . . is then fed into the selector 240 . . . , which selects channels $D_1$–$D_m$ from the input channels $C_1$–$C_n$."  PO Resp. 32 (citing Ex. 2009 ¶¶ 74–75; Ex. 1013 ¶ 28).  Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

26

IPR2024-00432
Patent 9,210,362 B2

Patent Owner further argues that, "[t]o the extent Petitioner relies on channels $D_1$–$D_m$ as the claimed 'plurality of desired channels,' that reliance also fails to disclose or render obvious the claims because channels $D_1$–$D_m$ are not selected 'from' the same 'plurality of frequencies'" that Petitioner relies on for limitations 1B and 1C.  PO Resp. 29; *see also id.* at 29–35.

Petitioner counters that "the digital circuitry [for performing step 1D] is demultiplexer 230, in combination with all or part of selector 240," which means "the input to the relied-upon digital circuitry (i.e., the input to demultiplexer 230) is the digitized plurality of frequencies output by the ADCs, *not* the individual channels $C_1$–$C_n$" and "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the desired channels."  Pet. Reply 8. According to Petitioner, "[i]t necessarily follows that the relied-upon digital circuitry is selecting the desired channels ($D_1$–$D_m$) 'from the digitized plurality of frequencies.'"  *Id.*  To illustrate, Petitioner provides a figure based on Figures 2, 3, and 5 of Zhang, reproduced below.  *Id.* at 10.



27

IPR2024-00432
Patent 9,210,362 B2

Petitioner's figure combines annotated versions of Figures 2, 3, and 5 of Zhang. *Id.* As discussed above, Figure 2 of Zhang shows multi-channel demodulator 200 with demultiplexer 230 and selector 240; Figure 3 of Zhang shows digital tuner 300 that can be used to implement demultiplexer 230; and Figure 5 of Zhang shows selector 500 that can be used to implement digital selector 240. Ex. 1013 ¶¶ 23, 30, 38. Petitioner asserts that its composite figure shows "the input to the relied-upon digital circuitry (coming from the bottom left side of the figure) is not the individual channels $C_1$–$C_n$ output by demultiplexer 230, but rather the recited digitized plurality of frequencies." Pet. Reply 9.

We agree with Petitioner. Limitation 1D recites "select said plurality of desired television channels from said digitized plurality of frequencies." Petitioner contends Zhang's demultiplexer 230 and selector 240 *together* perform the step of claim element 1D. Petitioner identifies the signal provided by Zhang's ADC 220 as the recited digitized plurality of frequencies and Zhang's channels $D_1$–$D_m$ as the recited digitized plurality of frequencies. Pet. 29, 31–32. As Petitioner's composite figure shows, channels $D_1$–$D_m$ are selected from the signal provided by ADC 220. Pet. Reply 9; *see also* Ex. 1013, Figs. 2, 3, 5.

Patent Owner contends that Zhang's channels $D_1$–$D_m$ are selected from channels $C_1$–$C_n$ and *not* the plurality of frequencies provided by ADC 220. PO Resp. 29. But channels $D_1$–$D_m$ are based on channels $C_1$–$C_n$, which are based on the signal provided by ADC 220. It, therefore, necessarily follows that channels $D_1$–$D_m$ also are based on the same plurality of frequencies provided by ADC 220. In other words, the channels $D_1$–$D_m$, which are picked from channels $C_1$–$C_n$, are the same channels in both

28

IPR2024-00432
Patent 9,210,362 B2

groups, and Patent Owner does not dispute channels $C_1$–$C_n$ are based on the plurality of frequencies provided by ADC 220. Petitioner correctly contends, "[n]othing in the claim language prevents the recited selection from being performed by a digital multiplexer 230 that selects individual channels from the incoming wideband digitized signal in combination with a digital selector 240 that passes certain of those signals along to a demodulator." Pet. Reply 9. This understanding is consistent with the stated objective of the '362 patent because channel selection at the demodulator is still avoided. *See* Ex. 1001, 2:24–27 ("It is desirable to have wideband receiver systems that can increase the dynamic range without requiring . . . channel selection at the demodulator").

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3. *Independent Claim 11*

Claim 11 is directed to a "method" and recites "the required functionality . . . performed by identical structural elements" in claim 1. Pet. 42. Thus, according to Petitioner, "claim 11 is directed to substantially identical subject matter as claim 1 and is anticipated and rendered obvious by Zhang for the same reasons discussed above with respect to claim 1." *Id.* Patent Owner agrees that "[i]ndependent claim 11 recites corresponding method steps to claim 1." PO Resp. 1; *see id.* at 7, 8 n.2.

Therefore, based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited elements of claim 11.

IPR2024-00432
Patent 9,210,362 B2

### 4. Dependent Claims

Each of claims 2, 3, 8, 9, 12, 13, 18, and 19 depends from either independent claim 1 or 11. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 36–42 (citing Ex. 1013 ¶¶ 29–34, 38–39, Figs. 2, 3, 5, claims 21, 22, 37–40). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 75–77, 126–140, 152–157).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 36–42), we find that Zhang teaches the limitations of the dependent claims.

### 5. Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1–3, 8, 9, 11–13, 18, and 19 are anticipated by Zhang or would have been obvious in view of Zhang.

### C. Asserted Challenge Based on Zhang and Pandey

Each of claims 2, 3, 12, and 13 of the '362 patent depends from either independent claim 1 or 11. Petitioner asserts that these dependent claims would have been obvious over Zhang and Pandey. Pet. 43–47. Petitioner relies on Pandey for teaching "specific serial and parallel interfaces when implementing a digital circuit design (e.g., such as Zhang's digital circuitry) on a FGPA or ASIC chip" and contends that "[i]t would have been obvious to apply Pandey's dedicated (i.e., parallel) and/or time-multiplexed (i.e., serial) interconnection to the interconnection between Zhang's demultiplexer 230, digital selector 240, and/or demodulators 250" to optimize the real

IPR2024-00432
Patent 9,210,362 B2

estate needed for implementing the digital portion of Zhang on a single chip. *Id.* at 43–46 (citing Ex. 1013 ¶¶ 29, 37–39, 44, 47–48; Ex. 1014, code (57), 1:15–2:12, 2:4–12, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:5, 11:6–19, 13:33–14:7, 29:44–3:9, 30:31–31:15, 31:15–22, 31:56–63, 32:12–15, Fig. 37–39; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 126–136, 159–166).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 2, 3, 12, and 13. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 43–47), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2, 3, 12, and 13 would have been obvious over Zhang and Pandey.

### D. Asserted Challenge Based on Zhang and Mirabbasi

Each of claims 4–6 and 14–16 depend from either independent claim 1 or 11. Petitioner asserts that "it would have been obvious to implement Zhang's converter 210, ADC 220 and digital multiplexer 230 using the well-known structures in Mirabbasi to teach and render obvious claims 4–6 and 14–16." Pet. 50. Petitioner relies on Mirabbasi for teaching various ways known to configure wideband ADC converters, mixer modules, and complex mixers, which Petitioner asserts can be incorporated into Zhang's system to

31

IPR2024-00432
Patent 9,210,362 B2

provide a way to implement and improve Zhang's wideband receiver system. *Id.* at 49–60 (citing Ex. 1013 ¶¶ 5, 12, 23–32, 41, 48, Figs. 2, 3, claims 13, 27, 33; Ex. 1018, 4–11, 137–138, Figs. 1, 2, 3, 10; Ex. 1025, pp. 272, 274–275, 279–280; Ex. 1034, 35–36, 54–63, Fig. 3.29a, 3.3; Ex. 1001, 4:42–43, 6:7–27, 9:17–22, Fig. 3). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 66, 167–190).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 4–6 and 14–16. *See generally* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 49–60), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Mirabbasi teaches the limitations of theses dependent claims and that Petitioner's proffered reasoning for combining Zhang and Mirabbasi support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 4–6 and 14–16 would have been obvious over Zhang and Mirabbasi.

*E. Asserted Challenge Based on Zhang, Mirabbasi, and Karabinis*

Claim 7 depends from independent claim 1 via dependent claims 5 and 6; claim 17 depends from independent claim 11 via dependent claims 15 and 16. Petitioner asserts that dependent claims 7 and 17 would have been obvious over Zhang, Mirabbasi, and Karabinis. Pet. 60–68. Petitioner relies on Karabinis to teach a known way for outputting Zhang-Mirabbasi's desired channels for demodulation, "which is to shift the frequencies of the desired channels (e.g., D1-Dm) into a contiguous frequency band 422 (the claimed 'continuous frequency spectrum') using a plurality of frequency

32

IPR2024-00432
Patent 9,210,362 B2

translators 420, and summing the shifted channels with a summer." *Id.* at 65–66 (citing Ex. 1020 ¶¶ 17, 18, 42–44, 49, Figs. 4, 5, 7, claims 8, 9, 27, 28; Ex. 1002 ¶ 200). Petitioner contends that a skilled artisan would have considered it obvious to modify the Zhang-Mirabbasi receiver according to Karabinis to output the desired channels in a contiguous frequency spectrum because Karabinis was a known option to provide the channels for demodulation and permit the benefit of receiving all of the desired channels simultaneously over a single bus. *Id.* at 66–67 (citing Ex. 1002 ¶ 201).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 7 and 17. *See generally* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 60–68), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Mirabbasi, we find that Petitioner's proposed combination of Zhang, Mirabbasi, and Karabinis teaches the limitations of dependent claims 7 and 17 and that Petitioner's proffered reasoning for combining Zhang, Mirabbasi, and Karabinis support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 7 and 17 would have been obvious over Zhang, Mirabbasi, and Karabinis.

*F. Asserted Challenge Based on Zhang and Jensen*

Each of claims 10 and 20 depend from either independent claim 1 or 11. Petitioner asserts that, in view of Jensen's teachings, it would have been obvious to a skilled artisan to "included a decimator circuit in the Zhang's Channel Demultiplexer 230 or Digital Selector 240, either as a separate component following the low pass filters 330 or as part of the filters themselves (e.g., using channel-select decimation filters as low pass filters

33

IPR2024-00432
Patent 9,210,362 B2

330), to reduce the sampled data of the digital signals and thereby reduce power consumption and/or complexity in subsequent processing (e.g., in demodulators 250)." Pet. 71 (citing Ex. 1013 ¶¶ 29–32, Fig. 3; Ex. 1026 ¶ 7; Ex. 1002 ¶ 209). Petitioner relies on Jensen to teach decimation "was commonly performed to reduce a sampling rate of a digital signal." *Id.* at 69 (citing Ex. 1026 ¶¶ 7, 27; Ex. 1002 ¶ 206).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 10 and 20. *See generally* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 68–72), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jensen teaches the limitations of dependent claims 10 and 20, as well as, Petitioner's proffered reasoning for combining Zhang and Jensen support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 10 and 20 would have been obvious over Zhang and Jensen.

### G. Remaining Grounds

Petitioner's remaining grounds (i.e., claims 2 and 3 are obvious in view of Zhang, Mirabbasi, and Pandey; claim 10 is obvious in view of Zhang, Mirabbasi, and Jensen) are contingent upon the term "digital circuitry" being construed as means-plus-function limitation. *See* Pet. 72. However, neither party actually argues that 35 U.S.C. § 112, paragraph 6, applies to that term, moreover, neither party attempts to overcome the presumption that the term is not a means-plus-function limitation. The term

34

IPR2024-00432
Patent 9,210,362 B2

"digital circuitry," therefore, has not been construed as such.  As a result,

Petitioner's remaining grounds are moot.

## IV.  CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance

of the evidence that claims 1–20 of the '362 patent are unpatentable as

follows.

| Claim(s) | 35 U.S.C. § | Reference(s)/ Basis | Claim(s) Shown Unpatentable | Claim(s) Not Shown Unpatentable |
|---|---|---|---|---|
| 1–3, 8, 9, 11–13, 18, 19 | 102 | Zhang | 1–3, 8, 9, 11–13, 18, 19 | |
| 1–3, 8, 9, 11–13, 18, 19 | 103(a) | Zhang | 1–3, 8, 9, 11–13, 18, 19 | |
| 2, 3, 12, 13 | 103(a) | Zhang, Pandey | 2, 3, 12, 13 | |
| 4–6, 14–16 | 103(a) | Zhang, Mirabbasi | 4–6, 14–16 | |
| 7, 17 | 103(a) | Zhang, Mirabbasi, Karabinis | 7, 17 | |
| 10, 20 | 103(a) | Zhang, Jensen | 10, 20 | |
| 2, 3[8] | 103(a) | Zhang, Mirabbasi, Pandey | | |
| 10[9] | 103(a) | Zhang, Mirabbasi, Jensen | | |
| **Overall Outcome** | | | 1–20 | |

---

[8] This ground has been rendered moot because the term "digital circuitry" has not been shown to be a means-plus-function limitation.
[9] This ground has been rendered moot because the term "digital circuitry" has not been shown to be a means-plus-function limitation.

IPR2024-00432
Patent 9,210,362 B2

## V. ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–20 of the '362 patent have been shown to be unpatentable[10]; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

---

[10] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

IPR2024-00432
Patent 9,210,362 B2

FOR PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com

FOR PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com
nolan.hubbard@klgates.com

Kenneth J. Weatherwax
Parham Hendifar
Nathan Lowenstein
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

UNITED STATES PATENT AND TRADEMARK OFFICE

—————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

—————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

—————————

Case IPR2024-00432
Patent 9,210,362

—————————

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

Case IPR2024-00432
Patent 9,210,362

## **TABLE OF CONTENTS**

**Page**

I.      **INTRODUCTION** ........................................................................................1

II.    **THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.**..............................................................3

      A.    The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding. ..................................................................5

      B.    The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent................................................5

      C.    The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination.....................................8

III.   **CONCLUSION** ........................................................................................11

i

| EXHIBIT LIST | |
|---|---|
| 2001 | Table Of Parallel Petitions Filed By All Petitioners (July 16, 2019-June 29, 2024) [All-Parallel-Petitions] |
| 2002 | Table of All Petitions Filed By Comcast (As Petitioner or RPI) (2016-2024) [All-Comcast-Petitions] |
| 2003 | PTAB Multiple Petitions Study [Multiple-Petitions-Study] |
| 2004 | PTAB Multiple Petitions Study Executive Summary [Executive-Summary] |
| 2005 | FreeWheel About Webpage (www.freewheel.com/about) |
| 2006 | Declaration of Kenneth K. Wang [Wang-Decl.] |
| 2007 | Pro Hac Vice Declaration of Nathan Lowenstein [PHV-L] |
| 2008 | Pro Hac Vice Declaration of Colette Woo [PHV-W] |
| 2009 | Declaration of Samuel H. Russ, Ph.D. [Russ-Decl.] |
| 2010 | Curriculum Vitae of Samuel H. Russ, Ph.D. [Russ-CV] |
| 2011 | European Patent Application No. 02759732.7.2415 Communication From Examining Division [EPO-Communication-Annex] |
| 2012 | European Patent Application No. 02759732.7.2415 Reply To Communication From Examining Division [Zhang-EPO-Reply] |
| 2013 | European Patent Application No. 02759732.7.2415 Intent To Grant European Patent [EPO-Grant-Intent] |
| 2014 | Reserved |
| 2015 | Reserved |
| 2016 | Reserved |

| 2017 | Reserved |
|------|----------|
| 2018 | David Lett 1st Deposition Volume I [Lett-1st-Depo.-Volume-I] |
| 2019 | David Lett 1st Deposition Volume II [Lett-1st-Depo.-Volume-II] |
| 2020 | IPR2024-00432, Exhibit 1002, Declaration of David Lett [IPR2024-00432-Lett-Decl.] |
| 2021 | David Lett 2nd Deposition [Lett-2nd-Depo.] |
| 2022 | Patent Owner's Oral Argument Demonstratives |
| 2023 | Deposition Transcript of Petitioner's Expert in IPR2025-00180 |
| 2024 | Designations From Exhibit 2023 |

## I.    INTRODUCTION

Patent Owner respectfully requests that the Director grant review of the Final Written Decision because the Board failed to reconcile its decision finding the claims unpatentable with a reexamination determination confirming the same claims after being presented with the same art, in violation of the Director's recent guidance.  Patent Owner did not raise the arguments in this Request before the Board because the Director's guidance was issued shortly prior to the issuance of the Final Written Decision, and after oral argument and close of all briefing, and the arguments raised herein were not demonstrably relevant under the Office's policy at those times.  For example, it was not demonstrably relevant that the Zhang Patent identified to the Examiner in the reexamination contains the same disclosure as the Zhang application relied upon by the Board here.  Nor was it demonstrably relevant to show that the arguments accepted in other Office proceedings are similar to the arguments rejected by the Board here.  A similar Director Review Request is being filed in each of IPR2024-00435 and IPR2024-00438, which concern patents with a common specification and substantially similar claims.

On September 16, 2025, the Director issued a Memorandum titled "*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*" ("Memorandum").  The Memorandum provides that the Board should reconcile its

1

decisions with prior, contrary determinations of fact or law made by the Office in post-grant proceedings of the patent, with a more detailed explanation required when both proceedings rely on "substantially the same evidence and/or arguments." Memorandum, 1.

The Board in this proceeding determined that Ex 1013 ("Zhang") alone discloses the relevant limitations of the independent claims requiring "select[ing] said plurality of desired television channels." Paper 45 [FWD] 17-28. But Zhang and arguments similar to those adopted by the Board were previously considered and rejected by the Office in connection with the same and similar limitations. *See* Section II, *infra*.

In the Reexamination of the same patent that is the subject of this proceeding, Zhang was presented to the Office. The Examiner found that "the art of record" fails to show "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream." Ex. 1082, 6; *see* Section II.B, *infra*. The Examiner likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected "ranges of frequencies containing the desired channels." *See* Section II.B, *infra*.

The Office also rejected Zhang and arguments similar to those adopted by the Board here during the prosecution of U.S. Pat. 11,785,275, which shares the

same specification and substantially similar claims with the '362 patent, and which

occurred after the issuance of the '362 patent.  During the prosecution of the '362

patent, the Examiner, after considering Zhang, determined that the prior art of

record did not disclose the claimed step of selecting desired channels because the

prior art instead used a demultiplexer to separate an input signal into its constituent

channels.  *See* Section II.C, *infra*.  The distinction the Examiner accepted in the

prosecution of the '362 patent is substantively identical to Patent Owner's

argument here—that Zhang does not "select" any channels, but merely

demultiplexes the input signal into its constituent channels.  Paper 45 [FWD] 18-19

(reciting Patent Owner's arguments).

The Board failed to acknowledge, let alone explain, any of the above prior

findings by the Office.  Thus, Patent Owner respectfully requests that the Director

grant review of the Final Written Decision and remand this matter to the Board for

issuance of a decision consistent with the Memorandum.

II.  **THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.**

As noted, on September 16, 2025, the Director issued a Memorandum titled

"*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*"

("Memorandum").  The Memorandum provides that when a patent with

"substantially similar" claims to the patent under review has been adjudicated in another post-issuance proceeding, then:

> if the Board reaches an initial or final decision on a finding of fact or conclusion of law that is different than the prior finding or conclusion of the Office, district court, or the ITC, ***the Board shall explain in the institution or final written decision why a different outcome is warranted***. ***A more detailed explanation is required*** from the Board ***when the same or substantially the same evidence and/or arguments that were previously presented to the Office***, the district court, or the ITC ***are being relied upon in the subsequent AIA trial proceeding***.

Memorandum, 1.

The Board in this proceeding found all claims of the '362 patent unpatentable. As relevant here, the Board found that Ex 1013 ("Zhang") alone discloses independent claim 1's limitation that "***select[ing]*** said plurality of ***desired television channels***." Paper 45 [FWD] 17-28.

Both Zhang and arguments similar to those accepted by the Board here were previously presented to, and rejected by, the Office, including in the post-grant proceeding involving the same '362 patent. The Board's Final Written Decision, however, failed to address any of the Examiner's prior contrary findings or to reconcile them with the Final Written Decision, as required by the Memorandum. These points are discussed in more detail below.

**A.    The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding.**

On September 20, 2023, a request for *ex parte* reexamination of the '362 patent was filed with the Office.  On November 1, 2023, reexamination was ordered by the Office.  On February 10, 2025, the Office issued a Notice of Intent to Issue Reexamination Certificate.  Ex. 1082, 3-11.  On April 1, 2025, the Office issued a Reexamination Certificate, confirming the patentability of all claims 1-20 of the '362 patent.  *Id.*, 1-2.

The Parties identified the *ex parte* reexamination of the '362 patent to the Board on multiple occasions.  The Petition in this inter partes review identified the reexamination proceeding.  Pet., viii.  The parties identified the Reexamination in an email to the Board on September 25, 2025.

Thus, the patent at issue in this proceeding was the subject of a post-grant adjudication by the Office.

**B.    The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent.**

While the Memorandum requires an explanation by the Board anytime it reaches a conclusion of fact or law contrary to the ones reached in other post-grant proceedings of the patent, the Memorandum specifically requires that "[a] more detailed explanation is required from the Board when the same or substantially the same evidence and/or arguments that were previously presented to the Office …

are being relied upon in the subsequent AIA trial proceeding." Memorandum, 1. As explained in this section, because the Zhang Patent was listed in an IDS and initialed by the Examiner, the same prior art was previously presented to the Office and considered by the Examiner. Patent Owner did not present the arguments raised herein to the Board in the *inter partes* review proceeding because the Memorandum was issued after the oral argument and close of all briefings, and just days before the issuance of the Final Written Decision, and the arguments raised herein did not have demonstrable relevance at the time of briefing before the Board. For example, it was not demonstrably relevant that the Zhang Patent identified in an IDS in the reexamination contains the same disclosure as the Zhang application that forms the basis of the Board's decision here.

During the Reexamination of the '362 patent, Patent Owner identified, and the Examiner considered, a Zhang reference ("Zhang Patent") with substantially identical disclosure to the Zhang reference that was the basis of the Final Written Decision here. Specifically, during Reexamination, Patent Owner listed U.S. Pat.

6,704,372 [Zhang-Patent] in an IDS.  Application No. 90,019,255, *Information Disclosure Statement* (June 18, 2024) at 3.[1]

The Zhang Patent submitted by the Patent Owner in the IDS is the patent that issued from the same application that published as the Zhang reference relied upon by the Board here.  Ex. 1013 [Zhang] 1 (Appl. No.: 09/956,479); U.S. Pat. No. 6,704,372 [Zhang-Patent] (Appl. No.: 09/956,479).  Both the Zhang Patent submitted by the applicant in the IDS and the Petition's Zhang reference have substantially identical disclosures.  *Compare generally* Ex. 1013 [Zhang] *with* U.S. Pat. No. 6,704,372 [Zhang-Patent].

---

[1] On October 23, 2025, Patent Owner sought authorization from the Director to file as exhibits supporting its Director Review Request the USPTO documents referenced in this Request.  *See* Exhibit 3100.  Patent Owner's request was denied and, consequently, Patent Owner has not filed those documents as exhibits.  Patent Owner does not understand the denial of authorization to file additional exhibits as precluding discussion of the underlying facts.  Furthermore, the Director is empowered to take official notice of documents from proceedings before the USPTO should the Director deem that necessary and appropriate.  37 C.F.R. § 42.62(c); Fed. Rule Evid. 201; 5 U.S.C. § 556(e).

The Examiner stamped every page of the IDS, including the page listing the Zhang Patent, confirming consideration of the Zhang Patent. Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3.

Identification of the Zhang Patent in the IDS is sufficient to show that the same prior art references were previously presented to the Office. When a reference was previously identified in an IDS, "the same or substantially the same prior art or argument previously was presented to the Office." *Ecto World LLC and SV3, LLC v. Rai Strategic Holdings, Inc.*, IPR2024-01280, Paper 13, 3-4 (May 19, 2025). The same rationale should apply here.

Thus, the same Zhang reference was previously presented to the Office.

## C.    The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination.

The Board in its Final Written Decision determined that Zhang alone, unmodified, discloses "select[ing] said plurality of desired television channels." Paper 45 [FWD] 17-28. In reaching this conclusion, the Board rejected Patent Owner's argument that Zhang's relied upon channels $C_1$-$C_n$ are neither "desired channels" nor "select[ed]." *See, e.g.*, *id*. 17-19. This determination stands in sharp contrast to the Examiner's conclusion in the Reexamination that the prior art of record, including Zhang, failed to disclose the same limitations the Board found to be disclosed by Zhang.

In the '362 patent Reexamination, the Examiner, subsequent to its consideration of the Zhang Patent, issued a notice of intent to issue reexam certificate, explaining that:

> ***the cited prior art of record fails to teach*** the system and method as disclosed in claims 1 and 11, comprising … a digital circuit (interpreted as element 230 in Figure 2 and also described in column 5, lines 49-60) to ***select plurality of desired television channels*** from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream.

Ex. 1082, 6; *see also* Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3 (identifying Zhang patent).

The Examiner's finding that Zhang does not disclose the claims is not an isolated determination, but a continuation of other instances where the Office—by different examiners—has found Zhang or similar disclosures to not disclose similar limitations.  For example, in the same Reexamination of the '362 patent, the Examiner accepted Patent Owner's argument that the McNeely reference that selected "ranges of frequencies containing the desired channels" failed to disclose the claims.  Application No. 90,019,255, *Non-Final Rejection* (August 7, 2024) at 10-11.

The Office has also expressly reviewed and rejected the Zhang Patent in yet another instance.  U.S. Pat. 11,785,275 also shares the same specification with the

'362 patent, and similarly recites, in its claim 1, "selecting, by a digital frontend (DFE) … the plurality of desired channels from the digitized signal." During prosecution of the '275, conducted after the issuance of the '362 patent at issue here, Patent Owner identified the Zhang Patent in an IDS. Application No. 17/956,889, *Information Disclosure Statement* (August 16, 2023) at 1. In the Notice of Allowance, the Examiner expressly confirmed consideration of that IDS containing the Zhang Patent. Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7 ("The prior art comprising Information Disclosure Statements filed 16 August 2023 and 18 August 2023 was considered by the Examiner in view of the instant application."). The Examiner then determined that the prior art of record did not disclose the claimed step of selecting desired channels, but instead used a demultiplexer to separate an input signal into its constituent channels. Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7. The argument the Examiner accepted in the prosecution of the '275 patent is substantially similar to the argument advanced by Patent Owner in the instant IPR, *i.e.*, that Zhang does not "select" any channels but instead demultiplexes the input signal into its constituent channels. Paper 45 [FWD] 17-19 (reciting Patent Owner's arguments).

The Board did not address any of the above prior, and contrary, Office determinations in its Final Written Decision. In fact, given that the same Zhang

reference was previously presented to the Office, the Board was required to

provide an even "more detailed explanation." Thus, the Final Written Decision

failed to comply with the procedure set forth in the Memorandum.

## III.  CONCLUSION

For the aforementioned reasons, Patent Owner respectfully requests that the

Director grant review and reverse the Final Written Decision.


Respectfully submitted,

/ Parham Hendifar /
_____

Parham Hendifar (Reg. No. 71,470)
Nathan Lowenstein, *pro hac vice*
Kenneth J. Weatherwax (Reg. No. 54,528)
LOWENSTEIN & WEATHERWAX LLP

Date:  November 5, 2025

11

Case IPR2024-00432
Patent 9,210,362

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following documents were served

by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

The names and addresses of the parties being served are as follows:

Frederic M. Meeker          fmeeker@bannerwitcoff.com
Michael S. Cuviello         mcuviello@bannerwitcoff.com
H. Wayne Porter             wporter@bannerwitcoff.com
Paul T. Qualey              pqualey@bannerwitcoff.com
Joshua L. Davenport         jdavenport@bannerwitcoff.com
ComcastIPRService@bannerwitcoff.com

Respectfully submitted,

/ Parham Hendifar /

Date:  November 5, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

_____

Case IPR2024-00432
Patent 9,210,362

_____

**AUTHORIZED RESPONSE TO PATENT OWNER'S
REQUEST FOR DIRECTOR REVIEW**

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time. ...................................4

III.  The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings ................................................5

    A.    The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers .........................................................................................6

    B.    Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong ..............................10

    C.    The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution ...............................................................................11

IV.   The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required ................................12

V.    CONCLUSION.....................................................................................13

## I.     INTRODUCTION

Requests for Director Review of a Board's final decision are "limited to decisions presenting (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law." U.S. Patent & Trademark Office, Director Review Process, https://www.uspto.gov/patents/ptab/decisions/director-review-process (last visited Nov. 3, 2025) (describing, in Section 2.B, availability of Director Review for proceedings under part 42 of 37 C.F.R.). Patent Owner does not allege an abuse of discretion, an important issue of law or policy, or an erroneous finding of material fact or conclusion of law. Rather, Patent Owner only argues that, under Acting Director Stewart's September 16 memorandum (the "Memorandum"), the Board was obligated to provide in the Final Written Decision (FWD) a more detailed explanation of how the Board reached a different finding of fact with respect to Zhang (U.S. Pat. App. Pub No. 2003/0056221 A1), the primary reference in the IPR of U.S. Pat. No. 9,210,362 (the "'362 Patent"), than was allegedly reached in U.S. Reexamination App. No. 90/019,255 of the '362 Patent (the "'362 Reexamination") or in the prosecution of related U.S. Pat. No. 11,785,275 (the "'275 Patent"). Patent Owner claims ignorance in not previously raising this issue with the Board, arguing that "the arguments raised herein were not demonstrably relevant under the Office's policy at those times [prior to the Final Written Decision]." Request at 1.

1

Patent Owner's claim of ignorance regarding the relevance of its arguments flies in the face of the Board's September 19 order, which required the parties to respond to the Memorandum, and the parties' subsequent response on September 26 that provided all potentially relevant evidence. Furthermore, regardless of Patent Owner's claims, the Board's findings regarding Zhang are not contrary to any prior findings by the Office, as the Office did not address Zhang in those proceedings. Therefore, the Board was not required to provide additional explanation under the Memorandum.

Specifically, the Patent Owner states only that Zhang, or a different patent (U.S. Pat. No. 6,704,372) related to Zhang ("Zhang '372 Patent"), was cited along with other prior art in IDSs in the previous proceedings, and that the Examiner stated that the prior art of record failed to disclose the feature in the claim elements at issue. The Examiner in each case did not directly address or provide any findings of fact regarding Zhang or the Zhang '372 Patent, and therefore, there is nothing for the Board to address. This is especially not surprising regarding the '362 Reexamination, where it appears from the publicly available file wrapper that the

Patent Owner only cited the Zhang '372 Patent and did not cite Zhang or the related IPR papers even after informing the Board that they would do so.[1]

To the extent the Board was obligated to provide a more detailed explanation of why it reached a different conclusion about Zhang than the Examiners purportedly did in reexamination and prosecution, the Board already did so. As the Examiners were silent about Zhang and the Zhang '372 Patent, it is possible they simply overlooked its relevance since the IPR papers explaining their significance were not submitted. And, if they did consider and dismiss Zhang or the Zhang '372 Patent, their reasons for doing so are not in the record and unknowable. Thus, the only action the Board could have taken was to review Zhang *de novo* during the IPR. That is exactly what the Board did, providing a detailed explanation (as required in the Memorandum) of how Zhang disclosed every feature of the independent and other claims of the challenged patent.

---

[1] The Director denied Patent Owner's request to submit new evidence into the record on October 29, 2025. Ex. 3100. Because the file wrappers of the '362 Reexamination and the '275 Patent cited by Patent Owner are not of record, they should not be considered. Petitioner cites to this information only to rebut Patent Owner's arguments and does not concede that it was proper for Patent Owner to rely on evidence not of record.

**II.    The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time.**

Patent Owner's assertion that the information in the Request was not demonstrably relevant before the Final Written Decision (FWD) under the Memorandum is disingenuous at best. The Board expressly *required* the parties to provide any relevant information in its September 19 order (Paper No. 43), and the parties jointly filed (Exhibits 1082-1085) what each party identified as relevant on September 26, 2025 (prior to the FWD). Indeed, in an email to the undersigned counsel prior to that joint filing, Patent Owner stated: "It is patent owner's understanding that no relevant developments have occurred, and no relevant documents exist to be filed." Ex. 3100 at 1-2.

The Director's guidance has not changed since Patent Owner responded on September 26, and Patent Owner does not explain any change of circumstance that makes the issues it attempts to raise in its Request more relevant now than when it was obligated to raise them with the Board. Thus, Patent Owner's representations in this Request about what might be relevant directly contradict its representations to the Board when the Board asked for such information.

If the information Patent Owner now presents was relevant, Patent Owner was obligated to provide it to the Board while the IPR was pending. Even before the Memorandum, Patent Owner had the opportunity to argue that Petitioner's

4

arguments were rejected in other Office proceedings. Patent Owner's sur-reply was filed on May 30, 2025, almost two months after the reexamination certificate was issued in the '362 Reexamination on April 1, 2025, and Patent Owner's Response was filed on January 14, 2025, more than a year after the '275 Patent issued on October 10, 2023. Patent Owner failed to do so, because there is no basis for arguing that the Office previously rejected Petitioner's arguments that Zhang discloses the claims. Patent Owner's attempt to make new arguments to the Director now is improper and should be found waived. 37 C.F.R. § 42.23.

## III. The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings

The only alleged "contrary determinations of fact" that the Patent Owner asserts are:

1) "The Examiner [in the '362 Reexamination] found that 'the art of record,' fails to show 'select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream'";

2) "The Examiner [in the '362 Reexamination] likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected 'ranges of frequencies containing the desired channels'"; and

3)  "During the prosecution of the '362 [*sic*] patent, the Examiner, after considering [the Zhang '372 Patent], determined that the prior art of record did not disclose the claimed step of selecting desired channels because the prior art instead used a demultiplexer to separate an input signal into its constituent channels."[2]  Request at 2-3.

Contrary to Patent Owner's arguments, the Examiners in the respective proceedings never made any findings of fact with respect to Zhang.  Each of these assertions is addressed below.

## A. The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers

Patent Owner's assertion that the Examiner in the '362 Reexamination found that the Zhang '372 Patent failed to disclose "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream" is quoted out of context and wrong.  The statement the Patent Owner cites is regarding the "art of

---

[2] The Patent Owner mistakenly refers to the "'362 patent," though it appears the intent was to refer to the "'275 patent."  The Zhang '372 Patent was not of record in the file history of the '362 Patent as the typographical error in this sentence from Patent Owner's Request suggests.

record" and does not mention the above limitation in isolation but instead refers to the entirety of claims 1 and 11 of the '362 Patent. Thus, the Examiner never made any finding as to whether any particular limitation of the claims was shown or not shown by the art. Moreover, the Examiner never discusses the Zhang '372 Patent.

Indeed, it appears the Examiner was not made aware of Zhang or the Zhang '372 Patent's relevance to the '362 Patent because Patent Owner never submitted the IPR papers. On May 7, 2024, Patent Owner notified the Examiner in the '362 Reexamination of the IPRs but did not identify Zhang as the reference relied upon in those IPRs. *See* '362 Reexamination, Patent Owner's Petition For Extension of Time Under 37 C.F.R. § 1.550(C) (May 7, 2024) at 2.

On June 18, 2024, Patent Owner filed an IDS with a response to a non-final office action. The IDS included secondary references relied upon in the IPRs and the Zhang '372 Patent (but not Zhang itself). With the IDS, the Patent Owner submitted a statement identifying the secondary references as relevant to the IPRs but omitted any mention of Zhang (the primary reference in the IPR) or how the Zhang '372 Patent might be relevant. *See* '362 Reexamination, IDS Transmittal Letter, June 18, 2024. This alone would be enough to obfuscate (at the very least) the relevance of the Zhang '372 Patent that was cited. But the letter went further, affirmatively attesting with respect to the IPRs:

> We are, herewith, submitting the petitions, declarations, and prior art asserted in the various grounds to the extent not already in the reexamination record and believe the information submitted to be the extent of the information that could be considered material to patentability. However, the identification of this information shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in 37 CFR 1.56(b). To the extent the Office believes any additional information would be helpful to consider, we can provide it upon request.

*Id.* at 3. Contrary to this statement, the Patent Owner does not specifically identify the Petitions, Declarations, or Zhang itself in the IDS, and the Petitioner does not see any such papers in the reexamination file wrapper.[3] In view of identifying some prior art as involved in the IPR, but not Zhang, and the failure to submit the IPR

---

[3] The entire certified file history of the Reexamination is not of record. The file wrapper on Patent Center does not make NPL documents available for viewing, and a certified file wrapper could not be obtained within the deadline for filing this response. But the public file wrapper does indicate that the number of NPLs filed on June 18, 2024 (9), is the same as the number of NPLs listed in the IDS, and no more. It appears that at least the Petition and Petitioner's Expert Declaration (Ex. 1002) were not submitted, since no NPLs listed approximate the page counts of those IPR documents. PO's Request also does not allege that those papers were submitted.

papers, the Examiner would have had no reason to believe that the cited Zhang '372 Patent was relevant to the IPRs and warranted closer scrutiny.

On September 30, 2024, the Patent Owner filed a response to a final office action, but still did not identify the relevance of Zhang to the Examiner.

On February 10, 2025, the Office issued a Notice of Intent to Issue a Reexam Certificate, which included the following reminder of the Patent Owner's duty of updating the Examiner of changes in related proceedings throughout the course of the reexamination proceedings:

> *Litigation Reminder*
>
> The patent owner is reminded of the continued responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP § 2207, 2282 and 2286.

'362 Reexamination, Notice of Intent to Issue a Reexam Certificate, February 10, 2025 at 5.

9

Even given this express notice of its duty of candor, the Patent Owner appears not to have cited Zhang or submitted the related IPR papers.[4]

This lack of filing of the IPR papers combined with the fact that the Zhang '372 Patent was only cited after the IPR had commenced, but without any indication that it was related to the IPR, raises the question of whether Patent Owner was attempting to thwart the IPR proceeding by "washing" the Zhang '372 Patent through the parallel '362 Reexamination.  Such potential gamesmanship should not be permitted.

**B.    Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong**

Patent Owner notes that the Examiner in the '362 Reexamination accepted Patent Owner's argument that the McNeely reference selected "ranges of frequencies containing the desired channels," which failed to disclose the claims of the '362 Patent. Request at 9-10.  McNeely has no relationship to Zhang and is not even part of the IPR record.  Yet, the Patent Owner now reasons that Zhang discloses a similar feature to that of McNeely, and thus similarly fails to disclose the claims. But the FWD did not find that Zhang disclosed selecting frequency ranges like in

---

[4] Petitioner was not the third party requester and thus had no role in the '362 Reexamination.

McNeely. Instead, the Board found that Zhang selected desired channels within a frequency range and did not select undesired channels. IPR2024-00432, Final Written Decision at 21-29. Thus, there was no contrary finding of fact for the Board to address.

Indeed, it is surprising Patent Owner is trying to draw parallels between Zhang and McNeely, given that it acknowledged at the oral hearing for the IPR, that "[t]here is no dispute that in both Zhang and the patent, an RF signal that has both desired and undesired channel[s] comes in and what's sent to demodulators are desired channels. Nobody is disputing that," and that "[t]he issue is not whether the black box 230-plus-240 is the digital circuitry. It is. The issue is not whether or not that overall circuitry selects channels. At some level, it does." IPR2024-00432, Final Written Decision at 22 (citing oral hearing transcript at 71:14–17, 134:3–5). As the Board found, these views of Patent Owner about Zhang were "highly probative" to the patentability of the '362 Patent claims. *Id.* Patent Owner's concession in the IPR that Zhang's system selects and outputs only desired channels does not square with its new assertion that Zhang merely selects frequency ranges (including desired and undesired channels), allegedly like McNeely.

## C.    The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution

Patent Owner also misleadingly argues that the Examiner "rejected" applying the Zhang '372 Patent during the prosecution of the related '275 Patent. Request at

11

11. Although the Zhang '372 Patent was cited in an IDS, the Examiner never mentioned it, much less distinguished it from the claims. Instead, the Notice of Allowance merely referred to another reference, "Claxton," and distinguished the '275 claims from Claxton's channelizer—not from Zhang's demultiplexer 230. US. App. No. 17/956,889, Notice of Allowance, August 28, 2023 at 2-3. Moreover, the Examiner for the '275 Patent erred by apparently attributing all the IDS materials, including the Zhang '372 Patent, as being cited for "other patents, i.e., US 8223,775 [*sic*]" involved in Entropic's litigations. *Id.* at 2. Thus, in direct contradiction to the Request (Request at 11), the Examiner for the '275 Patent never accepted Patent Owner's argument, in this proceeding, that Zhang does not "select" any channels.

## IV.    The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required

Even if the prior Office examinations are contorted to contrive some finding with respect to Zhang, the Board's FWD clearly articulates how Zhang discloses each and every limitation of the challenged claims, which necessarily satisfies the Memorandum's call for a detailed explanation why a different outcome is warranted. Significantly, Patent Owner's Request does not raise a single flaw in the merits of the Board's FWD (e.g., no claim construction error or misreading of Zhang) or assert a lack of substantial evidence for the Board's finding that Zhang teaches selecting desired channels. Patent Owner merely disagrees with the Board's ultimate finding of fact and holding without providing any support for its disagreement.

12

## V.    CONCLUSION

For the reasons above, Patent Owner has failed to identify (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law. The Request for Director Review should be denied. Alternatively, if the Director is minded to accept the Request, the Board's Final Written Decision should be affirmed because it correctly decides the issues before the Board and satisfies the Memorandum.

Dated:  November 13, 2025

By: /Frederic M. Meeker/

Frederic M. Meeker
Reg. No. 35,282
Banner & Witcoff, Ltd.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
(202) 824-3000
fmeeker@bannerwitcoff.com

*Attorney for Petitioner*
*Comcast Cable Communications,*
*LLC*

13

**CERTIFICATE OF SERVICE**

Pursuant to 37 C.F.R. §42.6(e)(4), the undersigned hereby certifies that the foregoing PETITIONER'S AUTHORIZED RESPONSE TO PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW was served electronically via e-mail on November 13, 2025 on the following counsel of record for Patent Owner:

JASON.ENGEL.PTAB@KLGATES.COM
WEATHERWAX@LOWENSTEINWEATHERWAX.COM
ENTROPIC_IPRS@LOWENSTEINWEATHERWAX.COM
ERIK.HALVERSON@KLGATES.COM
KYLE.KANTAREK@KLGATES.COM
NOLAN.HUBBARD@KLGATES.COM
MATTHEW.BLAIR@KLGATES.COM

Dated: November 13, 2025          By: /Anna Winslow/

                                  Anna Winslow

Director_PTABDecision_Review@uspto.gov                    Paper 48
571.272.7822                              Date:  January 26, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE OFFICE OF THE UNDER SECRETARY OF COMMERCE
FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

IPR2024-00432 (Patent 9,210,362 B2)
IPR2024-00435 (Patent 11,381,866 B2)
IPR2024-00438 (Patent 11,399,206 B2)[1]

Before JOHN A. SQUIRES, *Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

ORDER

---

[1] This order applies to each of the above-listed proceedings.

IPR2024-00432 (Patent 9,210,362 B2)
IPR2024-00435 (Patent 11,381,866 B2)
IPR2024-00438 (Patent 11,399,206 B2)

The Office received a request for Director Review of the Final Written Decision in each of the above-captioned cases and an authorized response to each request. *See* Papers 46, 47.[2]

Having considered the requests and responses, it is:

ORDERED that the requests for Director Review are denied.

---

[2] Citations are to the record in IPR2024-00432. The parties filed similar papers in IPR2024-00435 and IPR2024-00438.

IPR2024-00432 (Patent 9,210,362 B2)
IPR2024-00435 (Patent 11,381,866 B2)
IPR2024-00438 (Patent 11,399,206 B2)

FOR PETITIONER:

Frederic M. Meeker
Michael S. Cuviello
H. Wayne Porter
Paul T. Qualey
Joshua L. Davenport
Craig W. Kronenthal
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com
ckronenthal@bannerwitcoff.com

FOR PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
Matthew A. Blair
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com
nolan.hubbard@klgates.com
matthew.blair@klgates.com

Kenneth J. Weatherwax
Parham Hendifar
Nathan Lowenstein
Colette Woo
Kenneth Wang
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

IPR2024-00432 (Patent 9,210,362 B2)
IPR2024-00435 (Patent 11,381,866 B2)
IPR2024-00438 (Patent 11,399,206 B2)

woo@lowensteinweatherwax.com
wang@lowensteinweatherwax.com

No. 2026-1584

# IN THE
# UNITED STATES COURT OF APPEALS FOR
# THE FEDERAL CIRCUIT

## ENTROPIC COMMUNICATIONS, LLC,
*Appellant*,

v.

## COMCAST CABLE COMMUNICATIONS, LLC,
*Appellee*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, PATENT TRIAL AND APPEAL BOARD NO. IPR2024-00432

## CORRECTED NOTICE OF APPEAL

Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509
*Counsel for Patent Owner-Appellant*
*Entropic Communications, LLC*

March 30, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.
_____

Case IPR2024-00432
Patent 9,210,362
_____

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

via PTACTS
Patent Trial and Appeal Board

via E-Mail
Director
Office of the General Counsel
United States Patent and Trademark Office
efileSO@uspto.gov

via CM/ECF
United States Court of Appeals for the Federal Circuit

Pursuant to 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(c), 142, and 319; 37 C.F.R. §§ 90.2(a) and 90.3(a); and Federal Rule of Appellate Procedure 4(a), Patent Owner Entropic Communications, LLC hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Written Decision in IPR2024-00432 concerning U.S. Patent No. 9,210,362 ("the '362 Patent") (Paper 45, also attached hereto as Attachment A) entered October 6, 2025 by the Patent Trial and Appeal Board, and all other underlying and related findings, orders, decisions, rulings, opinions, or other determinations merged into that Decision.

For the limited purpose of providing the Director with the information requested in 37 C.F.R. § 90.2(a)(3)(ii), Patent Owner further indicates that the issues on appeal may include, but are not limited to:

(i)     The Board's judgment that claims 1-20 of the '362 patent are unpatentable, including any underlying questions of law or fact;

(ii)    Any other Board and/or Director finding, determination, judgment, or order on any issue decided adversely to Patent Owner;

(iii)   Whether the Board's decision violated the Administrative Procedure Act, including by departing from established USPTO procedure and the Board's and/or Director's practice without reasoned explanation, rendering the decision arbitrary and capricious.

Patent Owner is concurrently filing true and correct copies of this Notice of Appeal, along with the required fees, with the United States Court of Appeals for the Federal Circuit, and with the Patent Trial and Appeal Board.

Respectfully submitted,

/Parham Hendifar/
Parham Hendifar (Reg. No. 71,470)
hendifar@lowensteinweatherwax.com
Nathan Lowenstein, *pro hac vice*
lowenstein@lowensteinweatherwax.com
Kenneth J. Weatherwax (Reg. No. 54,528)
weatherwax@lowensteinweatherwax.com
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd.
Santa Monica, CA 90405
Tel: 310-307-4500

*Counsel for Patent Owner*

Date: March 24, 2026

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

| | |
|---|---|
| Frederic M. Meeker | fmeeker@bannerwitcoff.com |
| Michael S. Cuviello | mcuviello@bannerwitcoff.com |
| H. Wayne Porter | wporter@bannerwitcoff.com |
| Paul T. Qualey | pqualey@bannerwitcoff.com |
| Joshua L. Davenport | jdavenport@bannerwitcoff.com |
| | ComcastIPRService@bannerwitcoff.com |

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 24, 2026

## <u>CERTIFICATE OF FILING WITH USPTO</u>

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

Respectfully submitted,

/Abbie Neufeld /
Abbie Neufeld

Date:  March 24, 2026

## CERTIFICATE OF FILING WITH COURT OF APPEALS

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2, Fed. R. App. Proc. 15(a)(1), Fed. Cir. R. 15(a)(1) & 52, and Manual of Patent Examining Procedure 1216.01, the following document was electronically filed in Portable Document Format (PDF) with the United States Court of Appeals for the Federal Circuit, via electronic CM/ECF, accompanied by the requisite fee paid on pay.gov, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

Respectfully submitted,

/Parham Hendifar/
Parham Hendifar

Date:  March 24, 2026

# Attachment A

Trials@uspto.gov                                                    Paper 45
571-272-7822                                         Date: October 6, 2025

# UNITED STATES PATENT AND TRADEMARK OFFICE

———————

## BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

———————

IPR2024-00432
Patent 9,210,362 B2

———————

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

LANEY, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00432
Patent 9,210,362 B2

# I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–20 of U.S. Patent No. 9,210,362 B2 (Ex. 1001, "the '362 patent").  Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10).  Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition.  Paper 13 ("Inst. Dec.").  Thereafter, Patent Owner filed a Response (Paper 24, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 28, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 33, "PO Sur-reply").  On July 18, 2025, we conducted an oral hearing.  A copy of the transcript (Paper 42) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b).  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–20 of the '362 patent are unpatentable.

# II.    BACKGROUND

## A.  *Related Proceedings*

The parties identify various federal district court cases and petitions for *inter partes* review.  *See* Pet. viii–ix; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 22, 1 (Patent Owner's Third Updated Mandatory Notices).

## B.  *The '362 Patent*

The '362 patent, titled "Wideband Tuner Architecture," relates to "wideband receiver systems and methods having a wideband receiver that is capable of receiving multiple radio frequency channels located in a broad

2

IPR2024-00432
Patent 9,210,362 B2

radio frequency spectrum." Ex. 1001, code (54), 1:15–18.

The '362 patent states that "[r]eceivers used to down-convert and selectively filter TV channels are referred to as tuners, and tuners designed to concurrently receive several TV channels are referred to as wideband tuners." Ex. 1001, 1:24–27. The '362 patent notes that "[i]n certain applications such as DVR and picture-in-picture, the receiver system may have to concurrently receive several desired channels that may or may not be contiguous," and that "[t]he wideband receiver requirement poses a trade-off to the system to limit either the dynamic range of the wideband tuner or reduce the bandwidth covered by the tuner so that fewer channels may be received and processed by the demodulator." *Id.* at 1:38–45. According to the '362 patent, a wide bandwidth receiver may involve "very expensive digital processing circuitry such as very high-speed analog to digital conversion and high-speed processor in the demodulator." *Id.* at 2:20–23. The '362 patent states that "[i]t is desirable to have wideband receiver systems that can increase the dynamic range without requiring expensive data conversion, filtering and channel selection at the demodulator." *Id.* at 2:24–27.

Figure 2, reproduced below, shows "a schematic block diagram of a wideband receiver system 200." Ex. 1001, 4:16–17.

IPR2024-00432
Patent 9,210,362 B2



FIG. 2

As shown in Figure 2, "[w]ideband receiver system 200 includes a radio front end 210 and a digital front end 230." Ex. 1001, 4:18–19. The '362 patent states that "[r]adio front end 210 may be a single very wideband tuner receiver that captures the desired swath of channels located in non-contiguous portions of the spectrum having a frequency bandwidth BW1 120." *Id.* at 4:19–22. The '362 patent indicates that each of mixers 211 and 221 "multiplies (mixes) an amplified RF signal 203 with a respective first oscillator frequency signal 205 and a second oscillator frequency signal 207 to generate an in-phase signal 212 and a quadrature signal 222 that have a phase shift of 90° degree between them." *Id.* at 4:41–46. The '362 patent indicates further that "[i]n-phase signal 212 and quadrature signal 222 are further amplified and filtered by respective amplifiers V1 213, V2 223 and filters F1 215, F2 225 to generate a filtered in-phase signal 216 and a filtered quadrature signal 226." *Id.* at 4:64–67.

IPR2024-00432
Patent 9,210,362 B2

The '362 patent states that "ADC1 218 generates a digital signal I 232 that is a digital representation of the analog filtered signal 216; ADC2 228 generates a digital signal Q 242 that is a digital representation of the analog filtered signal 226." *Id.* at 5:28–31.

In addition, the '362 patent states that "[d]igital signals I 232 and Q 242 are . . . applied to a bank of N complex mixers 250," and "[e]ach of the N complex mixers 250 receives the digital signals I 232 and Q 242 from ADCs 218 and 228 to extract a different one of the desired channels and frequency-shifts the extracted signals to the baseband frequency." Ex. 1001, 5:31–32, 5:49–52. The '362 patent states further that "[e]ach of the frequency shifted desired channels 252 is filtered by an associated filter module (identified as 260a to 260n)." *Id.* at 5:52–54. The '362 patent states that in an embodiment, "each of the filtered signals 260a to 260n may be sent directly to an associated demodulator (identified as 270a to 270n) for extracting the original information transmitted in the associated desired channel," and that in another embodiment, "each of the filtered signals 262a to 262n is further decimated before providing to a demodulator." *Id.* at 5:55–60. The '362 patent further states that "baseband channels . . . sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface according to commonly known methods." *Id.* at 6:55–58.

### C. Illustrative Claim

Petitioner challenges claims 1–20 of the '362 patent. Claims 1 and 11 are independent. Claim 1 is reproduced below, which has been annotated using the same designations as the parties for each element.

IPR2024-00432
Patent 9,210,362 B2

[1A]  A method for receiving a television (TV) signal comprising:

[1B]  a mixer module configured to downconvert a plurality of frequencies that comprises a plurality of desired television channels and a plurality of undesired television channels;

[1C]  a wideband analog-to-digital converter (ADC) module configured to digitize said plurality of frequencies comprising said plurality of desired television channels and said plurality of undesired television channels;

[1D]  *digital circuitry configured to:*
*select said plurality of desired television channels from said digitized plurality of frequencies; and*
*output said selected plurality of television channels to a demodulator as a digital datastream.*

Ex. 1001, 11:52–65 (emphasis added to highlight the limitation at the center of the dispute between the parties).

### D. Asserted Grounds

Petitioner asserts the following eight grounds challenging the patentability of claims 1–20 in the '362 patent.  Pet. 18, 23–77.  We instituted *inter partes* review on each challenge.  Inst. Dec. 20.

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1–3, 8, 9, 11–13, 18, 19 | 102[1] | Zhang[2] |
| 1–3, 8, 9, 11–13, 18, 19 | 103(a) | Zhang |
| 2, 3, 12, 13 | 103(a) | Zhang, Panday[3] |

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013.  Because the application from which the '206 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007

IPR2024-00432
Patent 9,210,362 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 4–6, 14–16[4] | 103(a) | Zhang, Mirabbasi[5] |
| 7, 17 | 103(a) | Zhang, Mirabbasi, Karabinis[6] |
| 10, 20 | 103(a) | Zhang, Jensen[7] |
| 2, 3 | 103(a) | Zhang, Mirabbasi, Pandey |
| 10 | 103(a) | Zhang, Mirabbasi, Jensen |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009). Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III.   DISCUSSION

As shown in the asserted grounds table above, each of Petitioner's challenges to the patentability of claims 1–20 depends on Zhang, either alone or as combined with Pandey, Mirabbasi, Karabinis, and/or Jensen. *See* Pet. 18, 23–77. In all of the grounds, through independent claims 1 and 11, Petitioner relies exclusively on Zhang to disclose or suggest the recited elements of limitation 1D. *Id.* at 28–36, 42; *see also id.* 23–77. Rather than

---

(Ex. 1014).

[4] In the grounds chart Petitioner provides on page 18 of the Petition, Petitioner identifies claims 1–6, 8, 9, and 14–16 for this ground. But in the body of the Petition, at pages 48–60, Petitioner only addresses claims 4–6 and 14–16. Therefore, we view the grounds chart as having a typographical error.

[5] Mirabbasi et al., Classical and Modern Receiver Architectures, in IEEE Communications Magazine, 132–139, Nov. 2000 Vol. 38 No. 11 (Ex. 1018).

[6] Karabinis, U.S. Publ'n No. 2006/0233147 A1, published Oct. 19, 2006 (Ex. 1020).

[7] Jensen et al., U.S. Publ'n No. 2007/0027943 A1, published Feb. 1, 2007 (Ex. 1026).

IPR2024-00432
Patent 9,210,362 B2

addressing each of the asserted grounds individually, Patent Owner addresses all of the grounds collectively and only disputes whether Petitioner has demonstrated sufficiently that Zhang discloses or suggests limitation 1D in independent claim 1, which also applies to the corresponding limitation found in independent claim 11.  *See* PO Resp. 7–35; PO Sur-reply 2–28.  Notably, Patent Owner does not present any other arguments disputing Petitioner's contentions that Zhang, either alone or as combined with Pandey, Mirabbasi, Karabinis, and/or Jensen, show claims 1–20 are unpatentable.  *See id.*  For the reasons discussed below, Petitioner's contentions are persuasive and supported by a preponderance of the evidence.

### A.  Claim Construction

In an *inter partes* review proceeding, we construe a claim of a patent "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)."  *See* 37 C.F.R. § 42.100(b).  That standard involves construing claims in accordance with the ordinary and customary meaning of such claims as would have been understood by a person of ordinary skill in the art ("POSITA") and the prosecution history pertaining to the patent.  *See id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their ordinary and customary meaning to a POSITA."  Pet. 21.  Although Petitioner proposes corresponding structure for the term "digital circuitry" recited in claim 1, it does so only "[t]o the extent" that term "is construed to be a means-plus-function term under 35 U.S.C. 112, paragraph 6."  *Id.* at 22.  But Petitioner does not argue or suggest that "digital circuitry" *should be*

IPR2024-00432
Patent 9,210,362 B2

construed as a means-plus-function term; nor does Petitioner make an argument to overcome the presumption that 35 U.S.C. § 112, paragraph 6, does not apply. *See id.* Patent Owner does not address claim construction. *See generally* PO Resp. Because neither party actually argues "digital circuitry" is a means-plus-function term, the presumption holds and we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B. Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1–3, 8, 9, 11–13, 18, and 19 of the '362 patent are anticipated by Zhang. Pet. 23–42. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* As noted above, Patent Owner only disputes whether Zhang discloses or suggests the subject matter of limitation 1D. PO Resp. 1–35. As explained below, Petitioner has demonstrated by a preponderance of the evidence that claims 1–3, 8, 9, 11–13, 18, and 19 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, however, we first provide an overview of Zhang.

### 1. Overview of Zhang

Zhang relates to "digital multi-channel demodulation circuits." Ex. 1013, code (57). Zhang indicates these circuits may be employed in "advanced wide-band frontends for digital set-top boxes, PVRs, home gateways and home media centers." *Id.* ¶ 45. Zhang further teaches "a digital selector that receives . . . separate RF channels and selects one or more RF channels, and a plurality of demodulators that receive one or more of the RF channels from

IPR2024-00432
Patent 9,210,362 B2

the digital selector and demodulate one or more of the RF channels." *Id.*
¶ 11.

Figure 2, reproduced below, shows a "a simplified high-level block
diagram of an exemplary multi-channel demodulator 200." Ex. 1013 ¶ 23.



Fig. 2

As shown in Figure 2, demodulator 200 includes a "frequency-block down-
converter 210 [that] receives one or more multi-channel analog RF signals"
and "shifts the multi-channel analog RF signal to a lower frequency band."
*Id.* ¶¶ 23, 25. Demodulator 200 further includes an ADC 220 that "converts
the down-converted multi-channel analog RF signal to a multi-channel
digital RF signal." *Id.* ¶ 27. Demodulator 200 further includes a "digital
channel demultiplexer 230 [that] demultiplexes the multi-channel digital RF
signal into separate digital RF channels $C_1$ to $C_n$" and a "digital selector 240
[that] receives the demultiplexed digital RF channels $C_1$ to $C_n$, and then
selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the
digital RF channels $C_1$ to $C_n$." *Id.* ¶ 28. According to Zhang, "[t]he m
selected RF channels are then fed into respective demodulators 250(1),
250(2), . . . 250(m)." *Id.* ¶ 29.

Figure 3, reproduced below, shows a "simplified high-level schematic

10

IPR2024-00432
Patent 9,210,362 B2

diagram of a digital tuner 300, which . . . can be used to implement digital channel demultiplexer 230." Ex. 1013 ¶ 30.



Fig. 3

As shown in Figure 3, "[d]igital tuner 300 includes a bank of n numeric control oscillators (NCOs) 310(1 . . . n), complex multipliers 320(1 . . . n), and low-pass filters (LPFs) 330(1 . . . n)." Ex. 1013 ¶ 30. Zhang further discloses

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of a desired RF channel, or "target" RF channel. The output of NCO 310(1) is multiplied by all the RF channels received at complex multiplier 320(1). When [a] multi-channel RF signal is multiplied with the output of NCO 310(1), the frequency of target RF channel signal is shifted to a desired channel. In some embodiments of the present invention, the target RF channel is shifted to a baseband, i.e., centered at DC. LPFS 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes. Accordingly, separate RF channels exit digital tuner 300, i.e., the multi-channel RF signal is demultiplexed. Digital tuner circuit 300 then outputs the

IPR2024-00432
Patent 9,210,362 B2

> separated RF channels $C_1$ to $C_n$, each RF channel being
> centered at baseband.

*Id.* ¶ 32.

### 2.  Independent Claim 1

Claim 1 is directed to a "wideband receiver system" that has recited configurations for its "mixer module," "wideband analog-to-digital converter (ADC) module," and "digital circuitry."  Petitioner designates the preamble as limitation 1A and the configured components as limitations 1B through 1D, respectively.  We address these elements, starting with Petitioner's arguments and then turning to the parties' dispute.

### a.  Limitation 1A: "wideband receiver system"

Claim 1 recites as its preamble "[a] wideband receiver system." Petitioner asserts that "Zhang describes 'a wide-band receiver' for use in digital set-top boxes, PVRs, and home media centers," which is demonstrated by "Zhang's multi-channel demodulator 200 . . . [that] receives an RF signal in a frequency band that carries multiple RF channels, with each channel having data streams modulated on a carrier signal." Pet. 23 (citing Ex. 1013 ¶¶ 23, 24, 41–47, Figs. 2, 6–8; Ex. 1001, 1:24–27; Ex. 1002 ¶¶ 34, 98–100).

Patent Owner does not specifically dispute Petitioner's contentions regarding the preamble.  *See generally* PO Resp.  And even if the preamble is limiting, we are persuaded by Petitioner's argument and evidence that Zhang teaches the subject matter of the preamble.

### b.  Limitation 1B: "mixer module"

Claim 1 recites "a mixer module configured to downconvert a plurality of frequencies that comprises a plurality of desired television

12

IPR2024-00432
Patent 9,210,362 B2

channels and a plurality of undesired television channels." For this
component, Petitioner provides an annotated version of Figure 2 of Zhang,
which is reproduced below. Pet. 25.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-
channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang
discloses the claimed 'mixer module,' for example, frequency block down
converter 210 (**red**)," which "multiplies (i.e. mixes) an incoming RF signal
with a reference signal to downconvert the RF signal to a lower frequency
band." Pet. 25 (citing Ex. 1013 ¶ 25; Ex. 1002 ¶¶ 65–66, 101–102).
According to Petitioner, "[t]he RF signal includes multiple RF carrier signals
that each includes one or more TV content channels from a TV system." *Id.*
(quoting Ex. 1013 ¶¶ 5, 23–25, 29, 41, claims 13, 27–30, 33; Ex. 1002
¶¶ 103–104).

Patent Owner does not specifically dispute Petitioner's contentions
regarding claim element 1B. *See generally* PO Resp. Based on Petitioner's
argument and evidence, we find that Zhang teaches the recited mixer module
of limitation 1B.

13

IPR2024-00432
Patent 9,210,362 B2

### c. Limitation 1C: "wideband ADC module"

Claim 1 recites "a wideband analog-to-digital converter (ADC) module configured to digitize said plurality of frequencies comprising said plurality of desired television channels and said plurality of undesired television channels." For this component, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below. Pet. 27.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang discloses the claimed 'wideband analog-to-digital converter (ADC) module' as ADC 220 (gold)." Pet. 27 (citing Ex. 1002 ¶¶ 108–110). Petitioner contends that "ADC 220 receives the down-converted multi-channel analog RF signal including desired and undesired channels, and converts the 'entire signal band'" and that the "ADC is 'wideband' because it digitizes several channels within the frequency block concurrently." Pet. 27 (citing Ex. 1013, code (57) ¶¶ 10, 25, 27–28, 31–32, 34, 41–42, claims 1, 2, 4, 7, 28, 34, 36, 37; Ex. 1002 ¶¶ 108–109).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1C. *See* PO Resp. Based on Petitioner's arguments

14

IPR2024-00432
Patent 9,210,362 B2

and evidence, we find that Zhang teaches the recited wideband ADC module
of limitation 1C.

### d. Limitation 1D: "digital circuitry"

Claim 1 further recites:

> digital circuitry configured to: select said plurality of desired
> television channels from said digitized plurality of frequencies;
> and output said selected plurality of television channels to a
> demodulator as a digital datastream.

For this component, Petitioner provides yet another annotated version of
Figure 2 of Zhang, reproduced below.  Pet. 29.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-
channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner asserts that "Zhang
teaches the claimed 'digital circuitry' as Digital Channel Demultiplexer 230,
either alone, or in combination with all or part of Digital Selector 240
(**purple**)," which "are implemented with 'standard process CMOS,' a well-
known type of digital logic integrated circuit."  Pet. 28–29 (citing Ex. 1013
¶¶ 44, 48; Ex. 1016, pp. 17–19; Ex. 1002 ¶¶ 111–125).  Looking first to
Digital Channel Demultiplexer 230 alone, Petitioner asserts that "Digital
Channel Demultiplexer 230 receives the multi-channel digital RF signal

15

IPR2024-00432
Patent 9,210,362 B2

from ADC 220 and selects from this signal a number 'n' of desired channels C1 - Cn (**green**), each at a unique 'target' RF channel" and highlights that Zhang states that the "RF channels C1 to Cn contain content channels that are selected or used by a subscriber." *Id.* at 29 (citing Ex. 1013 ¶¶ 28, 30–32, 42, claims 1, 2, 10, 11, 13, 17, 21, 23, 27, 28, 30, 33, 34, 36–41, Figs. 2, 3; Ex. 1002, ¶¶ 113–114). Petitioner contends that "[e]ach of the desired channels is output by Digital Channel Demultiplexer 230 as a parallel digital data stream on parallel paths C1 to Cn (green) to 'one or more' shared demodulators 250(1)-250(m) via Bus Selector 240." *Id.* at 31 (citing 1013 ¶¶ 29, 32, Figs. 2, 3, claims 2–5, 9; Ex. 1001, 6:55–58, Fig. 2; Ex. 1002, ¶¶ 117–118, 121).

Petitioner asserts that "Zhang uses the same technique described in the '362 patent for selection and outputting of desired channels C1 – Cn" and provides annotated versions of Figure 3 from Zhang and Figure 2 from the '362 patent, reproduced below, to illustrate this point. Pet. 29.



Ex. 1013, Fig. 3 (annotated)        Ex. 1001, Fig. 2 (annotated)

The figure on the left is a simplified high-level schematic diagram of a digital tuner in accordance with Zhang's teachings (Ex. 1013 ¶ 17) and, on the right, is a schematic block diagram of a wideband receiver system in accordance with the '362 patent's teachings (Ex. 1001, 3:56–57). Petitioner represents that the technique illustrated by both figures for selecting desired

IPR2024-00432
Patent 9,210,362 B2

channels as follows: "first using a bank of complex mixers (purple) to frequency-shift a digitized version of the downconverted wideband signal so that each mixer outputs a different desired channel shifted to baseband (0 Hz), and then using low pass filters (green) to filter out the undesired channels so that only the desired channels remain. *Id.* at 29–30 (citing 1001, 2:51–55, 5:49–6:54, Fig. 2; Ex. 1013 ¶¶ 27, 30–32, Fig. 3; Ex. 1002 ¶¶ 113–116).

Turning to Digital Channel Demultiplexer 230 in combination with Digital Selector 240, Petitioner notes that "Digital Selector 240 selects channels $D_1$–$D_m$ (which comprise any or all of channels $C_1$–$C_n$) to output as a digital data stream to 'one or more' demodulators 250(1)–250(m)." Pet. 31 (citing Ex. 1013 ¶¶ 28, 29, 38, 39, 47, Fig. 3, claims 2–4; Ex. 1002 ¶ 119). Petitioner explains, "[f]or m=n, all of the selected channels are concurrently output to one or more demodulators, and for m<n, the user may output some or all n channels to the demodulator, just not concurrently," and "[b]y switching through the demultiplexed channels $C_1$–$C_n$ selected by the user, Digital Selector 240 provides the subscriber with fast channel search capabilities." *Id.* (citing Ex. 1013 ¶¶ 5, 28, 29, 38, 39, 47, claims 2–4, 9, 30–32; Ex. 1002 ¶ 119).

Patent Owner makes several arguments regarding claim element 1D, which we will address below.

### e. The Parties' Dispute

As noted above, Patent Owner disputes Petitioner's contentions regarding limitation 1D. Generally, Patent Owner's position is that "[t]hough both Zhang and the '362 patent involve a digitized RF input signal, and, ultimately, output desired RF channels, the method by which

17

IPR2024-00432
Patent 9,210,362 B2

they achieve this result is critically different." PO Resp. 3. That critical difference, according to Patent Owner, is that "the '362 patent *only* selects desired channels from the digitized input RF signal without selecting any undesired channels," whereas "Zhang blindly extracts *all* channels, *both* desired *and* undesired, from the digitized input RF signal, and only later selects the desired channels from the extracted channels." *Id.* at 3. Patent Owner cites Dr. Russ's declaration testimony that "Zhang digitizes an input signal . . . , consisting of 'n' desired and undesired channels, in the analog to digital converter 220," then "extracts from the digitized RF input signal *all* channels $C_1$–$C_n$ in the entire signal band, *both* desired *and* undesired, in the Digital Channel DeMux 230 . . . without making any selection," and then uses the selector 240 to "select[] the desired channels and output[] them to demodulators." *Id.* at 4–5 (quoting Ex. 2009 ¶¶ 33–35).

Patent Owner supports its position that demultiplexer 230 does not select the desired television channels from the digitized plurality of frequencies in two ways. First, Patent Owner indicates that Zhang teaches that "ADC 220 is a high-speed ADC so that an entire signal band with n channels can be converted" and, subsequently, demultiplexer 230 receives those converted n channels from the ADC 220 and demultiplexes them into channels $C_1$–$C_n$. PO Resp. 11–12 (Ex. 1013 ¶ 27; Ex. 2009 ¶ 41). Patent Owner contends that it is "undisputed" that "the number of channels 'n' includes both desired and undesired channels." *Id.* (citing Ex. 2018, 78:14–22). Patent Owner concludes, "because 'n' in Zhang denotes the total number of channels, both desired and undesired, the demultiplexed channels $C_1$ to $C_n$, therefore, also encompass all channels in the 'entire signal band,' both desired and undesired, without any 'selection' of desired channels." *Id.*

18

IPR2024-00432
Patent 9,210,362 B2

at 12 (citing Ex. 2009 ¶¶ 42–43). This conclusion is confirmed, according to Patent Owner, by Zhang's explanation "that after channels $C_1$–$C_n$ are extracted from the input RF signal, a module actually called a selector, an n×m *Selector* 240, selects the desired channel $D_1$–$D_m$ from the total channels $C_1$–$C_n$." *Id.* at 12–13 (citing Ex. 1013 ¶¶ 28, 39, 42).

The second way Patent Owner supports the assertion that demultiplexer 230 does not select the desired television channels is by referencing Zhang's prosecution history. *See* PO Resp. 15–16 (citing Ex. 2012, 2–3; Ex. 2009 ¶¶ 45–47). In particular, Patent Owner highlights that, during prosecution before the European Patent Office, Zhang distinguished prior art systems that "demodulate all of the RF channels" because the demodulator of the claimed invention only received selected digital RF channels from the selector. Ex. 2012, 2–3; *see also* PO Resp. 15–16 (Ex. 2009 ¶¶ 45–47). Patent Owner asserts that "Zhang's prosecution history further confirms its express disclosures in its specification that channels $C_1$–$C_n$ contain all channels, both desired and undesired, and that its Digital Channel Demultiplexer 230 does not perform any 'select[ion].'" PO Resp. 16.

Patent Owner argues that Petitioner's contentions are inconsistent with Zhang's disclosure, as well as being internally inconsistent. PO Resp. 16–29. Patent Owner asserts that Petitioner's contentions are inconsistent with Zhang's teaching that "the number of complex multipliers 320 (1…n) is the same number 'n' as the number of all channels, both desired and undesired, in the entire signal band." PO Resp. 17. Patent Owner asserts that Zhang's use of the phrase "target channel" in its discussion of its Figure 3 "is simply the specific one of the n channels (consisting of both

19

IPR2024-00432
Patent 9,210,362 B2

desired and undesired channels) that a particular mixer path is responsible for extracting." *Id.* at 19–20; *see also id.* at 20–22 (citing Ex. 2009 ¶¶ 54–57). And Patent Owner asserts that Petitioner's reliance on Zhang's statement that "RF channels $C_1$ to $C_n$ contain channels that are selected or used by a subscriber" is misplaced because "[t]hose portions of Zhang do not state that channels $C_1$ to $C_n$ contain 'only' desired channels." *Id.* at 25. Instead, Patent Owner posits, that representation in Zhang is properly understood as suggesting "channels $C_1$ to $C_n$ contain all potentially desirable channels from which actual desired channels D1 to Dm can be selected." *Id.* (citing Ex. 1013 ¶ 28; Ex. 2009 ¶ 60).

Patent Owner argues that Petitioner's contentions are internally inconsistent, "to the extent Petitioner's mapping relies on Zhang's channels $C_1$-$C_n$ as the claimed 'plurality of desired channels'" because "that mapping contradicts Petitioner's reliance on channels $D_1$-$D_m$ as 'the plurality of desired channels' output on data bus 1." PO Resp. 29 (citing Ex. 2009 ¶ 68). As Figure 5 of Zhang clearly illustrates, Patent Owner states, "what is 'output' on Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ . . . , not channels $C_1$–$C_n$." *Id.* at 28 (citing Ex. 2009 ¶ 67).

Lastly, Patent Owner argues that Petitioner's reliance on channels $D_1$–$D_m$ as the claimed "plurality of desired television channels" fails "because channels $D_1$–$D_m$ are not selected 'from' the same 'plurality of frequencies' down converted and digitized," as recited in limitations 1B and 1C. PO Resp. 29. Patent Owner emphasizes that limitation 1D "requires circuitry to select 'said plurality of desired television channels *from said digitized plurality of frequencies*,'" which refers to the "plurality of frequencies" that were downconverted and digitized in limitations 1B and

20

IPR2024-00432
Patent 9,210,362 B2

1C. *Id.* at 30. Patent Owner explains that because the digitized input signal received by digital channel demultiplexer 203 includes many frequency ranges that have been extracted and do not exist in channels $C_1$–$C_n$ of Zhang, "Channels $C_1$–$C_n$, from which channels $D_1$–$D_m$ are selected, are not the same 'plurality of frequencies' digitized by Zhang in its analog-digital converter 220 (which, in Zhang's implementation is the entire input)." *Id.* at 32–33 (citing Ex. 2009 ¶¶ 74–75). Patent Owner argues that "[i]f claim 1 of the '362 patent were read so broadly as to cover the selection of Zhang's channels $D_1$–$D_m$, then the language of the claim requiring that these channels be selected 'from the input signal' would be rendered superfluous." *Id.* at 34–35.

Petitioner counters that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently teach the recited desired channels. Pet. Reply 5. Regarding channels $C_1$–$C_n$, Petitioner contends Zhang does not mandate that $C_1$–$C_n$ include all channels. *Id.* at 5–6. Petitioner asserts "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." *Id.* at 6 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42). As to channels $D_1$–$D_m$, Petitioner reiterates the combination of demultiplexer 230 with all or part of the selector 240 comprise the "digital circuitry" that "selects the desired channels from the digitized plurality of frequencies," "$D_1$–$D_m$ are undisputedly the desired channels output by this circuitry," and the "input of this circuitry is undisputedly the digitized plurality of frequencies coming from the ADCs." *Id.* at 6. Patent Owner characterizes Petitioner's reply as "doubling down on the Petition's errors, continuing to inconsistently rely on both channels $C_1$–$C_n$ and $D_1$–$D_m$ as the claimed 'plurality of desired

21

IPR2024-00432
Patent 9,210,362 B2

television channels' that must be 'selected' by the claimed digital circuitry 'from said digitized plurality of frequencies.'"  PO Sur-reply 1.

After studying the full record created by the parties, we find Petitioner's evidence and reasoning supports persuasively that Zhang's digital channel demultiplexer 230, either alone or with digital selector 240, discloses to a skilled artisan the "digital circuitry" limitation 1D recites. Pet. 28–36; Pet. Reply 2–26.

Starting with the undisputed facts, digital channel demultiplexer 230 and digital selector 240 disclosed by Zhang is "digital circuitry," which is configured to receive a plurality of frequencies comprising a plurality of desired/undesired television channels from ADC 220 and to output the desired television channels to demodulators 250 as a digital datastream.  Tr. 71:14–17 (PO Counsel: "There is no dispute that in both Zhang and the patent, an RF signal that has both desired and undesired channel comes in and what's sent to demodulators are desired channels.  Nobody is disputing that."), 134:3–5 (PO Counsel: "The issue is not whether the black box 230-plus-240 is the digital circuitry.  It is.  The issue is not whether or not that overall circuitry selects channels.  At some level, it does.").  In other words, Zhang teaches digital circuitry that is (1) capable of receiving a plurality of frequencies including desired/undesired television channels and (2) capable of distinguishing between the desired/undesired channels to output the desired television channels to a demodulator.  We find these uncontested facts to be highly probative of Petitioner's contention that, to a skilled artisan, Zhang suggests that its digital circuitry is capable of selecting the desired television channels from a digitized plurality of frequencies that include both desired/undesired television channels.  This is because Zhang's

22

IPR2024-00432
Patent 9,210,362 B2

digital circuitry is able to take what is input originally as a digitized plurality of frequencies having both desired/undesired television channels and, using those frequencies, pick out the desired television channels that are subsequently output to a demodulator. Zhang teaches that "because *only the selected channels* are later demodulated" the disclosed digital circuitry is "much faster than traditional analog channel switching through RF tuners" and it "dissipates less heat because fewer resources are required when demodulating *only the selected RF channels*." Ex. 1013 ¶ 28 (emphasis added).

Turning now to the disputed evidence from Zhang, we are persuaded that the evidence favors more heavily Petitioner's contention that Zhang's digital channel demultiplexer 230, either alone or with digital selector 240, discloses to a skilled artisan the "digital circuitry" that limitation 1D recites. First, channel demultiplexer 230 alone, is described by Zhang as being able to demultiplex the multi-channel digital RF signal received from ADC 220 into separate digital RF channels $C_1$–$C_n$. Ex. 1013 ¶ 28. Zhang states expressly that those "RF channels $C_1$–$C_n$ contain content channels *that are selected or used by a subscriber*." *Id.* We agree with Petitioner that this evidence discloses, or at least strongly suggests, to a skilled artisan that the configuration of channel demultiplexer 230 allows it to pick out desired content channels from the multi-channel digital RF signal received from ADC 220 to generate RF channels $C_1$–$C_n$.

In addition, Zhang teaches an embodiment of channel demultiplexer 230 that generates RF channels $C_1$–$C_n$ by using a numerical oscillator (NOC) 310 to generate a "target" frequency "that matches the characteristics frequency of *a desired RF channel, or 'target' RF channel*" and by using a

23

IPR2024-00432
Patent 9,210,362 B2

low-pass filter (LPF) that "filters out all RF channels *except for its target RF channel*" so that "only the target RF channel passes." Ex. 1013 ¶ 32. Here, again, we agree with Petitioner that this evidence discloses, or at least strongly suggests, to a skilled artisan that the configuration of channel demultiplexer 230 allows it to pick out desired content channels from the multi-channel digital RF signal received from ADC 220 to generate RF channels $C_1$–$C_n$.

Patent Owner's contrary arguments do not significantly diminish the weight of Petitioner's evidence. The fact that Zhang describes ADC 220 as "a high-speed ADC so that an entire signal band with n channels can be converted" offers little, if any, support to the notion that Zhang's channel demultiplexer 230 only extracts indiscriminately all channels across the entire signal band. Although we agree with Patent Owner that the above description by Zhang of the ADC characterizes "n" as representing a variable number of channels that may be in an entire signal band, without any regard to whether the television channel is desired or undesired, we disagree with Patent Owner that this provides significant evidence that channel demultiplexer 230 only discloses indiscriminately generating RF channels $C_1$–$C_n$ without regard to whether the channel is a desired or undesired television channel. If Patent Owner were correct, it would not be necessary for Zhang to state, "RF channels $C_1$ to $C_n$ *contain content channels that are selected or used by a subscriber*" (Ex. 1013 ¶ 28 (emphasis added)) because a skilled artisan would recognize that to be the case already.

We disagree also with Patent Owner that Zhang's prosecution history provides significant evidence that channel demultiplexer 230

24

IPR2024-00432
Patent 9,210,362 B2

indiscriminately generates RF channels $C_1$–$C_n$ without regard to whether the channel is a desired or undesired television channel. *See* PO Resp. 15–16. Although the related prosecution history refers to the recited selector as allowing specific RF channels to be selected for demodulation (Ex. 1012, 2–3), when viewed in context, it is apparent that Zhang was distinguishing the prior art based on the recited claims outputting selected or desired RF channels to a demodulator rather than all of the desired and undesired channels. There is no indication Zhang is representing that RF channels $C_1$–$C_n$ necessarily include both desired and undesired channels. It may very well be the case that sometimes the RF channels $C_1$–$C_n$ include both desired and undesired channels, but that does not undermine Petitioner's evidence that Zhang also clearly teaches to a skilled artisan RF channels $C_1$–$C_n$ can also be content channels that are selected or used by a subscriber.

Further unavailing is Patent Owner's attempt to diminish the significance of Zhang's teaching that RF channels $C_1$–$C_n$ may be generated using NOC 310 to generate a "target" frequency "that matches the characteristics frequency of *a desired RF channel, or 'target' RF channel*" and a low-pass filter (LPF) that "filters out all RF channels *except for its target RF channel*" so that "only the target RF channel passes." Ex. 1013 ¶ 32. Patent Owner dismisses this clear teaching as simply "coincidental." PO Sur-reply 6. But we do not agree. Zhang expressly states "RF channels $C_1$ to $C_n$ *contain content channels that are selected or used by a subscriber*" (Ex. 1013 ¶ 28 (emphasis added)) and neither Patent Owner nor its declarant explains why a skilled artisan would "target" or "desire" an "undesired" channel when separating out the channels from the entire signal band to create RF channels $C_1$–$C_n$.

25

IPR2024-00432
Patent 9,210,362 B2

Finally, regarding the alleged inconsistencies caused by mapping Zhang's channels $C_1$-$C_n$ and, in the alternative, channels $D_1$-$D_m$ to the claimed "plurality of desired channels" because what is output on data bus 1 from selector 240 are RF channels $D_1$–$D_m$, not RF channels $C_1$–$C_n$ (PO Resp. 28), we are not convinced an actual inconsistency does exist because Zhang makes clear that RF channels $D_1$–$D_m$ "are from the RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 42; *see also id.* ¶ 28 ("selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$").  And as such, although Zhang refers to outputting RF channels $D_1$–$D_m$ on data bus 1, a skilled artisan would readily recognize that the output channels are the same as the selected RF channels $C_1$–$C_n$ (*see* Ex. 1081, 60:13–15 ("C1 is the exact same thing as D1. C2 is the exact same as D2. And so on an so forth.").  Accordingly, Petitioner's reliance on RF channels $C_1$–$C_n$ as the recited desired channels is persuasive.

As to Petitioner's theory that channels $D_1$–$D_m$ teach the recited desired channels, we consider Figures 2, 3, and 5 of Zhang, which show selector 240 selects channels $D_1$ to $D_m$ (e.g., desired channels) from channels $C_1$ to $C_n$ and provides selected channels $D_1$ to $D_m$ via a serial interface in selector 240 (e.g., selector 500).  Ex. 1013, Figs. 2, 3, 5.  Patent Owner acknowledges Zhang teaches that "[t]he output channels $C_1$–$C_n$ of the digital channel demultiplexer 230 . . . is then fed into the selector 240 . . . , which selects channels $D_1$–$D_m$ from the input channels $C_1$–$C_n$."  PO Resp. 32 (citing Ex. 2009 ¶¶ 74–75; Ex. 1013 ¶ 28).  Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

IPR2024-00432
Patent 9,210,362 B2

Patent Owner further argues that, "[t]o the extent Petitioner relies on channels $D_1$–$D_m$ as the claimed 'plurality of desired channels,' that reliance also fails to disclose or render obvious the claims because channels $D_1$–$D_m$ are not selected 'from' the same 'plurality of frequencies'" that Petitioner relies on for limitations 1B and 1C. PO Resp. 29; *see also id.* at 29–35.

Petitioner counters that "the digital circuitry [for performing step 1D] is demultiplexer 230, in combination with all or part of selector 240," which means "the input to the relied-upon digital circuitry (i.e., the input to demultiplexer 230) is the digitized plurality of frequencies output by the ADCs, *not* the individual channels $C_1$–$C_n$" and "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the desired channels." Pet. Reply 8. According to Petitioner, "[i]t necessarily follows that the relied-upon digital circuitry is selecting the desired channels ($D_1$–$D_m$) 'from the digitized plurality of frequencies.'" *Id.* To illustrate, Petitioner provides a figure based on Figures 2, 3, and 5 of Zhang, reproduced below. *Id.* at 10.



27

IPR2024-00432
Patent 9,210,362 B2

Petitioner's figure combines annotated versions of Figures 2, 3, and 5 of Zhang. *Id.* As discussed above, Figure 2 of Zhang shows multi-channel demodulator 200 with demultiplexer 230 and selector 240; Figure 3 of Zhang shows digital tuner 300 that can be used to implement demultiplexer 230; and Figure 5 of Zhang shows selector 500 that can be used to implement digital selector 240. Ex. 1013 ¶¶ 23, 30, 38. Petitioner asserts that its composite figure shows "the input to the relied-upon digital circuitry (coming from the bottom left side of the figure) is not the individual channels $C_1$–$C_n$ output by demultiplexer 230, but rather the recited digitized plurality of frequencies." Pet. Reply 9.

We agree with Petitioner. Limitation 1D recites "select said plurality of desired television channels from said digitized plurality of frequencies." Petitioner contends Zhang's demultiplexer 230 and selector 240 *together* perform the step of claim element 1D. Petitioner identifies the signal provided by Zhang's ADC 220 as the recited digitized plurality of frequencies and Zhang's channels $D_1$–$D_m$ as the recited digitized plurality of frequencies. Pet. 29, 31–32. As Petitioner's composite figure shows, channels $D_1$–$D_m$ are selected from the signal provided by ADC 220. Pet. Reply 9; *see also* Ex. 1013, Figs. 2, 3, 5.

Patent Owner contends that Zhang's channels $D_1$–$D_m$ are selected from channels $C_1$–$C_n$ and *not* the plurality of frequencies provided by ADC 220. PO Resp. 29. But channels $D_1$–$D_m$ are based on channels $C_1$–$C_n$, which are based on the signal provided by ADC 220. It, therefore, necessarily follows that channels $D_1$–$D_m$ also are based on the same plurality of frequencies provided by ADC 220. In other words, the channels $D_1$–$D_m$, which are picked from channels $C_1$–$C_n$, are the same channels in both

28

IPR2024-00432
Patent 9,210,362 B2

groups, and Patent Owner does not dispute channels $C_1$–$C_n$ are based on the plurality of frequencies provided by ADC 220.  Petitioner correctly contends, "[n]othing in the claim language prevents the recited selection from being performed by a digital multiplexer 230 that selects individual channels from the incoming wideband digitized signal in combination with a digital selector 240 that passes certain of those signals along to a demodulator."  Pet. Reply 9.  This understanding is consistent with the stated objective of the '362 patent because channel selection at the demodulator is still avoided.  *See* Ex. 1001, 2:24–27 ("It is desirable to have wideband receiver systems that can increase the dynamic range without requiring . . . channel selection at the demodulator").

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3.  Independent Claim 11

Claim 11 is directed to a "method" and recites "the required functionality . . . performed by identical structural elements" in claim 1.  Pet. 42.  Thus, according to Petitioner, "claim 11 is directed to substantially identical subject matter as claim 1 and is anticipated and rendered obvious by Zhang for the same reasons discussed above with respect to claim 1."  *Id.* Patent Owner agrees that "[i]ndependent claim 11 recites corresponding method steps to claim 1."  PO Resp. 1; *see id.* at 7, 8 n.2.

Therefore, based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited elements of claim 11.

29

IPR2024-00432
Patent 9,210,362 B2

### 4. Dependent Claims

Each of claims 2, 3, 8, 9, 12, 13, 18, and 19 depends from either independent claim 1 or 11. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 36–42 (citing Ex. 1013 ¶¶ 29–34, 38–39, Figs. 2, 3, 5, claims 21, 22, 37–40). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 75–77, 126–140, 152–157).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 36–42), we find that Zhang teaches the limitations of the dependent claims.

### 5. Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1–3, 8, 9, 11–13, 18, and 19 are anticipated by Zhang or would have been obvious in view of Zhang.

### C. Asserted Challenge Based on Zhang and Pandey

Each of claims 2, 3, 12, and 13 of the '362 patent depends from either independent claim 1 or 11. Petitioner asserts that these dependent claims would have been obvious over Zhang and Pandey. Pet. 43–47. Petitioner relies on Pandey for teaching "specific serial and parallel interfaces when implementing a digital circuit design (e.g., such as Zhang's digital circuitry) on a FGPA or ASIC chip" and contends that "[i]t would have been obvious to apply Pandey's dedicated (i.e., parallel) and/or time-multiplexed (i.e., serial) interconnection to the interconnection between Zhang's demultiplexer 230, digital selector 240, and/or demodulators 250" to optimize the real

30

IPR2024-00432
Patent 9,210,362 B2

estate needed for implementing the digital portion of Zhang on a single chip. *Id.* at 43–46 (citing Ex. 1013 ¶¶ 29, 37–39, 44, 47–48; Ex. 1014, code (57), 1:15–2:12, 2:4–12, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:5, 11:6–19, 13:33–14:7, 29:44–3:9, 30:31–31:15, 31:15–22, 31:56–63, 32:12–15, Fig. 37–39; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7).  Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 126–136, 159–166).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 2, 3, 12, and 13.  *See* PO Resp.  Having reviewed Petitioner's argument and evidence (*see* Pet. 43–47), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2, 3, 12, and 13 would have been obvious over Zhang and Pandey.

### D. Asserted Challenge Based on Zhang and Mirabbasi

Each of claims 4–6 and 14–16 depend from either independent claim 1 or 11.  Petitioner asserts that "it would have been obvious to implement Zhang's converter 210, ADC 220 and digital multiplexer 230 using the well-known structures in Mirabbasi to teach and render obvious claims 4–6 and 14–16." Pet. 50.  Petitioner relies on Mirabbasi for teaching various ways known to configure wideband ADC converters, mixer modules, and complex mixers, which Petitioner asserts can be incorporated into Zhang's system to

31

IPR2024-00432
Patent 9,210,362 B2

provide a way to implement and improve Zhang's wideband receiver system. *Id.* at 49–60 (citing Ex. 1013 ¶¶ 5, 12, 23–32, 41, 48, Figs. 2, 3, claims 13, 27, 33; Ex. 1018, 4–11, 137–138, Figs. 1, 2, 3, 10; Ex. 1025, pp. 272, 274–275, 279–280; Ex. 1034, 35–36, 54–63, Fig. 3.29a, 3.3; Ex. 1001, 4:42–43, 6:7–27, 9:17–22, Fig. 3). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 66, 167–190).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 4–6 and 14–16. *See generally* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 49–60), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Mirabbasi teaches the limitations of theses dependent claims and that Petitioner's proffered reasoning for combining Zhang and Mirabbasi support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 4–6 and 14–16 would have been obvious over Zhang and Mirabbasi.

*E. Asserted Challenge Based on Zhang, Mirabbasi, and Karabinis*

Claim 7 depends from independent claim 1 via dependent claims 5 and 6; claim 17 depends from independent claim 11 via dependent claims 15 and 16. Petitioner asserts that dependent claims 7 and 17 would have been obvious over Zhang, Mirabbasi, and Karabinis. Pet. 60–68. Petitioner relies on Karabinis to teach a known way for outputting Zhang-Mirabbasi's desired channels for demodulation, "which is to shift the frequencies of the desired channels (e.g., D1-Dm) into a contiguous frequency band 422 (the claimed 'continuous frequency spectrum') using a plurality of frequency

32

IPR2024-00432
Patent 9,210,362 B2

translators 420, and summing the shifted channels with a summer." *Id.* at 65–66 (citing Ex. 1020 ¶¶ 17, 18, 42–44, 49, Figs. 4, 5, 7, claims 8, 9, 27, 28; Ex. 1002 ¶ 200).  Petitioner contends that a skilled artisan would have considered it obvious to modify the Zhang-Mirabbasi receiver according to Karabinis to output the desired channels in a contiguous frequency spectrum because Karabinis was a known option to provide the channels for demodulation and permit the benefit of receiving all of the desired channels simultaneously over a single bus.  *Id.* at 66–67 (citing Ex. 1002 ¶ 201).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 7 and 17.  *See generally* PO Resp.  Having reviewed Petitioner's argument and evidence (*see* Pet. 60–68), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Mirabbasi, we find that Petitioner's proposed combination of Zhang, Mirabbasi, and Karabinis teaches the limitations of dependent claims 7 and 17 and that Petitioner's proffered reasoning for combining Zhang, Mirabbasi, and Karabinis support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 7 and 17 would have been obvious over Zhang, Mirabbasi, and Karabinis.

*F.  Asserted Challenge Based on Zhang and Jensen*

Each of claims 10 and 20 depend from either independent claim 1 or 11.  Petitioner asserts that, in view of Jensen's teachings, it would have been obvious to a skilled artisan to "included a decimator circuit in the Zhang's Channel Demultiplexer 230 or Digital Selector 240, either as a separate component following the low pass filters 330 or as part of the filters themselves (e.g., using channel-select decimation filters as low pass filters

33

IPR2024-00432
Patent 9,210,362 B2

330), to reduce the sampled data of the digital signals and thereby reduce power consumption and/or complexity in subsequent processing (e.g., in demodulators 250)." Pet. 71 (citing Ex. 1013 ¶¶ 29–32, Fig. 3; Ex. 1026 ¶ 7; Ex. 1002 ¶ 209). Petitioner relies on Jensen to teach decimation "was commonly performed to reduce a sampling rate of a digital signal." *Id.* at 69 (citing Ex. 1026 ¶¶ 7, 27; Ex. 1002 ¶ 206).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 10 and 20. *See generally* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 68–72), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jensen teaches the limitations of dependent claims 10 and 20, as well as, Petitioner's proffered reasoning for combining Zhang and Jensen support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 10 and 20 would have been obvious over Zhang and Jensen.

## G. Remaining Grounds

Petitioner's remaining grounds (i.e., claims 2 and 3 are obvious in view of Zhang, Mirabbasi, and Pandey; claim 10 is obvious in view of Zhang, Mirabbasi, and Jensen) are contingent upon the term "digital circuitry" being construed as means-plus-function limitation. *See* Pet. 72. However, neither party actually argues that 35 U.S.C. § 112, paragraph 6, applies to that term, moreover, neither party attempts to overcome the presumption that the term is not a means-plus-function limitation. The term

34

IPR2024-00432
Patent 9,210,362 B2

"digital circuitry," therefore, has not been construed as such.  As a result,

Petitioner's remaining grounds are moot.

## IV.  CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance

of the evidence that claims 1–20 of the '362 patent are unpatentable as

follows.

| Claim(s) | 35 U.S.C. § | Reference(s)/ Basis | Claim(s) Shown Unpatentable | Claim(s) Not Shown Unpatentable |
|---|---|---|---|---|
| 1–3, 8, 9, 11–13, 18, 19 | 102 | Zhang | 1–3, 8, 9, 11–13, 18, 19 | |
| 1–3, 8, 9, 11–13, 18, 19 | 103(a) | Zhang | 1–3, 8, 9, 11–13, 18, 19 | |
| 2, 3, 12, 13 | 103(a) | Zhang, Pandey | 2, 3, 12, 13 | |
| 4–6, 14–16 | 103(a) | Zhang, Mirabbasi | 4–6, 14–16 | |
| 7, 17 | 103(a) | Zhang, Mirabbasi, Karabinis | 7, 17 | |
| 10, 20 | 103(a) | Zhang, Jensen | 10, 20 | |
| 2, 3[8] | 103(a) | Zhang, Mirabbasi, Pandey | | |
| 10[9] | 103(a) | Zhang, Mirabbasi, Jensen | | |
| **Overall Outcome** | | | 1–20 | |

[8] This ground has been rendered moot because the term "digital circuitry" has not been shown to be a means-plus-function limitation.
[9] This ground has been rendered moot because the term "digital circuitry" has not been shown to be a means-plus-function limitation.

35

IPR2024-00432
Patent 9,210,362 B2

## V.  ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–20 of the '362 patent have been shown to be unpatentable[10]; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

---

[10] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019).  If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

36

IPR2024-00432
Patent 9,210,362 B2

FOR PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com

FOR PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com
nolan.hubbard@klgates.com

Kenneth J. Weatherwax
Parham Hendifar
Nathan Lowenstein
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

# **CERTIFICATE OF SERVICE**

I certify that counsel for the parties have been served with a true and correct

copy of the foregoing document via the Court's CM/ECF system on March 30, 2026.

Date: March 30, 2026                                          /s/ *Parham Hendifar*
                                                             Parham Hendifar
                                                             *Counsel for Patent Owner-Appellant*
                                                             *Entropic Communications, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S CORRECTED NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

Frederic M. Meeker       fmeeker@bannerwitcoff.com
Michael S. Cuviello      mcuviello@bannerwitcoff.com
H. Wayne Porter        wporter@bannerwitcoff.com
Paul T. Qualey          pqualey@bannerwitcoff.com
Joshua L. Davenport     jdavenport@bannerwitcoff.com
                        ComcastIPRService@bannerwitcoff.com

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 30, 2026

1

## CERTIFICATE OF FILING WITH USPTO

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

### PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S CORRECTED NOTICE OF APPEAL

Respectfully submitted,

/Abbie Neufeld /
Abbie Neufeld

Date:  March 30, 2026

Trials@uspto.gov                                                                    Paper 45
571-272-7822                                                    Date: September 29, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.
————————

IPR2024-00435
Patent 11,381,866 B2
————————

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

WORMMEESTER, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00435
Patent 11,381,866 B2

# I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–82 of U.S. Patent No. 11,381,866 B2 (Ex. 1001, "the '866 patent"). Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10). Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition. Paper 13 ("Inst. Dec."). Thereafter, Patent Owner filed a Response (Paper 23, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 28, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 33, "PO Sur-reply"). On July 18, 2025, we conducted an oral hearing. A copy of the transcript (Paper 42) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b). This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a). For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–82 of the '866 patent are unpatentable.

# II.    BACKGROUND

## A. *Related Proceedings*

The parties identify various federal district court cases and petitions for *inter partes* review. *See* Pet. vii–viii; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 27, 1–2 (Patent Owner's Third Updated Mandatory Notices).

IPR2024-00435
Patent 11,381,866 B2

### B. The '866 Patent

The '866 patent describes "wideband receiver systems that are capable of receiving multiple desired television channels that extend over multiple non-contiguous portions of the broad frequency spectrum and grouping them into a contiguous, or substantially-contiguous, frequency spectrum." Ex. 1001, 1:29–34. To illustrate one embodiment, Figure 2 of the '866 patent is reproduced below.



Figure 2 is a block diagram of wideband receiver system 200 that includes radio front end 210, analog-to-digital convertors 218 (ADC1) and 228 (ADC2), and digital front end 230. *Id.* at 4:35–38, 5:33–35, Fig. 2. System 200 receives and processes channels 110, which are located in a radio frequency (RF) spectrum with frequency bandwidth 120 (BW1). *Id.* at 2:13–15, 4:38–42. There are ten available channels in bandwidth 120,

IPR2024-00435
Patent 11,381,866 B2

where each channel occupies 8 MHz of bandwidth for a total of 80 MHz. *Id.* at 4:42–45. Of these available channels, there are four desired channels with respective carrier frequencies $f_{rf1}$, $f_{rf2}$, $f_{rf3}$, and $f_{rf4}$ that are located in noncontiguous portions of bandwidth 120. *Id.* at 4:47–51.

Radio front end 210 is a wideband tuner receiver that includes low noise amplifier 202 (LNA), mixers 211 (M1) and 221 (M2), amplifiers 213 (V1) and 223 (V2), as well as filters 215 (F1) and 225 (F2). Ex. 1001, 4:38–5:32. Digital front end 230 includes N complex mixers 250, where N is the number of desired channels located in the noncontiguous portions of bandwidth 120. *Id.* at 5:51–55, Fig. 2. In Figure 2, N represents four desired RF channels. *Id.* at 5:63–65. Digital front end 230 also includes filter modules 260a–260n and demodulators 270a–270n. *Id.* at 6:6–12, Fig. 2.

In operation, radio front end 210's low noise amplifier 202 receives RF input signal 102, which includes the four desired RF channels. Ex. 1001, 4:45–51. Mixers 211 and 221 multiply (mix) amplified RF signal 203 with respective first oscillator frequency signal 205 and second oscillator frequency signal 207 to generate in-phase signal 212 and quadrature signal 222, which have a phase shift of ninety degrees between them. *Id.* at 4:61–66. Signals 212 and 222 are further amplified by respective amplifiers 213 and 223 to generate signals 214 and 224, which are then filtered by respective filters 215 and 225 to generate filtered in-phase signal 216 and filtered quadrature signal 226. *Id.* at 5:17–20, Fig. 2.

After being processed in radio front end 210, filtered signals 216 and 226 are digitized for further processing in digital front end 230. Ex. 1001, 5:20–24. ADC1 218 generates digital in-phase signal 232 (I), which is a

4

IPR2024-00435
Patent 11,381,866 B2

digital representation of analog filtered signal 216, and ADC2 228 generates digital quadrature signal 242 (Q), which is a digital representation of analog filtered signal 226. *Id.* at 5:48–51.

In digital front end 230, each complex mixer 250 receives digital signals 232 and 242 from ADC1 218 and ADC2 228 to extract a different desired channel, and then frequency-shifts (downshifts) the extracted signal to the baseband frequency. Ex. 1001, 6:3–6, 6:53–56. Frequency-shifted channels 252a–252n are filtered by associated filter modules 260a–260n. *Id.* at 6:6–8. Next, filtered channels 262a–262n are decimated and sent to associated demodulators 270a–270n that extract the original information transmitted in each desired channel. *Id.* at 6:8–14. The decimated baseband channels may be sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface. *Id.* at 7:10–14, Fig. 2.

According to the '866 patent, its approach "eliminates the need of expensive data conversion, filtering and channel selection on the demodulator side," and "removes undesired channels from the signal path at an early stage, thus reliev[ing] the large dynamic range requirement in the demodulator." Ex. 1001, 7:14–19.

### C. Illustrative Claims

Petitioner challenges claims 1–82 of the '866 patent. Claims 1, 14, 27, 41, 55, and 69 are independent. Claims 1 and 14 are reproduced below.

1. A cable television (TV) device comprising:

   a wideband analog-to-digital converter (ADC) configured to digitize a contiguous band of frequencies in an input signal, wherein the contiguous band of frequencies comprises a plurality of desired channels and a plurality of undesired channels; and

IPR2024-00435
Patent 11,381,866 B2

a digital frontend (DFE) coupled to the wideband ADC, wherein the DFE is configured to concurrently select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels.

14. A cable TV device comprising:

a wideband analog-to-digital converter (ADC) configured to digitize an input signal, wherein the input signal comprises a plurality of desired channels and a plurality of undesired channels; and

a plurality of digital down converters coupled to the wideband ADC, wherein each digital down converter, of the plurality of digital down converters, is operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels, and wherein the plurality of digital down converters is operable to provide each digital channel output via serial interface.

Ex. 1001, 12:15–25, 13:11–24.

*D. Asserted Challenges to Unpatentability*

Petitioner asserts the following eight challenges to claims 1–82 of the '866 patent. Pet. 10–12, 19–80. We instituted *inter partes* review on each challenge. Inst. Dec. 31–32.

6

IPR2024-00435
Patent 11,381,866 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 102[1] | Zhang[2] |
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 103(a) | Zhang |
| 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | 103(a) | Zhang, Reisman[3] |
| 2–6, 15–19, 28–32, 42–46 | 103(a) | Zhang, Jackson[4] |
| 28–32, 42–46, 56–60, 70–74 | 103(a) | Zhang, Reisman, Jackson |
| 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | 103(a) | Zhang, Pandey[5] |
| 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | 103(a) | Zhang, Reisman, Pandey |
| 2–6, 15–19 | 103(a) | Zhang, Pandey, Jackson |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009).

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013. Because the application from which the '866 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Reisman, U.S. Publ'n No. 2003/0229900 A1, published Dec. 11, 2003 (Ex. 1052).

[4] Jackson et al., U.S. Publ'n No. 2009/0113504 A1, published Apr. 30, 2009 (Ex. 1057).

[5] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007 (Ex. 1014).

IPR2024-00435
Patent 11,381,866 B2

Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III. DISCUSSION

### A. Claim Construction

In an *inter partes* review proceeding, we construe a claim of a patent "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." *See* 37 C.F.R. § 42.100(b). That standard involves construing claims in accordance with the ordinary and customary meaning of such claims as would have been understood by a person of ordinary skill in the art ("POSITA") and the prosecution history pertaining to the patent. *See id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their ordinary and customary meaning to a POSITA." Pet. 16. Patent Owner does not respond. *See* PO Resp. For purposes of this Decision, we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B. Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 of the '866 patent are anticipated by Zhang. Pet. 19–49. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 4–45. For the reasons explained

8

IPR2024-00435
Patent 11,381,866 B2

below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, we provide an overview of Zhang.

### 1. Overview of Zhang

Zhang describes demodulator circuits in broadband communications. Ex. 1013 ¶ 4. To illustrate one embodiment, Figure 2 of Zhang is reproduced below.



Fig. 2

Figure 2 is a diagram of multi-channel demodulator 200. *Id.* ¶ 23. Frequency-block down-converter 210 receives a multi-channel analog RF signal that can come from any of various sources such as satellite systems, terrestrial TV systems, and cable systems. *Id.* Down-converter 210 downshifts the multi-channel analog RF signal to a lower frequency band. *Id.* ¶ 25. Analog-to-digital converter 220 then converts the down-converted multi-channel analog RF signal to a multi-channel digital RF signal. *Id.*

9

IPR2024-00435
Patent 11,381,866 B2

¶ 27. Digital channel demultiplexer 230 demultiplexes the digital RF signal into separate digital RF channels $C_1$ to $C_n$. *Id.* ¶ 28. Digital selector 240 receives the demultiplexed digital RF channels and selects one or more of RF channels $D_1$ to $D_m$ from one or more of digital RF channels $C_1$ to $C_n$. *Id.* The m selected RF channels are fed into respective demodulators 250(1) to 250(m), where they are demodulated. *Id.* ¶ 29. The selected RF channels $D_1$ to $D_m$ then feed into digital transport interface 260. *Id.*

We turn now to the claims, starting with independent claims 1, 14, 27, and 41.

### 2. Independent Claim 1

Claim 1 is directed to a "cable television (TV) device" comprising a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." Petitioner designates the preamble as element 1A and the recited limitations as elements 1B and 1C. We address these elements, beginning with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 1A: "cable television (TV) device"

Claim 1 recites as its preamble "[a] cable television (TV) device." Petitioner asserts that "Zhang describes an RF receiver, for example in a [set-top box], receiving digital video channels over a cable system and having DOCSIS return channel, which the '866 patent concedes is a protocol for 'cable networks that carry TV programs.'" Pet. 20 (citing Ex. 1013 ¶¶ 5–6, 23–25, 29, 41, 45–47; Ex. 1001, 9:4–8).

Patent Owner does not specifically dispute Petitioner's contentions regarding the preamble. *See* PO Resp. Although we do not determine

10

IPR2024-00435
Patent 11,381,866 B2

whether the preamble is limiting, we are persuaded by Petitioner's argument and evidence that Zhang teaches the subject matter of the preamble.

### b. Element 1B: "wideband analog-to-digital converter (ADC)"

Claim 1 further recites "a wideband analog-to-digital converter (ADC) configured to digitize a contiguous band of frequencies in an input signal, wherein the contiguous band of frequencies comprises a plurality of desired channels and a plurality of undesired channels." For this limitation, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below. Pet. 21.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner contends "Zhang discloses the claimed 'wideband analog-to-digital converter' as ADC 220 (**gold**), which digitizes a multi-channel analog RF signal received from Frequency Block Downconverter 210 (**red**)." Pet. 21 (citing Ex. 1013, code (57), ¶¶ 10, 25, 27, 31, 34, 44–45).

Petitioner further contends "Zhang's ADC is wideband because the digitized multi-channel RF signal includes several channels," and "the

11

IPR2024-00435
Patent 11,381,866 B2

channels form a contiguous band of frequencies because (like the '866 patent) they are spaced next to each other within a frequency band with a precise frequency spacing (e.g., 6 MHz) that is a fraction of the multi-channel RF signal bandwidth (e.g., 540–750 MHz divided into 35 channels)." Pet. 21–22 (citing Ex. 1001, 1:24–27, 2:50–59; Ex. 1013 ¶¶ 6, 10, 24–25, 27, 41–42, 47). Petitioner adds, "Zhang further discloses that in alternate variations, 'RF channels need not be contiguous,' teaching that in the embodiments otherwise described, the RF channels are contiguous." *Id.* at 22 (quoting Ex. 1013 ¶ 48).

Lastly, Petitioner contends "[t]he digitized multi-channel RF signal includes target RF channels that are selected and demodulated in subsequent stages (claimed 'desired channels'), and undesired RF channels that are filtered out (claimed 'undesired channels')." Pet. 22 (citing Ex. 1013 ¶¶ 5, 10–12, 27–29, 31–32, 35–36, 41–42).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1B. *See* PO Resp. Nonetheless, the burden remains on Petitioner to demonstrate unpatentability. *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Based on Petitioner's argument and evidence, we find that Zhang teaches the recited wideband analog-to-digital converter of claim element 1B. *See* Pet. 21–22.

### c.  Element 1C: "digital frontend (DFE)"

Claim 1 further recites "a digital frontend (DFE) coupled to the wideband ADC, wherein the DFE is configured to concurrently select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels." For this

12

IPR2024-00435
Patent 11,381,866 B2

limitation, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below.  Pet. 23.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner contends "Zhang teaches the claimed 'digital frontend (DFE)' as Digital Channel Demultiplexer 230 and a portion of Digital Selector 240 (**purple**) . . . , which are coupled to ADC 220."  Pet. 22–23 (citing Ex. 1013 ¶ 28).

Petitioner asserts that Zhang's "demultiplexer 230 . . . includ[es] multiple signal paths for concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$ (**light blue**)."  Pet. 23 (citing Ex. 1013 ¶¶ 30–34, Fig. 3).  Petitioner further asserts that "[e]ach path receives the multi-channel digital RF signal from ADC 220 and operates concurrently to select one respective desired channel," and that "selector 240 provides 'm' channels $D_1$–$D_m$ selected from any or all of channels $C_1$–$C_n$ (**light blue**) for demodulation."  *Id.* at 23–24 (citing Ex. 1013 ¶¶ 5, 28, 31, 38–39, 47); *see also* Ex. 1013 ¶ 28 (explaining that "digital channel demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$" and "selector 240 receives the demultiplexed digital RF

13

IPR2024-00435
Patent 11,381,866 B2

channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$"). In this way, according to Petitioner, Zhang's "[d]emultiplexer 230 and selector 240 output only user selected channels (either all or a subset of the user selected 'C' channels) and filter out all other channels from the digitized multi-channel RF signal." *Id.* at 24 (citing Ex. 1013 ¶¶ 28, 32, 39, 47).

Petitioner adds, "Selector 240 further provides the desired channels 'via a serial interface.'" Pet. 24. To illustrate, Petitioner provides an annotated version of Figure 5 of Zhang, reproduced below. *Id.* at 25.



**Ex. 1013, Fig. 5 (annotated)**

Figure 5 of Zhang, as annotated by Petitioner, is a diagram of n×m digital selector 500, which may be used to implement digital selector 240 of Figure 2. *See* Ex. 1013 ¶ 38. Petitioner asserts that "[s]elector 240 with 'one' bus (e.g., Data bus 1) receives channels $C_1$ to $C_n$ from

14

IPR2024-00435
Patent 11,381,866 B2

demultiplexer 230 (represented by green blocks with different patterns) and sends them across the bus 'with the use of time division multiplexing.'" Pet. 25 (citing Ex. 1013 ¶¶ 38–39). According to Petitioner, "[a] POSITA would have understood that this sends different channels sequentially (serially) in different time divisions over a single data path as shown, and that such a path is a 'serial interface.'" *Id.* Petitioner relies on the declaration testimony of Mr. Lett to support its position. *Id.* at 24–26 (citing Ex. 1002 ¶¶ 112–116).

Under an alternative theory, Petitioner contends that, "[t]o the extent Zhang does not disclose a serial interface, implementing Zhang's circuitry to output the selected channels via a serial interface was obvious in light of the POSITA's general knowledge, creativity, and common sense as one of two common design choices that were well-known in integrated circuits at the time." Pet. 26–27. Petitioner relies on the declaration testimony of Mr. Lett to support this position. *Id.* (citing Ex. 1002 ¶¶ 117–119).

Patent Owner makes several arguments regarding claim element 1C, which we address below.

### d. The Parties' Dispute

Patent Owner argues "the '866 patent outputs desired channels by selecting and down converting only the desired channels from the digitized input RF signal," whereas "Zhang does not select, down convert or extract only the desired channels from the digitized RF input signal." PO Resp. 5–6. According to Patent Owner, "Zhang down converts and extracts ***all*** channels, ***both*** desired and undesired, from the digitized input RF signal, and only later selects the desired channels from the extracted channels." *Id.* at 4;

IPR2024-00435
Patent 11,381,866 B2

*see also id.* at 7 (quoting Ex. 2009 ¶¶ 35–37 ("Unlike the '866 patent, however, Zhang's method . . . down converts and extracts from the digitized RF input signal **all** channels $C_1$–$C_n$, **both** desired **and** undesired, in the Digital Channel DeMux 230. . . . Once both desired and undesired channels $C_1$–$C_n$ are down converted and extracted from the digitized input signal, the digital channel selector 240 . . . selects the desired channels and outputs them to demodulators.")).

Petitioner counters that claim 1 "allow[s] for the selection of undesired channels" and "requires only that undesired channels not be 'provid[ed]' to the demodulator." Pet. Reply 5–6; *see also id.* at 16 ("While element [1C] excludes 'providing' undesired channels, no such limitation appears with respect to 'selecting' undesired channels.")). Petitioner further emphasizes that its "Petition asserted that Zhang's digital demultiplexer 230 in combination with part of digital selector 240 is '*a digital frontend (DFE) coupled to the wideband ADC*,'" where "[t]he input of the relied-upon combined digital circuit is undisputedly coupled to Zhang's ADC 220, and the output provides $D_1$ to $D_m$, which are undisputedly desired channels." *Id.* at 6.

We agree with Petitioner. Claim 1 recites "the DFE is configured to concurrently select and provide each of the plurality of desired channels . . . without providing any of the plurality of undesired channels." The claim expressly covers both selecting desired channels and providing desired channels. By reciting "without providing any of the plurality of undesired channels," the claim expressly excludes *providing* undesired channels; it does not exclude *selecting* undesired channels. Thus, the claim covers selecting both desired and undesired channels.

16

IPR2024-00435
Patent 11,381,866 B2

Even if claim 1 were to exclude selecting undesired channels, Petitioner's showing for claim element 1C is persuasive. Petitioner identifies Zhang's digital channel demultiplexer 230 and digital selector 240 *together* as the recited DFE. Pet. 22–23. As Petitioner points out, Zhang teaches "digital channel demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Zhang further teaches "digital selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then *selects one or more of the RF channels $D_1$ to $D_m$* from one or more of the digital RF channels $C_1$ to $C_n$" and that "the *selected RF channels $D_1$ to $D_m$ then feed* into a digital transport interface 260." *Id.* ¶¶ 28–29 (emphases added), Fig. 2. In other words, Zhang's selector 240 (which Petitioner identifies as part of the recited DFE) selects and provides RF channels $D_1$–$D_m$ (which Petitioner also identifies as the recited desired channels). *See* Pet. 24 ("Selector 240 further provides the desired channels."); Pet. Reply 6 ("[T]he output provides $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28. Patent Owner does not dispute this aspect of Petitioner's analysis, acknowledging Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 33 (annotation of Figure 2 of Zhang).

Patent Owner further argues "Zhang's Demultiplexer 230 does not 'select' any desired channels; rather, it demultiplexes all channels, both desired and undesired, without performing any selection." PO Resp. 31. Patent Owner reiterates its position that "channels $C_1$–$C_n$ encompass all channels in the entire signal band, both desired and undesired." *Id.* at 32–34 (citing Ex. 2009 ¶¶ 78–82).

17

IPR2024-00435
Patent 11,381,866 B2

Petitioner counters that "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." Pet. Reply 5 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42).

We agree with Petitioner. Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. The fact that channels $C_1$–$C_n$ contain content channels that are "selected" or "used" implies that channels $C_1$–$C_n$ themselves are desired channels, not both desired and undesired channels. Indeed, as Petitioner points out, Zhang refers to each of channels $C_1$–$C_n$ as a "desired" channel:

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of *a desired RF channel, or "target" RF channel.* . . . Thus, *only the target RF channel passes.* Digital tuner circuit 300 then outputs the *separated RF channels $C_1$ to $C_n$* . . . .

*Id.* ¶ 32 (emphases added) (cited by Pet. Reply 5).

Even if channels $C_1$–$C_n$ were to include both desired and undesired channels, however, Patent Owner's argument still fails. As explained above, claim 1 does not exclude selecting undesired channels; it only excludes providing undesired channels. Moreover, Zhang's selector 240 (which Petitioner identifies as part of the recited DFE) both selects and provides RF channels $D_1$–$D_m$ (which Petitioner also identifies as the recited desired channels). *See* Pet. 24; Ex. 1013 ¶ 28. Again, Patent Owner does not dispute this aspect of Petitioner's analysis. PO Resp. 33 (annotation of Figure 2 of Zhang ("Selector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$.")).

IPR2024-00435
Patent 11,381,866 B2

Patent Owner further argues "Petitioner . . . fails to show why Zhang's Selector 240 discloses a 'digital front end (DFE)' as claimed." PO Resp. 35. Patent Owner contends the Petition "confirms that Zhang's 'Digital Channel Demultiplexer 230' alone, not Zhang's Selector 240, corresponds to the claimed 'digital front end (DFE).'" *Id.* To illustrate its position, Patent Owner directs us to a figure from the Petition, reproduced below. *Id.* at 36 (citing Pet. 7).



19

IPR2024-00435
Patent 11,381,866 B2

The figure from the Petition compares annotated versions of Zhang's Figure 2 and the '866 patent's Figure 6. Pet. 6–7. Patent Owner asserts "Petitioner has mapped Zhang's Selector 240 (upper figure) using the color orange to the arrow titled 'serial or parallel data interface to demodulator' that is output from the digital front end 230 in the '866 patent (dotted box in the lower figure)," effectively "mapp[ing] Zhang's selector 240 to the *output* of the '866 patent's digital front end (DFE)." PO Resp. 36–37; *see also id.* at 37–38 (citing Ex. 2018, 145:16–147:13 (Lett Deposition)). According to Patent Owner, "if Zhang's selector 240 maps to the *output* of the digital front end, it cannot be the front-end itself." *Id.* at 38.

Petitioner counters that "[t]he Petition identified Zhang's demultiplexer 230 combined with selector 240 for teaching the 'DFE' and 'serial interface' in element [1C]." Pet. Reply 20 (citing Pet. 22–26). Petitioner asserts that "Zhang's demultiplexer 230 and selector 240 . . . together . . . perform the DFE function of 'select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels.'" *Id.* Petitioner adds, "Nothing in the claim language excludes the DFE from including Zhang's demultiplexer 230 and selector 240, or any other digital circuit that performed the functions recited in element [1C]." *Id.* at 22.

We agree with Petitioner. As discussed above, Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the recited DFE because they together are (1) "coupled to the wideband ADC" and (2) "configured to concurrently select and provide each of the plurality of desired channels," (3) "via a serial interface," (4) "without providing any of the plurality of undesired channels," as recited. Pet. 22–24. For the recited

20

IPR2024-00435
Patent 11,381,866 B2

serial interface, Petitioner relies specifically on Zhang's selector 240. *Id.* at 24 ("Selector 240 further provides the desired channels 'via a serial interface' as recited in Element [1C]."). To demonstrate this mapping, Petitioner uses the color orange in its comparison figure to match Zhang's selector 240 to the '866 patent's *serial interface*. *See id.* at 6 ("Zhang discloses the same cable TV device as the '866 patent. This includes . . . providing a plurality of desired channels via a serial interface (**orange**) (Element [1C])."); *id.* at 7 (comparison figure). Accordingly, Patent Owner's argument that Petitioner's comparison figure is mapping Zhang's selector 240 to the output of the '866 patent's digital frontend fails.

Patent Owner further argues that Petitioner's declarant Mr. Lett "opined that the claim requires the acts of 'select[ing] and provid[ing]' to occur 'concurrently,'" and that Petitioner "fails to show that the claims are disclosed or obvious under the construction proposed by its own expert." PO Resp. 42–44 (citing Ex. 2019, 76:9–77:5 (Lett Deposition)). Patent Owner asserts that Zhang's "channel demultiplexer 230 and selector 240 process the data sequentially, not concurrently." *Id.* at 43. Patent Owner asserts in particular, "Zhang explains that the digital channel demultiplexer 230 'demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$,'" and "the selector 240 then 'receives' the demultiplexed channels $C_1$–$C_n$, and selects channels $D_1$–$D_m$ from the received channels." *Id.* at 43–44 (citing Ex. 1013 ¶ 28, Fig. 2).

Petitioner counters that Patent Owner "distorts an out-of-context deposition response by Petitioner's expert to argue that *Petitioner's* claim construction position is that the claim excludes providing data some time after it has been selected," which Petitioner contends is "a construction the

21

IPR2024-00435
Patent 11,381,866 B2

Petition and its expert did not adopt" and "[Patent Owner] also does not ask the Board to adopt." Pet. Reply 23. Petitioner further contends "the Petition described how Zhang's Figure 3, like the '866 patent's Figure 2, includes multiple parallel signal paths for 'concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$.'" *Id.* at 22 (citing Pet. 23–24). In particular, "Zhang's demultiplexer 230 concurrently selects and then provides each 'C' channel with every other 'C' channel." *Id.* at 22–23. Petitioner adds that construing "concurrently" to exclude any delay as a signal travels from input to output would be improper "because it is contrary to element [1C]'s requirement that 'concurrently select and provide' be 'via a serial interface'" and "this delay [is] inherent in all circuits." *Id.* at 24 (citing Ex. 1079, 77:6–79:24 (Lett Reply Declaration)).

We agree with Petitioner. Nowhere in the Petition does Petitioner propose construing "concurrently" to exclude sequentially processing data. *See* Pet. In connection with the claim term "concurrently," Petitioner provides an annotated version of Figure 2 of Zhang in its Petition, reproduced below. *Id.* at 23.



Fig. 2
**Ex. 1013, Fig. 2 (annotated)**

22

IPR2024-00435
Patent 11,381,866 B2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that Zhang's "[d]igital tuner 300 (an embodiment of demultiplexer 230) . . . includ[es] multiple signal paths for concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$ (**light blue**)." Pet. 23 (citing Ex. 1013, Fig. 3). Petitioner explains that "[e]ach path receives the multi-channel digital RF signal from ADC 220 and operates concurrently to select one respective desired channel," and that "selector 240 provides 'm' channels $D_1$–$D_m$ selected from any or all of channels $C_1$–$C_n$ . . . for demodulation by one or more demodulators." *Id.* at 24. Petitioner appears to argue in the Petition that processing data along Zhang's parallel paths at the same time satisfies "concurrently." Patent Owner does not dispute Petitioner's position in this regard.

In its Reply, Petitioner further contends that, "even with the signal propagation delay [(i.e., sequential processing)], Zhang, like the '866 patent, performs the 'selecting' concurrently with the 'providing' because the desired channels are digital data *streams*, for example, as shown in the Petition passing through the serial interface." Pet. Reply 25 (citing Pet. 23–26; Ex. 1078 ¶ 31). Petitioner asserts that "when a channel is first selected, there is a time lapse to when the channel starts streaming from the output; however, after that, the channel continues to stream and, thus it is concurrently being selected and provided." *Id.* (citing Ex. 1078 ¶ 31; Ex. 1079, 78:16–25, 81:4–11). In other words, "some data in the channel streams into the input of Zhang's demultiplexer 230 concurrently with other data in the channel streaming out of output from the serial interface of selector 240." *Id.* (citing Ex. 1078 ¶ 31).

23

IPR2024-00435
Patent 11,381,866 B2

Based on the record before us, we find that Zhang teaches the recited DFE of claim element 1C. *See* Pet. 22–27.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3. Independent Claim 14

Claim 14 is directed to a "cable TV device" comprising a "wideband analog-to-digital converter (ADC)" and a "plurality of digital down converters." Petitioner designates the preamble as element 14A and the recited limitations as elements 14B through 14D.

Elements 14A and 14B are similar to elements 1A and 1B. For elements 14A and 14B, Petitioner relies on the same analysis discussed above with respect to elements 1A and 1B. Pet. 28. Patent Owner does not dispute Petitioner's contentions regarding elements 14A or 14B. *See* PO Resp. Based on Petitioner's argument and evidence, and for the reasons given above as to elements 1A and 1B, we find that Zhang teaches elements 14A and 14B. *See* Pet. 20–22.

We turn now to claim elements 14C and 14D, starting with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 14C: "plurality of digital down converters"

Claim 14 recites "a plurality of digital down converters coupled to the wideband ADC, wherein each digital down converter, of the plurality of digital down converters, is operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels."

24

IPR2024-00435
Patent 11,381,866 B2

For this limitation, Petitioner cross-references its discussion regarding claim element 1C and contends "a POSITA would have understood 'a plurality of digital down converters' to be included in the DFE digital circuit illustrated in [Zhang's] Figure 2." Pet. 28. As discussed above, Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the DFE recited in claim 1. *Id.* at 22.

Petitioner further provides an annotated version of Figure 3 of Zhang, reproduced below. Pet. 29.



**Ex. 1013, Fig. 3 (annotated)**

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 30. Referring to Figure 3, Petitioner asserts that "Zhang's demultiplexer 230 . . . includ[es] a plurality of signal paths, each with a complex multiplier (**purple**) and filter 330 (**green**) that are coupled to ADC 220 (claimed 'wideband ADC') and operable to generate 'target' channels $C_1$–$C_n$ (**light blue**) selected by the subscriber (claimed 'desired channels')." Pet. 29 (citing Ex. 1013 ¶¶ 12, 28, 30–32, Fig. 3). According

25

IPR2024-00435
Patent 11,381,866 B2

to Petitioner, "[e]ach path in Zhang is one of a 'plurality of digital down converters . . . operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels' as recited in Element [14C]." *Id.*

Patent Owner makes several arguments regarding claim element 14C, which we will address below.

### b. Element 14D: "serial interface"

In connection with claim element 14C, claim 14 further recites "the plurality of digital down converters is operable to provide each digital channel output via a serial interface." For this limitation, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below. Pet. 31.



Ex. 1013, Fig. 2 (annotated)

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang's demultiplexer 230 . . . provides channels $C_1$–$C_n$ (**light blue**) (which include each claimed 'digital channel output') via a selector 240 as channels $D_1$–$D_m$ to one or more demodulators 250." Pet. 30 (citing Ex. 1013 ¶¶ 5, 28, 38–39, 47). Relying on its discussion regarding claim element 1C, Petitioner adds

26

IPR2024-00435
Patent 11,381,866 B2

that "[e]mbodiments of selector 240 use a serial interface." *Id.* at 30–31 (citing Ex. 1002 ¶¶ 113–119; Ex. 1013 ¶¶ 38–39, Fig. 5).

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang does not expressly disclose the claimed 'serial interface,' implementing Zhang's demultiplexer 230 to provide each digital channel output via a serial interface was obvious as one of two common and predictable design choices . . . used by POSITAs as described above for Element [1C]." Pet. 32.

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 14D. *See* PO Resp. Based on Petitioner's argument and evidence, and for the reasons given above as to claim element 1C, we find that Zhang teaches the recited serial interface of claim element 14D. *See* Pet. 30–32.

### c. The Parties' Dispute

As noted above, Patent Owner disputes Petitioner's analysis for claim element 14C. Patent Owner argues in particular "the plurality of digital down converters relied upon by Petitioner in Zhang down convert both desired and undesired channels, and thus are not '*each*' 'operable to generate a digital channel output *corresponding to each desired channel*.'" PO Resp. 10; *see also id.* at 12–28 (arguing that "channels $C_1$–$C_n$ are all channels in the entire signal band, both desired and undesired" (capitalization and emphasis omitted)).

Patent Owner's argument is unavailing. We consider Petitioner's annotated version of Figure 2 of Zhang, reproduced below. Pet. 23, 31.

27

IPR2024-00435
Patent 11,381,866 B2



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner identifies each of the signal paths across Zhang's demultiplexer 230 and selector 240 as the recited plurality of digital down converters. Pet. 22 (as to claim 1, asserting "Zhang teaches the claimed 'digital frontend (DFE)' as Digital Channel Demultiplexer 230 and a portion of Digital Selector 240"); *id.* at 28 (as to claim 14, asserting "a POSITA would have understood 'a plurality of digital down converters' to be included in the DFE digital circuit illustrated in [Zhang's] Figure 2").

As discussed above with respect to claim 1 (*see supra* Part III.B.2.d), Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. Petitioner points out that Zhang even refers explicitly to each of selected or used channels $C_1$–$C_n$ as a "*desired* RF channel." *Id.* ¶ 32 (emphasis added) ("[O]scillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."). In this way, channels $C_1$–$C_n$ satisfy the recited desired channels.

28

IPR2024-00435
Patent 11,381,866 B2

Turning back to Petitioner's annotated version of Zhang's Figure 2, reproduced above, we find that each signal path across demultiplexer 230 and selector 240 (which Petitioner identifies as the recited digital down converters) generates a digital channel output (see outputs of demultiplexer 230) corresponding to each channel $C_1$–$C_n$ (which Petitioner identifies as the recited desired channels). *See* Pet. 23, 28–29.

We note Patent Owner's contention that Zhang's reference to "an entire signal band with n channels" means channels $C_1$–$C_n$ include both desired and undesired channels. PO Resp. 12 (citing Ex. 1013 ¶ 27); *id.* at 18 ("[I]t is undisputed that the number 'n' is the number of both desired and undesired channels in the 'entire signal band.'"); *id.* at 20. As noted above, however, Zhang explains that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28; *see also id.* ¶ 42 ("A demultiplexer . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$. . . . *The exact number will depend on the specific application*." (emphasis added)); *id.* ¶ 30 ("Digital tuner 300 includes a bank of n numeric control oscillators . . . , complex multipliers . . . , and low-pass filters . . . . One chain of each of these elements is used for each RF channel. *The exact number of these elements will depend on the number of RF channels to be demultiplexed*." (emphasis added)). Zhang then characterizes each of channels $C_1$–$C_n$ as a "desired RF channel." *Id.* ¶ 32 ("Numeric oscillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."); *id.* (LPFs 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes."). In the context of Zhang's full disclosure, the reference to "an

29

IPR2024-00435
Patent 11,381,866 B2

entire signal band with n channels" appears to be a reference to a signal band that *includes* the selected (or used) n channels. That is, the signal band could also include unselected (or unused) channels. This reading is further supported by claim 8 of Zhang, which recites "the ADC converts an entire signal band, the signal band including the multichannel analog RF signal." *Id.*, claim 8 (cited by Pet. 21–22).

We also note Patent Owner's contention that Zhang's prosecution history reveals "the applicant explained that it is the selector that distinguished Zhang from its prior art, where all of the channels were demodulated." PO Resp. 15–16; *see also id.* at 20–21 ("[I]f Zhang's Figure 3 down converted and output only desired channels, there would have been no need for the subsequent channel selector 240 to select desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." (quoting Ex. 2009 ¶ 57 (Declaration of Dr. Russ))). Distinguishing Zhang from the prior art based on Zhang's selector, however, does not mean Zhang's channels $C_1$–$C_n$ include both desired and undesired channels. Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber," and that "selector 240 . . . selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28. In other words, channels $C_1$–$C_n$ may be a set of subscriber-selected channels while channels $D_1$–$D_m$ may be a further set of subscriber-selected channels that are a subset of channels $C_1$–$C_n$. Being able to select a subset of channels translates to systems that are faster and dissipate less heat because fewer resources are needed to demodulate only the selected subset of channels. *See id.*

30

IPR2024-00435
Patent 11,381,866 B2

Patent Owner further argues "Petitioner's assertion that Zhang's channels $C_1$–$C_n$ disclose the claimed 'desired channels' . . . is also inconsistent with Petitioner's mapping of Zhang to other limitations," namely claim element 14D.  PO Resp. 26–27.  To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below.  *Id.* at 27.



Figure 5 "**selects one or more RF channels D₁ to Dₘ from the digital RF channels C₁ to Cₙ** and then **sends them** to appropriate demodulators or outputs ports ... **through different data buses** ...." Ex. 1013 [Zhang] [0039]

Fig. 5

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2.  *See* Ex. 1013 ¶ 38.  Patent Owner asserts "what is 'provided' on Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ (blue) shown on the right-hand side output of Data bus 1, not channels $C_1$–$C_n$ (red)."  PO Resp. 27.  According to Patent Owner, to the extent that Petitioner relies on channels $C_1$–$C_n$ as the desired channels for claim element 14C, "that mapping contradicts

31

IPR2024-00435
Patent 11,381,866 B2

Petitioner's mapping for limitation 14[d], where Petitioner must rely on channels $D_1$–$D_m$ as 'the plurality of desired channels' output by down converters via a serial bus." *Id.* at 28.

We disagree with Patent Owner's position that "Petitioner must rely on channels $D_1$–$D_m$ as 'the plurality of desired channels' output by down converters via a serial bus." *See* PO Resp. 28. Claim 14D recites "the plurality of digital down converters is operable to provide each digital channel output [corresponding to each desired channel] via a serial interface." As shown in Figures 2, 3, and 5 of Zhang, each path across demultiplexer 230 and selector 240 (i.e., "digital down converters") provides a digital channel output (e.g., outputs for channels $C_1$–$C_n$) corresponding to a desired channel (e.g., channels $C_1$–$C_n$) that is then provided via a serial interface in selector 240 (e.g., selector 500) as further channels (e.g., channels $D_1$–$D_m$). Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 27 (annotation acknowledging Zhang's "Figure 5 'selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports . . . through different data buses.'" (quoting Ex. 1013 ¶ 39)). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited desired channels is persuasive.

Even if Petitioner must rely on channels $D_1$–$D_m$ as the recited desired channels in claim element 14D, Patent Owner's argument that Petitioner's mapping is inconsistent still fails. Claim element 14C recites "each digital down converter . . . is operable to generate a digital channel output corresponding to each desired channel." Claim element 14D adds "the

32

IPR2024-00435
Patent 11,381,866 B2

plurality of digital down converters is operable to provide each digital channel output via a serial interface."

As discussed above, Petitioner relies on its discussion of claim element 1C as part of its analysis for claim element 14C. Pet. 28. In that discussion, Petitioner points to where Zhang teaches that "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and that "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Petitioner asserts that "[s]elector 240 further provides the desired channels 'via a serial interface.'" Pet. 24–26 (citing Ex. 1013 ¶¶ 38–39, Fig. 5; Ex. 1002 ¶¶ 112–116). Thus, each path across Zhang's demultiplexer 230 and selector 240 (i.e., "digital down converters") generates a digital channel output (e.g., outputs for channels $D_1$–$D_m$) corresponding to each desired channel (e.g., channels $D_1$–$D_m$) and provides each digital output via a serial interface in selector 240 (e.g., selector 500). *See* Pet. 24 ("Selector 240 further provides the desired channels."); Pet. Reply 6 ("[T]he output provides $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28, Figs. 2, 3, 5. As noted above, Patent Owner acknowledges Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 33 (annotated Figure 2 of Zhang). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

Based on the record before us, and for the reasons given above with respect to claim element 1C, we find that Zhang teaches the recited plurality of digital down converters of claim element 14C. *See* Pet. 28–30.

33

IPR2024-00435
Patent 11,381,866 B2

In view of the foregoing, we find that Zhang teaches all the limitations of claim 14.

### 4. Independent Claim 27

Claim 27 is directed to a "cable television (TV) device" and recites similar limitations as claim 1. For example, claim 27 recites a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." For these similarly recited limitations, Petitioner relies on its discussion of claim 1. Pet. 32–33. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 27.

Claim 27 adds that "the cable TV device comprises a digital video recorder (DVR)." For this limitation, Petitioner asserts "Zhang's cable TV device may be integrated as a wide-band front-end of a 'set-top box/PVR/home media server.'" Pet. 33 (citing Ex. 1013 ¶ 45, Fig. 8). According to Petitioner, "[a] POSITA would have understood that 'PVR' stands for 'personal video recorder,' which is an alternate name for 'DVR' or 'digital video recorder' for recording content received by a STB." *Id.* Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 139–140).

Patent Owner does not specifically dispute Petitioner's contentions regarding this additional limitation of claim 27. *See* PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited DVR of claim 27. *See* Pet. 33.

34

IPR2024-00435
Patent 11,381,866 B2

In view of the foregoing, we find that Zhang teaches all the limitations of claim 27.

### 5. *Independent Claim 41*

Claim 41 is directed to a "cable TV device" and recites similar limitations as claims 14 and 27. For example, claim 41 recites a "wideband analog-to-digital converter (ADC)," a "plurality of digital down converters," and a "digital video recorder (DVR)." For these similarly recited limitations, Petitioner relies on its discussion of claims 14 and 27. Pet. 33–34. Patent Owner relies on its arguments regarding claim 14. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claims 14 and 27, we find that Zhang teaches all the limitations of claim 41.

### 6. *Dependent Claims*

Each of claims 3–7, 9, 11, 13, 16–20, 22, 24, 26, 29–33, 35–37, 40, 43–47, 49–51, and 54 depends from independent claims 1, 14, 27, or 41. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 34–49 (citing Ex. 1013 ¶¶ 5–7, 11–12, 24–25, 28–34, 38–39, 41–48, Figs. 2, 3, 5). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 65–67, 72, 74–76, 78–79, 115–118, 145–184).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 34–49), we find that Zhang teaches the limitations of the dependent claims.

IPR2024-00435
Patent 11,381,866 B2

*7. Summary*

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 are anticipated by Zhang or would have been obvious over Zhang.

*C. Asserted Challenge Based on Zhang and Reisman*

Petitioner asserts that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 of the '866 patent would have been obvious over Zhang and Reisman. Pet. 49–59. Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 4–45. For the reasons explained below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 would have been obvious over Zhang and Reisman.

We provided an overview of Zhang above. *See supra* Part III.B.1. Before addressing the claims, we additionally provide an overview of Reisman.

*1. Overview of Reisman*

Reisman describes "interactive television" (ITV), where the TV includes a set-top box (STB). Ex. 1052 ¶¶ 2, 43, 98. Reisman explains that ITV may include interactivity with the TV through a digital video recorder (DVR), which also is known as a personal video recorder (PVR). *Id.* ¶¶ 48, 60. Additionally, Reisman explains that ITV may include a featured called

36

IPR2024-00435
Patent 11,381,866 B2

picture-in-picture (PIP), where a region of the TV screen presents a reduced scale video image. *Id.* ¶ 121.

### 2. Independent Claims 27 and 41

As discussed above, we determine that Petitioner has shown by a preponderance of the evidence that claims 27 and 41 are anticipated by Zhang or would have been obvious over Zhang.

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang's PVR is not a 'DVR' as recited in Elements [27D] and [41D], Reisman discloses this feature." Pet. 50. Petitioner asserts that "Reisman teaches that STBs in a cable system may include a digital video recorder (DVR)." *Id.* (citing Exc. 1052 ¶¶ 5, 43, 48, 60, 73, 98, 112, 118, 191, 197, 212, 281–285, 296, 546). According to Petitioner, an ordinarily skilled artisan "would have been motivated [to] include Reisman's DVR in Zhang's STB to provide a more feature-filled and individualized user experience, which in the proposed combination still includes Zhang's wideband front-end receiver components cited for Elements [27A]–[27C] and [41A]–[41C]." *Id.* Petitioner explains that "Reisman's DVR improves user experience by allowing time-shifted and on-demand view, and enabling, e.g., fast-forwarding, rewinding, and pausing of live programming." *Id.* (citing Ex. 1052 ¶¶ 191, 197, 212, 284–285, 546, 758); *see also id.* at 50–51 (asserting that the proposed combination "merely applies a known technique of integrating a DVR into a STB . . . to a known STB . . . that was ready for improvement to yield a predictable result" and that an ordinarily skilled artisan "would have had a reasonable expectation of success").

37

IPR2024-00435
Patent 11,381,866 B2

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 50–51), we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claims 27 and 41. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness. *See In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").

### 3. Independent Claim 55

Claim 55 is directed to a "cable television (TV) device" and recites similar limitations as claim 1. For example, claim 55 recites a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." For these similarly recited limitations, Petitioner relies on its discussion of claim 1. Pet. 51. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 55.

Claim 55 adds that "the cable TV device is operable to configure at least some of the plurality of desired channels as an output for a picture-in-picture display." For this limitation, Petitioner asserts that "Reisman teaches that STBs in a cable system include a 'picture-in-picture display.'" Pet. 52 (citing Ex. 1052 ¶¶ 73, 98, 118, 120–121, 187, 278, 291, 378, 534, 537, 546, Fig. 3). Petitioner contends that "[a] POSITA would have been motivated to include Reisman's 'picture-in-picture display' capability in Zhang's STB, which in the proposed combination still has the wideband front-end receiver

38

IPR2024-00435
Patent 11,381,866 B2

components cited for Elements [55A]–[55C] . . . to allow a user to view different content simultaneously." *Id.* Petitioner explains that Reisman's "'picture-in-picture' beneficially displays a program in a PIP window while simultaneously providing, e.g., navigation options and interactive content in other windows," and "enables 'multitasking,' by displaying, e.g., two TV programs, and swapping them between full screen and a smaller PIP window." *Id.* at 52–53 (citing Ex. 1052 ¶¶ 61, 63, 378, 546); *see also id.* at 53 (asserting that the proposed combination "represents the obvious application of a known technique . . . to a known device . . . that was ready for improvement to yield a predic[t]able result" and that an ordinarily skilled artisan "would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 52–53), and for the reasons given above with respect to claim 1, we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claim 55. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 4. Independent Claim 69

Claim 69 is directed to a "cable TV device" and recites similar limitations as claims 14 and 55. For example, claim 69 recites a "wideband analog-to-digital converter (ADC)," a "plurality of digital down converters," and a "picture-in-picture display." For these similarly recited limitations, Petitioner relies on its discussion of claims 14 and 55. Pet. 54. Patent Owner relies on its arguments regarding claim 14. *See* PO Resp. 9. Based

IPR2024-00435
Patent 11,381,866 B2

on Petitioner's argument and evidence, and for the reasons given above as to claims 14 and 55, we find the proposed combination of Zhang and Reisman teaches all the limitations of claim 69 and that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 8.  Dependent Claims

Each of claims 9–12, 23–25, 29–33, 35–40, 43–47, 49–54, 57–61, 63–68, 71–75, and 77–82 depends from independent claims 1, 14, 27, 41, 55, or 69.  Petitioner contends that its proposed combination of Zhang and Reisman teaches the limitations recited in the dependent claims.  Pet. 54–59 (citing Ex. 1013 ¶ 47; Ex. 1052 ¶¶ 8, 52, 63, 73, 86–89, 90, 98, 120–121, 125, 149, 235, 304, 484, 643–645, Fig. 1).  Petitioner relies on the declaration testimony of Mr. Lett as support.  *Id.* (citing Ex. 1002 ¶¶ 150–184, 194–198, 200–220).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 9–12, 23–25, 29–33, 35–40, 43–47, 49–54, 57–61, 63–68, 71–75, and 77–82.  *See* PO Resp.  Having reviewed Petitioner's argument and evidence (*see* Pet. 54–59), we find that Zhang teaches the limitations of these dependent claims.

### 9.  Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 would have been obvious over Zhang and Reisman.

IPR2024-00435
Patent 11,381,866 B2

### D. Asserted Challenge Based on Zhang and Jackson

Each of claims 2–6, 15–19, 28–32, and 42–46 depends from independent claims 1, 14, 27, or 41. Petitioner asserts that these dependent claims would have been obvious over Zhang and Jackson. Pet. 59–71. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 64–67, 225–250).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 2–6, 15–19, 28–32, and 42–46. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 59–71), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6, 15–19, 28–32, and 42–46 would have been obvious over Zhang and Jackson.

### E. Asserted Challenge Based on Zhang, Reisman, and Jackson

Each of claims 28–32, 42–46, 56–60, and 70–74 depends from independent claims 27, 41, 55, or 69. Petitioner asserts that these dependent

41

IPR2024-00435
Patent 11,381,866 B2

claims would have been obvious over Zhang, Reisman, and Jackson. Pet. 59–71. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 64–67, 225–250).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 28–32, 42–46, 56–60, and 70–74. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 59–71), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 28–32, 42–46, 56–60, and 70–74 would have been obvious over Zhang, Reisman, and Jackson.

### F. Asserted Challenge Based on Zhang and Pandey

Petitioner asserts that claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 would have been obvious over Zhang and Pandey. Pet. 72–79. Petitioner cross-references its discussion of Zhang's teaching of the serial

42

IPR2024-00435
Patent 11,381,866 B2

interface of claims 1, 14, 36, 50, 64, and 78 as well as the parallel interface of claims 35, 49, 63, and 77. *Id.* at 72. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 72–79 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:27, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 252–262).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 72–79), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 would have been obvious over Zhang and Pandey.

*G. Asserted Challenge Based on Zhang, Reisman, and Pandey*

Each of claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 depends from independent claims 1, 14, 27, 41, 55, and 69. Petitioner

43

IPR2024-00435
Patent 11,381,866 B2

asserts that these dependent claims would have been obvious over Zhang, Reisman, and Pandey. Pet. 72–79. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 14, 36, 50, 64, and 78 as well as the parallel interface of claims 35, 49, 63, and 77. *Id.* at 72. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 72–79 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:27, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 252–262).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 72–79), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Pandey teaches the limitations of claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 would have been obvious over Zhang, Reisman, and Pandey.

IPR2024-00435
Patent 11,381,866 B2

*H. Asserted Challenge Based on Zhang, Jackson, and Pandey*

Each of claims 2–6 and 15–19 depends from independent claims 1 or 14. Petitioner asserts that these dependent claims would have been obvious over Zhang, Jackson, and Pandey. Pet. 79–80. Petitioner cross-references its discussion regarding its challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey. *Id.* at 79 (citing Ex. 1002 ¶ 263–264).

Patent Owner does not specifically dispute Petitioner's contentions for this challenge. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 79–80), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey, we find that Petitioner's proposed combination of Zhang, Jackson, and Pandey teaches the limitations of claims 2–6 and 15–19 and that Petitioner's proffered reasoning for combining Zhang, Jackson, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6 and 15–19 would have been obvious over Zhang, Jackson, and Pandey.

IPR2024-00435
Patent 11,381,866 B2

## IV. CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance of the evidence that claims 1–82 of the '866 patent are unpatentable as follows.[6]

---

[6] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

IPR2024-00435
Patent 11,381,866 B2

| Claim(s) | 35 U.S.C. § | Reference(s)/ Basis | Claim(s) Shown Unpatentable | Claim(s) Not Shown Unpatentable |
|---|---|---|---|---|
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 102 | Zhang | 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | |
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 103(a) | Zhang | 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | |
| 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | 103(a) | Zhang, Reisman | 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | |
| 2–6, 15–19, 28–32, 42–46 | 103(a) | Zhang, Jackson | 2–6, 15–19, 28–32, 42–46 | |
| 28–32, 42–46, 56–60, 70–74 | 103(a) | Zhang, Reisman, Jackson | 28–32, 42–46, 56–60, 70–74 | |
| 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | 103(a) | Zhang, Pandey | 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | |
| 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | 103(a) | Zhang, Reisman, Pandey | 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | |
| 2–6, 15–19 | 103(a) | Zhang, Pandey, Jackson | 2–6, 15–19 | |
| **Overall Outcome** | | | 1–82 | |

47

IPR2024-00435
Patent 11,381,866 B2

## V.   ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–82 of the '866 patent have been shown to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.


FOR PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
Craig W. Kronenthal
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com
ckronenthal@bannerwitcoff.com

FOR PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
Matthew A. Blair
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com

IPR2024-00435
Patent 11,381,866 B2

nolan.hubbard@klgates.com
matthew.blair@klgates.com

Kenneth J. Weatherwax
Parham Hendifar
Nathan Lowenstein
Colette Woo
Kenneth Wang
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com
woo@lowensteinweatherwax.com
wang@lowensteinweatherwax.com

49

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

————————

Case IPR2024-00435
Patent 11,381,866

————————

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

Case IPR2024-00435<br>Patent 11,381,866

## TABLE OF CONTENTS

**Page**

I.     **INTRODUCTION** ....................................................................................1

II.    **THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.**.............................................................3

     A.    A Patent With Substantially Similar Claims To The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding. ................................................................................5

     B.    The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent.............................................6

     C.    The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination....................................9

III.    **CONCLUSION** ...................................................................................12

| EXHIBIT LIST | |
|---|---|
| 2001 | Table Of Parallel Petitions Filed By All Petitioners (July 16, 2019-June 29, 2024) [All-Parallel-Petitions] |
| 2002 | Table of All Petitions Filed By Comcast (As Petitioner or RPI) (2016-2024) [All-Comcast-Petitions] |
| 2003 | PTAB Multiple Petitions Study [Multiple-Petitions-Study] |
| 2004 | PTAB Multiple Petitions Study Executive Summary [Executive-Summary] |
| 2005 | FreeWheel About Webpage (www.freewheel.com/about) |
| 2006 | Declaration of Kenneth K. Wang [Wang-Decl.] |
| 2007 | Pro Hac Vice Declaration of Nathan Lowenstein [PHV-L] |
| 2008 | Pro Hac Vice Declaration of Colette Woo [PHV-W] |
| 2009 | Declaration of Samuel H. Russ, Ph.D. [Russ-Decl.] |
| 2010 | Curriculum Vitae of Samuel H. Russ, Ph.D. [Russ-CV] |
| 2011 | European Patent Application No. 02759732.7.2415 Communication From Examining Division [EPO-Communication-Annex] |
| 2012 | European Patent Application No. 02759732.7.2415 Reply To Communication From Examining Division [Zhang-EPO-Reply] |
| 2013 | European Patent Application No. 02759732.7.2415 Intent To Grant European Patent [EPO-Grant-Intent] |
| 2014 | Reserved |
| 2015 | Reserved |
| 2016 | Reserved |

| 2017 | Reserved |
| --- | --- |
| 2018 | David Lett 1st Deposition Volume I [Lett-1st-Depo.-Volume-I] |
| 2019 | David Lett 1st Deposition Volume II [Lett-1st-Depo.-Volume-II] |
| 2020 | IPR2024-00432, Exhibit 1002, Declaration of David Lett [IPR2024-00432-Lett-Decl.] |
| 2021 | David Lett 2nd Deposition [Lett-2nd-Depo.] |
| 2022 | Patent Owner's Oral Argument Demonstratives |
| 2023 | Deposition Transcript of Petitioner's Expert in IPR2025-00180 |
| 2024 | Designations From Exhibit 2023 |

Case IPR2024-00435<br>Patent 11,381,866

## I.    INTRODUCTION

Patent Owner respectfully requests that the Director grant review of the Final Written Decision because the Board failed to reconcile its decision finding the claims unpatentable with a reexamination determination confirming the claims, in violation of the Director's recent guidance.  Patent Owner did not raise the arguments in this Request before the Board because the Director's guidance was issued shortly prior to the issuance of the Final Written Decision, and after oral argument and close of all briefing, and the arguments raised herein were not demonstrably relevant under the Office's policy at those times.  For example, it was not demonstrably relevant that the Zhang Patent identified to the Examiner in the reexamination contains the same disclosure as the Zhang application relied upon by the Board here.  Nor was it demonstrably relevant to show that the arguments accepted in other Office proceedings are similar to the arguments rejected by the Board here.  A similar Director Review Request is being filed in each of IPR2024-00432 and IPR2024-00438, which concern patents with a common specification and substantially similar claims.

On September 16, 2025, the Director issued a Memorandum titled "*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*" ("Memorandum").  The Memorandum provides that the Board should reconcile its decisions with prior, contrary determinations of fact or law made by the Office in

1

post-grant proceedings of patents with substantially similar claims, with a more detailed explanation required when both proceedings rely on "substantially the same evidence and/or arguments."  Memorandum, 1.

The Board in this proceeding determined that Ex 1013 ("Zhang") alone discloses the relevant limitations of the independent claims requiring "select[ing] … desired channels" or "generat[ing] an output corresponding to each desired channel."  Paper 45 [FWD] 12-18, 27-35.  But Zhang and arguments similar to those adopted by the Board were previously considered and rejected by the Office in connection with similar limitations.  *See* Section II, *infra*.

In the Reexamination of U.S. Patent 9,210,362, which shares a common specification and substantially similar claims with the '866 patent, Zhang was presented to the Office.  The Examiner found that "the art of record" fails to show "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream."  Ex. 1082, 6; *see* Section II.B, *infra*.  The Examiner likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected "ranges of frequencies containing the desired channels."  *See* Section II.B, *infra.*

The Office also rejected Zhang and arguments similar to those adopted by the Board here during the prosecution of U.S. Pat. 11,785,275, which shares the

2

same specification and substantially similar claims with the '866 patent, and which occurred after the issuance of the '866 patent. During the prosecution of the '275 patent, the Examiner, after considering Zhang, determined that the prior art of record did not disclose the claimed step of selecting desired channels because the prior art instead used a demultiplexer to separate an input signal into its constituent channels. *See* Section II.C, *infra*. The distinction the Examiner accepted in the prosecution of the '275 patent is substantively identical to Patent Owner's argument here—that Zhang does not "select" any channels, but merely demultiplexes the input signal into its constituent channels. Paper 45 [FWD] 17 (reciting Patent Owner's arguments).

The Board failed to acknowledge, let alone explain, any of the above prior findings by the Office. Thus, Patent Owner respectfully requests that the Director grant review of the Final Written Decision and remand this matter to the Board for issuance of a decision consistent with the Memorandum.

## II.    THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.

As noted, on September 16, 2025, the Director issued a Memorandum titled "*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*" ("Memorandum"). The Memorandum provides that when a patent with

3

"substantially similar" claims to the patent under review has been adjudicated in another post-issuance proceeding, then:

> if the Board reaches an initial or final decision on a finding of fact or conclusion of law that is different than the prior finding or conclusion of the Office, district court, or the ITC, ***the Board shall explain in the institution or final written decision why a different outcome is warranted***.  ***A more detailed explanation is required*** from the Board ***when the same or substantially the same evidence and/or arguments that were previously presented to the Office***, the district court, or the ITC ***are being relied upon in the subsequent AIA trial proceeding***.

Memorandum, 1.

The Board in this proceeding found all claims of the '866 patent unpatentable.  As relevant here, the Board found that Ex 1013 ("Zhang") alone discloses independent claim 1's limitation that "the DFE is configured to concurrently ***select*** and provide each of the plurality of ***desired channels***, via a serial interface, without providing any of the plurality of undesired channels." Paper 45 [FWD] 12-18.  The Board likewise concluded that similar limitations in the remaining independent claims are also disclosed by Zhang alone.  *Id*., 27-35.

Both Zhang and arguments similar to those accepted by the Board here were previously presented to, and rejected by, the Office, including in the post-grant proceeding involving the '362 patent, which shares the same specification and

4

substantially similar claims to the '866 patent.  The Board's Final Written Decision, however, failed to address any of the Examiner's prior contrary findings or to reconcile them with the Final Written Decision, as required by the Memorandum.  These points are discussed in more detail below.

**A.    A Patent With Substantially Similar Claims To The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding.**

U.S. Patent No. 11,381,866, at issue in this proceeding, shares a common specification and substantially similar claims with U.S. Patent 9,210,362.  As relevant here, both claims 1 of the '362 and the '866 patents receive frequencies "comprising a plurality of desired [television] channels and a plurality of undesired [television] channels," and require "select[ing] [said]/[the] plurality of desired [television] channels."  For both patents, the Board in this Final Written Decision here and a similar final written decision concerning the '362 patent relied upon Zhang's Demultiplexer 230 outputting channels $C_1$-$C_n$ as "select[ing] desired channels."[1]

---

[1] Petitioner challenged the '362 patent in the concurrently filed IPR2024-00432, relying on the same Zhang reference and on similar arguments at issue here, confirming the similarity of the claims of the '362 and '866 patents.

5

On September 20, 2023, a request for *ex parte* reexamination of the '362 patent was filed with the Office.  On November 1, 2023, reexamination was ordered by the Office.  On February 10, 2025, the Office issued a Notice of Intent to Issue Reexamination Certificate.  Ex. 1082, 3-11.  On April 1, 2025, the Office issued a Reexamination Certificate, confirming the patentability of all claims 1-20 of the '362 patent.  *Id*., 1-2.

The Parties identified the *ex parte* reexamination of the '362 patent to the Board on multiple occasions.  Patent Owner identified the '362 patent as a "related patent" in its mandatory notices.  *See*, *e.g*., Paper 4 [Mandatory Notices] 3.  The parties identified the Reexamination in an email to the Board on September 25, 2025.  In addition, the Petition in IPR2024-00432, which challenges the '362 patent, identified the Reexamination.  The IPR2024-00432 petition was filed on the same day as the instant IPR2024-00435 petition, and both proceedings were heard together in a consolidated hearing before the Board.

Thus, a patent with substantially similar claims to the patent at issue in this proceeding was the subject of a post-grant adjudication by the Office.

**B.    The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent.**

While the Memorandum requires an explanation by the Board anytime it reaches a conclusion of fact or law contrary to the ones reached in other post-grant

proceedings of patents with substantially similar claims, the Memorandum specifically requires that "[a] more detailed explanation is required from the Board when the same or substantially the same evidence and/or arguments that were previously presented to the Office … are being relied upon in the subsequent AIA trial proceeding." Memorandum, 1. As explained in this section, because the Zhang Patent was listed in an IDS and initialed by the Examiner, the same prior art was previously presented to the Office and considered by the Examiner. Patent Owner did not present the arguments raised herein to the Office because the Memorandum was issued after the oral argument and close of all briefings, and just days before the issuance of the Final Written Decision, and the arguments raised herein did not have demonstrable relevance at the time of briefing before the Board. For example, it was not demonstrably relevant that the Zhang Patent identified in an IDS in the reexamination contains the same disclosure as the Zhang application that forms the basis of the Board's decision here.

During the Reexamination of the '362 patent, Patent Owner identified, and the Examiner considered, a Zhang reference ("Zhang Patent") with substantially identical disclosure to the Zhang reference that was the basis of the Final Written Decision here. Specifically, during Reexamination, Patent Owner listed U.S. Pat.

7

6,704,372 [Zhang-Patent] in an IDS. Application No. 90,019,255, *Information Disclosure Statement* (June 18, 2024) at 3.[2]

The Zhang Patent submitted by the Patent Owner in the IDS is the patent that issued from the same application that published as the Zhang reference relied upon by the Board here. Ex. 1013 [Zhang] 1 (Appl. No.: 09/956,479); U.S. Pat. No. 6,704,372 [Zhang-Patent] (Appl. No.: 09/956,479). Both the Zhang Patent submitted by the applicant in the IDS and the Petition's Zhang reference have substantially identical disclosures. *Compare generally* Ex. 1013 [Zhang] *with* U.S. Pat. No. 6,704,372 [Zhang-Patent].

---

[2] On October 23, 2025, Patent Owner sought authorization from the Director to file as exhibits supporting its Director Review Request the USPTO documents referenced in this Request. *See* Exhibit 3100. Patent Owner's request was denied and, consequently, Patent Owner has not filed those documents as exhibits. Patent Owner does not understand the denial of authorization to file additional exhibits as precluding discussion of the underlying facts. Furthermore, the Director is empowered to take official notice of documents from proceedings before the USPTO should the Director deem that necessary and appropriate. 37 C.F.R. § 42.62(c); Fed. Rule Evid. 201; 5 U.S.C. § 556(e).

The Examiner stamped every page of the IDS, including the page listing the Zhang Patent, confirming consideration of the Zhang Patent. Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3.

Identification of the Zhang Patent in the IDS is sufficient to show that the same prior art references were previously presented to the Office. When a reference was previously identified in an IDS, "the same or substantially the same prior art or argument previously was presented to the Office." *Ecto World LLC and SV3, LLC v. Rai Strategic Holdings, Inc.*, IPR2024-01280, Paper 13, 3-4 (May 19, 2025). The same rationale should apply here.

Thus, the same Zhang reference was previously presented to the Office.

## C. The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination.

The Board in its Final Written Decision determined that Zhang alone, unmodified, discloses "the DFE is configured to concurrently select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels." Paper 45 [FWD] 12-24. In reaching this conclusion, the Board rejected Patent Owner's argument that Zhang's relied upon channels $C_1$-$C_n$ are neither "desired channels" nor "select[ed]." *See, e.g.*, *id*. 16-18. This determination stands in sharp contrast to the Examiner's conclusion in

9

the Reexamination that the prior art of record, including Zhang, failed to disclose a similar limitation to the one the Board found to be disclosed by Zhang.

In the '362 patent Reexamination, the Examiner, subsequent to its consideration of the Zhang Patent, issued a notice of intent to issue reexam certificate, explaining that:

> ***the cited prior art of record fails to teach*** the system and method as disclosed in claims 1 and 11, comprising … a digital circuit (interpreted as element 230 in Figure 2 and also described in column 5, lines 49-60) to ***select plurality of desired television channels*** from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream.

Ex. 1082, 6; *see also* Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3 (identifying Zhang patent).

The Examiner's finding that Zhang does not disclose the claims is not an isolated determination, but a continuation of other instances where the Office—by different examiners—has found Zhang or similar disclosures to not disclose similar limitations.  For example, in the same Reexamination of the '362 patent, the Examiner accepted Patent Owner's argument that the McNeely reference that selected "ranges of frequencies containing the desired channels" failed to disclose the claims.  Application No. 90,019,255, *Non-Final Rejection* (August 7, 2024) at 10-11.

10

The Office has also expressly reviewed and rejected the Zhang Patent in yet another instance.  U.S. Pat. 11,785,275 also shares the same specification with the '866 patent, and similarly recites, in its claim 1, "selecting, by a digital frontend (DFE) … the plurality of desired channels from the digitized signal."  During prosecution of the '275, conducted after the issuance of the '866 patent at issue here, Patent Owner identified the Zhang Patent in an IDS.  Application No. 17/956,889, *Information Disclosure Statement* (August 16, 2023) at 1.  In the Notice of Allowance, the Examiner expressly confirmed consideration of that IDS containing the Zhang Patent.  Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7 ("The prior art comprising Information Disclosure Statements filed 16 August 2023 and 18 August 2023 was considered by the Examiner in view of the instant application.").  The Examiner then determined that the prior art of record did not disclose the claimed step of selecting desired channels, but instead used a demultiplexer to separate an input signal into its constituent channels.  Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7.  The argument the Examiner accepted in the prosecution of the '275 patent is substantially similar to the argument advanced by Patent Owner in the instant IPR, *i.e.*, that Zhang does not "select" any channels but instead demultiplexes the input signal into its constituent channels.  Paper 45 [FWD] 17 (reciting Patent Owner's arguments).

Case IPR2024-00435
Patent 11,381,866

The Board did not address any of the above prior, and contrary, Office determinations in its Final Written Decision.  In fact, given that the same Zhang reference was previously presented to the Office, the Board was required to provide an even "more detailed explanation."  Thus, the Final Written Decision failed to comply with the procedure set forth in the Memorandum.

## III.   CONCLUSION

For the aforementioned reasons, Patent Owner respectfully requests that the Director grant review and reverse the Final Written Decision.


Respectfully submitted,

  / Parham Hendifar /
_____

Parham Hendifar (Reg. No. 71,470)
Nathan Lowenstein, *pro hac vice*
Kenneth J. Weatherwax (Reg. No. 54,528)
LOWENSTEIN & WEATHERWAX LLP

Date:  October 29, 2025

Case IPR2024-00435
Patent 11,381,866

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following documents were served

by electronic service, by agreement between the parties, on the date signed below:

### PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

The names and addresses of the parties being served are as follows:

Frederic M. Meeker          fmeeker@bannerwitcoff.com
Michael S. Cuviello         mcuviello@bannerwitcoff.com
H. Wayne Porter             wporter@bannerwitcoff.com
Paul T. Qualey              pqualey@bannerwitcoff.com
Joshua L. Davenport         jdavenport@bannerwitcoff.com
ComcastIPRService@bannerwitcoff.com

Respectfully submitted,

/ Parham Hendifar /

Date:  October 29, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

_____

Case IPR2024-00435
Patent 11,381,866

_____

**AUTHORIZED RESPONSE TO PATENT OWNER'S
REQUEST FOR DIRECTOR REVIEW**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................1

II.    The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time. ...................................4

III.   The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings .................................................5

     A.     The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers ..................................................................................................6

     B.     Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong ..............................10

     C.     The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution .................................................................................12

IV.   The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required ................................12

V.    CONCLUSION....................................................................................13

## I.    INTRODUCTION

Requests for Director Review of a Board's final decision are "limited to decisions presenting (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law." U.S. Patent & Trademark Office, Director Review Process, https://www.uspto.gov/patents/ptab/decisions/director-review-process (last visited Nov. 3, 2025) (describing, in Section 2.B, availability of Director Review for proceedings under part 42 of 37 C.F.R.). Patent Owner does not allege an abuse of discretion, an important issue of law or policy, or an erroneous finding of material fact or conclusion of law. Rather, Patent Owner only argues that, under Acting Director Stewart's September 16 memorandum (the "Memorandum"), the Board was obligated to provide in the Final Written Decision (FWD) a more detailed explanation of how the Board reached a different finding of fact with respect to Zhang (U.S. Pat. App. Pub No. 2003/0056221 A1), the primary reference in the IPR, than was allegedly reached in U.S. Reexamination App. No. 90/019,255 of related U.S. Pat. No. 9,210,362 (the "'362 Reexamination") or in the prosecution of related U.S. Pat. No. 11,785,275 (the "'275 Patent"). Patent Owner claims ignorance in not previously raising this issue with the Board, arguing that "the arguments raised herein were not demonstrably relevant under the Office's policy at those times [prior to the Final Written Decision]." Request at 1.

1

Patent Owner's claim of ignorance regarding the relevance of its arguments flies in the face of the Board's September 19 order, which required the parties to respond to the Memorandum, and the parties' subsequent response on September 26 that provided all potentially relevant evidence. Furthermore, regardless of Patent Owner's claims, the Board's findings regarding Zhang are not contrary to any prior findings by the Office, as the Office did not address Zhang in those proceedings. Therefore, the Board was not required to provide additional explanation under the Memorandum.

Specifically, the Patent Owner states only that Zhang, or a different patent (U.S. Pat. No. 6,704,372) related to Zhang ("Zhang '372 Patent"), was cited along with other prior art in IDSs in the previous proceedings, and that the Examiner stated that the prior art of record failed to disclose the feature in the claim elements at issue. The Examiner in each case did not directly address or provide any findings of fact regarding Zhang or the related Zhang '372 Patent, and therefore, there is nothing for the Board to address. This is especially not surprising regarding the '362 Reexamination, where it appears from the publicly available file wrapper that the

Patent Owner only cited the related Zhang '372 Patent and did not cite Zhang or the related IPR papers even after informing the Board that they would do so.[1]

To the extent the Board was obligated to provide a more detailed explanation of why it reached a different conclusion about Zhang than the Examiners purportedly did in reexamination and prosecution, the Board already did so. As the Examiners were silent about Zhang and the Zhang '372 Patent, it is possible they simply overlooked its relevance since the IPR papers explaining their significance were not submitted. And, if they did consider and dismiss Zhang or the related Zhang '372 Patent, their reasons for doing so are not in the record and unknowable. Thus, the only action the Board could have taken was to review Zhang *de novo* during the IPR. That is exactly what the Board did, providing a detailed explanation (as required in the Memorandum) of how Zhang disclosed every feature of the independent and other claims of the challenged patent.

---

[1] The Director denied Patent Owner's request to submit new evidence into the record on October 29, 2025. Ex. 3100. Because the file wrappers of the '362 Reexamination and the '275 Patent cited by Patent Owner are not of record, they should not be considered. Petitioner cites to this information only to rebut Patent Owner's arguments and does not concede that it was proper for Patent Owner to rely on evidence not of record.

3

II.     **The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time.**

Patent Owner's assertion that the information in the Request was not demonstrably relevant before the Final Written Decision (FWD) under the Memorandum is disingenuous at best. The Board expressly *required* the parties to provide any relevant information in its September 19 order (Paper No. 43), and the parties jointly filed (Exhibits 1082-1085) what each party identified as relevant on September 26, 2025 (prior to the FWD). Indeed, in an email to the undersigned counsel prior to that joint filing, Patent Owner stated: "It is patent owner's understanding that no relevant developments have occurred, and no relevant documents exist to be filed." Ex. 3100 at 1-2.

The Director's guidance has not changed since Patent Owner responded on September 26, and Patent Owner does not explain any change of circumstance that makes the issues it attempts to raise in its Request more relevant now than when it was obligated to raise them with the Board. Thus, Patent Owner's representations in this Request about what might be relevant directly contradict its representations to the Board when the Board asked for such information.

If the information Patent Owner now presents was relevant, Patent Owner was obligated to provide it to the Board while the IPR was pending. Even before the Memorandum, Patent Owner had the opportunity to argue that Petitioner's

4

arguments were rejected in other Office proceedings. Patent Owner's sur-reply was filed on May 30, 2025, almost two months after the reexamination certificate was issued in the '362 Reexamination on April 1, 2025, and Patent Owner's Response was filed on January 14, 2025, more than a year after the '275 patent issued on October 10, 2023. Patent Owner failed to do so, because there is no basis for arguing that the Office previously rejected Petitioner's arguments that Zhang discloses the claims. Patent Owner's attempt to make new arguments to the Director now is improper and should be found waived. 37 C.F.R. § 42.23.

## III.    The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings

The only alleged "contrary determinations of fact" that the Patent Owner asserts are:

1) "the Examiner [in the '362 Reexamination] found that 'the art of record,' fails to show 'select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream'";

2) "the Examiner [in the '362 Reexamination] 'likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected 'ranges of frequencies containing the desired channels'"; and

3) "During the prosecution of the '275 patent, the Examiner, after considering [the Zhang '372 Patent], determined that the prior art of record did not disclose the claimed step of selecting desired channels because the prior art instead used a demultiplexer to separate an input signal into its constituent channels." Request at 2-3.

Contrary to Patent Owner's arguments, the Examiners in the respective proceedings never made any findings of fact with respect to Zhang. Each of these assertions is addressed below.

## A. The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers

Patent Owner's assertion that the Examiner in the '362 Reexamination found that the Zhang '372 Patent failed to disclose "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream" is quoted out of context and wrong. The statement the Patent Owner cites is regarding the "art of record" and does not mention the above limitation in isolation but instead refers to the entirety of claims 1 and 11 of the '362 Patent. Thus, the Examiner never made any finding as to whether any particular limitation of the claims was shown or not shown by the art. Moreover, the Examiner never discusses the related Zhang '372 Patent.

6

Indeed, it appears the Examiner was not made aware of Zhang or the Zhang '372 Patent's relevance to the '362 Patent because Patent Owner never submitted the IPR papers. On May 7, 2024, Patent Owner notified the Examiner in the '362 Reexamination of the IPRs but did not identify Zhang as the reference relied upon in those IPRs. *See* '362 Reexamination, Patent Owner's Petition For Extension of Time Under 37 C.F.R. § 1.550(C) (May 7, 2024) at 2.

On June 18, 2024, Patent Owner filed an IDS with a response to a non-final office action. The IDS included secondary references relied upon in the IPRs and the related Zhang '372 Patent (but not Zhang itself). With the IDS, the Patent Owner submitted a statement identifying the secondary references as relevant to the IPRs but omitted any mention of Zhang (the primary reference in the IPR) or how the related Zhang '372 Patent might be relevant. *See* '362 Reexamination, IDS Transmittal Letter, June 18, 2024. This alone would be enough to obfuscate (at the very least) the relevance of the related Zhang '372 Patent that was cited. But the letter went further, affirmatively attesting with respect to the IPRs:

> We are, herewith, submitting the petitions, declarations, and prior art asserted in the various grounds to the extent not already in the reexamination record and believe the information submitted to be the extent of the information that could be considered material to patentability. However, the identification of this information shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in 37 CFR 1.56(b). To the extent the Office believes any additional information would be helpful to consider, we can provide it upon request.

*Id.*, at 3. Contrary to this statement, the Patent Owner does not specifically identify the Petitions, Declarations, or Zhang itself in the IDS, and the Petitioner does not see any such papers in the reexamination file wrapper.[2] In view of identifying some prior art as involved in the IPR, but not Zhang, and the failure to submit the IPR

---

[2] The entire certified file history of the Reexamination is not of record. The file wrapper on Patent Center does not make NPL documents available for viewing, and a certified file wrapper could not be obtained within the deadline for filing this response. But the public file wrapper does indicate that the number of NPLs filed on June 18, 2024 (9), is the same as the number of NPLs listed in the IDS, and no more. It appears that at least the Petition and Petitioner's Expert Declaration (Ex. 1002) were not submitted, since no NPLs listed approximate the page counts of those IPR documents. PO's Request also does not allege that those papers were submitted.

papers, the Examiner would have had no reason to believe that the cited Zhang '372 Patent was relevant to the IPRs and warranted closer scrutiny.

On September 30, 2024, the Patent Owner filed a response to a final office action, but still did not identify the relevance of Zhang to the Examiner.

On February 10, 2025, the Office issued a Notice of Intent to Issue a Reexam Certificate, which included the following reminder of the Patent Owner's duty of updating the Examiner of changes in related proceedings throughout the course of the reexamination proceedings:

> *Litigation Reminder*
>
> The patent owner is reminded of the continued responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP § 2207, 2282 and 2286.

'362 Reexamination, Notice of Intent to Issue a Reexam Certificate, February 10, 2025 at 5.

Even given this express notice of its duty of candor, the Patent Owner appears not to have cited Zhang or submitted the related IPR papers.[3]

This lack of filing of the IPR papers combined with the fact that the related Zhang '372 Patent was only cited after the IPR had commenced, but without any indication that it was related to the IPR, raises the question of whether Patent Owner was attempting to thwart the IPR proceeding by "washing" the related Zhang '372 Patent through the parallel '362 Reexamination. Such potential gamesmanship should not be permitted.

**B.** **Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong**

Patent Owner notes that the Examiner in the '362 Reexamination accepted Patent Owner's argument that the McNeely reference selected "ranges of frequencies containing the desired channels," which failed to disclose the claims of the '362 Patent. Request at 10. McNeely has no relationship to Zhang and is not even part of the IPR record. Yet, the Patent Owner now reasons that Zhang discloses a similar feature to that of McNeely, and thus similarly fails to disclose the claims. But the FWD did not find that Zhang disclosed selecting frequency ranges like in

---

[3] Petitioner was not the third party requester and thus had no role in the '362 Reexamination.

10

McNeely. Instead, the Board found that Zhang selected desired channels within a frequency range and did not select undesired channels. IPR2024-00435, Final Written Decision at 16-18. The Board also found that even if Zhang disclosed extracting all channels within a frequency range, it would not matter since the '866 patent claims do not exclude this. *Id.* Thus, there was no contrary finding of fact for the Board to address.

Indeed, it is surprising Patent Owner is trying to draw parallels between Zhang and McNeely, given that it acknowledged at the oral hearing for the IPR, that "[t]here is no dispute that in both Zhang and the patent, an RF signal that has both desired and undesired channel[s] comes in and what's sent to demodulators are desired channels. Nobody is disputing that," and that "[t]he issue is not whether the black box 230-plus-240 is the digital circuitry. It is. The issue is not whether or not that overall circuitry selects channels. At some level, it does." IPR2024-00432, Final Written Decision at 21 (citing oral hearing transcript at 71:14–17, 134:3–5). As the Board found, these views of Patent Owner about Zhang were "highly probative" to the patentability of the '362 Patent claims. *Id.* Patent Owner's concession in the IPR that Zhang's system selects and outputs only desired channels does not square with its new assertion that Zhang merely selects frequency ranges (including desired and undesired channels), allegedly like McNeely.

11

**C.    The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution**

Patent Owner also misleadingly argues that the Examiner "rejected" applying the related Zhang '372 Patent during the prosecution of the related '275 Patent. Request at 11. Although the Zhang '372 Patent was cited in an IDS, the Examiner never mentioned it, much less distinguished it from the claims.  Instead, the Notice of Allowance merely referred to another reference, "Claxton," and distinguished the '275 claims from Claxton's channelizer—not from Zhang's demultiplexer 230.  US. App. No. 17/956,889, Notice of Allowance, August 28, 2023, at 2-3.  Moreover, the Examiner for the '275 Patent erred by apparently attributing all the IDS materials, including the Zhang '372 Patent, as being cited for "other patents, i.e., US 8223,775 [*sic*]" involved in Entropic's litigations.  *Id.*, at 2.  Thus, in direct contradiction to the Request (Request at 11), the Examiner for the '275 Patent never accepted Patent Owner's argument, in this proceeding, that Zhang does not "select" any channels.

**IV.    The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required**

Even if the prior Office examinations are contorted to contrive some finding with respect to Zhang, the Board's FWD clearly articulates how Zhang discloses each and every limitation of the challenged claims, which necessarily satisfies the Memorandum's call for a detailed explanation why a different outcome is warranted. Significantly, Patent Owner's Request does not raise a single flaw in the merits of

12

the Board's FWD (e.g., no claim construction error or misreading of Zhang) or assert a lack of substantial evidence for the Board's finding that Zhang teaches selecting desired channels.  Patent Owner merely disagrees with the Board's ultimate finding of fact and holding without providing any support for its disagreement.

## V.     CONCLUSION

For the reasons above, Patent Owner has failed to identify (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law. The Request for Director Review should be denied. Alternatively, if the Director is minded to accept the Request, the Board's Final Written Decision should be affirmed because it correctly decides the issues before the Board and satisfies the Memorandum.

Dated:  November 6, 2025

By: /Frederic M. Meeker/

Frederic M. Meeker
Reg. No. 35,282
Banner & Witcoff, Ltd.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
(202) 824-3000
fmeeker@bannerwitcoff.com

*Attorney for Petitioner*
*Comcast Cable Communications,*
*LLC*

13

# CERTIFICATE OF SERVICE

Pursuant to 37 C.F.R. §42.6(e)(4), the undersigned hereby certifies that the foregoing PETITIONER'S AUTHORIZED RESPONSE TO PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW was served electronically via e-mail on November 6, 2025 on the following counsel of record for Patent Owner:

> JASON.ENGEL.PTAB@KLGATES.COM
> WEATHERWAX@LOWENSTEINWEATHERWAX.COM
> ENTROPIC_IPRS@LOWENSTEINWEATHERWAX.COM
> ERIK.HALVERSON@KLGATES.COM
> KYLE.KANTAREK@KLGATES.COM
> NOLAN.HUBBARD@KLGATES.COM
> MATTHEW.BLAIR@KLGATES.COM

Dated:  November 6, 2025          By: /Anna Winslow/

                                  Anna Winslow

No. 2026-1585

**IN THE
UNITED STATES COURT OF APPEALS FOR
THE FEDERAL CIRCUIT**

**ENTROPIC COMMUNICATIONS, LLC,**
*Appellant*,
v.

**COMCAST CABLE COMMUNICATIONS, LLC,**
*Appellee*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, PATENT TRIAL AND APPEAL BOARD NO. IPR2024-00435

**CORRECTED NOTICE OF APPEAL**

Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509
*Counsel for Patent Owner-Appellant
Entropic Communications, LLC*

March 30, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

————————

Case IPR2024-00435
Patent 11,381,866

————————

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**


via PTACTS
Patent Trial and Appeal Board

via E-Mail
Director
Office of the General Counsel
United States Patent and Trademark Office
efileSO@uspto.gov

via CM/ECF
United States Court of Appeals for the Federal Circuit

Pursuant to 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(c), 142, and 319; 37 C.F.R. §§ 90.2(a) and 90.3(a); and Federal Rule of Appellate Procedure 4(a), Patent Owner Entropic Communications, LLC hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Written Decision in IPR2024-00435 concerning U.S. Patent No. 11,381,866 ("the '866 Patent") (Paper 45, also attached hereto as Attachment A) entered September 29, 2025 by the Patent Trial and Appeal Board, and all other underlying and related findings, orders, decisions, rulings, opinions, or other determinations merged into that Decision.

For the limited purpose of providing the Director with the information requested in 37 C.F.R. § 90.2(a)(3)(ii), Patent Owner further indicates that the issues on appeal may include, but are not limited to:

(i)     The Board's judgment that claims 1-82 of the '866 patent are unpatentable, including any underlying questions of law or fact;

(ii)    Any other Board and/or Director finding, determination, judgment, or order on any issue decided adversely to Patent Owner;

(iii)   Whether the Board's decision violated the Administrative Procedure Act, including by departing from established USPTO procedure and the Board's and/or Director's practice without reasoned explanation, rendering the decision arbitrary and capricious.

1

Patent Owner is concurrently filing true and correct copies of this Notice of Appeal, along with the required fees, with the United States Court of Appeals for the Federal Circuit, and with the Patent Trial and Appeal Board.

Respectfully submitted,

/Parham Hendifar/

Parham Hendifar (Reg. No. 71,470)
hendifar@lowensteinweatherwax.com
Nathan Lowenstein, *pro hac vice*
lowenstein@lowensteinweatherwax.com
Kenneth J. Weatherwax (Reg. No. 54,528)
weatherwax@lowensteinweatherwax.com
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd.
Santa Monica, CA 90405
Tel: 310-307-4500

*Counsel for Patent Owner*

Date: March 24, 2026

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

| | |
|---|---|
| Frederic M. Meeker | fmeeker@bannerwitcoff.com |
| Michael S. Cuviello | mcuviello@bannerwitcoff.com |
| H. Wayne Porter | wporter@bannerwitcoff.com |
| Paul T. Qualey | pqualey@bannerwitcoff.com |
| Joshua L. Davenport | jdavenport@bannerwitcoff.com |
| | ComcastIPRService@bannerwitcoff.com |

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:   March 24, 2026

## <u>CERTIFICATE OF FILING WITH USPTO</u>

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 24, 2026

# <u>CERTIFICATE OF FILING WITH COURT OF APPEALS</u>

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2, Fed. R. App. Proc. 15(a)(1), Fed. Cir. R. 15(a)(1) & 52, and Manual of Patent Examining Procedure 1216.01, the following document was electronically filed in Portable Document Format (PDF) with the United States Court of Appeals for the Federal Circuit, via electronic CM/ECF, accompanied by the requisite fee paid on pay.gov, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

Respectfully submitted,

/Parham Hendifar/
Parham Hendifar

Date:  March 24, 2026

# Attachment A

Trials@uspto.gov                                                                      Paper 45
571-272-7822                                                   Date: September 29, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

_____

IPR2024-00435
Patent 11,381,866 B2

_____

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

WORMMEESTER, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00435
Patent 11,381,866 B2

## I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–82 of U.S. Patent No. 11,381,866 B2 (Ex. 1001, "the '866 patent").  Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10).  Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition.  Paper 13 ("Inst. Dec.").  Thereafter, Patent Owner filed a Response (Paper 23, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 28, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 33, "PO Sur-reply").  On July 18, 2025, we conducted an oral hearing.  A copy of the transcript (Paper 42) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b).  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–82 of the '866 patent are unpatentable.

## II.    BACKGROUND

### A. *Related Proceedings*

The parties identify various federal district court cases and petitions for *inter partes* review.  *See* Pet. vii–viii; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 27, 1–2 (Patent Owner's Third Updated Mandatory Notices).

IPR2024-00435
Patent 11,381,866 B2

### B. The '866 Patent

The '866 patent describes "wideband receiver systems that are capable of receiving multiple desired television channels that extend over multiple non-contiguous portions of the broad frequency spectrum and grouping them into a contiguous, or substantially-contiguous, frequency spectrum." Ex. 1001, 1:29–34. To illustrate one embodiment, Figure 2 of the '866 patent is reproduced below.



FIG. 2

Figure 2 is a block diagram of wideband receiver system 200 that includes radio front end 210, analog-to-digital convertors 218 (ADC1) and 228 (ADC2), and digital front end 230. *Id.* at 4:35–38, 5:33–35, Fig. 2. System 200 receives and processes channels 110, which are located in a radio frequency (RF) spectrum with frequency bandwidth 120 (BW1). *Id.* at 2:13–15, 4:38–42. There are ten available channels in bandwidth 120,

3

IPR2024-00435
Patent 11,381,866 B2

where each channel occupies 8 MHz of bandwidth for a total of 80 MHz. *Id.* at 4:42–45. Of these available channels, there are four desired channels with respective carrier frequencies $f_{rf1}$, $f_{rf2}$, $f_{rf3}$, and $f_{rf4}$ that are located in noncontiguous portions of bandwidth 120. *Id.* at 4:47–51.

Radio front end 210 is a wideband tuner receiver that includes low noise amplifier 202 (LNA), mixers 211 (M1) and 221 (M2), amplifiers 213 (V1) and 223 (V2), as well as filters 215 (F1) and 225 (F2). Ex. 1001, 4:38–5:32. Digital front end 230 includes N complex mixers 250, where N is the number of desired channels located in the noncontiguous portions of bandwidth 120. *Id.* at 5:51–55, Fig. 2. In Figure 2, N represents four desired RF channels. *Id.* at 5:63–65. Digital front end 230 also includes filter modules 260a–260n and demodulators 270a–270n. *Id.* at 6:6–12, Fig. 2.

In operation, radio front end 210's low noise amplifier 202 receives RF input signal 102, which includes the four desired RF channels. Ex. 1001, 4:45–51. Mixers 211 and 221 multiply (mix) amplified RF signal 203 with respective first oscillator frequency signal 205 and second oscillator frequency signal 207 to generate in-phase signal 212 and quadrature signal 222, which have a phase shift of ninety degrees between them. *Id.* at 4:61–66. Signals 212 and 222 are further amplified by respective amplifiers 213 and 223 to generate signals 214 and 224, which are then filtered by respective filters 215 and 225 to generate filtered in-phase signal 216 and filtered quadrature signal 226. *Id.* at 5:17–20, Fig. 2.

After being processed in radio front end 210, filtered signals 216 and 226 are digitized for further processing in digital front end 230. Ex. 1001, 5:20–24. ADC1 218 generates digital in-phase signal 232 (I), which is a

4

IPR2024-00435
Patent 11,381,866 B2

digital representation of analog filtered signal 216, and ADC2 228 generates digital quadrature signal 242 (Q), which is a digital representation of analog filtered signal 226. *Id.* at 5:48–51.

In digital front end 230, each complex mixer 250 receives digital signals 232 and 242 from ADC1 218 and ADC2 228 to extract a different desired channel, and then frequency-shifts (downshifts) the extracted signal to the baseband frequency. Ex. 1001, 6:3–6, 6:53–56. Frequency-shifted channels 252a–252n are filtered by associated filter modules 260a–260n. *Id.* at 6:6–8. Next, filtered channels 262a–262n are decimated and sent to associated demodulators 270a–270n that extract the original information transmitted in each desired channel. *Id.* at 6:8–14. The decimated baseband channels may be sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface. *Id.* at 7:10–14, Fig. 2.

According to the '866 patent, its approach "eliminates the need of expensive data conversion, filtering and channel selection on the demodulator side," and "removes undesired channels from the signal path at an early stage, thus reliev[ing] the large dynamic range requirement in the demodulator." Ex. 1001, 7:14–19.

### C. Illustrative Claims

Petitioner challenges claims 1–82 of the '866 patent. Claims 1, 14, 27, 41, 55, and 69 are independent. Claims 1 and 14 are reproduced below.

1.   A cable television (TV) device comprising:

a wideband analog-to-digital converter (ADC) configured to digitize a contiguous band of frequencies in an input signal, wherein the contiguous band of frequencies comprises a plurality of desired channels and a plurality of undesired channels; and

5

IPR2024-00435
Patent 11,381,866 B2

a digital frontend (DFE) coupled to the wideband ADC, wherein the DFE is configured to concurrently select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels.

14. A cable TV device comprising:

a wideband analog-to-digital converter (ADC) configured to digitize an input signal, wherein the input signal comprises a plurality of desired channels and a plurality of undesired channels; and

a plurality of digital down converters coupled to the wideband ADC, wherein each digital down converter, of the plurality of digital down converters, is operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels, and wherein the plurality of digital down converters is operable to provide each digital channel output via serial interface.

Ex. 1001, 12:15–25, 13:11–24.

*D. Asserted Challenges to Unpatentability*

Petitioner asserts the following eight challenges to claims 1–82 of the '866 patent. Pet. 10–12, 19–80. We instituted *inter partes* review on each challenge. Inst. Dec. 31–32.

6

IPR2024-00435
Patent 11,381,866 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 102[1] | Zhang[2] |
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 103(a) | Zhang |
| 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | 103(a) | Zhang, Reisman[3] |
| 2–6, 15–19, 28–32, 42–46 | 103(a) | Zhang, Jackson[4] |
| 28–32, 42–46, 56–60, 70–74 | 103(a) | Zhang, Reisman, Jackson |
| 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | 103(a) | Zhang, Pandey[5] |
| 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | 103(a) | Zhang, Reisman, Pandey |
| 2–6, 15–19 | 103(a) | Zhang, Pandey, Jackson |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009).

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013. Because the application from which the '866 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Reisman, U.S. Publ'n No. 2003/0229900 A1, published Dec. 11, 2003 (Ex. 1052).

[4] Jackson et al., U.S. Publ'n No. 2009/0113504 A1, published Apr. 30, 2009 (Ex. 1057).

[5] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007 (Ex. 1014).

IPR2024-00435
Patent 11,381,866 B2

Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III. DISCUSSION

### A. Claim Construction

In an *inter partes* review proceeding, we construe a claim of a patent "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." *See* 37 C.F.R. § 42.100(b). That standard involves construing claims in accordance with the ordinary and customary meaning of such claims as would have been understood by a person of ordinary skill in the art ("POSITA") and the prosecution history pertaining to the patent. *See id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their ordinary and customary meaning to a POSITA." Pet. 16. Patent Owner does not respond. *See* PO Resp. For purposes of this Decision, we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B. Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 of the '866 patent are anticipated by Zhang. Pet. 19–49. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 4–45. For the reasons explained

8

IPR2024-00435
Patent 11,381,866 B2

below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, we provide an overview of Zhang.

### 1. Overview of Zhang

Zhang describes demodulator circuits in broadband communications. Ex. 1013 ¶ 4. To illustrate one embodiment, Figure 2 of Zhang is reproduced below.



Fig. 2

Figure 2 is a diagram of multi-channel demodulator 200. *Id.* ¶ 23. Frequency-block down-converter 210 receives a multi-channel analog RF signal that can come from any of various sources such as satellite systems, terrestrial TV systems, and cable systems. *Id.* Down-converter 210 downshifts the multi-channel analog RF signal to a lower frequency band. *Id.* ¶ 25. Analog-to-digital converter 220 then converts the down-converted multi-channel analog RF signal to a multi-channel digital RF signal. *Id.*

9

IPR2024-00435
Patent 11,381,866 B2

¶ 27. Digital channel demultiplexer 230 demultiplexes the digital RF signal into separate digital RF channels $C_1$ to $C_n$. *Id.* ¶ 28. Digital selector 240 receives the demultiplexed digital RF channels and selects one or more of RF channels $D_1$ to $D_m$ from one or more of digital RF channels $C_1$ to $C_n$. *Id.* The m selected RF channels are fed into respective demodulators 250(1) to 250(m), where they are demodulated. *Id.* ¶ 29. The selected RF channels $D_1$ to $D_m$ then feed into digital transport interface 260. *Id.*

We turn now to the claims, starting with independent claims 1, 14, 27, and 41.

## 2. Independent Claim 1

Claim 1 is directed to a "cable television (TV) device" comprising a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." Petitioner designates the preamble as element 1A and the recited limitations as elements 1B and 1C. We address these elements, beginning with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 1A: "cable television (TV) device"

Claim 1 recites as its preamble "[a] cable television (TV) device." Petitioner asserts that "Zhang describes an RF receiver, for example in a [set-top box], receiving digital video channels over a cable system and having DOCSIS return channel, which the '866 patent concedes is a protocol for 'cable networks that carry TV programs.'" Pet. 20 (citing Ex. 1013 ¶¶ 5–6, 23–25, 29, 41, 45–47; Ex. 1001, 9:4–8).

Patent Owner does not specifically dispute Petitioner's contentions regarding the preamble. *See* PO Resp. Although we do not determine

10

IPR2024-00435
Patent 11,381,866 B2

whether the preamble is limiting, we are persuaded by Petitioner's argument and evidence that Zhang teaches the subject matter of the preamble.

### b. Element 1B: "wideband analog-to-digital converter (ADC)"

Claim 1 further recites "a wideband analog-to-digital converter (ADC) configured to digitize a contiguous band of frequencies in an input signal, wherein the contiguous band of frequencies comprises a plurality of desired channels and a plurality of undesired channels." For this limitation, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below. Pet. 21.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner contends "Zhang discloses the claimed 'wideband analog-to-digital converter' as ADC 220 (gold), which digitizes a multi-channel analog RF signal received from Frequency Block Downconverter 210 (red)." Pet. 21 (citing Ex. 1013, code (57), ¶¶ 10, 25, 27, 31, 34, 44–45).

Petitioner further contends "Zhang's ADC is wideband because the digitized multi-channel RF signal includes several channels," and "the

11

IPR2024-00435
Patent 11,381,866 B2

channels form a contiguous band of frequencies because (like the '866 patent) they are spaced next to each other within a frequency band with a precise frequency spacing (e.g., 6 MHz) that is a fraction of the multi-channel RF signal bandwidth (e.g., 540–750 MHz divided into 35 channels)." Pet. 21–22 (citing Ex. 1001, 1:24–27, 2:50–59; Ex. 1013 ¶¶ 6, 10, 24–25, 27, 41–42, 47). Petitioner adds, "Zhang further discloses that in alternate variations, 'RF channels need not be contiguous,' teaching that in the embodiments otherwise described, the RF channels are contiguous." *Id.* at 22 (quoting Ex. 1013 ¶ 48).

Lastly, Petitioner contends "[t]he digitized multi-channel RF signal includes target RF channels that are selected and demodulated in subsequent stages (claimed 'desired channels'), and undesired RF channels that are filtered out (claimed 'undesired channels')." Pet. 22 (citing Ex. 1013 ¶¶ 5, 10–12, 27–29, 31–32, 35–36, 41–42).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1B. *See* PO Resp. Nonetheless, the burden remains on Petitioner to demonstrate unpatentability. *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Based on Petitioner's argument and evidence, we find that Zhang teaches the recited wideband analog-to-digital converter of claim element 1B. *See* Pet. 21–22.

### c.  Element 1C: "digital frontend (DFE)"

Claim 1 further recites "a digital frontend (DFE) coupled to the wideband ADC, wherein the DFE is configured to concurrently select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels." For this

IPR2024-00435
Patent 11,381,866 B2

limitation, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below.  Pet. 23.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner contends "Zhang teaches the claimed 'digital frontend (DFE)' as Digital Channel Demultiplexer 230 and a portion of Digital Selector 240 (**purple**) . . . , which are coupled to ADC 220."  Pet. 22–23 (citing Ex. 1013 ¶ 28).

Petitioner asserts that Zhang's "demultiplexer 230 . . . includ[es] multiple signal paths for concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$ (**light blue**)."  Pet. 23 (citing Ex. 1013 ¶¶ 30–34, Fig. 3).  Petitioner further asserts that "[e]ach path receives the multi-channel digital RF signal from ADC 220 and operates concurrently to select one respective desired channel," and that "selector 240 provides 'm' channels $D_1$–$D_m$ selected from any or all of channels $C_1$–$C_n$ (**light blue**) for demodulation." *Id.* at 23–24 (citing Ex. 1013 ¶¶ 5, 28, 31, 38–39, 47); *see also* Ex. 1013 ¶ 28 (explaining that "digital channel demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$" and "selector 240 receives the demultiplexed digital RF

13

IPR2024-00435
Patent 11,381,866 B2

channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$"). In this way, according to Petitioner, Zhang's "[d]emultiplexer 230 and selector 240 output only user selected channels (either all or a subset of the user selected 'C' channels) and filter out all other channels from the digitized multi-channel RF signal." *Id.* at 24 (citing Ex. 1013 ¶¶ 28, 32, 39, 47).

Petitioner adds, "Selector 240 further provides the desired channels 'via a serial interface.'" Pet. 24. To illustrate, Petitioner provides an annotated version of Figure 5 of Zhang, reproduced below. *Id.* at 25.



Ex. 1013, Fig. 5 (annotated)

Figure 5 of Zhang, as annotated by Petitioner, is a diagram of n×m digital selector 500, which may be used to implement digital selector 240 of Figure 2. *See* Ex. 1013 ¶ 38. Petitioner asserts that "[s]elector 240 with 'one' bus (e.g., Data bus 1) receives channels $C_1$ to $C_n$ from

IPR2024-00435
Patent 11,381,866 B2

demultiplexer 230 (represented by green blocks with different patterns) and sends them across the bus 'with the use of time division multiplexing.'" Pet. 25 (citing Ex. 1013 ¶¶ 38–39). According to Petitioner, "[a] POSITA would have understood that this sends different channels sequentially (serially) in different time divisions over a single data path as shown, and that such a path is a 'serial interface.'" *Id.* Petitioner relies on the declaration testimony of Mr. Lett to support its position. *Id.* at 24–26 (citing Ex. 1002 ¶¶ 112–116).

Under an alternative theory, Petitioner contends that, "[t]o the extent Zhang does not disclose a serial interface, implementing Zhang's circuitry to output the selected channels via a serial interface was obvious in light of the POSITA's general knowledge, creativity, and common sense as one of two common design choices that were well-known in integrated circuits at the time." Pet. 26–27. Petitioner relies on the declaration testimony of Mr. Lett to support this position. *Id.* (citing Ex. 1002 ¶¶ 117–119).

Patent Owner makes several arguments regarding claim element 1C, which we address below.

### d. The Parties' Dispute

Patent Owner argues "the '866 patent outputs desired channels by selecting and down converting only the desired channels from the digitized input RF signal," whereas "Zhang does not select, down convert or extract only the desired channels from the digitized RF input signal." PO Resp. 5–6. According to Patent Owner, "Zhang down converts and extracts ***all*** channels, ***both*** desired and undesired, from the digitized input RF signal, and only later selects the desired channels from the extracted channels." *Id.* at 4;

15

IPR2024-00435
Patent 11,381,866 B2

*see also id.* at 7 (quoting Ex. 2009 ¶¶ 35–37 ("Unlike the '866 patent, however, Zhang's method . . . down converts and extracts from the digitized RF input signal ***all*** channels $C_1$–$C_n$, ***both*** desired ***and*** undesired, in the Digital Channel DeMux 230. . . . Once both desired and undesired channels $C_1$–$C_n$ are down converted and extracted from the digitized input signal, the digital channel selector 240 . . . selects the desired channels and outputs them to demodulators.")).

Petitioner counters that claim 1 "allow[s] for the selection of undesired channels" and "requires only that undesired channels not be 'provid[ed]' to the demodulator." Pet. Reply 5–6; *see also id.* at 16 ("While element [1C] excludes 'providing' undesired channels, no such limitation appears with respect to 'selecting' undesired channels.")). Petitioner further emphasizes that its "Petition asserted that Zhang's digital demultiplexer 230 in combination with part of digital selector 240 is '*a digital frontend (DFE) coupled to the wideband ADC*,'" where "[t]he input of the relied-upon combined digital circuit is undisputedly coupled to Zhang's ADC 220, and the output provides $D_1$ to $D_m$, which are undisputedly desired channels." *Id.* at 6.

We agree with Petitioner. Claim 1 recites "the DFE is configured to concurrently select and provide each of the plurality of desired channels . . . without providing any of the plurality of undesired channels." The claim expressly covers both selecting desired channels and providing desired channels. By reciting "without providing any of the plurality of undesired channels," the claim expressly excludes *providing* undesired channels; it does not exclude *selecting* undesired channels. Thus, the claim covers selecting both desired and undesired channels.

16

IPR2024-00435
Patent 11,381,866 B2

Even if claim 1 were to exclude selecting undesired channels, Petitioner's showing for claim element 1C is persuasive. Petitioner identifies Zhang's digital channel demultiplexer 230 and digital selector 240 *together* as the recited DFE. Pet. 22–23. As Petitioner points out, Zhang teaches "digital channel demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Zhang further teaches "digital selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then *selects one or more of the RF channels $D_1$ to $D_m$* from one or more of the digital RF channels $C_1$ to $C_n$" and that "the *selected RF channels $D_1$ to $D_m$ then feed* into a digital transport interface 260." *Id.* ¶¶ 28–29 (emphases added), Fig. 2. In other words, Zhang's selector 240 (which Petitioner identifies as part of the recited DFE) selects and provides RF channels $D_1$–$D_m$ (which Petitioner also identifies as the recited desired channels). *See* Pet. 24 ("Selector 240 further provides the desired channels."); Pet. Reply 6 ("[T]he output provides $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28. Patent Owner does not dispute this aspect of Petitioner's analysis, acknowledging Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 33 (annotation of Figure 2 of Zhang).

Patent Owner further argues "Zhang's Demultiplexer 230 does not 'select' any desired channels; rather, it demultiplexes all channels, both desired and undesired, without performing any selection." PO Resp. 31. Patent Owner reiterates its position that "channels $C_1$–$C_n$ encompass all channels in the entire signal band, both desired and undesired." *Id.* at 32–34 (citing Ex. 2009 ¶¶ 78–82).

IPR2024-00435
Patent 11,381,866 B2

Petitioner counters that "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." Pet. Reply 5 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42).

We agree with Petitioner. Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. The fact that channels $C_1$–$C_n$ contain content channels that are "selected" or "used" implies that channels $C_1$–$C_n$ themselves are desired channels, not both desired and undesired channels. Indeed, as Petitioner points out, Zhang refers to each of channels $C_1$–$C_n$ as a "desired" channel:

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of *a desired RF channel, or "target" RF channel.* . . . Thus, *only the target RF channel passes.* Digital tuner circuit 300 then outputs the *separated RF channels $C_1$ to $C_n$* . . . .

*Id.* ¶ 32 (emphases added) (cited by Pet. Reply 5).

Even if channels $C_1$–$C_n$ were to include both desired and undesired channels, however, Patent Owner's argument still fails. As explained above, claim 1 does not exclude selecting undesired channels; it only excludes providing undesired channels. Moreover, Zhang's selector 240 (which Petitioner identifies as part of the recited DFE) both selects and provides RF channels $D_1$–$D_m$ (which Petitioner also identifies as the recited desired channels). *See* Pet. 24; Ex. 1013 ¶ 28. Again, Patent Owner does not dispute this aspect of Petitioner's analysis. PO Resp. 33 (annotation of Figure 2 of Zhang ("Selector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$.")).

18

IPR2024-00435
Patent 11,381,866 B2

Patent Owner further argues "Petitioner . . . fails to show why Zhang's Selector 240 discloses a 'digital front end (DFE)' as claimed." PO Resp. 35. Patent Owner contends the Petition "confirms that Zhang's 'Digital Channel Demultiplexer 230' alone, not Zhang's Selector 240, corresponds to the claimed 'digital front end (DFE).'" *Id.* To illustrate its position, Patent Owner directs us to a figure from the Petition, reproduced below. *Id.* at 36 (citing Pet. 7).



19

IPR2024-00435
Patent 11,381,866 B2

The figure from the Petition compares annotated versions of Zhang's Figure 2 and the '866 patent's Figure 6. Pet. 6–7. Patent Owner asserts "Petitioner has mapped Zhang's Selector 240 (upper figure) using the color orange to the arrow titled 'serial or parallel data interface to demodulator' that is output from the digital front end 230 in the '866 patent (dotted box in the lower figure)," effectively "mapp[ing] Zhang's selector 240 to the *output* of the '866 patent's digital front end (DFE)." PO Resp. 36–37; *see also id.* at 37–38 (citing Ex. 2018, 145:16–147:13 (Lett Deposition)). According to Patent Owner, "if Zhang's selector 240 maps to the *output* of the digital front end, it cannot be the front-end itself." *Id.* at 38.

Petitioner counters that "[t]he Petition identified Zhang's demultiplexer 230 combined with selector 240 for teaching the 'DFE' and 'serial interface' in element [1C]." Pet. Reply 20 (citing Pet. 22–26). Petitioner asserts that "Zhang's demultiplexer 230 and selector 240 . . . together . . . perform the DFE function of 'select and provide each of the plurality of desired channels, via a serial interface, without providing any of the plurality of undesired channels.'" *Id.* Petitioner adds, "Nothing in the claim language excludes the DFE from including Zhang's demultiplexer 230 and selector 240, or any other digital circuit that performed the functions recited in element [1C]." *Id.* at 22.

We agree with Petitioner. As discussed above, Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the recited DFE because they together are (1) "coupled to the wideband ADC" and (2) "configured to concurrently select and provide each of the plurality of desired channels," (3) "via a serial interface," (4) "without providing any of the plurality of undesired channels," as recited. Pet. 22–24. For the recited

IPR2024-00435
Patent 11,381,866 B2

serial interface, Petitioner relies specifically on Zhang's selector 240. *Id.* at 24 ("Selector 240 further provides the desired channels 'via a serial interface' as recited in Element [1C]."). To demonstrate this mapping, Petitioner uses the color orange in its comparison figure to match Zhang's selector 240 to the '866 patent's *serial interface. See id.* at 6 ("Zhang discloses the same cable TV device as the '866 patent. This includes . . . providing a plurality of desired channels via a serial interface (**orange**) (Element [1C])."); *id.* at 7 (comparison figure). Accordingly, Patent Owner's argument that Petitioner's comparison figure is mapping Zhang's selector 240 to the output of the '866 patent's digital frontend fails.

Patent Owner further argues that Petitioner's declarant Mr. Lett "opined that the claim requires the acts of 'select[ing] and provid[ing]' to occur 'concurrently,'" and that Petitioner "fails to show that the claims are disclosed or obvious under the construction proposed by its own expert." PO Resp. 42–44 (citing Ex. 2019, 76:9–77:5 (Lett Deposition)). Patent Owner asserts that Zhang's "channel demultiplexer 230 and selector 240 process the data sequentially, not concurrently." *Id.* at 43. Patent Owner asserts in particular, "Zhang explains that the digital channel demultiplexer 230 'demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$,'" and "the selector 240 then 'receives' the demultiplexed channels $C_1$–$C_n$, and selects channels $D_1$–$D_m$ from the received channels." *Id.* at 43–44 (citing Ex. 1013 ¶ 28, Fig. 2).

Petitioner counters that Patent Owner "distorts an out-of-context deposition response by Petitioner's expert to argue that *Petitioner's* claim construction position is that the claim excludes providing data some time after it has been selected," which Petitioner contends is "a construction the

21

IPR2024-00435
Patent 11,381,866 B2

Petition and its expert did not adopt" and "[Patent Owner] also does not ask the Board to adopt." Pet. Reply 23. Petitioner further contends "the Petition described how Zhang's Figure 3, like the '866 patent's Figure 2, includes multiple parallel signal paths for 'concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$.'" *Id.* at 22 (citing Pet. 23–24). In particular, "Zhang's demultiplexer 230 concurrently selects and then provides each 'C' channel with every other 'C' channel." *Id.* at 22–23. Petitioner adds that construing "concurrently" to exclude any delay as a signal travels from input to output would be improper "because it is contrary to element [1C]'s requirement that 'concurrently select and provide' be 'via a serial interface'" and "this delay [is] inherent in all circuits." *Id.* at 24 (citing Ex. 1079, 77:6–79:24 (Lett Reply Declaration)).

We agree with Petitioner. Nowhere in the Petition does Petitioner propose construing "concurrently" to exclude sequentially processing data. *See* Pet. In connection with the claim term "concurrently," Petitioner provides an annotated version of Figure 2 of Zhang in its Petition, reproduced below. *Id.* at 23.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

22

IPR2024-00435
Patent 11,381,866 B2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that Zhang's "[d]igital tuner 300 (an embodiment of demultiplexer 230) . . . includ[es] multiple signal paths for concurrently selecting and providing a plurality of desired channels $C_1$–$C_n$ (**light blue**)." Pet. 23 (citing Ex. 1013, Fig. 3). Petitioner explains that "[e]ach path receives the multi-channel digital RF signal from ADC 220 and operates concurrently to select one respective desired channel," and that "selector 240 provides 'm' channels $D_1$–$D_m$ selected from any or all of channels $C_1$–$C_n$ . . . for demodulation by one or more demodulators." *Id.* at 24. Petitioner appears to argue in the Petition that processing data along Zhang's parallel paths at the same time satisfies "concurrently." Patent Owner does not dispute Petitioner's position in this regard.

In its Reply, Petitioner further contends that, "even with the signal propagation delay [(i.e., sequential processing)], Zhang, like the '866 patent, performs the 'selecting' concurrently with the 'providing' because the desired channels are digital data *streams*, for example, as shown in the Petition passing through the serial interface." Pet. Reply 25 (citing Pet. 23–26; Ex. 1078 ¶ 31). Petitioner asserts that "when a channel is first selected, there is a time lapse to when the channel starts streaming from the output; however, after that, the channel continues to stream and, thus it is concurrently being selected and provided." *Id.* (citing Ex. 1078 ¶ 31; Ex. 1079, 78:16–25, 81:4–11). In other words, "some data in the channel streams into the input of Zhang's demultiplexer 230 concurrently with other data in the channel streaming out of output from the serial interface of selector 240." *Id.* (citing Ex. 1078 ¶ 31).

23

IPR2024-00435
Patent 11,381,866 B2

Based on the record before us, we find that Zhang teaches the recited DFE of claim element 1C. *See* Pet. 22–27.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3. Independent Claim 14

Claim 14 is directed to a "cable TV device" comprising a "wideband analog-to-digital converter (ADC)" and a "plurality of digital down converters." Petitioner designates the preamble as element 14A and the recited limitations as elements 14B through 14D.

Elements 14A and 14B are similar to elements 1A and 1B. For elements 14A and 14B, Petitioner relies on the same analysis discussed above with respect to elements 1A and 1B. Pet. 28. Patent Owner does not dispute Petitioner's contentions regarding elements 14A or 14B. *See* PO Resp. Based on Petitioner's argument and evidence, and for the reasons given above as to elements 1A and 1B, we find that Zhang teaches elements 14A and 14B. *See* Pet. 20–22.

We turn now to claim elements 14C and 14D, starting with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 14C: "plurality of digital down converters"

Claim 14 recites "a plurality of digital down converters coupled to the wideband ADC, wherein each digital down converter, of the plurality of digital down converters, is operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels."

24

IPR2024-00435
Patent 11,381,866 B2

For this limitation, Petitioner cross-references its discussion regarding claim element 1C and contends "a POSITA would have understood 'a plurality of digital down converters' to be included in the DFE digital circuit illustrated in [Zhang's] Figure 2." Pet. 28. As discussed above, Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the DFE recited in claim 1. *Id.* at 22.

Petitioner further provides an annotated version of Figure 3 of Zhang, reproduced below. Pet. 29.



**Ex. 1013, Fig. 3 (annotated)**

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 30. Referring to Figure 3, Petitioner asserts that "Zhang's demultiplexer 230 . . . includ[es] a plurality of signal paths, each with a complex multiplier (**purple**) and filter 330 (**green**) that are coupled to ADC 220 (claimed 'wideband ADC') and operable to generate 'target' channels $C_1$–$C_n$ (**light blue**) selected by the subscriber (claimed 'desired channels')." Pet. 29 (citing Ex. 1013 ¶¶ 12, 28, 30–32, Fig. 3). According

25

IPR2024-00435
Patent 11,381,866 B2

to Petitioner, "[e]ach path in Zhang is one of a 'plurality of digital down converters . . . operable to generate a digital channel output corresponding to each desired channel, of the plurality of desired channels' as recited in Element [14C]." *Id.*

Patent Owner makes several arguments regarding claim element 14C, which we will address below.

### b. Element 14D: "serial interface"

In connection with claim element 14C, claim 14 further recites "the plurality of digital down converters is operable to provide each digital channel output via a serial interface." For this limitation, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below. Pet. 31.



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang's demultiplexer 230 . . . provides channels $C_1$–$C_n$ (**light blue**) (which include each claimed 'digital channel output') via a selector 240 as channels $D_1$–$D_m$ to one or more demodulators 250." Pet. 30 (citing Ex. 1013 ¶¶ 5, 28, 38–39, 47). Relying on its discussion regarding claim element 1C, Petitioner adds

26

IPR2024-00435
Patent 11,381,866 B2

that "[e]mbodiments of selector 240 use a serial interface." *Id.* at 30–31 (citing Ex. 1002 ¶¶ 113–119; Ex. 1013 ¶¶ 38–39, Fig. 5).

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang does not expressly disclose the claimed 'serial interface,' implementing Zhang's demultiplexer 230 to provide each digital channel output via a serial interface was obvious as one of two common and predictable design choices . . . used by POSITAs as described above for Element [1C]." Pet. 32.

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 14D. *See* PO Resp. Based on Petitioner's argument and evidence, and for the reasons given above as to claim element 1C, we find that Zhang teaches the recited serial interface of claim element 14D. *See* Pet. 30–32.

### c. The Parties' Dispute

As noted above, Patent Owner disputes Petitioner's analysis for claim element 14C. Patent Owner argues in particular "the plurality of digital down converters relied upon by Petitioner in Zhang down convert both desired and undesired channels, and thus are not '***each***' 'operable to generate a digital channel output ***corresponding to each desired channel***.'" PO Resp. 10; *see also id.* at 12–28 (arguing that "channels $C_1$–$C_n$ are all channels in the entire signal band, both desired and undesired" (capitalization and emphasis omitted)).

Patent Owner's argument is unavailing. We consider Petitioner's annotated version of Figure 2 of Zhang, reproduced below. Pet. 23, 31.

27

IPR2024-00435
Patent 11,381,866 B2



Fig. 2

**Ex. 1013, Fig. 2 (annotated)**

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner identifies each of the signal paths across Zhang's demultiplexer 230 and selector 240 as the recited plurality of digital down converters. Pet. 22 (as to claim 1, asserting "Zhang teaches the claimed 'digital frontend (DFE)' as Digital Channel Demultiplexer 230 and a portion of Digital Selector 240"); *id.* at 28 (as to claim 14, asserting "a POSITA would have understood 'a plurality of digital down converters' to be included in the DFE digital circuit illustrated in [Zhang's] Figure 2").

As discussed above with respect to claim 1 (*see supra* Part III.B.2.d), Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. Petitioner points out that Zhang even refers explicitly to each of selected or used channels $C_1$–$C_n$ as a "*desired* RF channel." *Id.* ¶ 32 (emphasis added) ("[O]scillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."). In this way, channels $C_1$–$C_n$ satisfy the recited desired channels.

28

IPR2024-00435
Patent 11,381,866 B2

Turning back to Petitioner's annotated version of Zhang's Figure 2, reproduced above, we find that each signal path across demultiplexer 230 and selector 240 (which Petitioner identifies as the recited digital down converters) generates a digital channel output (see outputs of demultiplexer 230) corresponding to each channel $C_1$–$C_n$ (which Petitioner identifies as the recited desired channels). *See* Pet. 23, 28–29.

We note Patent Owner's contention that Zhang's reference to "an entire signal band with n channels" means channels $C_1$–$C_n$ include both desired and undesired channels. PO Resp. 12 (citing Ex. 1013 ¶ 27); *id.* at 18 ("[I]t is undisputed that the number 'n' is the number of both desired and undesired channels in the 'entire signal band.'"); *id.* at 20. As noted above, however, Zhang explains that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28; *see also id.* ¶ 42 ("A demultiplexer . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$. . . . *The exact number will depend on the specific application*." (emphasis added)); *id.* ¶ 30 ("Digital tuner 300 includes a bank of n numeric control oscillators . . . , complex multipliers . . . , and low-pass filters . . . . One chain of each of these elements is used for each RF channel. *The exact number of these elements will depend on the number of RF channels to be demultiplexed*." (emphasis added)). Zhang then characterizes each of channels $C_1$–$C_n$ as a "desired RF channel." *Id.* ¶ 32 ("Numeric oscillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."); *id.* (LPFs 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes."). In the context of Zhang's full disclosure, the reference to "an

29

IPR2024-00435
Patent 11,381,866 B2

entire signal band with n channels" appears to be a reference to a signal band that *includes* the selected (or used) n channels. That is, the signal band could also include unselected (or unused) channels. This reading is further supported by claim 8 of Zhang, which recites "the ADC converts an entire signal band, the signal band including the multichannel analog RF signal." *Id.*, claim 8 (cited by Pet. 21–22).

We also note Patent Owner's contention that Zhang's prosecution history reveals "the applicant explained that it is the selector that distinguished Zhang from its prior art, where all of the channels were demodulated." PO Resp. 15–16; *see also id.* at 20–21 ("[I]f Zhang's Figure 3 down converted and output only desired channels, there would have been no need for the subsequent channel selector 240 to select desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." (quoting Ex. 2009 ¶ 57 (Declaration of Dr. Russ))). Distinguishing Zhang from the prior art based on Zhang's selector, however, does not mean Zhang's channels $C_1$–$C_n$ include both desired and undesired channels. Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber," and that "selector 240 . . . selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28. In other words, channels $C_1$–$C_n$ may be a set of subscriber-selected channels while channels $D_1$–$D_m$ may be a further set of subscriber-selected channels that are a subset of channels $C_1$–$C_n$. Being able to select a subset of channels translates to systems that are faster and dissipate less heat because fewer resources are needed to demodulate only the selected subset of channels. *See id.*

30

IPR2024-00435
Patent 11,381,866 B2

Patent Owner further argues "Petitioner's assertion that Zhang's channels $C_1$–$C_n$ disclose the claimed 'desired channels' . . . is also inconsistent with Petitioner's mapping of Zhang to other limitations," namely claim element 14D.  PO Resp. 26–27.  To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below.  *Id.* at 27.



Figure 5 "**selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$** and then **sends them** to appropriate demodulators or outputs ports ... **through different data buses** ...." Ex. 1013 [Zhang] [0039]

Fig. 5

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2.  *See* Ex. 1013 ¶ 38.  Patent Owner asserts "what is 'provided' on Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ (blue) shown on the right-hand side output of Data bus 1, not channels $C_1$–$C_n$ (red)."  PO Resp. 27.  According to Patent Owner, to the extent that Petitioner relies on channels $C_1$–$C_n$ as the desired channels for claim element 14C, "that mapping contradicts

31

IPR2024-00435
Patent 11,381,866 B2

Petitioner's mapping for limitation 14[d], where Petitioner must rely on channels $D_1$–$D_m$ as 'the plurality of desired channels' output by down converters via a serial bus." *Id.* at 28.

We disagree with Patent Owner's position that "Petitioner must rely on channels $D_1$–$D_m$ as 'the plurality of desired channels' output by down converters via a serial bus." *See* PO Resp. 28. Claim 14D recites "the plurality of digital down converters is operable to provide each digital channel output [corresponding to each desired channel] via a serial interface." As shown in Figures 2, 3, and 5 of Zhang, each path across demultiplexer 230 and selector 240 (i.e., "digital down converters") provides a digital channel output (e.g., outputs for channels $C_1$–$C_n$) corresponding to a desired channel (e.g., channels $C_1$–$C_n$) that is then provided via a serial interface in selector 240 (e.g., selector 500) as further channels (e.g., channels $D_1$–$D_m$). Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 27 (annotation acknowledging Zhang's "Figure 5 'selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports . . . through different data buses.'" (quoting Ex. 1013 ¶ 39)). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited desired channels is persuasive.

Even if Petitioner must rely on channels $D_1$–$D_m$ as the recited desired channels in claim element 14D, Patent Owner's argument that Petitioner's mapping is inconsistent still fails. Claim element 14C recites "each digital down converter . . . is operable to generate a digital channel output corresponding to each desired channel." Claim element 14D adds "the

32

IPR2024-00435
Patent 11,381,866 B2

plurality of digital down converters is operable to provide each digital channel output via a serial interface."

As discussed above, Petitioner relies on its discussion of claim element 1C as part of its analysis for claim element 14C. Pet. 28. In that discussion, Petitioner points to where Zhang teaches that "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and that "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Petitioner asserts that "[s]elector 240 further provides the desired channels 'via a serial interface.'" Pet. 24–26 (citing Ex. 1013 ¶¶ 38–39, Fig. 5; Ex. 1002 ¶¶ 112–116). Thus, each path across Zhang's demultiplexer 230 and selector 240 (i.e., "digital down converters") generates a digital channel output (e.g., outputs for channels $D_1$–$D_m$) corresponding to each desired channel (e.g., channels $D_1$–$D_m$) and provides each digital output via a serial interface in selector 240 (e.g., selector 500). *See* Pet. 24 ("Selector 240 further provides the desired channels."); Pet. Reply 6 ("[T]he output provides $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28, Figs. 2, 3, 5. As noted above, Patent Owner acknowledges Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 33 (annotated Figure 2 of Zhang). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

Based on the record before us, and for the reasons given above with respect to claim element 1C, we find that Zhang teaches the recited plurality of digital down converters of claim element 14C. *See* Pet. 28–30.

33

IPR2024-00435
Patent 11,381,866 B2

In view of the foregoing, we find that Zhang teaches all the limitations of claim 14.

### 4. Independent Claim 27

Claim 27 is directed to a "cable television (TV) device" and recites similar limitations as claim 1. For example, claim 27 recites a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." For these similarly recited limitations, Petitioner relies on its discussion of claim 1. Pet. 32–33. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 27.

Claim 27 adds that "the cable TV device comprises a digital video recorder (DVR)." For this limitation, Petitioner asserts "Zhang's cable TV device may be integrated as a wide-band front-end of a 'set-top box/PVR/home media server.'" Pet. 33 (citing Ex. 1013 ¶ 45, Fig. 8). According to Petitioner, "[a] POSITA would have understood that 'PVR' stands for 'personal video recorder,' which is an alternate name for 'DVR' or 'digital video recorder' for recording content received by a STB." *Id.* Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 139–140).

Patent Owner does not specifically dispute Petitioner's contentions regarding this additional limitation of claim 27. *See* PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited DVR of claim 27. *See* Pet. 33.

34

IPR2024-00435
Patent 11,381,866 B2

In view of the foregoing, we find that Zhang teaches all the limitations of claim 27.

### 5. Independent Claim 41

Claim 41 is directed to a "cable TV device" and recites similar limitations as claims 14 and 27. For example, claim 41 recites a "wideband analog-to-digital converter (ADC)," a "plurality of digital down converters," and a "digital video recorder (DVR)." For these similarly recited limitations, Petitioner relies on its discussion of claims 14 and 27. Pet. 33–34. Patent Owner relies on its arguments regarding claim 14. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claims 14 and 27, we find that Zhang teaches all the limitations of claim 41.

### 6. Dependent Claims

Each of claims 3–7, 9, 11, 13, 16–20, 22, 24, 26, 29–33, 35–37, 40, 43–47, 49–51, and 54 depends from independent claims 1, 14, 27, or 41. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 34–49 (citing Ex. 1013 ¶¶ 5–7, 11–12, 24–25, 28–34, 38–39, 41–48, Figs. 2, 3, 5). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 65–67, 72, 74–76, 78–79, 115–118, 145–184).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 34–49), we find that Zhang teaches the limitations of the dependent claims.

35

IPR2024-00435
Patent 11,381,866 B2

### 7. Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, and 54 are anticipated by Zhang or would have been obvious over Zhang.

### C. Asserted Challenge Based on Zhang and Reisman

Petitioner asserts that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 of the '866 patent would have been obvious over Zhang and Reisman. Pet. 49–59. Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 4–45. For the reasons explained below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 would have been obvious over Zhang and Reisman.

We provided an overview of Zhang above. *See supra* Part III.B.1. Before addressing the claims, we additionally provide an overview of Reisman.

### 1. Overview of Reisman

Reisman describes "interactive television" (ITV), where the TV includes a set-top box (STB). Ex. 1052 ¶¶ 2, 43, 98. Reisman explains that ITV may include interactivity with the TV through a digital video recorder (DVR), which also is known as a personal video recorder (PVR). *Id.* ¶¶ 48, 60. Additionally, Reisman explains that ITV may include a featured called

36

IPR2024-00435
Patent 11,381,866 B2

picture-in-picture (PIP), where a region of the TV screen presents a reduced scale video image. *Id.* ¶ 121.

### 2. *Independent Claims 27 and 41*

As discussed above, we determine that Petitioner has shown by a preponderance of the evidence that claims 27 and 41 are anticipated by Zhang or would have been obvious over Zhang.

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang's PVR is not a 'DVR' as recited in Elements [27D] and [41D], Reisman discloses this feature." Pet. 50. Petitioner asserts that "Reisman teaches that STBs in a cable system may include a digital video recorder (DVR)." *Id.* (citing Exc. 1052 ¶¶ 5, 43, 48, 60, 73, 98, 112, 118, 191, 197, 212, 281–285, 296, 546). According to Petitioner, an ordinarily skilled artisan "would have been motivated [to] include Reisman's DVR in Zhang's STB to provide a more feature-filled and individualized user experience, which in the proposed combination still includes Zhang's wideband front-end receiver components cited for Elements [27A]–[27C] and [41A]–[41C]." *Id.* Petitioner explains that "Reisman's DVR improves user experience by allowing time-shifted and on-demand view, and enabling, e.g., fast-forwarding, rewinding, and pausing of live programming." *Id.* (citing Ex. 1052 ¶¶ 191, 197, 212, 284–285, 546, 758); *see also id.* at 50–51 (asserting that the proposed combination "merely applies a known technique of integrating a DVR into a STB . . . to a known STB . . . that was ready for improvement to yield a predictable result" and that an ordinarily skilled artisan "would have had a reasonable expectation of success").

37

IPR2024-00435
Patent 11,381,866 B2

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 50–51), we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claims 27 and 41. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness. *See In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").

### 3. *Independent Claim 55*

Claim 55 is directed to a "cable television (TV) device" and recites similar limitations as claim 1. For example, claim 55 recites a "wideband analog-to-digital converter (ADC)" and a "digital frontend (DFE)." For these similarly recited limitations, Petitioner relies on its discussion of claim 1. Pet. 51. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 28. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 55.

Claim 55 adds that "the cable TV device is operable to configure at least some of the plurality of desired channels as an output for a picture-in-picture display." For this limitation, Petitioner asserts that "Reisman teaches that STBs in a cable system include a 'picture-in-picture display.'" Pet. 52 (citing Ex. 1052 ¶¶ 73, 98, 118, 120–121, 187, 278, 291, 378, 534, 537, 546, Fig. 3). Petitioner contends that "[a] POSITA would have been motivated to include Reisman's 'picture-in-picture display' capability in Zhang's STB, which in the proposed combination still has the wideband front-end receiver

38

IPR2024-00435
Patent 11,381,866 B2

components cited for Elements [55A]–[55C] . . . to allow a user to view different content simultaneously." *Id.* Petitioner explains that Reisman's "'picture-in-picture' beneficially displays a program in a PIP window while simultaneously providing, e.g., navigation options and interactive content in other windows," and "enables 'multitasking,' by displaying, e.g., two TV programs, and swapping them between full screen and a smaller PIP window." *Id.* at 52–53 (citing Ex. 1052 ¶¶ 61, 63, 378, 546); *see also id.* at 53 (asserting that the proposed combination "represents the obvious application of a known technique . . . to a known device . . . that was ready for improvement to yield a predic[t]able result" and that an ordinarily skilled artisan "would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 52–53), and for the reasons given above with respect to claim 1, we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claim 55. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 4. *Independent Claim 69*

Claim 69 is directed to a "cable TV device" and recites similar limitations as claims 14 and 55. For example, claim 69 recites a "wideband analog-to-digital converter (ADC)," a "plurality of digital down converters," and a "picture-in-picture display." For these similarly recited limitations, Petitioner relies on its discussion of claims 14 and 55. Pet. 54. Patent Owner relies on its arguments regarding claim 14. *See* PO Resp. 9. Based

39

IPR2024-00435
Patent 11,381,866 B2

on Petitioner's argument and evidence, and for the reasons given above as to claims 14 and 55, we find the proposed combination of Zhang and Reisman teaches all the limitations of claim 69 and that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 8. *Dependent Claims*

Each of claims 9–12, 23–25, 29–33, 35–40, 43–47, 49–54, 57–61, 63–68, 71–75, and 77–82 depends from independent claims 1, 14, 27, 41, 55, or 69. Petitioner contends that its proposed combination of Zhang and Reisman teaches the limitations recited in the dependent claims. Pet. 54–59 (citing Ex. 1013 ¶ 47; Ex. 1052 ¶¶ 8, 52, 63, 73, 86–89, 90, 98, 120–121, 125, 149, 235, 304, 484, 643–645, Fig. 1). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 150–184, 194–198, 200–220).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 9–12, 23–25, 29–33, 35–40, 43–47, 49–54, 57–61, 63–68, 71–75, and 77–82. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 54–59), we find that Zhang teaches the limitations of these dependent claims.

### 9. *Summary*

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 23–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, and 77–82 would have been obvious over Zhang and Reisman.

40

IPR2024-00435
Patent 11,381,866 B2

### D. Asserted Challenge Based on Zhang and Jackson

Each of claims 2–6, 15–19, 28–32, and 42–46 depends from independent claims 1, 14, 27, or 41. Petitioner asserts that these dependent claims would have been obvious over Zhang and Jackson. Pet. 59–71. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 64–67, 225–250).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 2–6, 15–19, 28–32, and 42–46. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 59–71), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6, 15–19, 28–32, and 42–46 would have been obvious over Zhang and Jackson.

### E. Asserted Challenge Based on Zhang, Reisman, and Jackson

Each of claims 28–32, 42–46, 56–60, and 70–74 depends from independent claims 27, 41, 55, or 69. Petitioner asserts that these dependent

IPR2024-00435
Patent 11,381,866 B2

claims would have been obvious over Zhang, Reisman, and Jackson. Pet. 59–71. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 64–67, 225–250).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 28–32, 42–46, 56–60, and 70–74. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 59–71), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 28–32, 42–46, 56–60, and 70–74 would have been obvious over Zhang, Reisman, and Jackson.

## F. Asserted Challenge Based on Zhang and Pandey

Petitioner asserts that claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 would have been obvious over Zhang and Pandey. Pet. 72–79. Petitioner cross-references its discussion of Zhang's teaching of the serial

42

IPR2024-00435
Patent 11,381,866 B2

interface of claims 1, 14, 36, 50, 64, and 78 as well as the parallel interface of claims 35, 49, 63, and 77. *Id.* at 72. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 72–79 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:27, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 252–262).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 72–79), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, and 48–50 would have been obvious over Zhang and Pandey.

*G. Asserted Challenge Based on Zhang, Reisman, and Pandey*

Each of claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 depends from independent claims 1, 14, 27, 41, 55, and 69. Petitioner

43

IPR2024-00435
Patent 11,381,866 B2

asserts that these dependent claims would have been obvious over Zhang, Reisman, and Pandey. Pet. 72–79. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 14, 36, 50, 64, and 78 as well as the parallel interface of claims 35, 49, 63, and 77. *Id.* at 72. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 72–79 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:27, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 252–262).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 72–79), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Pandey teaches the limitations of claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 22–25, 34–36, 48–50, 62–64, and 76–78 would have been obvious over Zhang, Reisman, and Pandey.

44

IPR2024-00435
Patent 11,381,866 B2

*H. Asserted Challenge Based on Zhang, Jackson, and Pandey*

Each of claims 2–6 and 15–19 depends from independent claims 1 or 14. Petitioner asserts that these dependent claims would have been obvious over Zhang, Jackson, and Pandey. Pet. 79–80. Petitioner cross-references its discussion regarding its challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey. *Id.* at 79 (citing Ex. 1002 ¶ 263–264).

Patent Owner does not specifically dispute Petitioner's contentions for this challenge. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 79–80), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey, we find that Petitioner's proposed combination of Zhang, Jackson, and Pandey teaches the limitations of claims 2–6 and 15–19 and that Petitioner's proffered reasoning for combining Zhang, Jackson, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6 and 15–19 would have been obvious over Zhang, Jackson, and Pandey.

IPR2024-00435
Patent 11,381,866 B2

## IV. CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance of the evidence that claims 1–82 of the '866 patent are unpatentable as follows.[6]

---

[6] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

IPR2024-00435
Patent 11,381,866 B2

| Claim(s) | 35 U.S.C. § | Reference(s)/ Basis | Claim(s) Shown Unpatentable | Claim(s) Not Shown Unpatentable |
|---|---|---|---|---|
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 102 | Zhang | 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | |
| 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | 103(a) | Zhang | 1, 3–7, 9, 11, 13, 14, 16–20, 22, 24, 26, 27, 29–33, 35–37, 40, 41, 43–47, 49–51, 54 | |
| 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | 103(a) | Zhang, Reisman | 9–12, 22–25, 27, 29–33, 35–41, 43–47, 49–55, 57–61, 63–69, 71–75, 77–82 | |
| 2–6, 15–19, 28–32, 42–46 | 103(a) | Zhang, Jackson | 2–6, 15–19, 28–32, 42–46 | |
| 28–32, 42–46, 56–60, 70–74 | 103(a) | Zhang, Reisman, Jackson | 28–32, 42–46, 56–60, 70–74 | |
| 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | 103(a) | Zhang, Pandey | 1, 3–9, 11, 13, 14, 16–22, 24, 26, 34–36, 48–50 | |
| 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | 103(a) | Zhang, Reisman, Pandey | 9–12, 22–25, 34–36, 48–50, 62–64, 76–78 | |
| 2–6, 15–19 | 103(a) | Zhang, Pandey, Jackson | 2–6, 15–19 | |
| **Overall Outcome** | | | 1–82 | |

47

IPR2024-00435
Patent 11,381,866 B2

## V.  ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–82 of the '866 patent have been shown to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.


FOR PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
Craig W. Kronenthal
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com
ckronenthal@bannerwitcoff.com

FOR PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
Matthew A. Blair
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com

IPR2024-00435
Patent 11,381,866 B2

nolan.hubbard@klgates.com
matthew.blair@klgates.com

Kenneth J. Weatherwax
Parham Hendifar
Nathan Lowenstein
Colette Woo
Kenneth Wang
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com
woo@lowensteinweatherwax.com
wang@lowensteinweatherwax.com

49

## <u>CERTIFICATE OF SERVICE</u>

I certify that counsel for the parties have been served with a true and correct

copy of the foregoing document via the Court's CM/ECF system on March 30, 2026.


Date: March 30, 2026                    /s/ *Parham Hendifar*
                                        Parham Hendifar
                                        *Counsel for Patent Owner-Appellant*
                                        *Entropic Communications, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S CORRECTED NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

| | |
|---|---|
| Frederic M. Meeker | fmeeker@bannerwitcoff.com |
| Michael S. Cuviello | mcuviello@bannerwitcoff.com |
| H. Wayne Porter | wporter@bannerwitcoff.com |
| Paul T. Qualey | pqualey@bannerwitcoff.com |
| Joshua L. Davenport | jdavenport@bannerwitcoff.com |
| | ComcastIPRService@bannerwitcoff.com |

Respectfully submitted,

/Abbie Neufeld/

Abbie Neufeld

Date:  March 30, 2026

1

# CERTIFICATE OF FILING WITH USPTO

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
CORRECTED NOTICE OF APPEAL**

Respectfully submitted,

/Abbie Neufeld /
Abbie Neufeld

Date:  March 30, 2026

Trials@uspto.gov                                                    Paper 46
571-272-7822                                      Date: October 1, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.
_____

IPR2024-00438
Patent 11,399,206 B2
_____

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

WORMMEESTER, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00438
Patent 11,399,206 B2

## I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–76 of U.S. Patent No. 11,399,206 B2 (Ex. 1001, "the '206 patent").  Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10).  Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition.  Paper 14 ("Inst. Dec.").  Thereafter, Patent Owner filed a Response (Paper 24, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 29, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 34, "PO Sur-reply").  On July 18, 2025, we conducted an oral hearing.  A copy of the transcript (Paper 43) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b).  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–76 of the '206 patent are unpatentable.

## II.    BACKGROUND

### A. *Related Proceedings*

The parties identify various federal district court cases and petitions for *inter partes* review.  *See* Pet. viii–ix; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 28, 1–2 (Patent Owner's Third Updated Mandatory Notices).

IPR2024-00438
Patent 11,399,206 B2

### B. The '206 Patent

The '206 patent describes "wideband receiver systems that are capable of receiving multiple desired television channels that extend over multiple non-contiguous portions of the broad frequency spectrum and grouping them into a contiguous, or substantially-contiguous, frequency spectrum." Ex. 1001, 1:30–35. To illustrate one exemplary embodiment, Figure 2 of the '206 patent is reproduced below.



FIG. 2

Figure 2 is a block diagram of wideband receiver system 200 that includes radio front end 210, analog-to-digital convertors 218 (ADC1) and 228 (ADC2), and digital front end 230. *Id.* at 4:35–38, 5:33–35, Fig. 2. System 200 receives and processes channels 110, which are located in a radio frequency (RF) spectrum with frequency bandwidth 120 (BW1). *Id.* at 2:13–15, 4:39–42. There are ten available channels in bandwidth 120, where each channel occupies 8 MHz of bandwidth for a total of 80 MHz. *Id.*

3

IPR2024-00438
Patent 11,399,206 B2

at 4:42–45. Of these available channels, there are four desired channels with respective carrier frequencies $f_{rf1}$, $f_{rf2}$, $f_{rf3}$, and $f_{rf4}$ that are located in noncontiguous portions of bandwidth 120. *Id.* at 4:47–51.

Radio front end 210 is a wideband tuner receiver that includes low noise amplifier 202 (LNA), mixers 211 (M1) and 221 (M2), amplifiers 213 (V1) and 223 (V2), as well as filters 215 (F1) and 225 (F2). Ex. 1001, 4:39–5:32. Digital front end 230 includes N complex mixers 250, where N is the number of desired channels located in the noncontiguous portions of bandwidth 120. *Id.* at 5:51–55, Fig. 2. In Figure 2's example, N represents four desired RF channels. *Id.* at 5:63–65. Digital front end 230 also includes filter modules 260a–260n and demodulators 270a–270n. *Id.* at 6:6–12, Fig. 2.

In operation, radio front end 210's low noise amplifier 202 receives RF input signal 102, which includes the four desired RF channels. Ex. 1001, 4:45–51. Mixers 211 and 221 multiply (mix) amplified RF signal 203 with respective first oscillator frequency signal 205 and second oscillator frequency signal 207 to generate in-phase signal 212 and quadrature signal 222, which have a phase shift of ninety degrees between them. *Id.* at 4:61–66. Signals 212 and 222 are further amplified by respective amplifiers 213 and 223 to generate signals 214 and 224, which are then filtered by respective filters 215 and 225 to generate filtered in-phase signal 216 and filtered quadrature signal 226. *Id.* at 5:17–20, Fig. 2.

After being processed in radio front end 210, filtered signals 216 and 226 are digitized for further processing in digital front end 230. Ex. 1001, 5:20–24. ADC1 218 generates digital in-phase signal 232 (I), which is a digital representation of analog filtered signal 216, and ADC2 228 generates

4

IPR2024-00438
Patent 11,399,206 B2

digital quadrature signal 242 (Q), which is a digital representation of analog filtered signal 226. *Id.* at 5:48–51.

In digital front end 230, each complex mixer 250 receives digital signals 232 and 242 from ADC1 218 and ADC2 228 to extract a different desired channel, and then frequency-shifts (downshifts) the extracted signal to the baseband frequency. Ex. 1001, 6:3–6, 6:53–56. Frequency-shifted channels 252a–252n are filtered by associated filter modules 260a–260n. *Id.* at 6:6–8. Next, filtered channels 262a–262n are decimated and sent to associated demodulators 270a–270n that extract the original information transmitted in each desired channel. *Id.* at 6:8–14. The decimated baseband channels may be sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface. *Id.* at 7:10–14, Fig. 2.

According to the '206 patent, its approach "eliminates the need of expensive data conversion, filtering and channel selection on the demodulator side," and "removes undesired channels from the signal path at an early stage, thus reliev[ing] the large dynamic range requirement in the demodulator." Ex. 1001, 7:14–19.

## C. Illustrative Claims

Petitioner challenges claims 1–76 of the '206 patent. Claims 1, 13, 25, 38, 51, and 64 are independent. Claims 1 and 13 are reproduced below.

1. A method for receiving a television (TV) signal comprising:

    receiving an input signal from a cable network;

    digitizing a contiguous band of frequencies in the input signal via a wideband analog-to-digital converter (ADC), wherein the contiguous band of frequencies comprises all received channels that exist in the input signal and the

IPR2024-00438
Patent 11,399,206 B2

> received channels comprise a plurality of desired channels and a plurality of undesired channels;
>
> concurrently selecting each of the plurality of desired channels from the input signal without selecting any of the plurality of undesired channels; and
>
> providing the plurality of desired channels via a serial interface.

13. A method comprising:

> receiving an input signal from a cable network;
>
> digitizing all received channels in the input signal via wideband analog-to-digital converter (ADC), wherein the received channels comprise a plurality of desired channels and a plurality of undesired channels;
>
> digitally down converting each desired channel, of the plurality of desired channels, to generate a plurality of digital channel outputs; and
>
> providing the plurality of digital channel outputs via a serial interface.

Ex. 1001, 12:15–28, 13:5–15.

### D. Asserted Challenges to Unpatentability

Petitioner asserts the following eight challenges to claims 1–76 of the '206 patent. Pet. 12–13, 19–75. We instituted *inter partes* review on each challenge. Inst. Dec. 34.

6

IPR2024-00438
Patent 11,399,206 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 102[1] | Zhang[2] |
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 103(a) | Zhang |
| 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | 103(a) | Zhang, Reisman[3] |
| 2–6, 14–18, 26–30, 39–43 | 103(a) | Zhang, Jackson[4] |
| 26–30, 39–43, 52–56, 65–69 | 103(a) | Zhang, Reisman, Jackson |
| 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | 103(a) | Zhang, Pandey[5] |
| 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | 103(a) | Zhang, Reisman, Pandey |
| 2–6, 14–18 | 103(a) | Zhang, Pandey, Jackson |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009).

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013. Because the application from which the '206 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Reisman, U.S. Publ'n No. 2003/0229900 A1, published Dec. 11, 2003 (Ex. 1052).

[4] Jackson et al., U.S. Publ'n No. 2009/0113504 A1, published Apr. 30, 2009 (Ex. 1057).

[5] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007 (Ex. 1014).

7

IPR2024-00438
Patent 11,399,206 B2

Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III. DISCUSSION

### A. Claim Construction

In an *inter partes* review proceeding, we construe a claim of a patent "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." *See* 37 C.F.R. § 42.100(b). That standard involves construing claims in accordance with the ordinary and customary meaning of such claims as would have been understood by a person of ordinary skill in the art ("POSITA") and the prosecution history pertaining to the patent. *See id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their ordinary and customary meaning to a POSITA." Pet. 18. Patent Owner does not respond. *See* PO Resp. For purposes of this Decision, we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B. Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 of the '206 patent are anticipated by Zhang. Pet. 19–45. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 3–50. For the reasons explained below, we

8

IPR2024-00438
Patent 11,399,206 B2

determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, we provide an overview of Zhang.

### 1. Overview of Zhang

Zhang describes demodulator circuits in broadband communications. Ex. 1013 ¶ 4. To illustrate one embodiment, Figure 2 of Zhang is reproduced below.



Fig. 2

Figure 2 is a diagram of multi-channel demodulator 200. *Id.* ¶ 23. Frequency-block down-converter 210 receives a multi-channel analog RF signal that can come from any of various sources such as satellite systems, terrestrial TV systems, and cable systems. *Id.* Down-converter 210 downshifts the multi-channel analog RF signal to a lower frequency band. *Id.* ¶ 25. Analog-to-digital converter 220 then converts the down-converted multi-channel analog RF signal to a multi-channel digital RF signal. *Id.*

9

IPR2024-00438
Patent 11,399,206 B2

¶ 27. Digital channel demultiplexer 230 demultiplexes the digital RF signal into separate digital RF channels $C_1$ to $C_n$. *Id.* ¶ 28. Digital selector 240 receives the demultiplexed digital RF channels and selects one or more of RF channels $D_1$ to $D_m$ from one or more of digital RF channels $C_1$ to $C_n$. *Id.* The m selected RF channels are fed into respective demodulators 250(1) to 250(m), where they are demodulated. *Id.* ¶ 29. The selected RF channels $D_1$ to $D_m$ then feed into digital transport interface 260. *Id.*

We turn now to the claims, starting with independent claims 1, 13, 25, and 38.

### 2. Independent Claim 1

Claim 1 is directed to a "method for receiving a television (TV) signal" and recites various steps including a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. Petitioner designates the preamble as element 1A and the recited steps as elements 1B through 1E. We address these elements, starting with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 1A: "method for receiving a television (TV) signal"

Claim 1 recites as its preamble "[a] method for receiving a television (TV) signal." Petitioner asserts that "Zhang describes an RF receiver, for example in a set-top box, that receives digital video channels over a cable system and that incorporates a DOCSIS return channel, which the '206 patent concedes is a protocol for 'cable networks that carry TV programs.'" Pet. 19–20 (citing Ex. 1013 ¶¶ 5–6, 23–25, 29, 41, 45–47; Ex. 1001, 9:4–8).

10

IPR2024-00438
Patent 11,399,206 B2

Patent Owner does not specifically dispute Petitioner's contentions regarding the preamble. *See* PO Resp. Although we do not determine whether the preamble is limiting, we are persuaded by Petitioner's argument and evidence that Zhang teaches the subject matter of the preamble.

### b. Element 1B: "receiving" step

Claim 1 recites "receiving an input signal from a cable network." For this step, Petitioner provides an annotated version of Figure 2 of Zhang, which is reproduced below. Pet. 20.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang discloses receiving a 'multi-channel analog RF signal' (the claimed 'input signal') from a cable system with a frequency block down converter 210 (**red**)." Pet. 20 (citing Ex. 1013 ¶¶ 5–6, 23–24, 41, 45–47). According to Petitioner, "[t]he multi-channel analog RF signal is 'an RF signal in a given frequency band that carries multiple RF channels.'" *Id.* (quoting Ex. 1013 ¶ 24).

11

IPR2024-00438
Patent 11,399,206 B2

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1B. *See* PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited receiving step of claim element 1B. *See* Pet. 20. For example, Zhang teaches its "frequency-block down-converter 210 receives one or more multi-channel analog RF signals which can be sourced by a variety of systems such as satellite systems, terrestrial TV systems, cable systems, etc." Ex. 1013 ¶ 23 (cited by Pet. 20).

### c. *Element 1C: "digitizing" step*

Claim 1 further recites "digitizing a contiguous band of frequencies in the input signal via a wideband analog-to-digital converter (ADC), wherein the contiguous band of frequencies comprises all received channels that exist in the input signal and the received channels comprise a plurality of desired channels and a plurality of undesired channels." For this step, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below. Pet. 22.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang's

12

IPR2024-00438
Patent 11,399,206 B2

Frequency Block Down Converter 210 'shifts the multi-channel analog RF signal to a lower frequency band,' which is then digitized by Zhang's ADC 220 (**gold**)." Pet. 21 (citing Ex. 1013 ¶¶ 10, 23–25, 27, 31, 34, 42, 44).

Petitioner contends that "Zhang's ADC is 'wideband' because the digitized multi-channel RF signal includes several channels, and the channels form 'a contiguous band of frequencies' because . . . they are spaced next to each other within a frequency band with a 'precise frequency spacing' (e.g., 6MHz) that is a fraction of the total bandwidth of the multi-channel RF signal (e.g., 540-750 MHz divided into 35 channels)." Pet. 21 (citing Ex. 1013 ¶¶ 6, 10, 24–25, 27, 41–42, 47). Petitioner adds, "Zhang expressly discloses that in alternate variations of its system, 'RF channels need not be contiguous,' teaching that in the embodiment otherwise described, the RF channels are 'a contiguous band of frequencies.'" *Id.* at 22 (quoting Ex. 1013 ¶ 48).

Petitioner further contends that Zhang's "ADC 220 . . . 'converts an entire signal band . . . including the multi-channel analog RF signal,'" which, according to Petitioner, means "the digitized frequency band 'comprises all received channels that exist in the input signal.'" Pet. 23 (quoting Ex. 1013, claim 8).

Lastly, Petitioner contends that Zhang's "digitized multi-channel RF signal includes 'target' RF channels that are selected and demodulated in subsequent stages (claimed 'desired channels'), and undesired RF channels are filtered out (claimed 'undesired channels')." Pet. 23 (citing Ex. 1013 ¶¶ 5, 10–12, 27–29, 31–32, 35–36, 41–42, claim 37).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1C. *See* PO Resp. Based on Petitioner's arguments

13

IPR2024-00438
Patent 11,399,206 B2

and evidence, we find that Zhang teaches the recited digitizing step of claim element 1C.

### d. Element 1D: "concurrently selecting" step

Claim 1 further recites "concurrently selecting each of the plurality of desired channels from the input signal without selecting any of the plurality of undesired channels."  For this step, Petitioner provides yet another annotated version of Figure 2 of Zhang, reproduced below.  Pet. 24.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner asserts that Zhang's "multi-channel digital RF signal is input to Demultiplexer 230 and a portion of Digital Selector 240 (collectively **purple**) . . . , which perform Element [1D]."  Pet. 23.

To illustrate, Petitioner also provides an annotated version of Figure 3 of Zhang, which is reproduced below.  Pet. 25.

14

IPR2024-00438
Patent 11,399,206 B2



Fig. 3

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 30. Petitioner asserts that Zhang's "[d]igital tuner 300 . . . includes a plurality of signal paths for concurrently selecting a plurality of desired channels $C_1 - C_n$ (**light blue**)," where "each path includes a complex multiplier 320 (**purple**) followed by a [low pass filter] 330 (**green**)." Pet. 24 (citing Ex. 1013 ¶¶ 30–34). Petitioner further asserts that each "complex multiplier 320 first downconverts (shifts) the multi-channel RF signal frequency so that a different 'target channel' selected by the subscriber within the signal is centered at baseband (0 Hz), and then low pass filter 330 filters out all undesired channels, so that one of the 'n' target digital channels $C_1$–$C_n$ (**light blue**) is output." *Id.* at 25 (citing Ex. 1013 ¶¶ 28, 31–37). In addition, Petitioner asserts that "[s]elector 240 provides 'm' channels $D_1$–$D_m$ selected from any or all of the channels $C_1$–$C_n$ (**light blue**) for demodulation by one or more demodulators." *Id.* at 25–26 (citing Ex. 1013 ¶¶ 5, 28, 38–39, 47). According to Petitioner, Zhang's "Demultiplexer 230 and Selector 240 output only user selected channels

15

IPR2024-00438
Patent 11,399,206 B2

(either all or a subset of the user selected 'C' channels) and filter out all other channels from the digitized multi-channel RF signal." *Id.* at 26 (citing Ex. 1013 ¶¶ 28, 39, 47).

Patent Owner makes several arguments regarding claim element 1D, which we will address below.

### e. *Element 1E: "providing" step*

Lastly, claim 1 recites "providing the plurality of desired channels via a serial interface." For this step, Petitioner provides an annotated version of Figure 5 of Zhang, reproduced below. Pet. 27.



**Ex. 1013, Fig. 5 (annotated)**

Figure 5 of Zhang, as annotated by Petitioner, is a diagram of digital selector 500, which may be used to implement digital selector 240 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 38. Petitioner asserts "[s]elector 240 may have only a single bus (e.g., Data bus 1) that receives channels $C_1 - C_n$ from the Channel Demultiplexer 230 (represented by green blocks with

16

IPR2024-00438
Patent 11,399,206 B2

different patterns) and sends them across the bus 'with the use of time division multiplexing.'" Pet. 26 (citing Ex. 1013 ¶¶ 38–39). According to Petitioner, "[a] POSITA would have understood that this sends different channels sequentially (serially) in different time divisions over a single data path as shown, and that such a path is a 'serial interface.'" *Id.* at 27. Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* at 26–28 (citing Ex. 1002 ¶¶ 115–119).

Under an alternative theory, Petitioner contends that, "[t]o the extent Zhang does not disclose a serial interface, implementing Zhang's circuitry to output the selected channels via a serial interface would have been obvious in light of the POSITA's general knowledge, creativity, and common sense as one of two common design choices that were well known and used by POSITAs in integrated circuit designs at the time." Pet. 28. Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* at 28–29 (citing Ex. 1002 ¶¶ 117, 120–121).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1E. *See* PO Resp. Based on Petitioner's arguments and evidence, we find that Zhang teaches the recited providing step of claim element 1E.

### f. *The Parties' Dispute*

As discussed above, Patent Owner disputes Petitioner's analysis for claim element 1D. Patent Owner argues in particular "the '206 patent ***only*** selects desired channels from the digitized input RF signal without selecting any undesired channels," whereas "Zhang performs no selection from the digitized input signal." PO Resp. 3; *see also id.* at 3–7. According to Patent

17

IPR2024-00438
Patent 11,399,206 B2

Owner, Zhang "blindly extracts **all** channels, **both** desired **and** undesired, from the digitized input RF signal without performing any selection" and "only later selects the desired channels from the extracted channels." *Id.* at 3. Patent Owner cites Dr. Russ's declaration testimony that "Zhang digitizes an input signal . . . , consisting of 'n' desired and undesired channels, in the analog to digital converter 220," then "extracts from the digitized RF input signal **all** channels $C_1$–$C_n$, **both** desired **and** undesired, in the Digital Channel DeMux 230 . . . without making any selection," and then uses the selector 240 to "select[] the desired channels and output[] them to demodulators." *Id.* at 5–6 (quoting Ex. 2009 ¶¶ 33–35).

Petitioner counters that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently teach the recited desired channels. Pet. Reply 4; *see also* PO Resp. 8–9 ("The Petition first appears to argue that Zhang's channels $C_1$–$C_n$ constitute the claimed 'plurality of desired channels.' . . . Subsequently, however, Petitioner appears to suggest that Zhang's channels $D_1$–$D_m$ may be the claimed 'desired channels.'"). Regarding channels $C_1$–$C_n$, Petitioner contends "Zhang does not mandate that $C_1$–$C_n$ include all channels." Pet. Reply 6. Petitioner asserts "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." *Id.* at 6 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42). As to channels $D_1$–$D_m$, Petitioner reiterates the "Petition's arguments, which identify a combination of demultiplexer 230 with all or part of the selector 240 for performing the 'selecting . . . from the input signal,'" where the "combined circuitry outputs $D_1$ to $D_m$, which are undisputedly desired channels . . . , and the

18

IPR2024-00438
Patent 11,399,206 B2

input of this circuitry is undisputedly the input signal comprising the plurality of desired channels from the ADCs." *Id.* at 6–7.

We agree with Petitioner. Starting with its argument that Zhang's channels $C_1$ to $C_n$ teach the recited desired channels, we consider Zhang's teaching that its "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28 (cited by Pet. 25). The fact that channels $C_1$–$C_n$ contain content channels that are "selected" or "used" implies that channels $C_1$–$C_n$ themselves are desired channels, not both desired and undesired channels. Indeed, as Petitioner points out, Zhang refers to each of channels $C_1$–$C_n$ as a "desired" channel:

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of *a desired RF channel, or "target" RF channel.* . . . Thus, *only the target RF channel passes.* Digital tuner circuit 300 then outputs the *separated RF channels $C_1$ to $C_n$* . . . .

*Id.* ¶ 32 (emphases added) (cited by Pet. Reply 5).

We note Patent Owner's contention that Zhang's reference to "an entire signal band with n channels" means channels $C_1$–$C_n$ include both desired and undesired channels. PO Resp. 11 (citing Ex. 1013 ¶ 27); *id.* at 17 ("[I]n Zhang, the number of complex multipliers 320 (1 . . . n) is the same number 'n' as the number of all channels, both desired and undesired, in the entire signal band."); *id.* at 18 ("Zhang is clear that the number 'n' in its disclosure denotes both desired and undesired in 'entire signal band.'"); *see also id.* at 16–24 (asserting "Petitioner's arguments are inconsistent with Zhang" (capitalization and emphasis omitted)). As noted above, however, Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28; *see also id.* ¶ 42 ("A

19

IPR2024-00438
Patent 11,399,206 B2

demultiplexer . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$. . . . *The exact number will depend on the specific application.*" (emphasis added)); *id.* ¶ 30 ("Digital tuner 300 includes a bank of n numeric control oscillators . . . , complex multipliers . . . , and low-pass filters . . . . One chain of each of these elements is used for each RF channel. *The exact number of these elements will depend on the number of RF channels to be demultiplexed.*" (emphasis added)). Zhang then characterizes each of channels $C_1$–$C_n$ as a "desired RF channel." *Id.* ¶ 32 ("Numeric oscillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."); *id.* ("LPFs 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes."). In the context of Zhang's full disclosure, the reference to "an entire signal band with n channels" appears to be a reference to a signal band that *includes* the selected (or used) n channels. That is, the signal band could also include unselected (or unused) channels. This reading is further supported by claim 8 of Zhang, which recites "the ADC converts an entire signal band, the signal band including the multichannel analog RF signal." *Id.*, claim 8 (cited by Pet. 23).

We also note Patent Owner's contention that Zhang's prosecution history reveals "the applicant explained that it is the selector that distinguished Zhang from its prior art, where all of the channels were demodulated." PO Resp. 14–15; *see also id.* at 17 ("[I]f Zhang's Figure 3 down converted and output only desired channels, there would have been no need for the subsequent channel selector 240 to select desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." (quoting Ex. 2009 ¶ 57)). Distinguishing Zhang

20

IPR2024-00438
Patent 11,399,206 B2

from the prior art based on Zhang's selector, however, does not mean Zhang's channels $C_1$–$C_n$ include both desired and undesired channels. Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber," and that "selector 240 . . . selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28. In other words, channels $C_1$–$C_n$ may be a set of subscriber-selected channels while channels $D_1$–$D_m$ may be a further set of subscriber-selected channels that are a subset of channels $C_1$–$C_n$. Being able to select a subset of channels translates to systems that are faster and dissipate less heat because fewer resources are needed to demodulate only the selected subset of channels. *See id.*

Even if Zhang's channels $C_1$–$C_n$ were to include both desired and undesired channels, however, Patent Owner's argument still fails. Turning to Petitioner's contention that Zhang's channels $D_1$ to $D_m$ teach the recited desired channels, we note Petitioner identifies Zhang's demultiplexer 230 and digital selector 240 *together* as the circuitry that performs the recited concurrently selecting step of claim element 1D. Pet. 23–24. As Petitioner points out, Zhang teaches "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Zhang further teaches "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then *selects one or more of the RF channels $D_1$ to $D_m$* from one or more of the digital RF channels $C_1$ to $C_n$." *Id.* ¶ 28 (emphasis added), Fig. 2. In other words, Zhang's selector 240 (which Petitioner identifies as part of the circuitry that performs the recited concurrently selecting step) selects channels $D_1$–$D_m$ (which Petitioner identifies as the recited desired channels)

21

IPR2024-00438
Patent 11,399,206 B2

from channels $C_1$–$C_n$. *See* Pet. 26 ("Demultiplexer 230 and Selector 240 output only user selected channels (either all or a subset of the user selected 'C' channels)."); Pet. Reply 6 ("This combined circuitry outputs $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28.  Patent Owner does not dispute this aspect of Petitioner's analysis, acknowledging Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$."  PO Resp. 13 (annotated Figure 2 of Zhang).

Patent Owner further argues "Petitioner's assertion that Zhang's channels $C_1$–$C_n$ disclose the claimed 'desired channels' . . . is also inconsistent with Petitioner's mapping of Zhang to other claim limitations," namely the providing step of claim element 1E.  PO Resp. 24–25.  To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below.  *Id.* at 25.



Figure 5 "**selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$** and then **sends them** to appropriate demodulators or outputs ports ... **through different data buses** ...." Ex. 1013 [Zhang] [0039]

Fig. 5

22

IPR2024-00438
Patent 11,399,206 B2

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 38. Patent Owner asserts "what is 'provided' on Zhang's Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ (blue) shown on the right-hand side output of data bus 1, not channels $C_1$–$C_n$ (red)." PO Resp. 26. According to Patent Owner, to the extent Petitioner relies on channels $C_1$–$C_n$ as the desired channels for claim element 1D, "that mapping contradicts Petitioner's mapping for limitation [1E], which relies on channels $D_1$–$D_m$ as 'the plurality of desired channels' provided on a 'serial interface.'" *Id.* at 26.

We disagree with Patent Owner. Claim element 1E recites "providing the plurality of desired channels via a serial interface." As discussed above, Petitioner contends that Zhang's channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently (as well as collectively) teach the recited desired channels. Pet. 24, 26; Pet. Reply 4. Zhang teaches that its "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and that its "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Figs. 2, 3, 5.

As to Petitioner's theory that channels $C_1$–$C_n$ teach the recited desired channels, we consider Figures 2, 3, and 5 of Zhang, which show selector 240 receives channels $C_1$–$C_n$ (e.g., desired channels) that are then provided via a serial interface in selector 240 (e.g., selector 500) as further channels $D_1$–$D_m$. Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 25 (annotation acknowledging Zhang's

23

IPR2024-00438
Patent 11,399,206 B2

"Figure 5 'selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports . . . through different data buses.'" (quoting Ex. 1013 ¶ 39)). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited desired channels is persuasive.

As to Petitioner's theory that channels $D_1$–$D_m$ teach the recited desired channels, we again consider Figures 2, 3, and 5 of Zhang, which show selector 240 selects channels $D_1$ to $D_m$ (e.g., desired channels) from channels $C_1$ to $C_n$ and provides selected channels $D_1$ to $D_m$ via a serial interface in selector 240 (e.g., selector 500). Ex. 1013, Figs. 2, 3, 5. As noted above, Patent Owner acknowledges Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 13 (annotated Figure 2 of Zhang). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

Patent Owner further argues that, "[t]o the extent Petitioner relies on channels $D_1$–$D_m$ as the claimed 'plurality of desired channels,' that reliance also fails to disclose or render obvious the claims because channels $D_1$–$D_m$ are not selected 'from the input signal.'" PO Resp. 27; *see also id.* at 27–36.

Petitioner counters that "the digital circuitry [for performing step 1D] is demultiplexer 230, in combination with all or part of selector 240," which means "the input to the relied-upon digital circuitry (i.e., the input to demultiplexer 230) is the input signal including the desired channels from the ADCs, *not* the individual channels $C_1$–$C_n$" and "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the desired channels." Pet. Reply 8–9. According to Petitioner, the relied-upon circuit is selecting desired channels $D_1$–$D_m$ "from the input signal." *Id.* at 9. To illustrate, Petitioner

24

IPR2024-00438
Patent 11,399,206 B2

provides a figure based on Figures 2, 3, and 5 of Zhang, reproduced below. *Id.*



Petitioner's figure combines annotated versions of Figures 2, 3, and 5 of Zhang. *Id.* As discussed above, Figure 2 of Zhang shows multi-channel demodulator 200 with demultiplexer 230 and selector 240; Figure 3 of Zhang shows digital tuner 300 that can be used to implement demultiplexer 230; and Figure 5 of Zhang shows selector 500 that can be used to implement digital selector 240. Ex. 1013 ¶¶ 23, 30, 38. Petitioner asserts that its composite figure shows "the input to the relied-upon circuit (coming from the bottom left side of the figure) is not the individual channels $C_1$–$C_n$ output by demultiplexer 230, but rather the recited input signal." Pet. Reply 9.

We agree with Petitioner. Claim element 1D recites "concurrently selecting each of the plurality of desired channels from the input signal

25

IPR2024-00438
Patent 11,399,206 B2

without selecting any of the plurality of undesired channels." Petitioner contends Zhang's demultiplexer 230 and selector 240 *together* perform the step of claim element 1D. Petitioner identifies the signal provided by Zhang's ADC 220 as the recited input signal and Zhang's channels $D_1$–$D_m$ as the recited desired channels. Pet. 20–21, 23, 25–26. As Petitioner's composite figure shows, channels $D_1$–$D_m$ are selected from the signal provided by ADC 220. Pet. Reply 9; *see also* Ex. 1013, Figs. 2, 3, 5.

Patent Owner contends that Zhang's channels $D_1$–$D_m$ are selected from channels $C_1$–$C_n$ and *not* the signal provided by ADC 220. PO Resp. 28. But channels $D_1$–$D_m$ are based on channels $C_1$–$C_n$, which are based on the signal provided by ADC 220. It, therefore, necessarily follows that channels $D_1$–$D_m$ also are based on the signal provided by ADC 220. In other words, the channels $D_1$–$D_m$, which are picked from channels $C_1$–$C_n$, are the same channels in both groups, and Patent Owner does not dispute channels $C_1$–$C_n$ are based on the signal provided by ADC 220. *See* Ex. 2023, 60:8–19 (Mr. Lett's deposition testimony from a related case ("[L]et's make C equals to D. . . . C1 is the exact same thing as D1. C2 is the exact same as D2. And so on and so forth. All of those are selected from the input frequencies.")). Petitioner correctly contends, "[n]othing in the claim language prevents the recited 'selecting' . . . from being performed by a digital multiplexer 230 that selects and down converts individual channels from the incoming signal from the ADC in combination with a digital selector 240 that passes certain of those signals along to a demodulator." Pet. Reply 9–10. This understanding is consistent with the stated objective of the '206 patent because channel selection at the demodulator is still avoided. *See* Ex. 1001, 2:38–41 ("It is desirable to have

26

IPR2024-00438
Patent 11,399,206 B2

wideband receiver systems that can increase the dynamic range without requiring . . . channel selection at the demodulator.").

We note Patent Owner's contention based on the doctrine of claim differentiation. Patent Owner asserts "claim 1 of [a related patent] recites a 'digital front end' that is configured to 'concurrently select and provide each of the plurality of desired channels without providing any of the plurality of undesired channels,' but does not expressly recite that the selection must be 'from the input signal.'" PO Resp. 34. Patent Owner further asserts that, "[i]f claim 1 of the '206 patent were read so broadly as to cover the selection of Zhang's channels $D_1$–$D_m$, then the language of the claim requiring that these channels be selected 'from the input signal' would be rendered superfluous." *Id.* at 35.

It is not clear how the selection of desired channels "from the input signal" in the '206 patent and the selection of desired channels as recited in the related patent are meaningfully different. *See* Pet. Reply 14 ("[T]he language 'from the input signal' is not rendered superfluous if read according to its ordinary meaning to include 'directly and indirectly from' as opposed to just 'directly' from."). Indeed, the Federal Circuit has recognized that "two claims with different terminology can define the exact same subject matter." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006); *see also Hormone Res. Foundation v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved."). For this reason, we are "cautioned that '[c]laim differentiation is a guide, not

27

IPR2024-00438
Patent 11,399,206 B2

a rigid rule.'" *Curtiss-Wright*, 438 F.3d at 1381 (quoting *Laitrim Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).

Based on the record before us, we find that Zhang teaches the recited concurrently selecting step of claim element 1D.  *See* Pet. 23–26.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3.  Independent Claim 13

Claim 13 is directed to a "method" and recites various limitations. Petitioner designates the preamble as element 13A and the recited limitations as elements 13B through 13E.

Claim elements 13A, 13B, 13C, and 13E are similar to claim elements 1A, 1B, 1C, and 1E.  For these similarly recited elements, Petitioner relies primarily on its analysis for claim 1.  Pet. 29–30, 33.  Patent Owner does not dispute Petitioner's contentions regarding elements 13A, 13B, 13C, or 13E.  *See* PO Resp.  Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited elements of claim 13.

We turn now to claim element 13D, starting with Petitioner's arguments and then turning to the parties' dispute.

### a.  Element 13D: "digitally down converting" step

Claim 13 recites "digitally down converting each desired channel, of the plurality of desired channels, to generate a plurality of digital channel outputs." For this step, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below.  Pet. 31.

IPR2024-00438
Patent 11,399,206 B2



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200.  *See* Ex. 1013 ¶ 23.  Petitioner asserts that "Zhang's Demultiplexer 230 and Digital Selector 240 (collectively **purple**) perform Element [13D]."  Pet. 30.

To illustrate, Petitioner also provides an annotated version of Figure 3 of Zhang, which is reproduced below.  Pet. 32.



Fig. 3

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang.  *See* Ex. 1013 ¶ 30.  Referring to Figure 3, Petitioner asserts

29

IPR2024-00438
Patent 11,399,206 B2

Zhang's "demultiplexer 230 . . . includ[es] a plurality of signal paths for downconverting (i.e., shifting to a lower frequency) a plurality of desired channels $C_1 - C_n$ (**light blue**)," where "each path includes a complex multiplier 320 (**purple**) followed by a low pass filter 330 (**green**)." Pet. 31 (citing Ex. 1013 ¶¶ 30–34, Fig. 3). Petitioner further asserts each "complex multiplier 320 first downconverts (shifts) the frequency of the multi-channel RF signal so that a different 'target channel' selected by the subscriber within the signal is centered at baseband (0 Hz), and then low pass filter 330 filters out all undesired channels, so that one of the 'n' target digital channels $C_1$–$C_n$ (**light blue**) is output." *Id.* (citing Ex. 1013 ¶ 28). In addition, Petitioner asserts "[s]elector 240 provides 'm' channels $D_1$ - $D_m$ which can be any or all of channels $C_1$ - $C_n$ (**light blue**) for demodulation by one or more demodulators." *Id.* at 32 (citing Ex. 1013 ¶¶ 28, 30–31, 38–39, 42, 47). According to Petitioner, Zhang's "Demultiplexer 230 and Digital Selector 240 thus perform[] the . . . step of 'digitally down converting . . . to generate a plurality of digital channel outputs' where the 'outputs' are $C_1$ – $C_n$ (**light blue**) (or $D_1$ – $D_m$)." *Id.* at 32 (citing Ex. 1013 ¶¶ 28, 30–31, 38–39, 42, 47). Petitioner relies on the declaration testimony of Mr. Lett. *Id.* at 30–32 (citing Ex. 1002 ¶¶ 129–134).

Patent Owner makes several arguments regarding claim element 13D, which we address below.

### b. The Parties' Dispute

Patent Owner argues Petitioner's reliance on channels $C_1$–$C_n$ as the recited plurality of digital channel "is based on the misapprehension that channels $C_1$–$C_n$ are the claimed 'desired channels.'" PO Resp. 43. Patent

IPR2024-00438
Patent 11,399,206 B2

Owner reiterates its position that "channels $C_1$–$C_n$ contain both desired and undesired channels." *Id.*; *see also id.* at 43–47.

Patent Owner's argument is unavailing. Claim element 13D recites "digitally down converting each desired channel . . . to generate a plurality of digital channel outputs." We consider Petitioner's annotated version of Figure 2 of Zhang, reproduced below. Pet. 31.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the circuitry that performs the recited digitally down converting step of claim element 13D. Pet. 30.

As discussed above with respect to claim 1, Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. Petitioner points out Zhang even refers explicitly to each of selected or used channels $C_1$–$C_n$ as a "*desired* RF channel." *Id.* ¶ 32 (emphasis added) ("[O]scillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."). In this way, channels $C_1$–$C_n$ satisfy the recited desired channels.

31

IPR2024-00438
Patent 11,399,206 B2

Turning back to Petitioner's annotated version of Zhang's Figure 2, reproduced above, we find that demultiplexer 230 (which Petitioner identifies as part of the circuitry that performs the digitally down converting step of element 13D) digitally down converts channels $C_1$–$C_n$ (which Petitioner identifies as the recited desired channels) to generate digital channel outputs (outputs of demultiplexer 230 for channels $C_1$–$C_n$). *See* Pet. 31.

Patent Owner further argues Petitioner's reliance on channels $C_1$–$C_n$ as the recited plurality of digital channel outputs "contradicts Petitioner's mapping for limitation [13E], where Petitioner relies on Zhang's channels $D_1$–$D_m$ as the claimed 'plurality of digital channel outputs.'" PO Resp. 38. Patent Owner asserts "the 'plurality of digital channel outputs' that are provided 'via a serial interface' in limitation [13E] in Zhang are channels $D_1$–$D_m$, not channels $C_1$–$C_n$." *Id.* at 39; *see also id.* at 39–41. To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below. *Id.* at 41.



Fig. 5

32

IPR2024-00438
Patent 11,399,206 B2

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2. *See* Ex. 1013 ¶ 38. Patent Owner asserts "what is 'provided' on data bus 1 in the selector 240 [are] channels $D_1$–$D_m$ shown on the right-hand side output of data bus 1, not channels $C_1$–$C_n$." PO Resp. 40.

We disagree with Patent Owner. Claim element 13E recites "providing the plurality of digital channel outputs via a serial interface." Petitioner contends Zhang's demultiplexer 230 and selector 240 together perform this step. *See* Pet. 33 (asserting the recited digital channel outputs "are disclosed in Zhang as outputs $C_1$–$C_n$/$D_1$–$D_m$"). As shown in Figures 2, 3, and 5 of Zhang, demultiplexer 230 provides digital channel outputs (e.g., outputs for channels $C_1$–$C_n$) that are then provided via a serial interface in selector 240 (e.g., selector 500) as further channels (e.g., channels $D_1$–$D_m$). Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 41 ("[A]s Zhang's own Figure 5 shows, the channels 'provided' on data buses (such as Data Bus 1) are channels $D_1$–$D_m$ selected from channels $C_1$–$C_n$."). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited digital channel outputs is persuasive.

Even if Petitioner were to rely on channels $D_1$–$D_m$ as the recited digital channel outputs in claim element 13E, Patent Owner's argument that Petitioner's mapping is inconsistent still fails. Claim element 13D recites "digitally down converting each desired channel . . . to generate a plurality of digital channel outputs." Claim element 13E adds "providing the plurality of digital channel outputs via a serial interface."

As discussed above, Petitioner contends Zhang's demultiplexer 230 and selector 240 together perform these steps. Pet. 30, 33. As part of its

33

IPR2024-00438
Patent 11,399,206 B2

analysis for claim element 13D, Petitioner cites to where Zhang teaches "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 31–32). In other words, channels $D_1$–$D_m$ may be a subset of channels $C_1$–$C_n$. For claim element 13E, Petitioner cross-references its discussion of claim element 1E in which Petitioner asserts "[s]elector 240 . . . further provides the desired channels 'via a serial interface.'" Pet. 26, 33.

Thus, Zhang's demultiplexer 230 down converts channels $C_1$–$C_n$ (which include channels $D_1$–$D_m$ as a subset) so that Zhang's selector 240 can generate digital channel outputs (e.g., outputs for channels $D_1$–$D_m$) and provide them via a serial interface in selector 240 (e.g., selector 500). Ex. 1013 ¶ 28, Figs. 2, 3, 5. Patent Owner acknowledges "selector 500 digitally selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports." PO Resp. 49 (quoting Ex. 1013 ¶ 39). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited digital channel outputs also is persuasive.

We note Patent Owner's contention that "it is the output $C_1$–$C_n$, not $D_1$–$D_m$, that is 'generated' by digital down conversion in Zhang." PO Resp. 48. According to Patent Owner, "the output $D_1$–$D_m$ is generated by selecting desired channels from the already down converted channels $C_1$–$C_n$." *Id.*

34

IPR2024-00438
Patent 11,399,206 B2

Petitioner counters that it relies on Zhang's demultiplexer 230 and selector 240 *together* to perform the steps recited in claim elements 13D and 13E. Pet. Reply 8–9; Pet. 30, 33. Under that theory, Petitioner asserts "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the . . . digital channel outputs," and "[i]t necessarily follows that this relied-upon circuit is . . . down converting the . . . desired channels/digital channel outputs ($D_1$–$D_m$)." Pet. Reply 9.

We agree with Petitioner. The relied-upon circuit (i.e., Zhang's demultiplexer 230 and selector 240) down converts desired channels (e.g., channels $D_1$–$D_m$, which are a subset of channels $C_1$–$C_n$) via Zhang's demultiplexer 230 to generate digital channel outputs (e.g., outputs for channels $D_1$–$D_m$) via Zhang's selector 240 and provide the digital channel outputs via a serial interface in selector 240 (e.g., selector 500). Ex. 1013 ¶ 28, Figs. 2, 3, 5.

We also note Patent Owner's further contention that, "[t]o the extent Petitioner's argument rests on the theoretical happenstance that sometimes all channels $C_1$–$C_n$ may subsequently be selected, and by happenstance channels $C_1$–$C_n$ and channels $D_1$–$D_m$ would happen to be the same set (*i.e.*, n would happen to equal m), that argument fails" because "Petitioner does not point to any disclosure in Zhang that teaches or suggests that all extracted channels $C_1$–$C_n$ could be the desired channels $D_1$–$D_m$." PO Resp. 41–42. Patent Owner adds that "the theoretical happenstance that all extracted channels $C_1$–$C_n$ could be the desired channels $D_1$–$D_m$ cannot disclose the claimed method." *Id.* at 42.

Patent Owner's contention is unavailing. As discussed above, Petitioner's analysis for claim element 13D holds water where channels $D_1$–

IPR2024-00438
Patent 11,399,206 B2

$D_m$ are a subset of channels $C_1$–$C_n$. Moreover, contrary to Patent Owner's position, Zhang does contemplate selecting all channels $C_1$–$C_n$ so that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ are the same set. As Petitioner points out, Zhang teaches its "selector 240 . . . selects *one or more* of the RF channels $D_1$ to $D_m$ from *one or more* of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28 (emphases added) (cited by Pet. 32). This teaching implies channels $C_1$–$C_n$ and channels $D_1$–$D_m$ may be the same set. In that case, Petitioner's reliance on either channels $C_1$–$C_n$ or channels $D_1$–$D_m$ as the recited digital channel outputs also is persuasive. *See* Ex. 2023, 60:8–19 (Mr. Lett's deposition testimony from a related case ("[L]et's make C equals to D. . . . C1 is the exact same thing as D1. C2 is the exact same as D2. And so on and so forth. All of those are selected from the input frequencies. In other words, Zhang's digital selector can be configured as -- to just pass through all the Cs.")).

Based on the record before us, we find that Zhang teaches the recited digitally down converting step of claim element 13D. *See* Pet. 30–32.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 13.

### *4. Independent Claim 25*

Claim 25 is directed to a "method for receiving a television (TV) signal" and recites similar limitations as claim 1. For example, claim 25 recites a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. For these similarly recited limitations, Petitioner relies primarily on its analysis for claim 1. Pet. 33. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 8. Based on

IPR2024-00438
Patent 11,399,206 B2

Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 25.

Claim 25 adds that "the method is performed by a device comprising a digital video reorder (DVR)." For this limitation, Petitioner asserts "Zhang discloses that its cable TV device may be integrated as a wide-band front-end of a 'set-top box/PVR/home media server.'" Pet. 33 (citing Ex. 1013 ¶ 45, Fig. 8). According to Petitioner, "[a] POSITA would have understood that 'PVR' stands for 'personal video recorder,' which is an alternate name for 'DVR' or 'digital video recorder' for recording audio and video content received by a STB." Id. at 33–34. Petitioner relies on the declaration testimony of Mr. Lett as support. Id. (citing Ex. 1002 ¶¶ 137–140).

Patent Owner does not specifically dispute Petitioner's contentions regarding this additional limitation of claim 25. See PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited DVR of claim element 25F. See Pet. 33–34.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 25.

### 5. Independent Claim 38

Claim 38 is directed to a "method" and recites similar limitations as claims 1, 13 and 25. For example, claim 38 recites a "receiving" step, a "digitizing" step, a "digitally down converting" step, and a "digital video recorder (DVR)." For these similarly recited limitations, Petitioner relies on its analysis for claims 1, 13, and 25. Pet. 34. Patent Owner relies on its arguments regarding claim 13. See PO Resp. 36. Based on Petitioner's

37

IPR2024-00438
Patent 11,399,206 B2

argument and evidence, and for the reasons given above as to claims 1, 13, and 25, we find that Zhang teaches all the limitations of claim 38.

### 6. Dependent Claims

Each of claims 3–7, 9, 11, 15–19, 21, 23, 27–31, 33–35, 40–44, and 46–48 depends from independent claims 1, 13, 25, or 38. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 35–45 (citing Ex. 1013 ¶¶ 5–7, 11–12, 23–24, 28–34, 38–39, 41–48, Figs. 2, 3, 5). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 60–65, 71–73, 115–121, 135–136, 145–149, 150–172).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 35–45), we find that Zhang teaches the limitations of the dependent claims.

### 7. Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 are anticipated by Zhang or would have been obvious over Zhang.

### C. Asserted Challenge Based on Zhang and Reisman

Petitioner asserts that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 of the '206 patent would have been obvious over Zhang and Reisman. Pet. 45–56. Patent Owner disputes

38

IPR2024-00438
Patent 11,399,206 B2

certain aspects of Petitioner's analysis. PO Resp. 3–50. For the reasons explained below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 would have been obvious over Zhang and Reisman.

We provided an overview of Zhang above. *See supra* Part III.B.1. Before addressing the claims, we additionally provide an overview of Reisman.

### 1. Overview of Reisman

Reisman describes "interactive television" (ITV), where the TV includes a set-top box (STB). Ex. 1052 ¶¶ 2, 43, 98. Reisman explains that ITV may include interactivity with the TV through a digital video recorder (DVR), which also is known as a personal video recorder (PVR). *Id.* ¶¶ 48, 60. Additionally, Reisman explains that ITV may include a featured called picture-in-picture (PIP), where a region of the TV screen presents a reduced scale video image. *Id.* ¶ 121.

### 2. Independent Claims 25 and 38

As discussed above, we determine that Petitioner has shown by a preponderance of the evidence that claims 25 and 38 are anticipated by Zhang or would have been obvious over Zhang.

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang's PVR is not a 'DVR' as recited in Elements [25D] and [38D], Reisman discloses this feature." Pet. 45. Petitioner asserts that "Reisman teaches that advanced STBs in a cable

IPR2024-00438
Patent 11,399,206 B2

system may include a digital video recorder (DVR)." *Id.* at 45–46 (citing Ex. 1052 ¶¶ 5, 43, 48, 60, 73, 98, 112, 118, 191, 197, 212, 281–285, 296, 546). According to Petitioner, "[a] POSITA would have been motivated to include Reisman's DVR in Zhang's STB to provide a more feature-filled and individualized user experience, which in the proposed combination still includes Zhang's wideband front-end receiver components cited for performing Elements [25A]–[25E]." *Id.* at 46. Petitioner explains that "Reisman's DVR improves user experience and flexibility by allowing time-shifted and on-demand viewing, and enabling replay and trick-play (fast forwarding, rewinding, and pausing) of live programming." *Id.* (citing Ex. 1052 ¶¶ 191, 197, 212, 284); *see also id.* at 46–47 (asserting that "[a]dding Reisman's DVR to Zhang's system would have been nothing more [than] applying a known technique of integrating a DVR into a set-top box . . . to a known STB . . . that was ready for improvement to yield a predictable result" and that "[a] POSITA would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 45–47), we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claims 25 and 38. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness. *See In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").

40

IPR2024-00438
Patent 11,399,206 B2

### 3. Independent Claim 51

Claim 51 is directed to a "method for receiving a television (TV) signal" and recites similar limitations as claim 1. For example, claim 51 recites a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. For these similarly recited limitations, Petitioner relies on its analysis for claim 1. Pet. 47. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 8. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 51.

Claim 51 adds the step of "configuring at least some of the plurality of desired channels as an output for a picture-in-picture display." For this limitation, Petitioner asserts that "Reisman teaches that [] advanced set-top boxes in a cable system include a 'picture-in-picture display' output for television programming." Pet. 47–48 (citing Ex. 1052 ¶¶ 73, 98, 118, 120–121, 187, 278, 291, 378, 534, 537, 546, Fig. 3). Petitioner contends that "[a] POSITA would have been motivated to include Reisman's 'picture-in-picture display' capability in Zhang's set-top box, which in the proposed combination still has the wideband front-end receiver components cited for performing Elements [51A]–[51E], to allow a user to view different content simultaneously." *Id.* at 48. Petitioner explains that Reisman's "'picture-in-picture' beneficially displays a program in a PIP window while simultaneously providing, e.g., navigation options and interactive content in other windows," and "enables 'multitasking,' by displaying, e.g., two TV programs, and swapping them between full screen and a smaller PIP window." *Id.* (citing Ex. 1052 ¶¶ 61, 63, 121, 278, 378, 546, Fig. 3); *see also id.* at 48–49 (asserting that "modifying Zhang with Reisman would

41

IPR2024-00438
Patent 11,399,206 B2

have been nothing more than the obvious application of a known technique . . . to a known device . . . that was ready for improvement to yield a predic[t]able result" and that "[a] POSITA would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 47–49), and for the reasons given above with respect to claim 1, we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claim 55. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 4.  *Independent Claim 64*

Claim 64 is directed to a "method" and recites similar limitations as claims 1, 13, and 51. For example, claim 64 recites a "receiving" step, a "digitizing" step, a "digitally down converting" step, and a "picture-in-picture display." For these similarly recited limitations, Petitioner relies on its discussion of claims 1, 13, and 51. Pet. 50. Patent Owner relies on its arguments regarding claim 13. *See* PO Resp. 36. Based on Petitioner's argument and evidence (*see* Pet. 50), and for the reasons given above as to claims 1, 13, and 51, we find that the proposed combination of Zhang and Reisman teaches all the limitations of claim 64, and that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

IPR2024-00438
Patent 11,399,206 B2

### 8. *Dependent Claims*

Each of claims 9–12, 21–24, 27–31, 33–37, 40–44, 46–50, 53–57, 59–63, 66–70, and 72–76 depends from independent claims 1, 13, 25, 38, 51, or 64. Petitioner contends that its proposed combination of Zhang and Reisman teaches the limitations recited in the dependent claims. Pet. 51–56 (citing Ex. 1013 ¶ 47; Ex. 1052 ¶¶ 8, 24, 63, 73, 86–90, 98, 125, 187, 189, 209, 235, 643–645, Fig. 1). Petitioner relies on the declaration testimony of Mr. Lett. *Id.* (citing Ex. 1002 ¶¶ 145–147, 191–207).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 9–12, 21–24, 27–31, 33–37, 40–44, 46–50, 53–57, 59–63, 66–70, and 72–76. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 51–56), we find that Zhang teaches the limitations of these dependent claims.

### 9. *Summary*

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 would have been obvious over Zhang and Reisman.

### D. *Asserted Challenge Based on Zhang and Jackson*

Each of claims 2–6, 14–18, 26–30, and 39–43 depends from independent claims 1, 13, 25, or 38. Petitioner asserts that these dependent claims would have been obvious over Zhang and Jackson. Pet. 56–69. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way

43

IPR2024-00438
Patent 11,399,206 B2

to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 62–64, 208–236).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 2–6, 14–18, 26–30, and 39–43. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 56–69), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jackson teaches the limitations of theses dependent claims and that Petitioner's proffered reasoning for combining Zhang and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6, 15–19, 28–32, and 42–46 would have been obvious over Zhang and Jackson.

*E. Asserted Challenge Based on Zhang, Reisman, and Jackson*

Each of claims 26–30, 39–43, 52–56, and 65–69 depends from independent claims 25, 38, 51, or 64. Petitioner asserts that these dependent claims would have been obvious over Zhang, Reisman, and Jackson. Pet. 56–69. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the

44

IPR2024-00438
Patent 11,399,206 B2

declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 62–64, 208–236).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 26–30, 39–43, 52–56, and 65–69. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 56–69), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 26–30, 39–43, 52–56, and 65–69 would have been obvious over Zhang, Reisman, and Jackson.

*F. Asserted Challenge Based on Zhang and Pandey*

Petitioner asserts that claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 would have been obvious over Zhang and Pandey. Pet. 69–75. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 13, 34, 47, 60, and 73 as well as the parallel interface of claims 33, 46, 59, and 72. *Id.* at 69. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 69–75 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12,

45

IPR2024-00438
Patent 11,399,206 B2

31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 237–248).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 69–75), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 would have been obvious over Zhang and Pandey.

*G. Asserted Challenge Based on Zhang, Reisman, and Pandey*

Each of claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 depends from independent claims 1, 13, 25, 38, 51, and 64. Petitioner asserts that these dependent claims would have been obvious over Zhang, Reisman, and Pandey. Pet. 69–75. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 13, 34, 47, 60, and 73 as well as the parallel interface of claims 33, 46, 59, and 72. *Id.* at 69. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 69–75 (citing Ex. 1013

46

IPR2024-00438
Patent 11,399,206 B2

¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 237–248).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 69–75), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Pandey teaches the limitations of claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 would have been obvious over Zhang, Reisman, and Pandey.

### H. Asserted Challenge Based on Zhang, Jackson, and Pandey

Each of claims 2–6 and 14–18 depends from independent claims 1 or 13. Petitioner asserts that these dependent claims would have been obvious over Zhang, Jackson, and Pandey. Pet. 75. Petitioner cross-references its discussion regarding its challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey. *Id.* (citing Ex. 1002 ¶ 249).

Patent Owner does not specifically dispute Petitioner's contentions for this challenge. *See* PO Resp. Having reviewed Petitioner's argument and

47

IPR2024-00438
Patent 11,399,206 B2

evidence (*see* Pet. 75), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey, we find that Petitioner's proposed combination of Zhang, Jackson, and Pandey teaches the limitations of claims 2–6 and 14–18 and that Petitioner's proffered reasoning for combining Zhang, Jackson, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6 and 14–18 would have been obvious over Zhang, Jackson, and Pandey.

## IV.  CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance of the evidence that claims 1–76 of the '206 patent are unpatentable as follows.[6]

---

[6] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding.  *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019).  If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices.  *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

48

IPR2024-00438
Patent 11,399,206 B2

| Claims | 35 U.S.C. § | Reference(s)/ Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 102 | Zhang | 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | |
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 103(a) | Zhang | 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | |
| 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | 103(a) | Zhang, Reisman | 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | |
| 2–6, 14–18, 26–30, 39–43 | 103(a) | Zhang, Jackson | 2–6, 14–18, 26–30, 39–43 | |
| 26–30, 39–43, 52–56, 65–69 | 103(a) | Zhang, Reisman, Jackson | 26–30, 39–43, 52–56, 65–69 | |
| 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | 103(a) | Zhang, Pandey | 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | |
| 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | 103(a) | Zhang, Reisman, Pandey | 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | |
| 2–6, 14–18 | 103(a) | Zhang, Pandey, Jackson | 2–6, 14–18 | |
| **Overall Outcome** | | | 1–76 | |

49

IPR2024-00438
Patent 11,399,206 B2

## V.   ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–76 of the '206 patent have been shown to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.


PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com

PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com
nolan.hubbard@klgates.com

Kenneth J. Weatherwax

IPR2024-00438
Patent 11,399,206 B2

Parham Hendifar
Nathan Lowenstein
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

————————

Case IPR2024-00438
Patent 11,399,206

————————

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

Case IPR2024-00438
Patent 11,399,206

## TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION** ............................................................................1

II.    **THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.**............................................................3

       A.    A Patent With Substantially Similar Claims To The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding. ...................................................................................5

       B.    The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent............................................................6

       C.    The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination.....................................9

III.   **CONCLUSION** .........................................................................12

Case IPR2024-00438
Patent 11,399,206

| EXHIBIT LIST | |
|---|---|
| 2001 | Table Of Parallel Petitions Filed By All Petitioners (July 16, 2019-June 29, 2024) [All-Parallel-Petitions] |
| 2002 | Table of All Petitions Filed By Comcast (As Petitioner or RPI) (2016-2024) [All-Comcast-Petitions] |
| 2003 | PTAB Multiple Petitions Study [Multiple-Petitions-Study] |
| 2004 | PTAB Multiple Petitions Study Executive Summary [Executive-Summary] |
| 2005 | FreeWheel About Webpage (www.freewheel.com/about) |
| 2006 | Declaration of Kenneth K. Wang [Wang-Decl.] |
| 2007 | Pro Hac Vice Declaration of Nathan Lowenstein [PHV-L] |
| 2008 | Pro Hac Vice Declaration of Colette Woo [PHV-W] |
| 2009 | Declaration of Samuel H. Russ, Ph.D. [Russ-Decl.] |
| 2010 | Curriculum Vitae of Samuel H. Russ, Ph.D. [Russ-CV] |
| 2011 | European Patent Application No. 02759732.7.2415 Communication From Examining Division [EPO-Communication-Annex] |
| 2012 | European Patent Application No. 02759732.7.2415 Reply To Communication From Examining Division [Zhang-EPO-Reply] |
| 2013 | European Patent Application No. 02759732.7.2415 Intent To Grant European Patent [EPO-Grant-Intent] |
| 2014 | Reserved |
| 2015 | Reserved |
| 2016 | Reserved |

ii

| 2017 | Reserved |
|------|----------|
| 2018 | David Lett 1st Deposition Volume I [Lett-1st-Depo.-Volume-I] |
| 2019 | David Lett 1st Deposition Volume II [Lett-1st-Depo.-Volume-II] |
| 2020 | IPR2024-00432, Exhibit 1002, Declaration of David Lett [IPR2024-00432-Lett-Decl.] |
| 2021 | David Lett 2nd Deposition [Lett-2nd-Depo.] |
| 2022 | Patent Owner's Oral Argument Demonstratives |
| 2023 | Deposition Transcript of Petitioner's Expert in IPR2025-00180 |
| 2024 | Designations From Exhibit 2023 |

## I.    INTRODUCTION

Patent Owner respectfully requests that the Director grant review of the Final Written Decision because the Board failed to reconcile its decision finding the claims unpatentable with a reexamination determination confirming substantially similar claims, in violation of the Director's recent guidance.  Patent Owner did not raise the arguments in this Request before the Board because the Director's guidance was issued shortly prior to the issuance of the Final Written Decision, and after oral argument and close of all briefing, and the arguments raised herein were not demonstrably relevant under the Office's policy at those times.  For example, it was not demonstrably relevant that the Zhang Patent identified to the Examiner in the reexamination contains the same disclosure as the Zhang application relied upon by the Board here.  Nor was it demonstrably relevant to show that the arguments accepted in other Office proceedings are similar to the arguments rejected by the Board here.  A similar Director Review Request is being filed in each of IPR2024-00432 and IPR2024-00435, which concern patents with a common specification and substantially similar claims.

On September 16, 2025, the Director issued a Memorandum titled "*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*" ("Memorandum").  The Memorandum provides that the Board should reconcile its decisions with prior, contrary determinations of fact or law made by the Office in

1

post-grant proceedings of patents with substantially similar claims, with a more detailed explanation required when both proceedings rely on "substantially the same evidence and/or arguments." Memorandum, 1.

The Board in this proceeding determined that Ex 1013 ("Zhang") alone discloses the relevant limitations of the independent claims requiring "selecting each of the plurality of desired channels." Paper 46 [FWD] 19. But Zhang and arguments similar to those adopted by the Board were previously considered and rejected by the Office in connection with similar limitations. *See* Section II, *infra*.

In the Reexamination of U.S. Patent 9,210,362, which shares a common specification and substantially similar claims with the '206 patent, Zhang was presented to the Office. The Examiner found that "the art of record" fails to show "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream." Ex. 1082, 6; *see* Section II.B, *infra*. The Examiner likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected "ranges of frequencies containing the desired channels." *See* Section II.B, *infra*.

The Office also rejected Zhang and arguments similar to those adopted by the Board here during the prosecution of U.S. Pat. 11,785,275, which shares the same specification and substantially similar claims with the '206 patent, and which

occurred after the issuance of the '206 patent. During the prosecution of the '275 patent, the Examiner, after considering Zhang, determined that the prior art of record did not disclose the claimed step of selecting desired channels because the prior art instead used a demultiplexer to separate an input signal into its constituent channels. *See* Section II.C, *infra*. The distinction the Examiner accepted in the prosecution of the '275 patent is substantively identical to Patent Owner's argument here—that Zhang does not "select" any channels, but merely demultiplexes the input signal into its constituent channels. Paper 45 [FWD] 17 (reciting Patent Owner's arguments).

The Board failed to acknowledge, let alone explain, any of the above prior findings by the Office. Thus, Patent Owner respectfully requests that the Director grant review of the Final Written Decision and remand this matter to the Board for issuance of a decision consistent with the Memorandum.

## II. THE BOARD ERRED BY FAILING TO ADDRESS THE OFFICE'S PRIOR CONTRARY FINDINGS AS REQUIRED BY THE DIRECTOR'S MEMORANDUM.

As noted, on September 16, 2025, the Director issued a Memorandum titled "*PTAB Consideration Of Prior Findings Of Fact And Conclusions Of Law*" ("Memorandum"). The Memorandum provides that when a patent with "substantially similar" claims to the patent under review has been adjudicated in another post-issuance proceeding, then:

if the Board reaches an initial or final decision on a finding of fact or conclusion of law that is different than the prior finding or conclusion of the Office, district court, or the ITC, ***the Board shall explain in the institution or final written decision why a different outcome is warranted***. ***A more detailed explanation is required*** from the Board ***when the same or substantially the same evidence and/or arguments that were previously presented to the Office***, the district court, or the ITC ***are being relied upon in the subsequent AIA trial proceeding***.

Memorandum, 1.

The Board in this proceeding found all claims of the '206 patent unpatentable. As relevant here, the Board found that Ex 1013 ("Zhang") alone discloses independent claim 1's limitation that "concurrently ***selecting*** each of the plurality of ***desired channels*** from the input signal without selecting any of the plurality of undesired channels." Paper 45 [FWD] 17-21. The Board likewise concluded that similar limitations in the remaining independent claims are also disclosed by Zhang alone. *Id.*, 30-31.

Both Zhang and arguments similar to those accepted by the Board here were previously presented to, and rejected by, the Office, including in the post-grant proceeding involving the '362 patent, which shares the same specification and substantially similar claims to the '206 patent. The Board's Final Written Decision, however, failed to address any of the Examiner's prior contrary findings

or to reconcile them with the Final Written Decision, as required by the Memorandum. These points are discussed in more detail below.

**A.      A Patent With Substantially Similar Claims To The Patent At Issue Here Was The Subject Of An Adjudicated Post-Grant Proceeding.**

U.S. Patent No. 11,399,206, at issue in this proceeding, shares a common specification and substantially similar claims with U.S. Patent 9,210,362. As relevant here, both claims 1 of the '362 and the '206 patents receive frequencies "comprising a plurality of desired [television] channels and a plurality of undesired [television] channels," and require "select[ing] [said]/[each of the] plurality of desired [television] channels." For both patents, the Board in this Final Written Decision here and a similar final written decision concerning the '362 patent relied upon Zhang's Demultiplexer 230 outputting channels $C_1$-$C_n$ as "select[ing] desired channels."[1]

On September 20, 2023, a request for *ex parte* reexamination of the '362 patent was filed with the Office. On November 1, 2023, reexamination was ordered by the Office. On February 10, 2025, the Office issued a Notice of Intent

---

[1] Petitioner challenged the '362 patent in the concurrently filed IPR2024-00432, relying on the same Zhang reference and on similar arguments at issue here, confirming the similarity of the claims of the '362 and '206 patents.

5

to Issue Reexamination Certificate.  Ex. 1082, 3-11.  On April 1, 2025, the Office

issued a Reexamination Certificate, confirming the patentability of all claims 1-20

of the '362 patent.  *Id.*, 1-2.

The Parties identified the *ex parte* reexamination of the '362 patent to the

Board on multiple occasions.  Patent Owner identified the '362 patent as a "related

patent" in its mandatory notices.  *See*, *e.g.*, Paper 4 [Mandatory Notices] 3.  The

parties identified the Reexamination in an email to the Board on September 25,

2025.  In addition, the Petition in IPR2024-00432, which challenges the '362

patent, identified the Reexamination.  The IPR2024-00432 petition was filed on the

same day as the instant IPR2024-00438 petition, and both proceedings were heard

together in a consolidated hearing before the Board.

Thus, a patent with substantially similar claims to the patent at issue in this

proceeding was the subject of a post-grant adjudication by the Office.

**B.     The Zhang Patent Was Considered During The Post-Grant Proceeding Of The '362 Patent.**

While the Memorandum requires an explanation by the Board anytime it

reaches a conclusion of fact or law contrary to the ones reached in other post-grant

proceedings of patents with substantially similar claims, the Memorandum

specifically requires that "[a] more detailed explanation is required from the Board

when the same or substantially the same evidence and/or arguments that were

6

previously presented to the Office … are being relied upon in the subsequent AIA trial proceeding." Memorandum, 1. As explained in this section, because the Zhang Patent was listed in an IDS and initialed by the Examiner, the same prior art was previously presented to the Office and considered by the Examiner. Patent Owner did not present the arguments raised herein to the Office because the Memorandum was issued after the oral argument and close of all briefings, and just days before the issuance of the Final Written Decision, and the arguments raised herein did not have demonstrable relevance at the time of briefing before the Board. For example, it was not demonstrably relevant that the Zhang Patent identified in an IDS in the reexamination contains the same disclosure as the Zhang application that forms the basis of the Board's decision here.

During the Reexamination of the '362 patent, Patent Owner identified, and the Examiner considered, a Zhang reference ("Zhang Patent") with substantially identical disclosure to the Zhang reference that was the basis of the Final Written Decision here. Specifically, during Reexamination, Patent Owner listed U.S. Pat.

6,704,372 [Zhang-Patent] in an IDS. Application No. 90,019,255, *Information Disclosure Statement* (June 18, 2024) at 3.[2]

The Zhang Patent submitted by the Patent Owner in the IDS is the patent that issued from the same application that published as the Zhang reference relied upon by the Board here. Ex. 1013 [Zhang] 1 (Appl. No.: 09/956,479); U.S. Pat. No. 6,704,372 [Zhang-Patent] (Appl. No.: 09/956,479). Both the Zhang Patent submitted by the applicant in the IDS and the Petition's Zhang reference have substantially identical disclosures. *Compare generally* Ex. 1013 [Zhang] *with* U.S. Pat. No. 6,704,372 [Zhang-Patent].

---

[2] On October 23, 2025, Patent Owner sought authorization from the Director to file as exhibits supporting its Director Review Request the USPTO documents referenced in this Request. *See* Exhibit 3100. Patent Owner's request was denied and, consequently, Patent Owner has not filed those documents as exhibits. Patent Owner does not understand the denial of authorization to file additional exhibits as precluding discussion of the underlying facts. Furthermore, the Director is empowered to take official notice of documents from proceedings before the USPTO should the Director deem that necessary and appropriate. 37 C.F.R. § 42.62(c); Fed. Rule Evid. 201; 5 U.S.C. § 556(e).

The Examiner stamped every page of the IDS, including the page listing the Zhang Patent, confirming consideration of the Zhang Patent. Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3.

Identification of the Zhang Patent in the IDS is sufficient to show that the same prior art references were previously presented to the Office. When a reference was previously identified in an IDS, "the same or substantially the same prior art or argument previously was presented to the Office." *Ecto World LLC and SV3, LLC v. Rai Strategic Holdings, Inc.*, IPR2024-01280, Paper 13, 3-4 (May 19, 2025). The same rationale should apply here.

Thus, the same Zhang reference was previously presented to the Office.

## C.   The Board Erred By Failing To Reconcile Its Decision With The Contrary Conclusions Of The Reexamination.

The Board in its Final Written Decision determined that Zhang alone, unmodified, discloses "concurrently selecting each of the plurality of desired channels from the input signal without selecting any of the plurality of undesired channels." Paper 45 [FWD] 14-28. In reaching this conclusion, the Board rejected Patent Owner's argument that Zhang's relied upon channels $C_1$-$C_n$ are not "desired channels." *See, e.g., id*. 17-19. This determination stands in sharp contrast to the Examiner's conclusion in the Reexamination that the prior art of record, including

9

Zhang, failed to disclose a similar limitation to the one the Board found to be disclosed by Zhang.

In the '362 patent Reexamination, the Examiner, subsequent to its consideration of the Zhang Patent, issued a notice of intent to issue reexam certificate, explaining that:

> ***the cited prior art of record fails to teach*** the system and method as disclosed in claims 1 and 11, comprising … a digital circuit (interpreted as element 230 in Figure 2 and also described in column 5, lines 49-60) to ***select plurality of desired television channels*** from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream.

Ex. 1082, 6; *see also* Application No. 90,019,255, *Signed Information Disclosure Statement* (July 31, 2024) at 3 (identifying Zhang patent).

The Examiner's finding that Zhang does not disclose the claims is not an isolated determination, but a continuation of other instances where the Office—by different examiners—has found Zhang or similar disclosures to not disclose similar limitations. For example, in the same Reexamination of the '362 patent, the Examiner accepted Patent Owner's argument that the McNeely reference that selected "ranges of frequencies containing the desired channels" failed to disclose the claims. Application No. 90,019,255, *Non-Final Rejection* (August 7, 2024) at 10-11.

The Office has also expressly reviewed and rejected the Zhang Patent in yet another instance. U.S. Pat. 11,785,275 also shares the same specification with the '206 patent, and similarly recites, in its claim 1, "selecting, by a digital frontend (DFE) … the plurality of desired channels from the digitized signal." During prosecution of the '275, conducted after the issuance of the '206 patent at issue here, Patent Owner identified the Zhang Patent in an IDS. Application No. 17/956,889, *Information Disclosure Statement* (August 16, 2023) at 1. In the Notice of Allowance, the Examiner expressly confirmed consideration of that IDS containing the Zhang Patent. Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7 ("The prior art comprising Information Disclosure Statements filed 16 August 2023 and 18 August 2023 was considered by the Examiner in view of the instant application."). The Examiner then determined that the prior art of record did not disclose the claimed step of selecting desired channels, but instead used a demultiplexer to separate an input signal into its constituent channels. Application No. 17/956,889, *Notice of Allowance* (August 28, 2023) at 7. The argument the Examiner accepted in the prosecution of the '275 patent is substantially similar to the argument advanced by Patent Owner in the instant IPR, *i.e.*, that Zhang does not "select" any channels but instead demultiplexes the input signal into its constituent channels. Paper 45 [FWD] 17-18 (reciting Patent Owner's arguments).

11

Case IPR2024-00438<br>Patent 11,399,206

The Board did not address any of the above prior, and contrary, Office determinations in its Final Written Decision.  In fact, given that the same Zhang reference was previously presented to the Office, the Board was required to provide an even "more detailed explanation."  Thus, the Final Written Decision failed to comply with the procedure set forth in the Memorandum.

## III.   CONCLUSION

For the aforementioned reasons, Patent Owner respectfully requests that the Director grant review and reverse the Final Written Decision.


Respectfully submitted,

  / Parham Hendifar /

Parham Hendifar (Reg. No. 71,470)
Nathan Lowenstein, *pro hac vice*
Kenneth J. Weatherwax (Reg. No. 54,528)
LOWENSTEIN & WEATHERWAX LLP

Date:   October 31, 2025

12

Case IPR2024-00438
Patent 11,399,206

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following documents were served

by electronic service, by agreement between the parties, on the date signed below:

### PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW

The names and addresses of the parties being served are as follows:

Frederic M. Meeker          fmeeker@bannerwitcoff.com
Michael S. Cuviello         mcuviello@bannerwitcoff.com
H. Wayne Porter             wporter@bannerwitcoff.com
Paul T. Qualey              pqualey@bannerwitcoff.com
Joshua L. Davenport         jdavenport@bannerwitcoff.com
ComcastIPRService@bannerwitcoff.com

Respectfully submitted,

/ Parham Hendifar /

Date:  October 31, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE


BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

_____

Case IPR2024-00438
Patent 11,399,206

_____


**AUTHORIZED RESPONSE TO PATENT OWNER'S
REQUEST FOR DIRECTOR REVIEW**

# **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................1

II.   The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time. ...............................4

III.  The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings ...............................................5

    A.    The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers ...............................................................................................6

    B.    Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong ..............................10

    C.    The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution ...............................................................................11

IV.   The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required ...............................12

V.    CONCLUSION........................................................................................13

## I.    INTRODUCTION

Requests for Director Review of a Board's final decision are "limited to decisions presenting (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law." U.S. Patent & Trademark Office, Director Review Process, https://www.uspto.gov/patents/ptab/decisions/director-review-process (last visited Nov. 3, 2025) (describing, in Section 2.B, availability of Director Review for proceedings under part 42 of 37 C.F.R.). Patent Owner does not allege an abuse of discretion, an important issue of law or policy, or an erroneous finding of material fact or conclusion of law. Rather, Patent Owner only argues that, under Acting Director Stewart's September 16 memorandum (the "Memorandum"), the Board was obligated to provide in the Final Written Decision (FWD) a more detailed explanation of how the Board reached a different finding of fact with respect to Zhang (U.S. Pat. App. Pub No. 2003/0056221 A1), the primary reference in the IPR, than was allegedly reached in U.S. Reexamination App. No. 90/019,255 of related U.S. Pat. No. 9,210,362 (the "'362 Reexamination") or in the prosecution of related U.S. Pat. No. 11,785,275 (the "'275 Patent"). Patent Owner claims ignorance in not previously raising this issue with the Board, arguing that "the arguments raised herein were not demonstrably relevant under the Office's policy at those times [prior to the Final Written Decision]." Request at 1.

1

Patent Owner's claim of ignorance regarding the relevance of its arguments flies in the face of the Board's September 19 order, which required the parties to respond to the Memorandum, and the parties' subsequent response on September 26 that provided all potentially relevant evidence. Furthermore, regardless of Patent Owner's claims, the Board's findings regarding Zhang are not contrary to any prior findings by the Office, as the Office did not address Zhang in those proceedings. Therefore, the Board was not required to provide additional explanation under the Memorandum.

Specifically, the Patent Owner states only that Zhang, or a different patent (U.S. Pat. No. 6,704,372) related to Zhang (the "Zhang '372 Patent"), was cited along with other prior art in IDSs in the previous proceedings, and that the Examiner stated that the prior art of record failed to disclose the feature in the claim elements at issue. The Examiner in each case did not directly address or provide any findings of fact regarding Zhang or the related Zhang '372 Patent, and therefore, there is nothing for the Board to address. This is especially not surprising regarding the '362 Reexamination, where it appears from the publicly available file wrapper that the

Patent Owner only cited the related Zhang '372 Patent and did not cite Zhang or the related IPR papers even after informing the Board that they would do so.[1]

To the extent the Board was obligated to provide a more detailed explanation of why it reached a different conclusion about Zhang than the Examiners purportedly did in reexamination and prosecution, the Board already did so. As the Examiners were silent about Zhang and the Zhang '372 Patent, it is possible they simply overlooked its relevance since the IPR papers explaining their significance were not submitted. And, if they did consider and dismiss Zhang or the related Zhang '372 Patent, their reasons for doing so are not in the record and unknowable. Thus, the only action the Board could have taken was to review Zhang *de novo* during the IPR. That is exactly what the Board did, providing a detailed explanation (as required in the Memorandum) of how Zhang disclosed every feature of the independent and other claims of the challenged patent.

---

[1] The Director denied Patent Owner's request to submit new evidence into the record on October 29, 2025. Ex. 3100. Because the file wrappers of the '362 Reexamination and the '275 Patent cited by Patent Owner are not of record, they should not be considered. Petitioner cites to this information only to rebut Patent Owner's arguments and does not concede that it was proper for Patent Owner to rely on evidence not of record.

3

**II.    The Board Required Patent Owner to Respond to the September 16 Memorandum Before the Final Written Decision, and Patent Owner Filed Everything It Thought Responsive at That Time.**

Patent Owner's assertion that the information in the Request was not demonstrably relevant before the Final Written Decision (FWD) under the Memorandum is disingenuous at best. The Board expressly *required* the parties to provide any relevant information in its September 19 order (Paper No. 44), and the parties jointly filed (Exhibits 1082-1085) what each party identified as relevant on September 26, 2025 (prior to the FWD). Indeed, in an email to the undersigned counsel prior to that joint filing, Patent Owner stated: "It is patent owner's understanding that no relevant developments have occurred, and no relevant documents exist to be filed." Ex. 3100 at 1-2.

The Director's guidance has not changed since Patent Owner responded on September 26, and Patent Owner does not explain any change of circumstance that makes the issues it attempts to raise in its Request more relevant now than when it was obligated to raise them with the Board. Thus, Patent Owner's representations in this Request about what might be relevant directly contradict its representations to the Board when the Board asked for such information.

If the information Patent Owner now presents was relevant, Patent Owner was obligated to provide it to the Board while the IPR was pending. Even before the Memorandum, Patent Owner had the opportunity to argue that Petitioner's

4

arguments were rejected in other Office proceedings.  Patent Owner's sur-reply was filed on May 30, 2025, almost two months after the reexamination certificate was issued in the '362 Reexamination on April 1, 2025, and Patent Owner's Response was filed on January 14, 2025, more than a year after the '275 Patent issued on October 10, 2023.  Patent Owner failed to do so, because there is no basis for arguing that the Office previously rejected Petitioner's arguments that Zhang discloses the claims.  Patent Owner's attempt to make new arguments to the Director now is improper and should be found waived.  37 C.F.R. § 42.23.

III.    **The Board Did Not Reach Any Finding of Fact Conflicting with the Office's Findings in the Previous Proceedings**

The only alleged "contrary determinations of fact" that the Patent Owner asserts are:

1) "The Examiner [in the '362 Reexamination] found that 'the art of record,' fails to show 'select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream'";

2) "The Examiner [in the '362 Reexamination] likewise found persuasive Patent Owner's argument that another reference failed to disclose the claims because it only selected 'ranges of frequencies containing the desired channels'"; and

3) "During the prosecution of the '275 patent, the Examiner, after considering [the Zhang '372 Patent], determined that the prior art of record did not disclose the claimed step of selecting desired channels because the prior art instead used a demultiplexer to separate an input signal into its constituent channels."  Request at 2-3.

Contrary to Patent Owner's arguments, the Examiners in the respective proceedings never made any findings of fact with respect to Zhang.  Each of these assertions is addressed below.

## A. The Office in the '362 Reexamination Was Not Provided, and Did Not Consider Zhang or Other Relevant IPR Papers, Contrary to Patent Owner's Assertion to the Office That it Submitted Such Papers

Patent Owner's assertion that the Examiner in the '362 Reexamination found that the Zhang '372 Patent failed to disclose "select[ing] plurality of desired television channels from the digitized plurality of frequencies and output the selected plurality of television channels to a demodulator as a digital stream" is quoted out of context and wrong.  The statement the Patent Owner cites is regarding the "art of record" and does not mention the above limitation in isolation but instead refers to the entirety of claims 1 and 11 of the '362 Patent.  Ex. 1082 at 6. Thus, the Examiner never made any finding as to whether any particular limitation of the claims was shown or not shown by the art.  Moreover, the Examiner never discusses the related Zhang '372 Patent.

Indeed, it appears the Examiner was not made aware of Zhang or the Zhang '372 Patent's relevance to the '362 Patent because Patent Owner never submitted the IPR papers. On May 7, 2024, Patent Owner notified the Examiner in the '362 Reexamination of the IPRs but did not identify Zhang as the reference relied upon in those IPRs. *See* '362 Reexamination, Patent Owner's Petition For Extension of Time Under 37 C.F.R. § 1.550(C) (May 7, 2024) at 2.

On June 18, 2024, Patent Owner filed an IDS with a response to a non-final office action. The IDS included secondary references relied upon in the IPRs and the related Zhang '372 Patent (but not Zhang itself). With the IDS, the Patent Owner submitted a statement identifying the secondary references as relevant to the IPRs but omitted any mention of Zhang (the primary reference in the IPR) or how the related Zhang '372 Patent might be relevant. *See* '362 Reexamination, IDS Transmittal Letter, June 18, 2024. This alone would be enough to obfuscate (at the very least) the relevance of the related Zhang '372 Patent that was cited. But the letter went further, affirmatively attesting with respect to the IPRs:

7

> We are, herewith, submitting the petitions, declarations, and prior art asserted in the various grounds to the extent not already in the reexamination record and believe the information submitted to be the extent of the information that could be considered material to patentability. However, the identification of this information shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in 37 CFR 1.56(b). To the extent the Office believes any additional information would be helpful to consider, we can provide it upon request.

*Id.*, at 3. Contrary to this statement, the Patent Owner does not specifically identify the Petitions, Declarations, or Zhang itself in the IDS, and the Petitioner does not see any such papers in the reexamination file wrapper.[2] In view of identifying some prior art as involved in the IPR, but not Zhang, and the failure to submit the IPR

---

[2] The entire certified file history of the Reexamination is not of record. The file wrapper on Patent Center does not make NPL documents available for viewing, and a certified file wrapper could not be obtained within the deadline for filing this response. But the public file wrapper does indicate that the number of NPLs filed on June 18, 2024 (9), is the same as the number of NPLs listed in the IDS, and no more. It appears that at least the Petition and Petitioner's Expert Declaration (Ex. 1002) were not submitted, since no NPLs listed approximate the page counts of those IPR documents. PO's Request also does not allege that those papers were submitted.

papers, the Examiner would have had no reason to believe that the cited Zhang '372 Patent was relevant to the IPRs and warranted closer scrutiny.

On September 30, 2024, the Patent Owner filed a response to a final office action, but still did not identify the relevance of Zhang to the Examiner.

On February 10, 2025, the Office issued a Notice of Intent to Issue a Reexam Certificate, which included the following reminder of the Patent Owner's duty of updating the Examiner of changes in related proceedings throughout the course of the reexamination proceedings:

> *Litigation Reminder*
>
> The patent owner is reminded of the continued responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP § 2207, 2282 and 2286.

'362 Reexamination, Notice of Intent to Issue a Reexam Certificate, February 10, 2025 at 5.

9

Even given this express notice of its duty of candor, the Patent Owner appears not to have cited Zhang or submitted the related IPR papers.[3]

This lack of filing of the IPR papers combined with the fact that the related Zhang '372 Patent was only cited after the IPR had commenced, but without any indication that it was related to the IPR, raises the question of whether Patent Owner was attempting to thwart the IPR proceeding by "washing" the related Zhang '372 Patent through the parallel '362 Reexamination. Such potential gamesmanship should not be permitted.

### B. Patent Owner's Assertion that the Office Previously Rejected Arguments Similar to Those in the IPR is Wrong

Patent Owner notes that the Examiner in the '362 Reexamination accepted Patent Owner's argument that the McNeely reference selected "ranges of frequencies containing the desired channels," which failed to disclose the claims of the '362 Patent. Request at 10. McNeely has no relationship to Zhang and is not even part of the IPR record. Yet, the Patent Owner now reasons that Zhang discloses a similar feature to that of McNeely, and thus similarly fails to disclose the claims. But the FWD did not find that Zhang disclosed selecting frequency ranges like in

---

[3] Petitioner was not the third party requester and thus had no role in the '362 Reexamination.

10

McNeely. Instead, the Board found that Zhang selected desired channels within a frequency range and did not select undesired channels. IPR2024-00438, Final Written Decision at 19-28. Thus, there was no contrary finding of fact for the Board to address.

Indeed, it is surprising Patent Owner is trying to draw parallels between Zhang and McNeely, given that it acknowledged at the oral hearing for the IPR, that "[t]here is no dispute that in both Zhang and the patent, an RF signal that has both desired and undesired channel[s] comes in and what's sent to demodulators are desired channels. Nobody is disputing that," and that "[t]he issue is not whether the black box 230-plus-240 is the digital circuitry. It is. The issue is not whether or not that overall circuitry selects channels. At some level, it does." IPR2024-00432, Final Written Decision at 22 (citing oral hearing transcript at 71:14–17, 134:3–5). As the Board found, these views of Patent Owner about Zhang were "highly probative" to the patentability of the '362 Patent claims. *Id.* Patent Owner's concession in the IPR that Zhang's system selects and outputs only desired channels does not square with its new assertion that Zhang merely selects frequency ranges (including desired and undesired channels), allegedly like McNeely.

### C.    The Zhang '372 Patent was Not Rejected in the '275 Patent Prosecution

Patent Owner also misleadingly argues that the Examiner "rejected" applying the related Zhang '372 Patent during the prosecution of the related '275 Patent.

11

Request at 11. Although the Zhang '372 Patent was cited in an IDS, the Examiner never mentioned it, much less distinguished it from the claims. Instead, the Notice of Allowance merely referred to another reference, "Claxton," and distinguished the '275 claims from Claxton's channelizer—not from Zhang's demultiplexer 230. US. App. No. 17/956,889, Notice of Allowance, August 28, 2023, at 2-3. Moreover, the Examiner for the '275 Patent erred by apparently attributing all the IDS materials, including the Zhang '372 Patent, as being cited for "other patents, i.e., US 8223,775 [*sic*]" involved in Entropic's litigations. *Id.*, at 2. Thus, in direct contradiction to the Request (Request at 11), the Examiner for the '275 Patent never accepted Patent Owner's argument, in this proceeding, that Zhang does not "select" any channels.

## IV.     The Board's Final Written Decision Provides the Detailed Explanation Required by the Memorandum if One Were Required

Even if the prior Office examinations are contorted to contrive some finding with respect to Zhang, the Board's FWD clearly articulates how Zhang discloses each and every limitation of the challenged claims, which necessarily satisfies the Memorandum's call for a detailed explanation why a different outcome is warranted. Significantly, Patent Owner's Request does not raise a single flaw in the merits of the Board's FWD (e.g., no claim construction error or misreading of Zhang) or assert a lack of substantial evidence for the Board's finding that Zhang teaches selecting desired channels. Patent Owner merely disagrees with the Board's ultimate finding of fact and holding without providing any support for its disagreement.

## V.    CONCLUSION

For the reasons above, Patent Owner has failed to identify (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law. The Request for Director Review should be denied. Alternatively, if the Director is minded to accept the Request, the Board's Final Written Decision should be affirmed because it correctly decides the issues before the Board and satisfies the Memorandum.

Dated:  November 10, 2025

By: /Frederic M. Meeker/

Frederic M. Meeker
Reg. No. 35,282
Banner & Witcoff, Ltd.
1100 13th Street, NW
Suite 1200
Washington, DC 20005
(202) 824-3000
fmeeker@bannerwitcoff.com

*Attorney for Petitioner*
*Comcast Cable Communications,*
*LLC*

13

## CERTIFICATE OF SERVICE

Pursuant to 37 C.F.R. §42.6(e)(4), the undersigned hereby certifies that the foregoing PETITIONER'S AUTHORIZED RESPONSE TO PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW was served electronically via e-mail on November 10, 2025 on the following counsel of record for Patent Owner:

> JASON.ENGEL.PTAB@KLGATES.COM
> WEATHERWAX@LOWENSTEINWEATHERWAX.COM
> ENTROPIC_IPRS@LOWENSTEINWEATHERWAX.COM
> ERIK.HALVERSON@KLGATES.COM
> KYLE.KANTAREK@KLGATES.COM
> NOLAN.HUBBARD@KLGATES.COM
> MATTHEW.BLAIR@KLGATES.COM

Dated:  November 10, 2025          By: /Anna Winslow/

                                       Anna Winslow

No. 2026-1586

## IN THE
## UNITED STATES COURT OF APPEALS FOR
## THE FEDERAL CIRCUIT

### ENTROPIC COMMUNICATIONS, LLC,
*Appellant*,

v.

### COMCAST CABLE COMMUNICATIONS, LLC,
*Appellee*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, PATENT TRIAL AND APPEAL BOARD NO. IPR2024-00438

### CORRECTED NOTICE OF APPEAL

Parham Hendifar
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, California 90405
Telephone: (310) 307-4500
Facsimile: (310) 307-4509
*Counsel for Patent Owner-Appellant*
*Entropic Communications, LLC*

March 30, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

_____

Case IPR2024-00438
Patent 11,399,206

_____

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

via PTACTS
Patent Trial and Appeal Board

via E-Mail
Director
Office of the General Counsel
United States Patent and Trademark Office
efileSO@uspto.gov

via CM/ECF
United States Court of Appeals for the Federal Circuit

Pursuant to 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(c), 142, and 319; 37 C.F.R. §§ 90.2(a) and 90.3(a); and Federal Rule of Appellate Procedure 4(a), Patent Owner Entropic Communications, LLC hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Written Decision in IPR2024-00438 concerning U.S. Patent No. 11,399,206 ("the '206 Patent") (Paper 46, also attached hereto as Attachment A) entered October 1, 2025 by the Patent Trial and Appeal Board, and all other underlying and related findings, orders, decisions, rulings, opinions, or other determinations merged into that Decision.

For the limited purpose of providing the Director with the information requested in 37 C.F.R. § 90.2(a)(3)(ii), Patent Owner further indicates that the issues on appeal may include, but are not limited to:

(i)     The Board's judgment that claims 1-76 of the '206 patent are unpatentable, including any underlying questions of law or fact;

(ii)    Any other Board and/or Director finding, determination, judgment, or order on any issue decided adversely to Patent Owner;

(iii)   Whether the Board's decision violated the Administrative Procedure Act, including by departing from established USPTO procedure and the Board's and/or Director's practice without reasoned explanation, rendering the decision arbitrary and capricious.

1

Patent Owner is concurrently filing true and correct copies of this Notice of

Appeal, along with the required fees, with the United States Court of Appeals for

the Federal Circuit, and with the Patent Trial and Appeal Board.

Respectfully submitted,

/Parham Hendifar/
Parham Hendifar (Reg. No. 71,470)
hendifar@lowensteinweatherwax.com
Nathan Lowenstein, *pro hac vice*
lowenstein@lowensteinweatherwax.com
Kenneth J. Weatherwax (Reg. No. 54,528)
weatherwax@lowensteinweatherwax.com
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Blvd.
Santa Monica, CA 90405
Tel: 310-307-4500

*Counsel for Patent Owner*

Date:  March 24, 2026

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

Frederic M. Meeker      fmeeker@bannerwitcoff.com
Michael S. Cuviello      mcuviello@bannerwitcoff.com
H. Wayne Porter      wporter@bannerwitcoff.com
Paul T. Qualey      pqualey@bannerwitcoff.com
Joshua L. Davenport      jdavenport@bannerwitcoff.com
     ComcastIPRService@bannerwitcoff.com

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 24, 2026

## **CERTIFICATE OF FILING WITH USPTO**

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S
NOTICE OF APPEAL**

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 24, 2026

## <u>CERTIFICATE OF FILING WITH COURT OF APPEALS</u>

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2, Fed. R. App. Proc. 15(a)(1), Fed. Cir. R. 15(a)(1) & 52, and Manual of Patent Examining Procedure 1216.01, the following document was electronically filed in Portable Document Format (PDF) with the United States Court of Appeals for the Federal Circuit, via electronic CM/ECF, accompanied by the requisite fee paid on pay.gov, on the date signed below:

### PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S NOTICE OF APPEAL

Respectfully submitted,

/Parham Hendifar/
Parham Hendifar

Date:  March 24, 2026

# Attachment A

Trials@uspto.gov
571-272-7822

Paper 46
Date: October 1, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

COMCAST CABLE COMMUNICATIONS, LLC,
Petitioner,

v.

ENTROPIC COMMUNICATIONS, LLC,
Patent Owner.

————————

IPR2024-00438
Patent 11,399,206 B2

————————

Before MICHELLE N. WORMMEESTER, JON M. JURGOVAN, and
FREDERICK C. LANEY, *Administrative Patent Judges*.

WORMMEESTER, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

IPR2024-00438
Patent 11,399,206 B2

## I.    INTRODUCTION

Comcast Cable Communications, LLC ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1–76 of U.S. Patent No. 11,399,206 B2 (Ex. 1001, "the '206 patent"). Entropic Communications, LLC ("Patent Owner") filed a Preliminary Response (Paper 10). Pursuant to 35 U.S.C. § 314, we instituted an *inter partes* review of all challenged claims based on all asserted challenges in the Petition. Paper 14 ("Inst. Dec."). Thereafter, Patent Owner filed a Response (Paper 24, "PO Resp.") to the Petition, Petitioner filed a Reply (Paper 29, "Pet. Reply"), and Patent Owner filed a Sur-reply (Paper 34, "PO Sur-reply"). On July 18, 2025, we conducted an oral hearing. A copy of the transcript (Paper 43) is in the record.

We have jurisdiction under 35 U.S.C. § 6(b). This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a). For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–76 of the '206 patent are unpatentable.

## II.    BACKGROUND

### A. *Related Proceedings*

The parties identify various federal district court cases and petitions for *inter partes* review. *See* Pet. viii–ix; Paper 4, 1–4 (Patent Owner's Mandatory Notices); Paper 28, 1–2 (Patent Owner's Third Updated Mandatory Notices).

IPR2024-00438
Patent 11,399,206 B2

### B. The '206 Patent

The '206 patent describes "wideband receiver systems that are capable of receiving multiple desired television channels that extend over multiple non-contiguous portions of the broad frequency spectrum and grouping them into a contiguous, or substantially-contiguous, frequency spectrum." Ex. 1001, 1:30–35. To illustrate one exemplary embodiment, Figure 2 of the '206 patent is reproduced below.



FIG. 2

Figure 2 is a block diagram of wideband receiver system 200 that includes radio front end 210, analog-to-digital convertors 218 (ADC1) and 228 (ADC2), and digital front end 230. *Id.* at 4:35–38, 5:33–35, Fig. 2. System 200 receives and processes channels 110, which are located in a radio frequency (RF) spectrum with frequency bandwidth 120 (BW1). *Id.* at 2:13–15, 4:39–42. There are ten available channels in bandwidth 120, where each channel occupies 8 MHz of bandwidth for a total of 80 MHz. *Id.*

3

IPR2024-00438
Patent 11,399,206 B2

at 4:42–45. Of these available channels, there are four desired channels with respective carrier frequencies $f_{rf1}$, $f_{rf2}$, $f_{rf3}$, and $f_{rf4}$ that are located in noncontiguous portions of bandwidth 120. *Id.* at 4:47–51.

Radio front end 210 is a wideband tuner receiver that includes low noise amplifier 202 (LNA), mixers 211 (M1) and 221 (M2), amplifiers 213 (V1) and 223 (V2), as well as filters 215 (F1) and 225 (F2). Ex. 1001, 4:39–5:32. Digital front end 230 includes N complex mixers 250, where N is the number of desired channels located in the noncontiguous portions of bandwidth 120. *Id.* at 5:51–55, Fig. 2. In Figure 2's example, N represents four desired RF channels. *Id.* at 5:63–65. Digital front end 230 also includes filter modules 260a–260n and demodulators 270a–270n. *Id.* at 6:6–12, Fig. 2.

In operation, radio front end 210's low noise amplifier 202 receives RF input signal 102, which includes the four desired RF channels. Ex. 1001, 4:45–51. Mixers 211 and 221 multiply (mix) amplified RF signal 203 with respective first oscillator frequency signal 205 and second oscillator frequency signal 207 to generate in-phase signal 212 and quadrature signal 222, which have a phase shift of ninety degrees between them. *Id.* at 4:61–66. Signals 212 and 222 are further amplified by respective amplifiers 213 and 223 to generate signals 214 and 224, which are then filtered by respective filters 215 and 225 to generate filtered in-phase signal 216 and filtered quadrature signal 226. *Id.* at 5:17–20, Fig. 2.

After being processed in radio front end 210, filtered signals 216 and 226 are digitized for further processing in digital front end 230. Ex. 1001, 5:20–24. ADC1 218 generates digital in-phase signal 232 (I), which is a digital representation of analog filtered signal 216, and ADC2 228 generates

4

IPR2024-00438
Patent 11,399,206 B2

digital quadrature signal 242 (Q), which is a digital representation of analog filtered signal 226. *Id.* at 5:48–51.

In digital front end 230, each complex mixer 250 receives digital signals 232 and 242 from ADC1 218 and ADC2 228 to extract a different desired channel, and then frequency-shifts (downshifts) the extracted signal to the baseband frequency. Ex. 1001, 6:3–6, 6:53–56. Frequency-shifted channels 252a–252n are filtered by associated filter modules 260a–260n. *Id.* at 6:6–8. Next, filtered channels 262a–262n are decimated and sent to associated demodulators 270a–270n that extract the original information transmitted in each desired channel. *Id.* at 6:8–14. The decimated baseband channels may be sent as a serial or parallel digital data stream to a demodulator using a serial or parallel data interface. *Id.* at 7:10–14, Fig. 2.

According to the '206 patent, its approach "eliminates the need of expensive data conversion, filtering and channel selection on the demodulator side," and "removes undesired channels from the signal path at an early stage, thus reliev[ing] the large dynamic range requirement in the demodulator." Ex. 1001, 7:14–19.

### C. Illustrative Claims

Petitioner challenges claims 1–76 of the '206 patent. Claims 1, 13, 25, 38, 51, and 64 are independent. Claims 1 and 13 are reproduced below.

1. A method for receiving a television (TV) signal comprising:

   receiving an input signal from a cable network;

   digitizing a contiguous band of frequencies in the input signal via a wideband analog-to-digital converter (ADC), wherein the contiguous band of frequencies comprises all received channels that exist in the input signal and the

5

IPR2024-00438
Patent 11,399,206 B2

> received channels comprise a plurality of desired channels and a plurality of undesired channels;
>
> concurrently selecting each of the plurality of desired channels from the input signal without selecting any of the plurality of undesired channels; and
>
> providing the plurality of desired channels via a serial interface.

13. A method comprising:

> receiving an input signal from a cable network;
>
> digitizing all received channels in the input signal via wideband analog-to-digital converter (ADC), wherein the received channels comprise a plurality of desired channels and a plurality of undesired channels;
>
> digitally down converting each desired channel, of the plurality of desired channels, to generate a plurality of digital channel outputs; and
>
> providing the plurality of digital channel outputs via a serial interface.

Ex. 1001, 12:15–28, 13:5–15.


### D. Asserted Challenges to Unpatentability

Petitioner asserts the following eight challenges to claims 1–76 of the '206 patent. Pet. 12–13, 19–75. We instituted *inter partes* review on each challenge. Inst. Dec. 34.

6

IPR2024-00438
Patent 11,399,206 B2

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 102[1] | Zhang[2] |
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 103(a) | Zhang |
| 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | 103(a) | Zhang, Reisman[3] |
| 2–6, 14–18, 26–30, 39–43 | 103(a) | Zhang, Jackson[4] |
| 26–30, 39–43, 52–56, 65–69 | 103(a) | Zhang, Reisman, Jackson |
| 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | 103(a) | Zhang, Pandey[5] |
| 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | 103(a) | Zhang, Reisman, Pandey |
| 2–6, 14–18 | 103(a) | Zhang, Pandey, Jackson |

In support of its challenges, Petitioner relies on a Declaration of David B. Lett (Ex. 1002) and a Reply Declaration of David B. Lett (Ex. 1078). Patent Owner relies on a Declaration of Samuel H. Russ, Ph.D. (Ex. 2009).

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. §§ 102 and 103, effective March 16, 2013. Because the application from which the '206 patent issued claims priority to an application filed before this date, the pre-AIA versions of §§ 102 and 103 apply.

[2] Zhang et al., U.S. Publ'n No. 2003/0056221 A1, published Mar. 20, 2003 (Ex. 1013).

[3] Reisman, U.S. Publ'n No. 2003/0229900 A1, published Dec. 11, 2003 (Ex. 1052).

[4] Jackson et al., U.S. Publ'n No. 2009/0113504 A1, published Apr. 30, 2009 (Ex. 1057).

[5] Pandey et al., U.S. Patent No. 7,237,214 B1, issued June 26, 2007 (Ex. 1014).

7

IPR2024-00438
Patent 11,399,206 B2

Transcripts of the depositions of Mr. Lett (Ex. 2018, Ex. 2019, Ex. 2021) and Dr. Russ (Ex. 1079) also are in the record.

## III. DISCUSSION

### A. Claim Construction

In an *inter partes* review proceeding, we construe a claim of a patent "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." *See* 37 C.F.R. § 42.100(b). That standard involves construing claims in accordance with the ordinary and customary meaning of such claims as would have been understood by a person of ordinary skill in the art ("POSITA") and the prosecution history pertaining to the patent. *See id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).

Petitioner asserts that "[a]ll claim terms herein should be given their ordinary and customary meaning to a POSITA." Pet. 18. Patent Owner does not respond. *See* PO Resp. For purposes of this Decision, we determine that no claim term requires express interpretation to resolve any controversy in this proceeding. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### B. Asserted Challenges Based on Zhang Alone

Petitioner asserts that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 of the '206 patent are anticipated by Zhang. Pet. 19–45. Petitioner also asserts that these claims would have been obvious over Zhang. *Id.* Patent Owner disputes certain aspects of Petitioner's analysis. PO Resp. 3–50. For the reasons explained below, we

8

IPR2024-00438
Patent 11,399,206 B2

determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 are anticipated by Zhang or would have been obvious over Zhang.

Before addressing the parties' arguments, we provide an overview of Zhang.

### 1. Overview of Zhang

Zhang describes demodulator circuits in broadband communications. Ex. 1013 ¶ 4. To illustrate one embodiment, Figure 2 of Zhang is reproduced below.



Fig. 2

Figure 2 is a diagram of multi-channel demodulator 200. *Id.* ¶ 23. Frequency-block down-converter 210 receives a multi-channel analog RF signal that can come from any of various sources such as satellite systems, terrestrial TV systems, and cable systems. *Id.* Down-converter 210 downshifts the multi-channel analog RF signal to a lower frequency band. *Id.* ¶ 25. Analog-to-digital converter 220 then converts the down-converted multi-channel analog RF signal to a multi-channel digital RF signal. *Id.*

9

IPR2024-00438
Patent 11,399,206 B2

¶ 27. Digital channel demultiplexer 230 demultiplexes the digital RF signal into separate digital RF channels $C_1$ to $C_n$. *Id.* ¶ 28. Digital selector 240 receives the demultiplexed digital RF channels and selects one or more of RF channels $D_1$ to $D_m$ from one or more of digital RF channels $C_1$ to $C_n$. *Id.* The m selected RF channels are fed into respective demodulators 250(1) to 250(m), where they are demodulated. *Id.* ¶ 29. The selected RF channels $D_1$ to $D_m$ then feed into digital transport interface 260. *Id.*

We turn now to the claims, starting with independent claims 1, 13, 25, and 38.

## 2. Independent Claim 1

Claim 1 is directed to a "method for receiving a television (TV) signal" and recites various steps including a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. Petitioner designates the preamble as element 1A and the recited steps as elements 1B through 1E. We address these elements, starting with Petitioner's arguments and then turning to the parties' dispute.

### a. Element 1A: "method for receiving a television (TV) signal"

Claim 1 recites as its preamble "[a] method for receiving a television (TV) signal." Petitioner asserts that "Zhang describes an RF receiver, for example in a set-top box, that receives digital video channels over a cable system and that incorporates a DOCSIS return channel, which the '206 patent concedes is a protocol for 'cable networks that carry TV programs.'" Pet. 19–20 (citing Ex. 1013 ¶¶ 5–6, 23–25, 29, 41, 45–47; Ex. 1001, 9:4–8).

10

IPR2024-00438
Patent 11,399,206 B2

Patent Owner does not specifically dispute Petitioner's contentions regarding the preamble. *See* PO Resp. Although we do not determine whether the preamble is limiting, we are persuaded by Petitioner's argument and evidence that Zhang teaches the subject matter of the preamble.

### b. Element 1B: "receiving" step

Claim 1 recites "receiving an input signal from a cable network." For this step, Petitioner provides an annotated version of Figure 2 of Zhang, which is reproduced below. Pet. 20.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang discloses receiving a 'multi-channel analog RF signal' (the claimed 'input signal') from a cable system with a frequency block down converter 210 (**red**)." Pet. 20 (citing Ex. 1013 ¶¶ 5–6, 23–24, 41, 45–47). According to Petitioner, "[t]he multi-channel analog RF signal is 'an RF signal in a given frequency band that carries multiple RF channels.'" *Id.* (quoting Ex. 1013 ¶ 24).

11

IPR2024-00438
Patent 11,399,206 B2

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1B. *See* PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited receiving step of claim element 1B. *See* Pet. 20. For example, Zhang teaches its "frequency-block down-converter 210 receives one or more multi-channel analog RF signals which can be sourced by a variety of systems such as satellite systems, terrestrial TV systems, cable systems, etc." Ex. 1013 ¶ 23 (cited by Pet. 20).

### c. Element 1C: "digitizing" step

Claim 1 further recites "digitizing a contiguous band of frequencies in the input signal via a wideband analog-to-digital converter (ADC), wherein the contiguous band of frequencies comprises all received channels that exist in the input signal and the received channels comprise a plurality of desired channels and a plurality of undesired channels." For this step, Petitioner provides another annotated version of Figure 2 of Zhang, reproduced below. Pet. 22.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang's

IPR2024-00438
Patent 11,399,206 B2

Frequency Block Down Converter 210 'shifts the multi-channel analog RF signal to a lower frequency band,' which is then digitized by Zhang's ADC 220 (**gold**)." Pet. 21 (citing Ex. 1013 ¶¶ 10, 23–25, 27, 31, 34, 42, 44).

Petitioner contends that "Zhang's ADC is 'wideband' because the digitized multi-channel RF signal includes several channels, and the channels form 'a contiguous band of frequencies' because . . . they are spaced next to each other within a frequency band with a 'precise frequency spacing' (e.g., 6 MHz) that is a fraction of the total bandwidth of the multi-channel RF signal (e.g., 540-750 MHz divided into 35 channels)." Pet. 21 (citing Ex. 1013 ¶¶ 6, 10, 24–25, 27, 41–42, 47). Petitioner adds, "Zhang expressly discloses that in alternate variations of its system, 'RF channels need not be contiguous,' teaching that in the embodiment otherwise described, the RF channels are 'a contiguous band of frequencies.'" *Id.* at 22 (quoting Ex. 1013 ¶ 48).

Petitioner further contends that Zhang's "ADC 220 . . . 'converts an entire signal band . . . including the multi-channel analog RF signal,'" which, according to Petitioner, means "the digitized frequency band 'comprises all received channels that exist in the input signal.'" Pet. 23 (quoting Ex. 1013, claim 8).

Lastly, Petitioner contends that Zhang's "digitized multi-channel RF signal includes 'target' RF channels that are selected and demodulated in subsequent stages (claimed 'desired channels'), and undesired RF channels are filtered out (claimed 'undesired channels')." Pet. 23 (citing Ex. 1013 ¶¶ 5, 10–12, 27–29, 31–32, 35–36, 41–42, claim 37).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1C. *See* PO Resp. Based on Petitioner's arguments

13

IPR2024-00438
Patent 11,399,206 B2

and evidence, we find that Zhang teaches the recited digitizing step of claim element 1C.

### d. Element 1D: "concurrently selecting" step

Claim 1 further recites "concurrently selecting each of the plurality of desired channels from the input signal without selecting any of the plurality of undesired channels." For this step, Petitioner provides yet another annotated version of Figure 2 of Zhang, reproduced below. Pet. 24.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that Zhang's "multi-channel digital RF signal is input to Demultiplexer 230 and a portion of Digital Selector 240 (collectively **purple**) . . . , which perform Element [1D]." Pet. 23.

To illustrate, Petitioner also provides an annotated version of Figure 3 of Zhang, which is reproduced below. Pet. 25.

14

IPR2024-00438
Patent 11,399,206 B2



Fig. 3

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 30. Petitioner asserts that Zhang's "[d]igital tuner 300 . . . includes a plurality of signal paths for concurrently selecting a plurality of desired channels $C_1 – C_n$ (**light blue**)," where "each path includes a complex multiplier 320 (**purple**) followed by a [low pass filter] 330 (**green**)." Pet. 24 (citing Ex. 1013 ¶¶ 30–34). Petitioner further asserts that each "complex multiplier 320 first downconverts (shifts) the multi-channel RF signal frequency so that a different 'target channel' selected by the subscriber within the signal is centered at baseband (0 Hz), and then low pass filter 330 filters out all undesired channels, so that one of the 'n' target digital channels $C_1–C_n$ (**light blue**) is output." *Id.* at 25 (citing Ex. 1013 ¶¶ 28, 31–37). In addition, Petitioner asserts that "[s]elector 240 provides 'm' channels $D_1–D_m$ selected from any or all of the channels $C_1–C_n$ (**light blue**) for demodulation by one or more demodulators." *Id.* at 25–26 (citing Ex. 1013 ¶¶ 5, 28, 38–39, 47). According to Petitioner, Zhang's "Demultiplexer 230 and Selector 240 output only user selected channels

15

IPR2024-00438
Patent 11,399,206 B2

(either all or a subset of the user selected 'C' channels) and filter out all other channels from the digitized multi-channel RF signal." *Id.* at 26 (citing Ex. 1013 ¶¶ 28, 39, 47).

Patent Owner makes several arguments regarding claim element 1D, which we will address below.

### e. Element 1E: "providing" step

Lastly, claim 1 recites "providing the plurality of desired channels via a serial interface." For this step, Petitioner provides an annotated version of Figure 5 of Zhang, reproduced below. Pet. 27.



**Ex. 1013, Fig. 5 (annotated)**

Figure 5 of Zhang, as annotated by Petitioner, is a diagram of digital selector 500, which may be used to implement digital selector 240 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 38. Petitioner asserts "[s]elector 240 may have only a single bus (e.g., Data bus 1) that receives channels $C_1 - C_n$ from the Channel Demultiplexer 230 (represented by green blocks with

16

IPR2024-00438
Patent 11,399,206 B2

different patterns) and sends them across the bus 'with the use of time division multiplexing.'" Pet. 26 (citing Ex. 1013 ¶¶ 38–39). According to Petitioner, "[a] POSITA would have understood that this sends different channels sequentially (serially) in different time divisions over a single data path as shown, and that such a path is a 'serial interface.'" *Id.* at 27. Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* at 26–28 (citing Ex. 1002 ¶¶ 115–119).

Under an alternative theory, Petitioner contends that, "[t]o the extent Zhang does not disclose a serial interface, implementing Zhang's circuitry to output the selected channels via a serial interface would have been obvious in light of the POSITA's general knowledge, creativity, and common sense as one of two common design choices that were well known and used by POSITAs in integrated circuit designs at the time." Pet. 28. Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* at 28–29 (citing Ex. 1002 ¶¶ 117, 120–121).

Patent Owner does not specifically dispute Petitioner's contentions regarding claim element 1E. *See* PO Resp. Based on Petitioner's arguments and evidence, we find that Zhang teaches the recited providing step of claim element 1E.

### f. The Parties' Dispute

As discussed above, Patent Owner disputes Petitioner's analysis for claim element 1D. Patent Owner argues in particular "the '206 patent ***only*** selects desired channels from the digitized input RF signal without selecting any undesired channels," whereas "Zhang performs no selection from the digitized input signal." PO Resp. 3; *see also id.* at 3–7. According to Patent

17

IPR2024-00438
Patent 11,399,206 B2

Owner, Zhang "blindly extracts **all** channels, **both** desired **and** undesired, from the digitized input RF signal without performing any selection" and "only later selects the desired channels from the extracted channels." *Id.* at 3. Patent Owner cites Dr. Russ's declaration testimony that "Zhang digitizes an input signal . . . , consisting of 'n' desired and undesired channels, in the analog to digital converter 220," then "extracts from the digitized RF input signal **all** channels $C_1$–$C_n$, **both** desired **and** undesired, in the Digital Channel DeMux 230 . . . without making any selection," and then uses the selector 240 to "select[] the desired channels and output[] them to demodulators." *Id.* at 5–6 (quoting Ex. 2009 ¶¶ 33–35).

Petitioner counters that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently teach the recited desired channels. Pet. Reply 4; *see also* PO Resp. 8–9 ("The Petition first appears to argue that Zhang's channels $C_1$–$C_n$ constitute the claimed 'plurality of desired channels.' . . . Subsequently, however, Petitioner appears to suggest that Zhang's channels $D_1$–$D_m$ may be the claimed 'desired channels.'"). Regarding channels $C_1$–$C_n$, Petitioner contends "Zhang does not mandate that $C_1$–$C_n$ include all channels." Pet. Reply 6. Petitioner asserts "Zhang calls each of $C_1$–$C_n$ a 'desired channel,' and the selected number 'n' of them is a variable disclosed as being less than the number of channels in the digitized input signal." *Id.* at 6 (citing Ex. 1013 ¶¶ 28, 30, 32–33, 42). As to channels $D_1$–$D_m$, Petitioner reiterates the "Petition's arguments, which identify a combination of demultiplexer 230 with all or part of the selector 240 for performing the 'selecting . . . from the input signal,'" where the "combined circuitry outputs $D_1$ to $D_m$, which are undisputedly desired channels . . . , and the

18

IPR2024-00438
Patent 11,399,206 B2

input of this circuitry is undisputedly the input signal comprising the plurality of desired channels from the ADCs." *Id.* at 6–7.

We agree with Petitioner. Starting with its argument that Zhang's channels $C_1$ to $C_n$ teach the recited desired channels, we consider Zhang's teaching that its "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28 (cited by Pet. 25). The fact that channels $C_1$–$C_n$ contain content channels that are "selected" or "used" implies that channels $C_1$–$C_n$ themselves are desired channels, not both desired and undesired channels. Indeed, as Petitioner points out, Zhang refers to each of channels $C_1$–$C_n$ as a "desired" channel:

> Numeric oscillator 310(1) generates a frequency, or "target" frequency, that matches the characteristic frequency of *a desired RF channel, or "target" RF channel.* . . . Thus, *only the target RF channel passes.* Digital tuner circuit 300 then outputs the *separated RF channels $C_1$ to $C_n$* . . . .

*Id.* ¶ 32 (emphases added) (cited by Pet. Reply 5).

We note Patent Owner's contention that Zhang's reference to "an entire signal band with n channels" means channels $C_1$–$C_n$ include both desired and undesired channels. PO Resp. 11 (citing Ex. 1013 ¶ 27); *id.* at 17 ("[I]n Zhang, the number of complex multipliers 320 (1 . . . n) is the same number 'n' as the number of all channels, both desired and undesired, in the entire signal band."); *id.* at 18 ("Zhang is clear that the number 'n' in its disclosure denotes both desired and undesired in 'entire signal band.'"); *see also id.* at 16–24 (asserting "Petitioner's arguments are inconsistent with Zhang" (capitalization and emphasis omitted)). As noted above, however, Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28; *see also id.* ¶ 42 ("A

19

IPR2024-00438
Patent 11,399,206 B2

demultiplexer . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$. . . . *The exact number will depend on the specific application.*" (emphasis added)); *id.* ¶ 30 ("Digital tuner 300 includes a bank of n numeric control oscillators . . . , complex multipliers . . . , and low-pass filters . . . . One chain of each of these elements is used for each RF channel. *The exact number of these elements will depend on the number of RF channels to be demultiplexed.*" (emphasis added)). Zhang then characterizes each of channels $C_1$–$C_n$ as a "desired RF channel." *Id.* ¶ 32 ("Numeric oscillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."); *id.* ("LPFs 330(1 . . . n) receive all RF channels and each filters out all RF channels except for its target RF channel. Thus, only the target RF channel passes."). In the context of Zhang's full disclosure, the reference to "an entire signal band with n channels" appears to be a reference to a signal band that *includes* the selected (or used) n channels. That is, the signal band could also include unselected (or unused) channels. This reading is further supported by claim 8 of Zhang, which recites "the ADC converts an entire signal band, the signal band including the multichannel analog RF signal." *Id.*, claim 8 (cited by Pet. 23).

We also note Patent Owner's contention that Zhang's prosecution history reveals "the applicant explained that it is the selector that distinguished Zhang from its prior art, where all of the channels were demodulated." PO Resp. 14–15; *see also id.* at 17 ("[I]f Zhang's Figure 3 down converted and output only desired channels, there would have been no need for the subsequent channel selector 240 to select desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." (quoting Ex. 2009 ¶ 57)). Distinguishing Zhang

20

IPR2024-00438
Patent 11,399,206 B2

from the prior art based on Zhang's selector, however, does not mean Zhang's channels $C_1$–$C_n$ include both desired and undesired channels. Zhang explains that "channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber," and that "selector 240 . . . selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28. In other words, channels $C_1$–$C_n$ may be a set of subscriber-selected channels while channels $D_1$–$D_m$ may be a further set of subscriber-selected channels that are a subset of channels $C_1$–$C_n$. Being able to select a subset of channels translates to systems that are faster and dissipate less heat because fewer resources are needed to demodulate only the selected subset of channels. *See id.*

Even if Zhang's channels $C_1$–$C_n$ were to include both desired and undesired channels, however, Patent Owner's argument still fails. Turning to Petitioner's contention that Zhang's channels $D_1$ to $D_m$ teach the recited desired channels, we note Petitioner identifies Zhang's demultiplexer 230 and digital selector 240 *together* as the circuitry that performs the recited concurrently selecting step of claim element 1D. Pet. 23–24. As Petitioner points out, Zhang teaches "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 23–24). Zhang further teaches "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then *selects one or more of the RF channels $D_1$ to $D_m$* from one or more of the digital RF channels $C_1$ to $C_n$." *Id.* ¶ 28 (emphasis added), Fig. 2. In other words, Zhang's selector 240 (which Petitioner identifies as part of the circuitry that performs the recited concurrently selecting step) selects channels $D_1$–$D_m$ (which Petitioner identifies as the recited desired channels)

21

IPR2024-00438
Patent 11,399,206 B2

from channels $C_1$–$C_n$.  *See* Pet. 26 ("Demultiplexer 230 and Selector 240 output only user selected channels (either all or a subset of the user selected 'C' channels)."); Pet. Reply 6 ("This combined circuitry outputs $D_1$–$D_m$, which are undisputedly desired channels."); Ex. 1013 ¶ 28.  Patent Owner does not dispute this aspect of Petitioner's analysis, acknowledging Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$."  PO Resp. 13 (annotated Figure 2 of Zhang).

Patent Owner further argues "Petitioner's assertion that Zhang's channels $C_1$–$C_n$ disclose the claimed 'desired channels' . . . is also inconsistent with Petitioner's mapping of Zhang to other claim limitations," namely the providing step of claim element 1E.  PO Resp. 24–25.  To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below.  *Id.* at 25.



Figure 5 "**selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$** and then **sends them** to appropriate demodulators or outputs ports ... **through different data buses** ...." Ex. 1013 [Zhang] [0039]

Fig. 5

IPR2024-00438
Patent 11,399,206 B2

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 38. Patent Owner asserts "what is 'provided' on Zhang's Data Bus 1 in the selector 240 are channels $D_1$–$D_m$ (blue) shown on the right-hand side output of data bus 1, not channels $C_1$–$C_n$ (red)." PO Resp. 26. According to Patent Owner, to the extent Petitioner relies on channels $C_1$–$C_n$ as the desired channels for claim element 1D, "that mapping contradicts Petitioner's mapping for limitation [1E], which relies on channels $D_1$–$D_m$ as 'the plurality of desired channels' provided on a 'serial interface.'" *Id.* at 26.

We disagree with Patent Owner. Claim element 1E recites "providing the plurality of desired channels via a serial interface." As discussed above, Petitioner contends that Zhang's channels $C_1$–$C_n$ and channels $D_1$–$D_m$ independently (as well as collectively) teach the recited desired channels. Pet. 24, 26; Pet. Reply 4. Zhang teaches that its "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and that its "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Figs. 2, 3, 5.

As to Petitioner's theory that channels $C_1$–$C_n$ teach the recited desired channels, we consider Figures 2, 3, and 5 of Zhang, which show selector 240 receives channels $C_1$–$C_n$ (e.g., desired channels) that are then provided via a serial interface in selector 240 (e.g., selector 500) as further channels $D_1$–$D_m$. Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 25 (annotation acknowledging Zhang's

23

IPR2024-00438
Patent 11,399,206 B2

"Figure 5 'selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports . . . through different data buses.'" (quoting Ex. 1013 ¶ 39)). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited desired channels is persuasive.

As to Petitioner's theory that channels $D_1$–$D_m$ teach the recited desired channels, we again consider Figures 2, 3, and 5 of Zhang, which show selector 240 selects channels $D_1$ to $D_m$ (e.g., desired channels) from channels $C_1$ to $C_n$ and provides selected channels $D_1$ to $D_m$ via a serial interface in selector 240 (e.g., selector 500). Ex. 1013, Figs. 2, 3, 5. As noted above, Patent Owner acknowledges Zhang's "[s]elector 240 selects desired channels $D_1$–$D_m$ from channels $C_1$–$C_n$." PO Resp. 13 (annotated Figure 2 of Zhang). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited desired channels also is persuasive.

Patent Owner further argues that, "[t]o the extent Petitioner relies on channels $D_1$–$D_m$ as the claimed 'plurality of desired channels,' that reliance also fails to disclose or render obvious the claims because channels $D_1$–$D_m$ are not selected 'from the input signal.'" PO Resp. 27; *see also id.* at 27–36.

Petitioner counters that "the digital circuitry [for performing step 1D] is demultiplexer 230, in combination with all or part of selector 240," which means "the input to the relied-upon digital circuitry (i.e., the input to demultiplexer 230) is the input signal including the desired channels from the ADCs, *not* the individual channels $C_1$–$C_n$" and "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the desired channels." Pet. Reply 8–9. According to Petitioner, the relied-upon circuit is selecting desired channels $D_1$–$D_m$ "from the input signal." *Id.* at 9. To illustrate, Petitioner

24

IPR2024-00438
Patent 11,399,206 B2

provides a figure based on Figures 2, 3, and 5 of Zhang, reproduced below. *Id.*



Petitioner's figure combines annotated versions of Figures 2, 3, and 5 of Zhang. *Id.* As discussed above, Figure 2 of Zhang shows multi-channel demodulator 200 with demultiplexer 230 and selector 240; Figure 3 of Zhang shows digital tuner 300 that can be used to implement demultiplexer 230; and Figure 5 of Zhang shows selector 500 that can be used to implement digital selector 240. Ex. 1013 ¶¶ 23, 30, 38. Petitioner asserts that its composite figure shows "the input to the relied-upon circuit (coming from the bottom left side of the figure) is not the individual channels $C_1$–$C_n$ output by demultiplexer 230, but rather the recited input signal." Pet. Reply 9.

We agree with Petitioner. Claim element 1D recites "concurrently selecting each of the plurality of desired channels from the input signal

25

IPR2024-00438
Patent 11,399,206 B2

without selecting any of the plurality of undesired channels." Petitioner contends Zhang's demultiplexer 230 and selector 240 *together* perform the step of claim element 1D. Petitioner identifies the signal provided by Zhang's ADC 220 as the recited input signal and Zhang's channels $D_1$–$D_m$ as the recited desired channels. Pet. 20–21, 23, 25–26. As Petitioner's composite figure shows, channels $D_1$–$D_m$ are selected from the signal provided by ADC 220. Pet. Reply 9; *see also* Ex. 1013, Figs. 2, 3, 5.

Patent Owner contends that Zhang's channels $D_1$–$D_m$ are selected from channels $C_1$–$C_n$ and *not* the signal provided by ADC 220. PO Resp. 28. But channels $D_1$–$D_m$ are based on channels $C_1$–$C_n$, which are based on the signal provided by ADC 220. It, therefore, necessarily follows that channels $D_1$–$D_m$ also are based on the signal provided by ADC 220. In other words, the channels $D_1$–$D_m$, which are picked from channels $C_1$–$C_n$, are the same channels in both groups, and Patent Owner does not dispute channels $C_1$–$C_n$ are based on the signal provided by ADC 220. *See* Ex. 2023, 60:8–19 (Mr. Lett's deposition testimony from a related case ("[L]et's make C equals to D. . . . C1 is the exact same thing as D1. C2 is the exact same as D2. And so on and so forth. All of those are selected from the input frequencies.")). Petitioner correctly contends, "[n]othing in the claim language prevents the recited 'selecting' . . . from being performed by a digital multiplexer 230 that selects and down converts individual channels from the incoming signal from the ADC in combination with a digital selector 240 that passes certain of those signals along to a demodulator." Pet. Reply 9–10. This understanding is consistent with the stated objective of the '206 patent because channel selection at the demodulator is still avoided. *See* Ex. 1001, 2:38–41 ("It is desirable to have

26

IPR2024-00438
Patent 11,399,206 B2

wideband receiver systems that can increase the dynamic range without requiring . . . channel selection at the demodulator.").

We note Patent Owner's contention based on the doctrine of claim differentiation. Patent Owner asserts "claim 1 of [a related patent] recites a 'digital front end' that is configured to 'concurrently select and provide each of the plurality of desired channels without providing any of the plurality of undesired channels,' but does not expressly recite that the selection must be 'from the input signal.'" PO Resp. 34. Patent Owner further asserts that, "[i]f claim 1 of the '206 patent were read so broadly as to cover the selection of Zhang's channels $D_1$–$D_m$, then the language of the claim requiring that these channels be selected 'from the input signal' would be rendered superfluous." *Id.* at 35.

It is not clear how the selection of desired channels "from the input signal" in the '206 patent and the selection of desired channels as recited in the related patent are meaningfully different. *See* Pet. Reply 14 ("[T]he language 'from the input signal' is not rendered superfluous if read according to its ordinary meaning to include 'directly and indirectly from' as opposed to just 'directly' from."). Indeed, the Federal Circuit has recognized that "two claims with different terminology can define the exact same subject matter." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006); *see also Hormone Res. Foundation v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved."). For this reason, we are "cautioned that '[c]laim differentiation is a guide, not

27

IPR2024-00438
Patent 11,399,206 B2

a rigid rule.'" *Curtiss-Wright*, 438 F.3d at 1381 (quoting *Laitrim Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).

Based on the record before us, we find that Zhang teaches the recited concurrently selecting step of claim element 1D. *See* Pet. 23–26.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 1.

### 3. *Independent Claim 13*

Claim 13 is directed to a "method" and recites various limitations. Petitioner designates the preamble as element 13A and the recited limitations as elements 13B through 13E.

Claim elements 13A, 13B, 13C, and 13E are similar to claim elements 1A, 1B, 1C, and 1E. For these similarly recited elements, Petitioner relies primarily on its analysis for claim 1. Pet. 29–30, 33. Patent Owner does not dispute Petitioner's contentions regarding elements 13A, 13B, 13C, or 13E. *See* PO Resp. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited elements of claim 13.

We turn now to claim element 13D, starting with Petitioner's arguments and then turning to the parties' dispute.

### a. *Element 13D: "digitally down converting" step*

Claim 13 recites "digitally down converting each desired channel, of the plurality of desired channels, to generate a plurality of digital channel outputs." For this step, Petitioner provides an annotated version of Figure 2 of Zhang, reproduced below. Pet. 31.

28

IPR2024-00438
Patent 11,399,206 B2



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner asserts that "Zhang's Demultiplexer 230 and Digital Selector 240 (collectively **purple**) perform Element [13D]." Pet. 30.

To illustrate, Petitioner also provides an annotated version of Figure 3 of Zhang, which is reproduced below. Pet. 32.



Fig. 3

Figure 3 of Zhang, as annotated by Petitioner, is a diagram of digital tuner 300, which may be used to implement demultiplexer 230 of Figure 2 of Zhang. *See* Ex. 1013 ¶ 30. Referring to Figure 3, Petitioner asserts

29

IPR2024-00438
Patent 11,399,206 B2

Zhang's "demultiplexer 230 . . . includ[es] a plurality of signal paths for downconverting (i.e., shifting to a lower frequency) a plurality of desired channels $C_1 - C_n$ (**light blue**)," where "each path includes a complex multiplier 320 (**purple**) followed by a low pass filter 330 (**green**)."  Pet. 31 (citing Ex. 1013 ¶¶ 30–34, Fig. 3).  Petitioner further asserts each "complex multiplier 320 first downconverts (shifts) the frequency of the multi-channel RF signal so that a different 'target channel' selected by the subscriber within the signal is centered at baseband (0 Hz), and then low pass filter 330 filters out all undesired channels, so that one of the 'n' target digital channels $C_1$–$C_n$ (**light blue**) is output."  *Id.* (citing Ex. 1013 ¶ 28).  In addition, Petitioner asserts "[s]elector 240 provides 'm' channels $D_1$ - $D_m$ which can be any or all of channels $C_1$ - $C_n$ (**light blue**) for demodulation by one or more demodulators."  *Id.* at 32 (citing Ex. 1013 ¶¶ 28, 30–31, 38–39, 42, 47).  According to Petitioner, Zhang's "Demultiplexer 230 and Digital Selector 240 thus perform[] the . . . step of 'digitally down converting . . . to generate a plurality of digital channel outputs' where the 'outputs' are $C_1$ – $C_n$ (**light blue**) (or $D_1$ – $D_m$)."  *Id.* at 32 (citing Ex. 1013 ¶¶ 28, 30–31, 38–39, 42, 47).  Petitioner relies on the declaration testimony of Mr. Lett.  *Id.* at 30–32 (citing Ex. 1002 ¶¶ 129–134).

Patent Owner makes several arguments regarding claim element 13D, which we address below.

### b.  The Parties' Dispute

Patent Owner argues Petitioner's reliance on channels $C_1$–$C_n$ as the recited plurality of digital channel "is based on the misapprehension that channels $C_1$–$C_n$ are the claimed 'desired channels.'"  PO Resp. 43.  Patent

IPR2024-00438
Patent 11,399,206 B2

Owner reiterates its position that "channels $C_1$–$C_n$ contain both desired and undesired channels." *Id.*; *see also id.* at 43–47.

Patent Owner's argument is unavailing. Claim element 13D recites "digitally down converting each desired channel . . . to generate a plurality of digital channel outputs." We consider Petitioner's annotated version of Figure 2 of Zhang, reproduced below. Pet. 31.



Fig. 2

Figure 2 of Zhang, as annotated by Petitioner, is a diagram of multi-channel demodulator 200. *See* Ex. 1013 ¶ 23. Petitioner identifies Zhang's demultiplexer 230 and selector 240 together as the circuitry that performs the recited digitally down converting step of claim element 13D. Pet. 30.

As discussed above with respect to claim 1, Zhang teaches that "RF channels $C_1$ to $C_n$ contain content channels that are selected or used by a subscriber." Ex. 1013 ¶ 28. Petitioner points out Zhang even refers explicitly to each of selected or used channels $C_1$–$C_n$ as a "*desired* RF channel." *Id.* ¶ 32 (emphasis added) ("[O]scillator 310(1) generates a frequency . . . that matches the characteristic frequency of a desired RF channel."). In this way, channels $C_1$–$C_n$ satisfy the recited desired channels.

31

IPR2024-00438
Patent 11,399,206 B2

Turning back to Petitioner's annotated version of Zhang's Figure 2, reproduced above, we find that demultiplexer 230 (which Petitioner identifies as part of the circuitry that performs the digitally down converting step of element 13D) digitally down converts channels $C_1$–$C_n$ (which Petitioner identifies as the recited desired channels) to generate digital channel outputs (outputs of demultiplexer 230 for channels $C_1$–$C_n$). *See* Pet. 31.

Patent Owner further argues Petitioner's reliance on channels $C_1$–$C_n$ as the recited plurality of digital channel outputs "contradicts Petitioner's mapping for limitation [13E], where Petitioner relies on Zhang's channels $D_1$–$D_m$ as the claimed 'plurality of digital channel outputs.'" PO Resp. 38. Patent Owner asserts "the 'plurality of digital channel outputs' that are provided 'via a serial interface' in limitation [13E] in Zhang are channels $D_1$–$D_m$, not channels $C_1$–$C_n$." *Id.* at 39; *see also id.* at 39–41. To illustrate its position, Patent Owner provides an annotated version of Figure 5 of Zhang, reproduced below. *Id.* at 41.



Fig. 5

IPR2024-00438
Patent 11,399,206 B2

Figure 5 of Zhang, as annotated by Patent Owner, is a diagram of selector 500, which may be used to implement selector 240 of Figure 2. *See* Ex. 1013 ¶ 38. Patent Owner asserts "what is 'provided' on data bus 1 in the selector 240 [are] channels $D_1$–$D_m$ shown on the right-hand side output of data bus 1, not channels $C_1$–$C_n$." PO Resp. 40.

We disagree with Patent Owner. Claim element 13E recites "providing the plurality of digital channel outputs via a serial interface." Petitioner contends Zhang's demultiplexer 230 and selector 240 together perform this step. *See* Pet. 33 (asserting the recited digital channel outputs "are disclosed in Zhang as outputs $C_1$–$C_n$/$D_1$–$D_m$"). As shown in Figures 2, 3, and 5 of Zhang, demultiplexer 230 provides digital channel outputs (e.g., outputs for channels $C_1$–$C_n$) that are then provided via a serial interface in selector 240 (e.g., selector 500) as further channels (e.g., channels $D_1$–$D_m$). Ex. 1013, Figs. 2, 3, 5. Patent Owner does not appear to dispute that Zhang operates in this way. *See* PO Resp. 41 ("[A]s Zhang's own Figure 5 shows, the channels 'provided' on data buses (such as Data Bus 1) are channels $D_1$–$D_m$ selected from channels $C_1$–$C_n$."). Accordingly, Petitioner's reliance on channels $C_1$–$C_n$ as the recited digital channel outputs is persuasive.

Even if Petitioner were to rely on channels $D_1$–$D_m$ as the recited digital channel outputs in claim element 13E, Patent Owner's argument that Petitioner's mapping is inconsistent still fails. Claim element 13D recites "digitally down converting each desired channel . . . to generate a plurality of digital channel outputs." Claim element 13E adds "providing the plurality of digital channel outputs via a serial interface."

As discussed above, Petitioner contends Zhang's demultiplexer 230 and selector 240 together perform these steps. Pet. 30, 33. As part of its

33

IPR2024-00438
Patent 11,399,206 B2

analysis for claim element 13D, Petitioner cites to where Zhang teaches "demultiplexer 230 . . . demultiplexes the multi-channel digital RF signal into separate digital RF channels $C_1$ to $C_n$," and "selector 240 receives the demultiplexed digital RF channels $C_1$ to $C_n$ and then selects one or more of the RF channels $D_1$ to $D_m$ from one or more of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28, Fig. 2 (cited by Pet. 31–32). In other words, channels $D_1$–$D_m$ may be a subset of channels $C_1$–$C_n$. For claim element 13E, Petitioner cross-references its discussion of claim element 1E in which Petitioner asserts "[s]elector 240 . . . further provides the desired channels 'via a serial interface.'" Pet. 26, 33.

Thus, Zhang's demultiplexer 230 down converts channels $C_1$–$C_n$ (which include channels $D_1$–$D_m$ as a subset) so that Zhang's selector 240 can generate digital channel outputs (e.g., outputs for channels $D_1$–$D_m$) and provide them via a serial interface in selector 240 (e.g., selector 500). Ex. 1013 ¶ 28, Figs. 2, 3, 5. Patent Owner acknowledges "selector 500 digitally selects one or more RF channels $D_1$ to $D_m$ from the digital RF channels $C_1$ to $C_n$ and then sends them to appropriate demodulators or output ports." PO Resp. 49 (quoting Ex. 1013 ¶ 39). Accordingly, Petitioner's reliance on channels $D_1$–$D_m$ as the recited digital channel outputs also is persuasive.

We note Patent Owner's contention that "it is the output $C_1$–$C_n$, not $D_1$–$D_m$, that is 'generated' by digital down conversion in Zhang." PO Resp. 48. According to Patent Owner, "the output $D_1$–$D_m$ is generated by selecting desired channels from the already down converted channels $C_1$–$C_n$." *Id.*

34

IPR2024-00438
Patent 11,399,206 B2

Petitioner counters that it relies on Zhang's demultiplexer 230 and selector 240 *together* to perform the steps recited in claim elements 13D and 13E. Pet. Reply 8–9; Pet. 30, 33. Under that theory, Petitioner asserts "[t]he output of the relied-upon circuit is $D_1$–$D_m$, which are the . . . digital channel outputs," and "[i]t necessarily follows that this relied-upon circuit is . . . down converting the . . . desired channels/digital channel outputs ($D_1$–$D_m$)." Pet. Reply 9.

We agree with Petitioner. The relied-upon circuit (i.e., Zhang's demultiplexer 230 and selector 240) down converts desired channels (e.g., channels $D_1$–$D_m$, which are a subset of channels $C_1$–$C_n$) via Zhang's demultiplexer 230 to generate digital channel outputs (e.g., outputs for channels $D_1$–$D_m$) via Zhang's selector 240 and provide the digital channel outputs via a serial interface in selector 240 (e.g., selector 500). Ex. 1013 ¶ 28, Figs. 2, 3, 5.

We also note Patent Owner's further contention that, "[t]o the extent Petitioner's argument rests on the theoretical happenstance that sometimes all channels $C_1$–$C_n$ may subsequently be selected, and by happenstance channels $C_1$–$C_n$ and channels $D_1$–$D_m$ would happen to be the same set (*i.e.*, n would happen to equal m), that argument fails" because "Petitioner does not point to any disclosure in Zhang that teaches or suggests that all extracted channels $C_1$–$C_n$ could be the desired channels $D_1$–$D_m$." PO Resp. 41–42. Patent Owner adds that "the theoretical happenstance that all extracted channels $C_1$–$C_n$ could be the desired channels $D_1$–$D_m$ cannot disclose the claimed method." *Id.* at 42.

Patent Owner's contention is unavailing. As discussed above, Petitioner's analysis for claim element 13D holds water where channels $D_1$–

35

IPR2024-00438
Patent 11,399,206 B2

$D_m$ are a subset of channels $C_1$–$C_n$. Moreover, contrary to Patent Owner's position, Zhang does contemplate selecting all channels $C_1$–$C_n$ so that channels $C_1$–$C_n$ and channels $D_1$–$D_m$ are the same set. As Petitioner points out, Zhang teaches its "selector 240 . . . selects *one or more* of the RF channels $D_1$ to $D_m$ from *one or more* of the digital RF channels $C_1$ to $C_n$." Ex. 1013 ¶ 28 (emphases added) (cited by Pet. 32). This teaching implies channels $C_1$–$C_n$ and channels $D_1$–$D_m$ may be the same set. In that case, Petitioner's reliance on either channels $C_1$–$C_n$ or channels $D_1$–$D_m$ as the recited digital channel outputs also is persuasive. *See* Ex. 2023, 60:8–19 (Mr. Lett's deposition testimony from a related case ("[L]et's make C equals to D. . . . C1 is the exact same thing as D1. C2 is the exact same as D2. And so on and so forth. All of those are selected from the input frequencies. In other words, Zhang's digital selector can be configured as -- to just pass through all the Cs.")).

Based on the record before us, we find that Zhang teaches the recited digitally down converting step of claim element 13D. *See* Pet. 30–32.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 13.

### *4. Independent Claim 25*

Claim 25 is directed to a "method for receiving a television (TV) signal" and recites similar limitations as claim 1. For example, claim 25 recites a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. For these similarly recited limitations, Petitioner relies primarily on its analysis for claim 1. Pet. 33. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 8. Based on

36

IPR2024-00438
Patent 11,399,206 B2

Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 25.

Claim 25 adds that "the method is performed by a device comprising a digital video reorder (DVR)." For this limitation, Petitioner asserts "Zhang discloses that its cable TV device may be integrated as a wide-band front-end of a 'set-top box/PVR/home media server.'" Pet. 33 (citing Ex. 1013 ¶ 45, Fig. 8). According to Petitioner, "[a] POSITA would have understood that 'PVR' stands for 'personal video recorder,' which is an alternate name for 'DVR' or 'digital video recorder' for recording audio and video content received by a STB." *Id.* at 33–34. Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 137–140).

Patent Owner does not specifically dispute Petitioner's contentions regarding this additional limitation of claim 25. *See* PO Resp. Based on Petitioner's argument and evidence, we find that Zhang teaches the recited DVR of claim element 25F. *See* Pet. 33–34.

In view of the foregoing, we find that Zhang teaches all the limitations of claim 25.

### 5. Independent Claim 38

Claim 38 is directed to a "method" and recites similar limitations as claims 1, 13 and 25. For example, claim 38 recites a "receiving" step, a "digitizing" step, a "digitally down converting" step, and a "digital video recorder (DVR)." For these similarly recited limitations, Petitioner relies on its analysis for claims 1, 13, and 25. Pet. 34. Patent Owner relies on its arguments regarding claim 13. *See* PO Resp. 36. Based on Petitioner's

37

IPR2024-00438
Patent 11,399,206 B2

argument and evidence, and for the reasons given above as to claims 1, 13, and 25, we find that Zhang teaches all the limitations of claim 38.

### 6. *Dependent Claims*

Each of claims 3–7, 9, 11, 15–19, 21, 23, 27–31, 33–35, 40–44, and 46–48 depends from independent claims 1, 13, 25, or 38. Petitioner contends that Zhang teaches the limitations recited in these dependent claims. Pet. 35–45 (citing Ex. 1013 ¶¶ 5–7, 11–12, 23–24, 28–34, 38–39, 41–48, Figs. 2, 3, 5). Petitioner relies on the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 60–65, 71–73, 115–121, 135–136, 145–149, 150–172).

Patent Owner does not specifically dispute Petitioner's contentions regarding the dependent claims. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 35–45), we find that Zhang teaches the limitations of the dependent claims.

### 7. *Summary*

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, and 46–48 are anticipated by Zhang or would have been obvious over Zhang.

### C. *Asserted Challenge Based on Zhang and Reisman*

Petitioner asserts that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 of the '206 patent would have been obvious over Zhang and Reisman. Pet. 45–56. Patent Owner disputes

IPR2024-00438
Patent 11,399,206 B2

certain aspects of Petitioner's analysis. PO Resp. 3–50. For the reasons explained below, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 would have been obvious over Zhang and Reisman.

We provided an overview of Zhang above. *See supra* Part III.B.1. Before addressing the claims, we additionally provide an overview of Reisman.

### 1. Overview of Reisman

Reisman describes "interactive television" (ITV), where the TV includes a set-top box (STB). Ex. 1052 ¶¶ 2, 43, 98. Reisman explains that ITV may include interactivity with the TV through a digital video recorder (DVR), which also is known as a personal video recorder (PVR). *Id.* ¶¶ 48, 60. Additionally, Reisman explains that ITV may include a featured called picture-in-picture (PIP), where a region of the TV screen presents a reduced scale video image. *Id.* ¶ 121.

### 2. Independent Claims 25 and 38

As discussed above, we determine that Petitioner has shown by a preponderance of the evidence that claims 25 and 38 are anticipated by Zhang or would have been obvious over Zhang.

Under an alternative theory, Petitioner contends that, "[t]o the extent Patent Owner argues that Zhang's PVR is not a 'DVR' as recited in Elements [25D] and [38D], Reisman discloses this feature." Pet. 45. Petitioner asserts that "Reisman teaches that advanced STBs in a cable

IPR2024-00438
Patent 11,399,206 B2

system may include a digital video recorder (DVR)." *Id.* at 45–46 (citing Ex. 1052 ¶¶ 5, 43, 48, 60, 73, 98, 112, 118, 191, 197, 212, 281–285, 296, 546). According to Petitioner, "[a] POSITA would have been motivated to include Reisman's DVR in Zhang's STB to provide a more feature-filled and individualized user experience, which in the proposed combination still includes Zhang's wideband front-end receiver components cited for performing Elements [25A]–[25E]." *Id.* at 46. Petitioner explains that "Reisman's DVR improves user experience and flexibility by allowing time-shifted and on-demand viewing, and enabling replay and trick-play (fast forwarding, rewinding, and pausing) of live programming." *Id.* (citing Ex. 1052 ¶¶ 191, 197, 212, 284); *see also id.* at 46–47 (asserting that "[a]dding Reisman's DVR to Zhang's system would have been nothing more [than] applying a known technique of integrating a DVR into a set-top box . . . to a known STB . . . that was ready for improvement to yield a predictable result" and that "[a] POSITA would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 45–47), we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claims 25 and 38. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness. *See In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").

40

IPR2024-00438
Patent 11,399,206 B2

### *3. Independent Claim 51*

Claim 51 is directed to a "method for receiving a television (TV) signal" and recites similar limitations as claim 1. For example, claim 51 recites a "receiving" step, a "digitizing" step, a "concurrently selecting" step, and a "providing" step. For these similarly recited limitations, Petitioner relies on its analysis for claim 1. Pet. 47. Patent Owner likewise relies on its arguments regarding claim 1. *See* PO Resp. 8. Based on Petitioner's argument and evidence, and for the reasons given above as to claim 1, we find that Zhang teaches the similarly recited limitations of claim 51.

Claim 51 adds the step of "configuring at least some of the plurality of desired channels as an output for a picture-in-picture display." For this limitation, Petitioner asserts that "Reisman teaches that [] advanced set-top boxes in a cable system include a 'picture-in-picture display' output for television programming." Pet. 47–48 (citing Ex. 1052 ¶¶ 73, 98, 118, 120–121, 187, 278, 291, 378, 534, 537, 546, Fig. 3). Petitioner contends that "[a] POSITA would have been motivated to include Reisman's 'picture-in-picture display' capability in Zhang's set-top box, which in the proposed combination still has the wideband front-end receiver components cited for performing Elements [51A]–[51E], to allow a user to view different content simultaneously." *Id.* at 48. Petitioner explains that Reisman's "'picture-in-picture' beneficially displays a program in a PIP window while simultaneously providing, e.g., navigation options and interactive content in other windows," and "enables 'multitasking,' by displaying, e.g., two TV programs, and swapping them between full screen and a smaller PIP window." *Id.* (citing Ex. 1052 ¶¶ 61, 63, 121, 278, 378, 546, Fig. 3); *see also id.* at 48–49 (asserting that "modifying Zhang with Reisman would

41

IPR2024-00438
Patent 11,399,206 B2

have been nothing more than the obvious application of a known technique . . . to a known device . . . that was ready for improvement to yield a predic[t]able result" and that "[a] POSITA would have had a reasonable expectation of success").

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Based on Petitioner's argument and evidence (*see* Pet. 47–49), and for the reasons given above with respect to claim 1, we find Petitioner's proposed combination of Zhang and Reisman teaches all the limitations of claim 55. We also find that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

### 4. *Independent Claim 64*

Claim 64 is directed to a "method" and recites similar limitations as claims 1, 13, and 51. For example, claim 64 recites a "receiving" step, a "digitizing" step, a "digitally down converting" step, and a "picture-in-picture display." For these similarly recited limitations, Petitioner relies on its discussion of claims 1, 13, and 51. Pet. 50. Patent Owner relies on its arguments regarding claim 13. *See* PO Resp. 36. Based on Petitioner's argument and evidence (*see* Pet. 50), and for the reasons given above as to claims 1, 13, and 51, we find that the proposed combination of Zhang and Reisman teaches all the limitations of claim 64, and that Petitioner's proffered reasoning for combining Zhang and Reisman supports a legal conclusion of obviousness.

IPR2024-00438
Patent 11,399,206 B2

### 8. Dependent Claims

Each of claims 9–12, 21–24, 27–31, 33–37, 40–44, 46–50, 53–57, 59–63, 66–70, and 72–76 depends from independent claims 1, 13, 25, 38, 51, or 64. Petitioner contends that its proposed combination of Zhang and Reisman teaches the limitations recited in the dependent claims. Pet. 51–56 (citing Ex. 1013 ¶ 47; Ex. 1052 ¶¶ 8, 24, 63, 73, 86–90, 98, 125, 187, 189, 209, 235, 643–645, Fig. 1). Petitioner relies on the declaration testimony of Mr. Lett. *Id.* (citing Ex. 1002 ¶¶ 145–147, 191–207).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 9–12, 21–24, 27–31, 33–37, 40–44, 46–50, 53–57, 59–63, 66–70, and 72–76. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 51–56), we find that Zhang teaches the limitations of these dependent claims.

### 9. Summary

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, and 72–76 would have been obvious over Zhang and Reisman.

### D. Asserted Challenge Based on Zhang and Jackson

Each of claims 2–6, 14–18, 26–30, and 39–43 depends from independent claims 1, 13, 25, or 38. Petitioner asserts that these dependent claims would have been obvious over Zhang and Jackson. Pet. 56–69. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way

IPR2024-00438
Patent 11,399,206 B2

to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 62–64, 208–236).

Patent Owner does not specifically dispute Petitioner's contentions regarding the claims 2–6, 14–18, 26–30, and 39–43. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 56–69), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Jackson teaches the limitations of theses dependent claims and that Petitioner's proffered reasoning for combining Zhang and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6, 15–19, 28–32, and 42–46 would have been obvious over Zhang and Jackson.

*E. Asserted Challenge Based on Zhang, Reisman, and Jackson*

Each of claims 26–30, 39–43, 52–56, and 65–69 depends from independent claims 25, 38, 51, or 64. Petitioner asserts that these dependent claims would have been obvious over Zhang, Reisman, and Jackson. Pet. 56–69. Petitioner relies on Jackson for teaching various components, including its input connector, amplifiers, filters, complex mixer, and demodulator, which Petitioner asserts can be incorporated into Zhang's system to provide a way to implement and improve Zhang's receiver. *Id.* (citing Ex. 1013 ¶¶ 5–6, 12, 15, 23, 25–32, 38–39, 45, 47–48, Figs. 2, 3; Ex. 1057 ¶¶ 2–4, 6, 19–20, 23–27, Figs. 3, 4B, 5, 6, 7). Petitioner cites the

IPR2024-00438
Patent 11,399,206 B2

declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 62–64, 208–236).

Patent Owner does not specifically dispute Petitioner's contentions regarding claims 26–30, 39–43, 52–56, and 65–69. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 56–69), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Jackson teaches the limitations of these dependent claims and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Jackson support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 26–30, 39–43, 52–56, and 65–69 would have been obvious over Zhang, Reisman, and Jackson.

*F. Asserted Challenge Based on Zhang and Pandey*

Petitioner asserts that claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 would have been obvious over Zhang and Pandey. Pet. 69–75. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 13, 34, 47, 60, and 73 as well as the parallel interface of claims 33, 46, 59, and 72. *Id.* at 69. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 69–75 (citing Ex. 1013 ¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12,

45

IPR2024-00438
Patent 11,399,206 B2

31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39). Petitioner cites the declaration testimony of Mr. Lett as support. *Id.* (citing Ex. 1002 ¶¶ 237–248).

Patent Owner does not specifically dispute Petitioner's contentions in this regard. *See* PO Resp. Having reviewed Petitioner's argument and evidence (*see* Pet. 69–75), and for the reasons given above with respect to Petitioner's challenges based on Zhang alone, we find that Petitioner's proposed combination of Zhang and Pandey teaches the limitations of claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 and that Petitioner's proffered reasoning for combining Zhang and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 1, 3–9, 11, 13, 15–21, 23, 32–34, and 45–47 would have been obvious over Zhang and Pandey.

*G. Asserted Challenge Based on Zhang, Reisman, and Pandey*

Each of claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 depends from independent claims 1, 13, 25, 38, 51, and 64. Petitioner asserts that these dependent claims would have been obvious over Zhang, Reisman, and Pandey. Pet. 69–75. Petitioner cross-references its discussion of Zhang's teaching of the serial interface of claims 1, 13, 34, 47, 60, and 73 as well as the parallel interface of claims 33, 46, 59, and 72. *Id.* at 69. Petitioner further relies on Pandey for also teaching serial and parallel interfaces, which Petitioner says can be incorporated into Zhang's system to provide a way to implement Zhang's digital circuit. *Id.* at 69–75 (citing Ex. 1013

46

IPR2024-00438
Patent 11,399,206 B2

¶¶ 28–30, 37, 40, 42, 44, 47–48, Fig. 2; Ex. 1014, code (57), 1:15–2:38, 2:64–3:5, 5:50–53, 6:10–15, 6:44–53, 7:13–19, 10:24–53, 10:58–11:19, 13:33–14:7, 29:44–30:9, 30:31–31:12, 31:15–22, 31:56–63, 32:7–15, Figs. 2–3, 37–39).  Petitioner cites the declaration testimony of Mr. Lett as support.  *Id.* (citing Ex. 1002 ¶¶ 237–248).

Patent Owner does not specifically dispute Petitioner's contentions in this regard.  *See* PO Resp.  Having reviewed Petitioner's argument and evidence (*see* Pet. 69–75), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Reisman, we find that Petitioner's proposed combination of Zhang, Reisman, and Pandey teaches the limitations of claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 and that Petitioner's proffered reasoning for combining Zhang, Reisman, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 would have been obvious over Zhang, Reisman, and Pandey.

*H. Asserted Challenge Based on Zhang, Jackson, and Pandey*

Each of claims 2–6 and 14–18 depends from independent claims 1 or 13.  Petitioner asserts that these dependent claims would have been obvious over Zhang, Jackson, and Pandey.  Pet. 75.  Petitioner cross-references its discussion regarding its challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey.  *Id.* (citing Ex. 1002 ¶ 249).

Patent Owner does not specifically dispute Petitioner's contentions for this challenge.  *See* PO Resp.  Having reviewed Petitioner's argument and

47

IPR2024-00438
Patent 11,399,206 B2

evidence (*see* Pet. 75), and for the reasons given above with respect to Petitioner's challenge based on Zhang and Jackson as well as its challenge based on Zhang and Pandey, we find that Petitioner's proposed combination of Zhang, Jackson, and Pandey teaches the limitations of claims 2–6 and 14–18 and that Petitioner's proffered reasoning for combining Zhang, Jackson, and Pandey support a legal conclusion of obviousness.

In view of the foregoing, we determine that Petitioner has demonstrated by a preponderance of the evidence that claims 2–6 and 14–18 would have been obvious over Zhang, Jackson, and Pandey.

## IV.  CONCLUSION

For the reasons given, Petitioner has demonstrated by a preponderance of the evidence that claims 1–76 of the '206 patent are unpatentable as follows.[6]

---

[6] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding.  *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019).  If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices.  *See* 37 C.F.R. §§ 42.8(a)(3), (b)(2).

IPR2024-00438
Patent 11,399,206 B2

| Claims | 35 U.S.C. § | Reference(s)/ Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 102 | Zhang | 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | |
| 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | 103(a) | Zhang | 1, 3–7, 9, 11, 13, 15–19, 21, 23, 25, 27–31, 33–35, 38, 40–44, 46–48 | |
| 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | 103(a) | Zhang, Reisman | 9–12, 21–25, 27–31, 33–38, 40–44, 46–51, 53–57, 59–64, 66–70, 72–76 | |
| 2–6, 14–18, 26–30, 39–43 | 103(a) | Zhang, Jackson | 2–6, 14–18, 26–30, 39–43 | |
| 26–30, 39–43, 52–56, 65–69 | 103(a) | Zhang, Reisman, Jackson | 26–30, 39–43, 52–56, 65–69 | |
| 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | 103(a) | Zhang, Pandey | 1, 3–9, 11, 13, 15–21, 23, 32–34, 45–47 | |
| 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | 103(a) | Zhang, Reisman, Pandey | 9–12, 21–24, 32–34, 45–47, 58–60, 71–73 | |
| 2–6, 14–18 | 103(a) | Zhang, Pandey, Jackson | 2–6, 14–18 | |
| **Overall Outcome** | | | 1–76 | |

49

IPR2024-00438
Patent 11,399,206 B2

## V.  ORDER

In consideration of the foregoing, it is hereby

ORDERED that claims 1–76 of the '206 patent have been shown to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.


PETITIONER:

Frederic Meeker
Michael S. Cuviello
Harry W. Porter
Paul T. Qualey
Joshua L. Davenport
BANNER & WITCOFF, LTD.
fmeeker@bannerwitcoff.com
mcuviello@bannerwitcoff.com
wporter@bannerwitcoff.com
pqualey@bannerwitcoff.com
jdavenport@bannerwitcoff.com

PATENT OWNER:

Jason A. Engel
Erik J. Halverson
Kyle M. Kantarek
Nolan R. Hubbard
K&L GATES LLP
jason.engel.ptab@klgates.com
erik.halverson@klgates.com
kyle.kantarek@klgates.com
nolan.hubbard@klgates.com

Kenneth J. Weatherwax

IPR2024-00438
Patent 11,399,206 B2

Parham Hendifar
Nathan Lowenstein
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com

## CERTIFICATE OF SERVICE

I certify that counsel for the parties have been served with a true and correct copy of the foregoing document via the Court's CM/ECF system on March 30, 2026.

Date: March 30, 2026

/s/ *Parham Hendifar*
Parham Hendifar
*Counsel for Patent Owner-Appellant*
*Entropic Communications, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the following document was served by electronic service, by agreement between the parties, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S CORRECTED NOTICE OF APPEAL**

The names and address of the parties being served are as follows:

| | |
|---|---|
| Frederic M. Meeker | fmeeker@bannerwitcoff.com |
| Michael S. Cuviello | mcuviello@bannerwitcoff.com |
| H. Wayne Porter | wporter@bannerwitcoff.com |
| Paul T. Qualey | pqualey@bannerwitcoff.com |
| Joshua L. Davenport | jdavenport@bannerwitcoff.com |
| | ComcastIPRService@bannerwitcoff.com |

Respectfully submitted,

/Abbie Neufeld/
Abbie Neufeld

Date:  March 30, 2026

1

## **CERTIFICATE OF FILING WITH USPTO**

The undersigned hereby certifies that, pursuant to 37 C.F.R. § 90.2(a), a copy of the following document has been filed with the Director by electronic mail to the email address efileSO@uspto.gov as indicated on the United States Patent and Trademark Office's web page for the Office of the General Counsel, on the date signed below:

**PATENT OWNER ENTROPIC COMMUNICATIONS, LLC'S CORRECTED NOTICE OF APPEAL**

Respectfully submitted,

/Abbie Neufeld /

Abbie Neufeld

Date:  March 30, 2026